PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARRELL GUNN,

              Plaintiff,

-v-                                                                          16-CV-6206CJS
                                                                                  ORDER

WILLIAM J. ABRUNZO, Inmate Grievance
Program, Supervisor, ANTHONY J.
ANNUCCI, JR., Acting Commissioner, R.J.
BALLARD, Lieutenant, BESCHLER,
Correction Officer, BRUSH, Correction
Officer, D. BYNAUM, Sergeant, PAUL
CHAPPIUS, JR., Superintendent, CLIFF
CLAFLIN, Sergeant, A. COLES,
Correction Officer, COLLMER, Sergeant,
COLUMBO, Clinician Specialist, MHU,
DEPALO, Lieutenant, DONELY, Offender
Rehabilitation Coordinator, ROBERT
GESSNER, Inspector General, LOONEY,
Clinician, MHU, K. MUSSAW, Lieutenant,
T. PERRY, Correction Officer, J.
POWERS, Sergeant, PAUL PICCOLO,
Deputy Superintendent Security, F.
SANTIAGO, Sergeant, B. SCHIEBER,
Correction Officer, J. TAYLOR, Correction
Officer, JOHN DOE, Sergeant-Mental
Health Unit, J. WENDERLICH, Deputy
Superintendent Security, K. BUNNELL,
Correction Officer, C. DIEGO, Captain, G.
KELLER, Captain, DAVIS, Sergeant,
BUNNELL, Correction Officer,
AUDINWOOD, Correction Officer, HEAL,
Sergeant, SWEET, ORC, JILL
NORTHRUP, Nurse Practitioner, and
DEPARTMENT OF CORRECTIONS AND
COMMUNITY SERVICES,[1]



---

[1] Davis, Bunnell, Audinwood, Heal, Sweet and Northrup are identified in the body of the Amended Complaint (Docket No. 6, Amended Complaint), but not in the Caption or "Parties" Section of the Amended Complaint, and the "Department of Corrections and Community Supervision" ("DOCCS") is identified both in the Parties Section and body of the Amended Complaint but not Caption. Accordingly, the Clerk of Court is directed to amend the Caption of this action as set forth above to include these individuals and DOCCS as parties to this action.

Defendants.

## **INTRODUCTION**

Plaintiff, Darrell Gunn, *pro se*, an inmate housed currently at the Green Haven Correctional Facility, filed this action seeking relief under 42 U.S.C. § 1983. The Amended Complaint (Docket No. 6), which is over 190 pages in length and includes 30 separate "Counts", 439 paragraphs and 27 Defendants, was filed shortly after the Complaint was filed, *see* Fed.R.Civ.P. 15(a)(1)(A). It alleges, *inter alia*, that between March 2013 and April 2014, while Plaintiff was confined at the Elmira Correctional Facility, he was subjected to a number of sexual assaults and abuses during unnecessary pat frisks by Defendants T. Perry, Correctional Officer ("CO"), and B. Schieber, CO, and his complaints and grievances related to said assaults were not taken seriously and ignored. Plaintiff claims that as a result of DOCCS's "Brotherhood" of racist "culture of corruption and dishonesty" he was constantly subjected to intimidation, antagonism and harassment, which caused him to suffer from anxiety and depression and a belief that he was to blame for the sexual assaults and harassment.

Plaintiff also seeks permission to proceed *in forma pauperis* (that is, someone who should have the ordinary filing and administrative fees waived because he or she cannot afford it) and has filed a Prison Authorization. (Docket No. 5.)

For the reasons explained below, Plaintiff's request to proceed as a poor person is granted, some of the claims pled in the Amended Complaint will be dismissed, pursuant to 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A(b), either with or without prejudice as specified below, while the remaining claims may proceed to service.

2

## DISCUSSION

### A. STANDARD OF REVIEW

#### 1. 28 U.S.C. § § 1915(e)(2)(B) and 1915A

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, he is granted permission to proceed *in forma pauperis*. Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of the Amended Complaint. In evaluating the Amended Complaint, the Court must accept as true all of the factual allegations and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the Plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)).

Based on its evaluation of the Amended Complaint, the Court finds that, pursuant to 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A(b), several of Plaintiffs' claims must be dismissed, either with or without prejudice as specified below, because they fail to state a claim upon which relief may be granted, and the remaining claims may proceed to service.

## B. RULE 8 OF FEDERAL RULES OF CIVIL PROCEDURE

Rule 8 of the Federal Rules of Civil Procedure provides in relevant part that a

pleading which states a claim for relief "must contain: . . . a short and plain statement of

the claim showing that the pleader is entitled to relief . . . ." Fed.R.Civ.P. 8(a)(2). The

Rule further provides that "[e]ach allegation must be simple, concise, and direct."

Fed.R.Civ.P. 8(d)(1). As the Second Circuit has observed:

> The statement should be plain because the principal function of the
> pleadings under the Federal Rules is to give the adverse party fair notice
> of the claim asserted so as to enable him to answer and prepare for trial.
> The statement should be short because unnecessary prolixity in a
> pleading places an unjustified burden on the court and the party who must
> respond to it because they are forced to select the relevant material from a
> mass of verbiage.

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotation marks and

citations omitted); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). "The

key to Rule 8(a)'s requirements is whether adequate notice is given." *Wynder v.*

*McMahon*, 360 F.3d 73, 79 (2d Cir. 2004). Thus,

> When a complaint does not comply with the requirement that it be short
> and plain, the court has the power . . . to strike any portions that are
> redundant or immaterial . . . or to dismiss the complaint.

*Salahuddin*, 861 F.2d at 42.

The Second Circuit has had occasion to discuss the application of Rule 8's

pleading requirements following the United States Supreme Court decision in *Erickson*,

551 U.S. at 94. *See Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008). In *Boykin*,

the Second Circuit noted that the Supreme Court "reiterated that '[s]pecific facts are not

necessary,' and that the complainant 'need only give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests.' " *Id.*, 521 F.3d at 214 (quoting

*Erickson*) (internal quotations omitted). However, in applying the requirements of Rule

4

8 to complaints which contain too much detail, the Second Circuit has also emphasized that dismissal under Rule 8(a) "'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised,'" *Shomo v. New York*, 374 Fed. Appx. 180, 182 (2d Cir. 2010) (quoting *Salahuddin*, 861 F.2d at 42).

Given, on the one hand, the Court's obligation to enforce the pleading requirements of Rule 8, but on the other hand, "to read[] *pro se* complaints with special solicitude and [to] interpret[] them to raise the strongest [claims] that they *suggest*[,]" *Shomo*, 374 Fed. Appx. at 183 (internal quotation marks and citation omitted), the Court notes that the Rule 8 "violations" in the Amended Complaint herein—*e.g.*, short and plain statement—are not of the type that would allow the Court to dismiss it *in toto* with an opportunity to amend to comply with Rule 8, *see Shomo*, 374 Fed. Appx. at 183 (complaint is neither "unintelligible" nor a "labrynthian prolixity of unrelated and vituperative charges that defied comprehension") (quoting *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972)).

Accordingly, the Court must undertake the demanding task of reviewing each claim ("Count")[2] against each of the 27 Defendants and determine whether each Count is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against defendants entitled to immunity from such relief, *see* 28 U.S.C. § § 1915(e)(2)(B) and 1915A; *see also Shomo*, 374 Fed.Appx. at 183 (district court's dismissal on the basis of § 1915(e) was in error, "because [it] did not review, in fact, the merits of plaintiff's claims to determine whether they were frivolous under the relevant

---

[2] The separate claims alleged in the Amended Complaint are set forth therein as "Counts."

civil rights statute . . . ."),[3] and, if so, whether the claims can be dismissed *sua sponte* or cured by amendment.

## C. PLAINTIFF'S COUNTS

### Counts One, Two and Three (¶ ¶ 19-56, 57-64 and 65-73)

Plaintiff alleges that on March 29, 2013, while he was on his way to Recreation in the Gym in G Block, he was singled out for a pat frisk despite clearing the magnetometer.    Defendant CO T. Perry kicked Plaintiff's right foot and grabbed Plaintiff's underwear and pulled them up into Plaintiff's groin and rectum.  Perry then proceeded to violently pat frisk Plaintiff and touch, rub, grab and squeeze Plaintiff's chest, genitals and buttocks.  Perry also penetrated Plaintiff's rectum with his fingers. Plaintiff further alleges that Defendant Sergeant Chaflin participated in the pat frisk by shielding others from witnessing the pat frisk and failed to protect Plaintiff from the sexual assault, and that Defendant CO Beschler had passed the "wand" over Plaintiff's sneakers before the pat frisk with no alarm or signal and witnessed the sexual assault but failed to take any action to protect Plaintiff from the assault.  Plaintiff also alleges

---

[3] In *Shomo*, the district court, on 28 U.S.C. § 1915(e) and 1915A review, was confronted with a complaint—similar to the one currently under review herein—that named over 25 defendants, had 295 separate paragraphs and was 100 pages in length.  The district court noted and addressed the complaint's obvious violations of Rules 8(a) and 10(b), and its other deficiencies, and directed plaintiff to file an amended complaint that, *inter alia* (i) named no more than 20 individuals as defendants, (ii) was no more than 20 pages in length, (iii) had separately numbered short and concise paragraphs, and (iv) that each individually numbered paragraph addressed a particular claim and concisely described the actions of each defendant that plaintiff alleged caused him injury.  *Shomo v. State of New York*, 1:06-CV-0353A (Docket No. 6, Decision and Order, Nov. 2, 2006 (W.D.N.Y.) (unpublished disposition)).  Rather than file an amended complaint, plaintiff filed a notice of appeal and the Second Circuit held that the complaint was not so deficient as to require it be dismissed without prejudice at that stage in the litigation and that the court erred to the extent it ordered plaintiff to confine his amended complaint to a certain number of pages and defendants.  *Shomo*, 374 Fed.Appx. at 183.  The Second Circuit stated, as addressed above, that "the district court will remain free to consider whether each claim in the amended complaint states a claim upon which relief can be granted or is otherwise frivolous."

Thus, according to the dictates of *Shomo*, the Court herein considers each Count in the Amended Complaint separately and determine whether each Count is frivolous or malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against defendants immune from such relief.

that on his way back to his cell, Defendant CO Beschler kicked him in his left shin causing additional injuries.

Based on these allegations, the Court finds that the Eighth Amendment claims of (1) sexual assault against Perry (Count I), *see Crawford v. Cuomo*, 796 F.3d 252, 254, 257-58 (2d Cir. 2015) ("In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate."), (2) failure to protect against Chaflin and Beschler (Counts Two and Three), *see Kornegay v. New York*, 677 F.Supp.2d 653, 657 (W.D.N.Y. 2010) (Larimer, J.); *see also O'Neil v. Kreminski*, 839 F.2d 9, 11 (2d Cir. 1987) (A defendant who fails to intervene is liable for the preventable harm caused by the actions of other defendants where that defendant observes or has a reason to know that excessive force is being used), and (3) excessive force against Beschler (Count Three), *see Hudson v. McMillian*, 503 U.S. 1, 7 (1992) ("[T]he core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."), may proceed to service.

### Count Four (¶ ¶ 74-84)

On the same day of the alleged assault by Perry, Plaintiff was placed on keeplock status for two days and was denied showers, recreation and library visits. Superintendent Chappius, Jr. was not provided notice of a Use of Force Report in violation of 7 NYCRR § 251.3. Plaintiff was in pain from the assault and took his prescribed Naproxen but nonetheless put in sick-call slips for March 30 and 31, 2013.

7

To the extent this claim alleges a denial of due process by being placed in keeplock for two days and being denied certain privileges during that time, it must be dismissed with prejudice because there are no allegations that the two day keeplock status deprived Plaintiff of a protected liberty interest entitling him to due process protections. See *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313, 316 (2d Cir. 1996). In order to establish the existence of a protected liberty interest, a plaintiff must (1) "establish that the confinement or restraint complained of creates an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life;'" *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)), and (2) "establish that 'the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint,'" *id.* (quoting *Frazier*, 81 F.3d at 317).

In order to make this showing, a plaintiff must demonstrate that the conditions under which he was held in keeplock differed dramatically from the basic conditions of his incarceration "After *Sandin*, in order to determine whether a prisoner has a liberty interest in avoiding disciplinary confinement, a court must examine the specific circumstances of the punishment." *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997). The circumstances that the court must examine include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and . . . the duration of the disciplinary segregation imposed compared to discretionary confinement." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998).

While there is not a bright line below which the Court need not consider the circumstances of the punishment, "the decisions in the Second Circuit are unanimous

that keeplock or SHU confinement of 30 days or less . . . is not 'atypical or significant hardship' under *Sandin*." *Smart v. Goord*, 441 F.Supp.2d 631, 640 (S.D.N.Y.2006) (quoting *Williams v. Keane*, No. Civ. 95-0379(AJP)(JGK), 1997 WL 527677, at \*6 (S.D.N.Y. Aug. 25, 1997) (citing cases); *see also Pettus v. Geaver,* No. 04-CV-228 (LEK/DRH), 2007 WL 295313, at \*2 (N.D.N.Y., January 10, 2007) ("although [plaintiff] contends that he was deprived of shower[s], recreation, toothbrush and toothpaste for 21 days, he has failed to demonstrate that given the limited period of deprivation, these conditions gave rise to a protected liberty interest") (citation and internal quotations omitted); *Williams*, 1997 WL 527677 at \*6 (citing thirty cases); *see also, e.g., Washington v. Donohue*, 146 F.Supp.3d 503, 508 (W.D.N.Y. 2015) (Larimer, D.J.) (discipline consisting of 30 days keeplock "is not sufficiently significant to trigger a liberty interest of constitutional proportions."); *Garcia v. Miller*, 201 F.3d 431 (2d Cir. 1999) (unpublished disposition); *Davis v. State of New York*, No. 99-CV-0307H, 1999 WL 1390247 at \*3-4 (W.D.N.Y. December 14, 1999) (thirty days in keeplock with loss of telephone, commissary and package privileges); *Rodriguez v. McGinnis*, 1 F.Supp.2d 244, 248 (S.D.N.Y. 1998) (17 days in keeplock).

Moreover, keeplock confinement is less restrictive than the SHU confinement imposed for thirty days in *Sandin*. *Sandin*, 515 U.S. at 475-76. While package, telephone and commissary privileges may be suspended, and the inmate is confined for 23 hours each day, the privileges of an inmate in disciplinary keeplock are not otherwise more limited than those of prisoners confined in keeplock for administrative detention or protective custody. *McIntosh v. Daddario*, No. 94-CIV. 6709(RPP), 1998 WL 118156, at \*4 (S.D.N.Y. March 17, 1998) (holding that inmate's disciplinary keeplock confinement

for 45 days, with loss of package and phone privileges after inmate was found guilty of violating terms of work release program, did not implicate a liberty interest); *Reaves v. Williams*, No. 95 CIV. 0281 (DC), 1997 WL 10132, at \*5 (S.D.N.Y. January 10, 1997) (69 days served in keeplock, of a 90-day sentence); and *see Saulter v. Hanslmaier*, No. 94-CIV. 6855(JFK), 1997 WL 177887, at \*2 (S.D.N.Y. April 14, 1997) (taking into account fact that keeplock inmates were housed in cells identical to those used in general population, with greater freedom of movement than SHU).

Plaintiff's allegations that Chappius was not provided notice of a Use of Force Report or that he took pain medication following the incident and put in two sick call slips do not set forth a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 667-78 (2009). The violation of a state rule or regulation, alone, does not set forth a constitutional violation. *See Holocomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures."). Plaintiff's allegations that he took his own pain medication and put in sick-call slips, even if intended to set forth a separate claim as opposed to supporting his claim that he was sexually abused, fail to state a claim upon which relief can be granted and must be dismissed with prejudice. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (A claim for denial of medical care rises to the level of a constitutional violation only where the facts alleged show that a defendant was deliberately indifferent to a plaintiff's serious medical needs.)

Plaintiff's allegations in Count Four, whether construed as a denial of due process under the Fourteenth Amendment or a denial of medical care in violation of the Eighth Amendment, must be dismissed with prejudice.

Counts Five and Ten (¶ ¶ 85-90, 144-147)

Plaintiff alleges that on March 31, 2013, when he was let out his cell for an interview regarding the alleged sexual assault, Defendant CO Taylor called him a "Rat" in front of other inmates (Amended Complaint, ¶ 87) and on April 9, 2013, while he was on his way to the G Block's Sergeant's Office, Taylor called Plaintiff a "snitch" in front of others (id., ¶ 146). Plaintiff claims this put him at a risk of harm. A prison official may be liable under § 1983 "for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir.1996) (quoting Morales v. New York State Dep't of Corr., 842 F.2d 27, 30 (2d Cir.1988)). In order to establish a claim of deliberate indifference in violation of the Eighth Amendment, an inmate must demonstrate that he was detained under conditions posing a substantial risk of serious harm, and that the prison official had knowledge that the inmate faced a substantial risk of serious harm and disregarded the risk by not taking reasonable measure to abate the risk. Hayes, 84 F.3d at 620; see also Hawkins v. Nassau Cnty. Corr. Facility, 781 F.Supp.2d 107, 112 (E.D.N.Y. 2011) (quoting Hayes, 84 F.3d at 620).

Courts in this Circuit, including this one, "have recognized that being labeled a 'snitch' in the prison environment can indeed pose a threat to an inmate's health and safety in violation of the Eighth Amendment[,]" Abney v. Jopp, 655 F.Supp.2d 231, 233 (W.D.N.Y. 2009) (Larimer, D.J.) (internal quotations and citation omitted), but "[i]n general prison officials will not be liable for such actions absent a showing that the inmate suffered actual harm as a result. At the very least, a plaintiff must show that the defendant's actions gave rise to an excessive risk to [his] safety." Id. (citing Bouknight

*v. Shaw*, No. 08 Civ. 5187, 2009 WL 969932, at \*4 (S.D.N.Y., Apr. 6, 2009) (concluding

that plaintiff failed to make out Eighth Amendment claim against officer based on

allegation that officer labeled plaintiff a "snitch," where plaintiff "ha[d] not alleged any

facts that, if proven, would establish that he ever faced actual or imminent harm[]" as a

result of the statements and adding that "[t]he Court is unwilling simply to assume that

such a risk existed merely because Officer Rivera spread rumors about him") (internal

quotation marks omitted); *Green v. City of New York Dep't of Corrections*, No. 06 Civ.

4978, 2008 WL 2485402, at \*7 (S.D.N.Y. June 19, 2008) ("In the cases cited by Plaintiff

in which courts found viable Eighth Amendment claims premised on being labeled a

'snitch,' there were allegations or proffered evidence of actual physical harm")

(collecting cases)).

Plaintiff herein alleges no facts that he was physically harmed by another inmate

or prison official based on Taylor's comments and, therefore, he fails to state a claim

that is plausible on its face. *See Hamilton v. Fischer*, No. 6:12-CV-6449 (MAT), 2013

WL 3784153, at \* 15 (W.D.N.Y., July 18, 2013) (Telesca, D.J.) (citing *Bouknight*, 2009

WL 969932, at \*4; *Green v. City of New York Dep't of Corrs.*, No. 06 Civ. 4978, 2008

WL 2485402, at \*7 (S.D.N.Y. June 19, 2008) ("In the cases cited by Plaintiff in which

courts found viable Eighth Amendment claims premised on being labeled a 'snitch,'

there were allegations or proffered evidence of actual physical harm") (collecting

cases)). Accordingly, Plaintiff's claims against Taylor alleged in Counts Five and Ten of

the Amended Complaint are dismissed with prejudice.

Count Six (¶ ¶ 9-15)

12

On March 31, 2013, Plaintiff was summoned to the Sergeant's Office for an interview, pursuant to the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601, in relation to an investigation of the sexual assault allegations and alleges that Defendant Sergeant Davis did not conduct an adequate investigation and that Defendant CO Bunnell's presence in the room denied him the requisite confidentiality. Plaintiff believed Bunnell was "subsumed in DOCCS 'Brotherhood' culture of corruption and dishonesty collusively involved in the PREA investigation with implicit racial bias . . . ." (Amended Complaint, ¶ 100). When Plaintiff told Davis that he was just called a snitch by Taylor, Davis stated he was concerned with the alleged assault only and when Davis asked Plaintiff if there were any witnesses, Plaintiff responded that he did not need any witnesses and Davis then recorded "no witnesses."

To the extent Plaintiff's claim herein is based on a failure to investigate his allegations of sexual assault against Terry under PREA, it must be dismissed because "'[n]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate.'" *McCloud v. Prack*, 55 F.Supp.3d 478, 482 n.2 (W.D.N.Y. 2014) (Larimer, D.J.) (quoting *Amaker v. Fischer*, No. 10–CV–0977, 2014 WL 4772202, at \*14 (W.D.N.Y. Sept. 24, 2014) (citing cases)).

Additionally, Plaintiff has no constitutional right to an investigation of an individual who has committed an assault on him unless it is shown that the omission or inadequacy of the investigation itself resulted in the deprivation of a constitutional right. *See Malloy v. City of New York*, No. 93 CV 89119 (SS), 1996 WL 648927, at \*2

(S.D.N.Y. Nov. 7, 1996) (holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault); *see also Gomez v. Whitney*, 757 F.2d 1005 (9th Cir. 1985) (a claim against a police department for failure to investigate is insufficient to state a civil rights claim without another recognized constitutional right being involved); *Nieves v. Gonzalez*, 05–CV–00017, 2006 WL 758615 at *4 (W.D.N.Y. March 2, 2006) (Report & Recommendation, Schroeder, M.J.) (there is no constitutional right to an investigation by government officials) (collecting cases); *Perez v. City of New York*, No. 97 CV 2915, 1998 WL 564551, at *1 (E.D.N.Y., Jun 18, 1998) ("But the courts have not recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognizable constitutional right involved.") (internal quotations and citations omitted). Accordingly, Count Six of the Amended Complaint must be dismissed with prejudice.

### Count Seven (¶ ¶ 116-125)

After the PREA interview with Davis, Plaintiff alleges that he was being escorted by Defendant CO Brush and ran into two members of the Inmate Liaison Committee ("ILC") who asked him if he was "OK" and Plaintiff answered "No, I was sexually assaulted." (Amended Complaint, ¶ 117.) Davis and Audinwood were waiting to escort Plaintiff to the Facility's Hospital and Davis asked if Plaintiff could wear slippers outside. Bunnell said "Yes," but Davis ordered Plaintiff to go back to his cell anyway and get his boots. Brush then began "chastising" Plaintiff about telling the ILC members about the assault and stated "[d]on't you ever say anything in front of me about my 'Brother'; that's not right; -- just don't do that in front of me. Do you understand." (*Id.*, 123.) Brush

14

became more upset and stated "'do you understand me . . . get the f--- out of here.'"
(*Id.*)

Liberally construed, the allegations herein seek to assert a claim of verbal harassment or threats against Brush. However, allegations of verbal threats or harassment in the absence of any physical injury ordinarily do not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment. *See Gill v.Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y.1996)); *Aziz Zarif Shabazz v. Picco*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (noting that, ordinarily, a claim for verbal harassment is not actionable under § 1983); s*ee also Mirabella v. Correctional Officer* Keenan, 15-CV-142S, 2016 WL 4678980, at * 7 (W.D.N.Y., Sept. 7, 2016) (Skretny, D.J.) ("verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.") (internal quotations and citations omitted); *Johnson v. Eggersdorf*, 8 Fed. Appx. 140, 143 (2d Cir. 2001) (Summary Order) (citing *Purcell*, 790 F.2d at 265 ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged."); *Hendricks v. Boltja*, 20 Fed. Appx. 34, 36 (2d Cir. 2001) (holding that "verbal harassment was not actionable" in case where officer, *inter alia*, told inmate to "get [his] black ass out of the library" and threatened to "smash [his] head open"). Accordingly, Plaintiff's claims of verbal threats and harassment must be dismissed with prejudice.[4]

---

[4] In *Willey v. Kirkpatrick*, 801 F.3d 51, 69 (2d Cir. 2015), the Second Circuit remanded to the district court plaintiff's claim that he was subject to harassment. The remand was based on the Circuit's decision in *Crawford*, 796 F.3d at 255-60,

### Count Eight (¶ ¶ 126-135)

Plaintiff was examined, pursuant to PREA's requirements, by a Nurse who provided him with acetaminophen and ice. Because the exam was given with others in the room, there was no confidentiality. The following day, April 1, 2013, Perry failed to place Plaintiff's name on the evening chow list in retaliation, presumably, for Plaintiff's complaint about Perry's sexual assault. Plaintiff also alleges in Count Sixteen (Amended Complaint, ¶ 225) that on June 8, 2013, Perry again failed to place his name on the evening chow list in retaliation for his complaint.

First, to the extent that Plaintiff alleges any violations of PREA or deliberate indifference to Plaintiff's serious medical needs in relation to the physical exam, it must be dismissed because there is no private right of action under PREA, *see* Discussion, Count Six at 13, *supra*, and because there are no allegations of deliberate indifference against the unidentified nurse who is not sued herein, *see Estelle*, 429 U.S. at 104-05.

Second, Plaintiff's claims of retaliation against Perry in relation to the denial of two evening meals, almost two months apart, are simply insufficient, as a matter of law, to state a claim for relief that is plausible on its face. *See Iqbal*, 566 U.S. at 577-78. The First Amendment protects an inmate from retaliation for engaging in protected speech, including filing grievances in relation to prison conditions. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). In order to assert a retaliation claim, a

---

which provided "'new guidance on the meaning of *Boddie v. Schroeder*, 105 F.3d 857, 86 (2d Cir. 1997), our Circuit's leading Eighth Amendment case of harassment and abuse that leaves no physical injury.'" *Willey*, 801 F.3d at 69. The *Willey* panel also stated that "[t]he district court may also consider whether [plaintiff's] psychological pain and resulting suicide attempt constitute an 'appreciable injury' that makes the various forms of harassment [plaintiff] allegedly suffered." *Id.* (citing *Purcell*, 790 F.2d at 265).

Examining Plaintiff's claims in light of *Crawford*, which examined when sexual abuse may rise to the level of an Eighth Amendment claim, the Court finds that there are no allegations herein sufficient to establish that Brush's statements rose to the level of an Eighth Amendment violation. *See Crawford*, 796 F.3d at 256 (citing *Hudson*, 503 U.S. at 8).

prisoner must show that "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir.2004) (citation omitted). In the prison context, the Second Circuit has noted ""the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)). Courts must, therefore, "examine prisoners' claims of retaliation with skepticism and particular care." *Colon*, 58 F.3d at 872.

The filing of grievances is protected speech, but this Count of the Amended Complaint does not allege any "adverse action" sufficient to set forth an actionable claim of retaliation. Actionable retaliatory conduct sufficient to state a retaliation claim is only that conduct which would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Thus, the conduct must be "specifically directed at plaintiff[ ] and substantial enough to deter legitimate grievances against prison officers." *Salahuddin v. Mead,* No. 95 Civ. 8581(MBM), 2002 WL 1968329, at *5 (S.D.N.Y. Aug.26, 2002). Conduct that is *de minimis* does not provide this deterrent effect and does not give rise to actionable retaliation. *Dawes,* 239 F.3d at 493; *see also Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999) (citing *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982) ("[S]ince there is no justification for harassing people for exercising their constitutional rights [, harassment] need not be great in order to be actionable. Yet, . . . [i]t would trivialize the

17

First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ....") (alterations in original)).

The isolated or sporadic denial of privileges is insufficient to assert a claim of retaliation. *See, e.g.*, *Lunney v. Brureton*, No. 04-CV-2483, 2007 WL 1544629, at *21 (S.D.N.Y. May 29, 2007) ("Case law suggests that the isolated or sporadic denial of privileges do not suffice to state a claim of actionable retaliation."), *adopted by* 2007 WL 2050301 (S.D.N.Y. July 17, 2007); *Snyder v. McGinnis*, No. 03–CV–0902E, 2004 WL 1949472, at *11 (W.D.N.Y. Sept.2, 2004) (deprivation of meal on two occasions is de minimis and does not state a claim for retaliation); *Lyons v. Wall*, No. CA 05–433 ML, 2006 WL 2945256, at *5 (D.R.I. Oct.13, 2006) (sporadic cold showers are de minimis). Plaintiff's allegation that Perry did not place his name on the evening meal list on two separate occasions, two months apart, is simply insufficient to constitute adverse action, *see Edwards v. Horn*, No. 10-CV-6194, 2012 WL 760172, at *14 n.13 (S.D.N.Y. Mar. 8, 2012) ("The denial of meals on two occasions, separated by more than three months, is de minimis and not actionable.") (italics omitted)), and, therefore, the retaliation claim against Perry must be dismissed with prejudice.

### Count Nine (¶ ¶ 136-143)

Plaintiff was examined by a Nurse Administrator, who is not a defendant herein, on April 4, 2013, and diagnosed with a rectal hemorrhoid, prescribed ointment and referred to the Mental Health Unit ("MHU"). He claims that Defendant Looney, an MHU Clinician, did not take his claims of sexual assault seriously and had to hold back

18

laughing in his face during the interview. Plaintiff asked Looney how he could file criminal charges against Perry and she stated she did not know.

Construing this claim broadly, it, at most, asserts a claim of deliberate indifference to what the Court presumes was a serious health need. The allegations, however, fail to allege an actionable claim of a violation of the Eighth Amendment, *see Estelle*, 429 U.S. at 104-05, and must be dismissed with prejudice.

Count Eleven (¶ ¶ 148-155)

Plaintiff alleges that Defendant Powers, Sergeant, submitted a false grievance report regarding his investigation of Grievance No. EL40798-13, relating to Plaintiff being placed on keeplock status the and missed sick-call outs the two days immediately following the alleged sexual assault by Perry on March 29, 2013, in order to cover up for Perry's wrongdoing. Plaintiff claims that Powers refused to include the claim that Taylor had called him a snitch and to make a referral to MHU. Powers also allegedly told Plaintiff that he would have a "rough bid" if he continued to write grievances.

To the extent Plaintiff alleges that Powers failed to properly investigate his grievance and submitted a false grievance investigation report, said claim must be dismissed because an inmate has no constitutional right to a grievance procedure and therefore allegations that prison officials violated those procedures do not give rise to a constitutional claim actionable under Section 1983. *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y.2005) (citing *Cancel v. Goord*, No. 00 Civ.2042(LMM), 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("[I]nmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983.... Thus, [the plaintiff's] claim that the Defendants violated

his First Amendment right of access to the courts and right to petition the government for redress by failing to process his grievances lacks merit and is dismissed with prejudice.")); *see, e.g., Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) ("Prison grievance procedures do not confer any substantive right upon an inmate ...."); *see also Anderson v. Duke,* No. 04 Civ. 0030(NAM), 2008 WL 238557, at *7 (N.D.N.Y. Jan. 28, 2008); *Carroll v. Callanan,* No. 05 Civ. 1427(LEK), 2007 WL 965435, at *6 (N.D.N.Y. Mar. 30, 2007).

Accordingly, Plaintiff's claims against Sergeant Powers are dismissed with prejudice.

### Count Twelve (¶ ¶ 156-169)

Plaintiff alleges that Defendant Santiago, Sergeant, was assigned to conduct an investigation into Grievance No. EL40801-13. When Plaintiff arrived at the G-Block Sergeant's Office two unidentified white COs were waiting and one CO stated "'be careful, he doesn't like pat frisk[s].'" (Amended Complaint, ¶ 158.) During a "needless" pat frisk, one of the COs "for his sexual gratification and retaliation used his penis through his clothes directly rubbing against plaintiff buttock[s] and legs causing [P]laintiff to feel the penis of the prison guard through his clothes." (*Id.,* ¶ 160.) Plaintiff does not name the CO who allegedly assaulted him nor does he appear to intend to sue him herein as a John Doe Defendant.[5] After the incident, the COs ordered Plaintiff to go into the Sergeant's Office.

---

[5] If Plaintiff wishes to sue the unidentified Correctional Officer whom he claims assaulted him on April 19, 2013, he may file a motion with the Court asking to file and serve a second amended complaint by naming said Correctional Officer as a "John Doe" Defendant. *See* Fed.R.Civ.P. 15(a)(2); Loc.R.Civ.P. 15. The motion should set forth, as best as possible, a physical description of the Correctional Officer whom Plaintiff alleges assaulted him on April 19, 2013, and any other relevant information regarding the identity of this CO so that Plaintiff, DOCCS and the Court may attempt to ascertain the identity of said CO. *See Valentin v. Dinkins,* 121 F.3d 72 (2d Cir. 1997).

Santiago asked Plaintiff "you've been down for awhile. Are you a rat?" Plaintiff responded that he was not a rat and Santiago, while looking over the Grievance documents, commented that Plaintiff was a "writer" and that if Plaintiff had any problems with a CO he should write to him and he would take care of it. (*Id.*, ¶ ¶ 166-168.)

As set forth above, *see* Discussion, Count Eleven at 19-20, any claim against Santiago related to the grievance investigation must be dismissed with prejudice because it fails to state a claim upon which relief can be granted. While Plaintiff's allegations assert that he believed he was being set-up by the two COs and Santiago (*id.*, ¶ 161), these allegations are simply too conclusory and speculative to support a claim that Santiago was either personally involved in the sexually abusive pat frisk or failed to protect Plaintiff from the pat frisk and, therefore, they do not state an Eighth Amendment claim against Santiago actionable under § 1983.

Count Thirteen (¶ ¶ 170-177)

Plaintiff alleges that on April 22, 2013, Defendants Taylor and Coles denied him recreation in retaliation for a grievance Plaintiff had filed against Taylor and that Taylor and Coles had submitted false statements in relation to a grievance, presumably submitted in relation to the denial of recreation. Defendant Coles stated to Plaintiff "'[i]f you stop being a d--- head you'll come out.'" (Amended Complaint, ¶ 174.) Again, as set forth above, *see* Discussion, Count Eight at 16-17, the allegations of retaliation are wholly conclusory and insufficient to state an actionable claim of retaliation against Taylor and, therefore, the retaliation claim against Taylor must be dismissed.

As to Coles, however, Plaintiff additionally alleges in Count Fourteen (¶ ¶ 178-195) that Coles denied Plaintiff recreation on at least two other occasions, while making

21

statements inferring that the denial of recreation was based on Plaintiff's grievances. Based on the additional instances of denial of recreation and Cole's specific statements, the Court, as discussed below, Discussion, Count Fourteen at 22-23, will allow the retaliation claims against Coles to proceed to service at this time. *See* n.6, *infra*.

Plaintiff also alleges that Santiago conducted an investigation of Grievance No. EL40868-13, related to Plaintiff not being allowed out of his cell for recreation, in a discriminatory, biased and partial manner. To the extent this claim alleges a faulty grievance procedure or failure to conduct a proper grievance investigation, it must be dismissed with prejudice because it fails to state a claim upon which relief can be granted. *See* Discussion, Count Eleven at 19-20.

Count Fourteen (¶ ¶ 178-195)

Plaintiff alleges that on April 23, 2013, Defendant Taylor denied Plaintiff an evening meal and Defendant Ballard conducted a grievance investigation related to Grievance No. EL40880-13. Ballard asked Plaintiff if he wished to add anything to the grievance and Plaintiff stated that he was denied evening recreation the night before and denied his evening meal that evening. Ballard then stated "do your time like a man." (Amended Complaint, ¶ 183.) Later that evening, Defendant Bunnell did not allow Plaintiff to visit the Law Library and on April 23 through April 25, 2013, Plaintiff was "surreptitiously" keeplocked. On April 26 and 30, 2013, Coles again denied Plaintiff evening recreation and stated during those instances, respectively, "'stop being a d--- head and we'll let you out'" and "'stop making up lies and you'll come out.'" (*Id.*, ¶ ¶ 190, 193.)

Plaintiff's claim against Ballard regarding the grievance investigation is dismissed with prejudice, *see* Discussion, Count Eleven at 19-20, as is his claim against Bunnell alleging that he was denied a Law Library visit, *see* Discussion, Count 8 at 16-18, based on their failures to state a claim upon which relief can be granted. Plaintiff's retaliation claim against Coles, however, may proceed to service at this time.

Count Fifteen (¶ ¶ 196-216)

On May 2, 2013, Plaintiff alleges that he provided to Ballard a "Notice of Liability." On June 11, 2013, Perry, who was at the Center Gate, selected Plaintiff for a pat frisk after Plaintiff had cleared the magnetomer, and proceeded to again sexually abuse Plaintiff. Plaintiff's claim against Perry may proceed to service at this time, *see Crawford*, 796 F.3d at 254, 257-58, but, to the extent Plaintiff asserts a claim against Ballard it is dismissed with prejudice inasmuch as it fails to state a claim upon which relief can be granted. Even assuming Plaintiff intends to assert a retaliation claim against Ballard, said claim fails to allege in any way that Ballard engaged in an adverse action against Plaintiff.

Count Sixteen (¶ ¶ 217-230)

Plaintiff claims that Perry repeatedly retaliated against him by intimidating and harassing him on a number of different occasions. Plaintiff alleges in conclusory terms only that: on May 15 and 17, 2013, Perry made a "loud obscene sound" when walking by Plaintiff's cell; on May 16 and 28, 2013, Perry "intimidate[ed]" Plaintiff; on June 4, 2013, Perry jingled his keys at Plaintiff; on June 5, 2013, at the Center Gate, Perry told another CO to pat frisk Plaintiff; on June 8, 2013, Perry did not place Plaintiff on the evening chow list; on June 16, 2013, while Plaintiff was on his way to Library, Perry

targeted Plaintiff for a pat frisk and read Plaintiff's legal material without permission; and on June 17, 2013, Perry "harass[ed]" Plaintiff.  (Amended Complaint, ¶ ¶ 219-228.)

While verbal threats, even if not serious enough to rise to the level of an Eighth Amendment claim, may constitute an adverse action, *Mateo v. Fischer*, 682 F.Supp.2d 423, 434 (S.D.N.Y. 2010) (citation omitted), none of the acts alleged by Plaintiff herein constitute an adverse action or actions sufficient to state an actionable claim of retaliation.  "The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights."  *Id.* (citing *Lunney*, 2007 WL 1544629, at *23 (statements like "if you don't stop writing grievances I'm going to break your fuckin' neck" were direct and specific enough to be adverse actions).  "The opacity of [plaintiff's] threats to [defendant—that [defendant] should "wait till he put his hands on me . . . ," and that "one day he and I will party . . . ,"—softens the deterrent effect considerably."  *Id.* (citing *Kemp v. LeClaire,* No. 03–0844, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007) (threats like "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" not adverse actions); *Bartley v. Collins,* 95–10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action"); *Alicea v. Howell,* 387 F.Supp.2d 227, 237 (W.D.N.Y. 2005) (Larimer, D.J.) ("alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance" not adverse action)); *see also Barnes v. Alves*, 58 F.Supp.3d 296, 316-7 (W.D.N.Y. 2014) (Wolford, D.J.) (threat that defendant would "get" plaintiff not sufficient enough to constitute an adverse action) (citations omitted)).

The allegations against Perry—*i.e.*, "intimidation," and yelling or making gestures in Plaintiff's direction and jiggling his keys—are simply insufficient to assert an actionable retaliation claim and must be dismissed with prejudice.

### Count Seventeen (¶ ¶ 231-236)

Plaintiff alleges that Defendant Abrunzo, Inmate Grievance Program Supervisor, refused to process Plaintiff's grievance against Perry and Chaflin and refused to give Plaintiff's grievance a separate calendar number as a strategy to cover up Perry and Chaflin's conduct. As noted above, a failure to properly address or process a grievance does not state an actionable constitutional claim under Section 1983, *see* Discussion, Count Eleven at 19-20, and this claim must be dismissed with prejudice.

### Count Eighteen (¶ ¶ 237-244)

On July 13, 2013, Defendant Collmer, whom Plaintiff claims, like he does with most Defendants, was "subsumed" by the Brotherhood, conducted an investigation interview for Grievance No. EL-41105-13, related to a sexually assaultive pat frisk, and asked Plaintiff if he would be writing more grievances. Plaintiff responded "'if I get sexually assaulted.'" (Amended Complaint, ¶ 240.) Collmer responded "'Don't come out of your cell then.'" (*Id.*, ¶ 241.) Following the interview, Collmer placed Plaintiff on keeplock status for three days. Plaintiff claims this was in retaliation for his filing grievances.

Any claim related to a faulty grievance investigation fails to state a claim upon which relief can be granted. See Discussion, Count Eleven at 19-20. The claim of retaliation too must be dismissed because it is wholly conclusory and speculative. *See Flaherty*, 713 F.2d at 13. Even assuming that being placed on keeplock for three days

constituted adverse action, *see Auleta v. LaFrance*, 233 F.Supp.2d 396, 402 (N.D.N.Y.2002) ("Plaintiff's claim that he was placed in keeplock for 7 1/2 days is properly construed as alleging an adverse action"); *Lashley v. Wakefield*, 367 F.Supp.2d 461, 467 (W.D.N.Y.2005) (Larimer, D.J.) (noting holdings in other cases that nine days' keeplock confinement does not necessarily as a matter of law constitute de minimis alleged retaliation), Plaintiff provides no allegations that there was any causal connection between the interview and his being placed on keeplock for three days. *See Ciaprazi v. Goord*, No. 9:02 CV 00915, 2005 WL 3531464, at \*6 (N.D.N.Y., Dec. 22, 2005) (To establish a causal connection between the protected activity and adverse action, an inmate must show "that the protected conduct was a 'substantial or motivating factor' in the prison official's decision to take action against the plaintiff.'") (citations omitted)). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone. . . . [i]n such a case, the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants." *Flaherty*, 713 F.2d at 13.

Accordingly, the claims alleged against Collmer in this Count must be dismissed with prejudice.

### Count Nineteen (¶ ¶ 245-284)

On July 26, 2013, while on his way to the "Ball Field" during recreation, Plaintiff alleges he was sexually assaulted by Defendant CO Schieber during a pat frisk. Plaintiff had cleared the magnetometer and two COs informed Schieber that Plaintiff was the one who submits grievances. Schieber selected Plaintiff for a needless pat frisk and during the pat frisk Schieber placed his hand between Plaintiff's buttocks and

26

touched his rectum with his fingers. Schieber tried to penetrate Plaintiff's rectum through Plaintiff's clothes. Plaintiff also claims that Collmer failed to supervise the pat frisk in violation of DOCCS Directive No. 4910. It alleged only that Collmer was in the Ball Field at "the same time" of the pat frisk and that the day and time for recreation in the Ball Field "was considered the 'best day' of the year by weather forecaster[s]." (Amended Complaint, ¶ 276.) The only interpretation of this allegation regarding the weather that the Court can presume Plaintiff is attempting to make is that somehow Schieber and Collmer planned the assault for that day because they knew the weather would be good and Plaintiff would go outside for recreation. If this is indeed the interpretation of this allegation or something similar, the allegation is wholly speculative and completed unsupported by any facts.

On his way back to his cell, Plaintiff was asked where he was going and he informed a group of COs that he had just been assaulted. One CO stated "[d]on't come out [of] your cell." (Amended Complaint, ¶ 266-267.) Another CO, Williams, told Plaintiff not to write grievances and another stated "[b]ack in the day writing grievances—you were labeled a rat!" (*Id.*, ¶ 267.) Later that evening Schieber took the evening chow list. Plaintiff had requested both a meal and Law Library call-out, but he did not receive a feed-up tray and was not let out of his cell. CO Bunnell later advised Plaintiff that he was keeplocked and the following day Plaintiff received a Tier II Misbehavior Report signed by Schieber. Defendant Ballard conducted the Tier II Hearing, which Plaintiff claims was unfair and biased. He claims Ballard had a conflict of interest because Ballard had investigated a prior alleged sexual assault.

A PREA interview into Schieber's alleged assault was conducted by Defendant Bynaum. Bynaum did not take notes or a statement from Plaintiff, and Plaintiff did not undergo a physical examination.

Plaintiff's claims against Schieber to the extent they assert a sexual assault and retaliatory false misbehavior report may proceed to service at this time. Plaintiff's failure to protect claim against Collmer, *see* Discussion, Counts One through Three at 6, *supra*, the Tier II due process claim against Ballard, *see* Discussion, Count Four at 7-10, *supra*, and the PREA investigation claim against Bynaum, *see* Discussion, Count Six, at 12-14, *supra*, are dismissed with prejudice because they each fail to state a claim upon which relief can be granted.

Count 20 (¶ ¶ 285-289)

Plaintiff alleges that when he was leaving Bynaum's PREA investigation interview on July 29, 2013, he was sexually harassed by Defendant Brush who watched plaintiff's buttocks and yelled "'[l]ook at that ass! Look at that ass!'" (Amended Complaint, ¶ 288.) As noted above, verbal threats and harassment, in the absence of any physical injury, do not rise to the level of a constitutional violation. *See Burroughs v. Petrone*, 38 F.Supp.3d 182, 204 (N.D.N.Y. 2015) (allegations of verbal threats of sexual assault are not sufficient to state a constitutional violation under 1983) (citing *Jones v. Rock*, No. 9:12–CV–0447 (NAM/TWD), 2013 WL 4804500, at *19, n. 10 (N.D.N.Y. Sept. 6, 2013) (finding allegations that the defendant threatened sexual assault, without allegations of actual abuse, failed to state a cognizable claim under 1983)); Discussion, Section 5, Count Seven at 14-15, *supra*. This claim is therefore dismissed with prejudice.

Count Twenty-One (¶ ¶ 290-294)

On August 7, 2013, Defendant Depalo, Lieutenant ("Lt.")., came to Plaintiff's cell and conducted a two minute investigation. Plaintiff told Depalo that he had been sexually assaulted repeatedly. Depalo stated "'[i]t will exasperate'" and walked away. (Amended Complaint, ¶ 293.) Any claims related to this investigation or interview are dismissed for their failure to state a claim. *See* Discussion, Count Six at 12-14, *supra* (there is no constitutional right to either an investigation into misconduct by public officials or a grievance procedure).

Count Twenty-Two (¶ ¶ 295-303)

On September 9, 2013, during an MHU interview, Defendant Columbo, MHU Clinical Specialist, "denounced" Plaintiff's claims of assault, harassment and retaliation (Amended Complaint, ¶ 296) and told Plaintiff that Plaintiff was the problem and that it was his fault that he was getting sexually assaulted. Plaintiff claims this caused him emotional harm. Whether this claim is construed as harassment or a denial of adequate mental health care claim, it must be dismissed for failure to state a claim upon which relief can be granted. Claims of verbal harassment alone do not rise to the level of cruel and unusual punishment in violation of Eighth Amendment, s*ee* Discussion, Count Seven at 14-15, *supra*, and Plaintiff's allegations, while troublesome, do not set forth a claim of deliberate indifference to a serious mental health need, *see* Discussion, Count Nine at 18.

Count Twenty-Three (¶ ¶ 304-314)

During a visit with an MHU Psychiatrist, Dr. Ahmed, Plaintiff advised the Doctor that he had been sexually assaulted and the Doctor indicated that, per PREA's

29

requirements, he needed to contact a Correctional Sergeant to investigate the allegations. Defendant John Doe, MHU Sergeant, arrived and when Plaintiff told him of the assaults by Perry, Doe yelled at him and told him repeatedly to "get the F--- out of here." (Amended Complaint, ¶ 310.) Again, while troublesome, the allegations do not rise to the level of a deliberate indifference claim under the Eighth Amendment, *see Farmer*, 511 U.S. at 837 (inmate must demonstrate that (1) medical care provider was aware of facts from which the inference can be drawn that inmate had a serious medical need and actually drew the inference, and (2) consciously and intentionally disregarded the serious medical need), nor is there any right of action under PREA for the failure to conduct an investigation. This Count is therefore dismissed with prejudice.

## Count Twenty-Four (¶ ¶ 315-320)

Plaintiff alleges that "going back to April 2013," he told Defendant Donely, Offender Rehabilitation Coordinator ("ORC"), during a quarterly interview, that Perry had sexually assaulted him. Donely told Plaintiff "'[f]ile charges against Perry, I know who he is.'" (Amended Complaint, ¶ 317.) Plaintiff claims that "this means that" Donely was "well aware" that Perry was a sexual predator and failed to protect Plaintiff from Perry's assaults. Plaintiff's assumption based on Donely's statement only that Donely knew that Perry was a sexual predator and was thus in a position to take some action to protect Plaintiff from the assaults, is simply insufficient to state a failure to protect claim under the Eighth Amendment. *See Iqbal*, 556 U.S. at 667-78 (In order to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotations and citation omitted). This claim, however, will be dismissed without prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99,

112 (2d Cir.2000) (A district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotation and citation omitted); *see also* n.7, *infra*.

### County Twenty-Five (¶ ¶ 321-329)

On September 23, 2013, Plaintiff informed Sweet, ORC, in a quarterly interview, that he had been assaulted. She noted that a "credit-card swipe" is not a sexual assault and called Sergeant Heal as required by PREA. Heal advised Plaintiff that he had grabbed other inmates' testicles during pat frisks and that it was part of being in prison. Heal also told Plaintiff that it was better not to report an assault and that he would not let Plaintiff get assaulted when he was on duty. To the extent Plaintiff intended to sue Sweet and Heal, *see* n.1, *supra*, the claims set forth in Count Twenty-Five fail to state a claim upon which relief can be granted and must be dismissed with prejudice. Sweet did nothing more than contact Heal as required by PREA when Plaintiff reported to her he was assaulted and there is no private right of action under PREA, so any claim against Heal related to the investigation must be dismissed. Heal's statements to Plaintiff do not give rise to a constitutional violation actionable under Section 1983.

### County Twenty-Six (¶ ¶ 330-339)

On October 12, 2013, Plaintiff was interviewed by Defendant Mussaw, Lt., at F-Block desk. Mussaw checked Plaintiff's ID and told Plaintiff he could return to his cell. Plaintiff claims that Mussaw prepared a false written report for some litigation that was pending in state court and conducted a biased and unfair investigation. As noted above, Plaintiff does not have a constitutional right to an investigation, *see* Discussion, Count 6 at 13-14, *supra*, nor does he have a right to be free from a false accusation or

report, *see Boddie*, 105 F.3d at 862 (a prisoner has no "general constitutional right" to be free from false accusations); *see also Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982 (1988).    The claims against Mussaw are dismissed with prejudice.

### County Twenty-Seven (¶ ¶ 340-345)

Plaintiff alleges that Defendant Perry taunted and antagonized him by stating ""[h]ey buddy! Hey Buddy!"  Perry also called Plaintiff a "douche bag."  (Amended Complaint, ¶ ¶ 341-342.)  These allegations of verbal harassment--even by Perry--are simply not sufficient to state an actionable Eighth Amendment Cruel and Unusual Punishment claim under § 1983.  *See* Discussion, Count Seven at 14-15, *supra*.

### Count Twenty-Eight (¶ ¶ 366-379)

Plaintiff alleges that in December 2013 through January 2014, he, along with other C-Block "odd/uneven Companies, 1, 3, 5, 7 were being freezed [sic] out as cruel and unusual punishment and retaliation."  He claims he could not protect himself from the " 'polar vortex' brutal cold weather system because the nefarious and incorrigible prison guards refused to close the windows."  (Amended Complaint, ¶ ¶ 348-349.)  When an inmate "remonstrated" to the prison guards to close the windows, he was assaulted by Schieber.

On January 10, 2014, while on his way to the Law Library, Plaintiff was pat frisked and Schieber read aloud his legal papers.

On January 24, 2014, Plaintiff wrote to the Inspector General, Vernon Fonda, regarding the conditions on C-Block and on January 31, 2014, Schieber came to Plaintiff's cell and began blowing kisses to him, calling him "'cinnamon'" and asking "'why he didn't come out tonight? 'I'll see you tomorrow.'" (Amended Complaint, ¶ ¶ 357-358.) On February 3, 2014, Schieber rubbed his baton against Plaintiff's foot for his own "sexual gratification" and without reason to wake Plaintiff up. Schieber then threatened Plaintiff and stated "'[h]ey cinnamon, why didn't you come out today? When you come out [of] your cell I'm going to f--- you up! You little bitch'" (*Id.*, ¶ 360.) Shortly thereafter, Schieber threw a cup of water at Plaintiff and Beschler, who was with Schieber, laughed at Plaintiff.

On February 4, 2014, Plaintiff was interviewed by the Inspector General's Office about the assault on the inmate who had complained about the cold, which Plaintiff claims means that Schieber knew of the Inspector General's investigation and thus retaliated, harassed and intimidated Plaintiff for his complaint to the Inspector General.

Plaintiff's conditions of confinement claim related to the temperature in C-Block's odd companies during the months of December 2013 and January 2014, may proceed to service at this time against Schieber--the only Correctional Officer identified in the Amended Complaint as being aware of the cold temperatures based on the allegation that Schieber assaulted another inmate who had complained about the conditions within C-Block's odd/uneven Companies. *See, e.g.*, *Gaston v. Coughlin*, 249 F.3d 156, 164-65 (2d Cir. 2001) ("We have held that an Eighth Amendment claim may be established by proof that the inmate was subjected to prolonged period of bitter cold.") (citing *Corselli v. Coughlin*, 842 F.3d 23, 27 (2d Cir. 1988) (exposed to bitter cold in cell for

three months); *Wright v. McMann*, 387 F.2d 519, 526 (2d Cir. 1967) (vacating dismissal on the pleadings where inmates alleged they were deliberately exposed to bitter cold and deprived of basic hygiene products while in solitary confinement) (additional citations omitted)). The Court cannot say at this time that Plaintiff has failed to state a claim that is plausible on its face.[6]

Plaintiff's allegation that Schieber read his legal papers aloud fails to state either a retaliation claim or a denial of access to courts claims. Reading Plaintiff's legal papers aloud is not adverse action sufficient to state an actionable retaliation claim, *see Dawes*, 239 F.3d at 493, nor are there any allegations that a non-frivolous legal claim of Plaintiff's was hindered or prejudiced in some manner by having his papers read aloud. *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).

Plaintiff's claim that Schieber threatened him by visiting his cell and stating that if he came out of his cell he was going to "f--- him up," when combined with Schieber's other actions and his repeated harassment is sufficient, unlike the other retaliation claims alleged, to allow this retaliation claim to proceed to service against Schieber. *See* n.6, *supra*.

Count Twenty-Nine (¶ ¶ 366-379)

Plaintiff alleges that on January 24, 2014, he was again assaulted by Perry during a pat frisk and that, during a PREA physical examination, Nurse Practitioner Jill

---

[6] *See, e.g., McEachin v. McGuiniss*, 357 F.3d 197, 200 (2d Cir. 2004) ("We have frequently reiterated that '[s]ua *sponte* dismissals of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court.' ") (quoting *Moorish Sci. Temple of Am. Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)); *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curiam*) ("*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis in law or fact. Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants' answer.") (citations and internal quotations omitted).

In allowing these claims to proceed and directing a response to them, the Court expresses no opinion as to whether plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

34

Northrup called him a "faggot." Plaintiff's sexual assault allegations against Terry may proceed to service but his allegations against Northrup must be dismissed because they fail to set forth an actionable Eighth Amendment violation based either on verbal harassment or deliberate indifference to a serious medical need. *See* Discussion, Count Six at 12-14, and Count 23 at 28-29, *supra.*

26. Count 30 (¶ ¶ 380-440)

On February 10, 2014, Plaintiff alleges that Schieber made sexual advances toward him in "homosexual indiosyncrancies [sic]"—i.e., he blew him a kiss and called him a faggot. He also alleges that Schieber verbally threatened him in retaliation for filing grievances against him. Schieber allegedly told Plaintiff "'come out of your cell to get your ass whipping[,]" "'hey girl, what are you working on? Don't hide in your cell! Come out tomorrow to get your ass whipping! You're always bitching and writing grievances!'" (Amended Complaint, ¶ ¶ 386-389.) These allegations, to the extent they raise a retaliation claim against Schieber, even when looked at critically and skeptically, may proceed to service against Schieber at this time. *See* n.6, *supra*.

On February 14, 2014, Lt. Ballard conducted a grievance investigation interview and told Plaintiff he did not want to "breathe the air that [Plaintiff] was breathing" and asked Plaintiff if he had ever read "the boy who cried wolf." Plaintiff responded "no" and Ballard told Plaintiff that he was not going to take Plaintiff "seriously" and not to waste his time. (*Id.*, ¶ ¶ 391-394.) As noted above, a failure to properly process or investigate a grievance does not state a constitutional claim actionable under 42 U.S.C. § 1983, *see* Discussion, Count Eleven at 19-20, and the claims of verbal harassment are insufficient to state an Eighth Amendment violation actionable under § 1983 against

35

Ballard, *see* Discussion, Count Seven at 14-15. The claims against Ballard set forth in this Court are dismissed with prejudice.

On March 24, 2014, Defendant R. J. Gessner, Inspector General's Office, interviewed Plaintiff in the Lieutenant's Office in relation to the alleged sexual assaults. Plaintiff alleges that Gessner admitted to being unprepared for the interview and that Gessner was "subsumed" by the Brotherhood. There were Lieutenants from Elmira walking through the office and Plaintiff felt threatened and claims there was a lack of confidentiality during the interview. Gessner allegedly asked Plaintiff if he was "gay" and that he did not believe Perry was pulling Plaintiff's "'goat'" or penetrated Plaintiff. (Amended Complaint, ¶ ¶ 403-406.) Plaintiff believed he was being treated "without dignity" and was disrespected by Gessner. These allegations too must be dismissed because Plaintiff has no right to an investigation, *see* Discussion, Count 6 at 13-14, and because the alleged verbal harassment is insufficient to state a claim upon which relief can be granted, *see* Discussion, Count Seven at 14-15.

Plaintiff was interviewed by Dr. Crowner, a psychiatrist with the Office of Mental Health. Plaintiff believed there was a lack of confidentiality because Ms. Brush, an OMH Clinician, was in the room during the video-conference interview and she is married to CO Mr. Brush. During the interview Plaintiff explained his fears and sleeplessness and how he believed he was being targeted for sexual assaults. Dr. Crowner prescribed medication for sleeplessness, anxiety and depression but Plaintiff refused it because he believed it would make him more vulnerable. Plaintiff asked to see a psychologist but Crowner advised him that such a decision was DOCCS's. Plaintiff does not appear to have intended to sue Crowner or Brush but to the extent he

did, he fails to state a claim upon which relief can be granted based on an Eighth Amendment deliberate indifference claim.

Lastly, Plaintiff lists a number of supervisory officials—Captain Diego, Captain Keller, Wenderlich, Deputy Superintendent Security Services, Piccolo, Deputy Superintendent Security Services, Chappius, Jr., Superintendent, and Annucci, Acting Director, DOCCS, and asserts the same allegations against each of them—*viz.*, that each was subsumed by the Brotherhood and "we[re] aware of the facts of [P]laintiff's sexual assaults, sexual abuses . . . from statements, reports and/or investigations" but failed to act to protect Plaintiff from the alleged sexual assaults, sexual harassment and retaliation. (Amended Complaint, ¶ ¶ 427-438.)

Plaintiff's claims against these supervisory officials are too conclusory to allege that each was personally involved in all the constitutional violations alleged or that they were deliberately indifferent to a serious risk of substantial harm to Plaintiff and, therefore, must be dismissed but without prejudice. *See Cuoco*, 222 F.3d at 112.

Plaintiff may not rely on the doctrine of *respondeat superior* to establish liability in a § 1983 action. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-95 (1978). "The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim." *Colon*, 58 F.3d at 874. Instead, a showing of some personal responsibility on the part of an employer is required. In the case of an individual defendant, Plaintiff must show that the defendant was personally involved in a constitutional deprivation, *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997), or that the defendant, employed in a position of control, failed to remedy the alleged wrong after learning of it, or created a policy or custom under which

unconstitutional practices occurred, or was grossly negligent in managing subordinates, *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *see also Colon*, 58 F.3d at 874.

The identical conclusory allegations against each of these supervisory officials—they "we['re] well aware" of the sexual assaults and other acts of their subordinates from reports, grievances, investigations and statements but failed to act to protect Plaintiff or prevent the acts of their subordinates—simply do not state that one or all of these supervisory officials was or were personally involved in the alleged assaults, abuses, retaliation and harassment. Because a claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal, *Sealey*, 116 F.3d at 51, Plaintiff claims against each of these individual supervisory officials are dismissed but without prejudice. See *Grullon v. City of New Haven, et al.*, 720 F.3d 133 (2d Cir. 2013).

## CONCLUSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee, his request to proceed *in forma pauperis* is hereby granted. For the reasons discussed above, (1) the following Counts (claims) asserted in the Amended Complaint are dismissed with prejudice pursuant to 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A: Count Four against Defendant T. Perry, CO; Counts Five and Ten against Defendant J. Taylor, CO; Count Six against Defendants Davis, Sgt., and K. Bunnell, CO; Count Seven against Defendants Davis, Sgt., Brush, CO, and Audinwood, CO; Count Eight against Defendant T. Perry, CO; Count Nine against Defendant Looney, Clinician, MHU; Count Eleven against Defendant J. Powers, Sgt.; Count Twelve against Defendant F. Santiago, Sgt.; Count Thirteen against

Defendants J. Taylor, CO, and Santiago, Sgt.; Count Fourteen against Defendants R.J. Ballard, Lt., and K. Bunnell, CO; Count Fifteen against Defendant R.J. Ballard, Lt.; Count Sixteen against Defendant T. Perry, CO; Count Seventeen against Defendant William J. Abrunzo, Inmate Grievance Program, Supervisor; Count Eighteen against Defendant Collmer, Sgt.; Count Nineteen against Defendants K. Bunnell, CO, Collmer, Sgt., and D. Bynaum, Sgt., Count Twenty against Defendant Brush, CO; Count Twenty-One against Defendant Depalo, Lt.; Count Twenty-Two against Defendant Columbo, Clinical Specialist, MHU; Count Twenty-Three against Defendant John Doe, Sgt.-MHU; Count Twenty-Five against Defendants Heal, Sgt., and Sweet, ORC; Count Twenty-Six Defendant Mussaw, Lt.; Count Twenty-Seven against Defendant T. Perry, CO; Count Twenty-Nine against Defendants Northrup, Nurse Practitioner; Count Thirty against Defendants Robert Gessner, ORC, and R.J. Ballard, Lt.; and the claims against DOCCS in their entirety;[7] (2) the following Counts (claims) are dismissed without prejudice: Count Twenty-Four against Defendant Donely, ORC, only; and Count Thirty against Defendants C. Diego, Captain, G. Keller, Captain, J. Wenderlich, Deputy Superintendent Security, Paul Piccolo, Deputy Superintendent Security, Paul Chappius, Jr. Superintendent, and Anthony J. Annucci, Acting Commissioner; and (3) the United States Marshals Service is directed to serve the Summons and Amended Complaint on: Defendant T. Perry, CO, regarding the claims alleged in Counts One, Fifteen and

---

[7] Plaintiff's claims against DOCCS and the claims against any individual in their official capacity are dismissed. The Eleventh Amendment bars federal court claims against states, absent their consent to such suit or an express statutory waiver of immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984). The Eleventh Amendment bar extends to agencies and officials sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "An official arm of the state," such as DOCCS, "enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999). *See also Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (Eleventh Amendment immunity extends to "state agents and state instrumentalities that are, effectively, arms of a state.") (internal quotation marks and citations omitted).

Twenty-Nine; Defendant Cliff Chaflin, Sgt., regarding the claims alleged in Count Two; Defendant Beschler, CO, regarding the claims alleged in Count Three; Defendant A. Coles, CO, regarding the claims alleged in Counts Thirteen and Fourteen; and Defendant B. Schieber, CO, regarding the claims alleged in Counts Nineteen, Twenty-Eight and Thirty.

## ORDER

IT HEREBY IS ORDERED, that Plaintiff's request to proceed *in forma pauperis* is granted and the Clerk of the Court is directed to amend the caption of this action as set forth above;

FURTHER, that the following Counts are dismissed with prejudice: Count Four against Defendant T. Perry, CO; Counts Five and Ten against Defendant J. Taylor, CO; Count Six against Defendants Davis, Sgt., and K. Bunnell, CO; Count Seven against Defendants Davis, Sgt., Brush, CO, and Audinwood, CO; Count Eight against Defendant T. Perry, CO; Count Nine against Defendant Looney, Clinician, MHU; Count Eleven against Defendant J. Powers, Sgt.; Count Twelve against Defendant F. Santiago, Sgt.; Count Thirteen against Defendants J. Taylor, CO, and Santiago, Sgt.; Count Fourteen against Defendants R.J. Ballard, Lt., and K. Bunnell, CO; Count Fifteen against Defendant R.J. Ballard, Lt.; Count Sixteen against Defendant T. Perry, CO; Count Seventeen against Defendant William J. Abrunzo, Inmate Grievance Program, Supervisor; Count Eighteen against Defendant Collmer, Sgt.; Count Nineteen against Defendants K. Bunnell, CO, Collmer, Sgt., and D. Bynaum, Sgt., Count Twenty against Defendant Brush, CO; Count Twenty-One against Defendant Depalo, Lt.; Count Twenty-Two against Defendant Columbo, Clinical Specialist, MHU; Count Twenty-Three

against Defendant John Doe, Sgt.-MHU; Count Twenty-Five against Defendants Heal, Sgt., and Sweet, ORC; Count Twenty-Six against Defendant Mussaw, Lt.; Count Twenty-Seven against Defendant T. Perry, CO; Count Twenty-Nine against Defendants Northrup, Nurse Practitioner; Count Thirty against Defendants Robert Gessner, ORC, and R.J. Ballard, Lt.; and the claims against DOCCS in their entirety;

FURTHER, that the following Counts (claims) are dismissed without prejudice: Count Twenty-Four against Defendant Donely, ORC, only; and Count Thirty against Defendants C. Diego, Captain, G. Keller, Captain, J. Wenderlich, Deputy Superintendent Security, Paul Piccolo, Deputy Superintendent Security, Paul Chappius, Jr. Superintendent, and Anthony J. Annucci, Acting Commissioner;[8]

FURTHER, that the Clerk of the Court is directed to terminate Defendants Taylor; Davis; Bunnell; Brush; Audinwood; Looney; Powers; Santiago; Ballard; Abrunzo; Collmer; Depalo; Columbo; John Doe, Sgt.-MHU; Heal; Sweet; Mussaw; Northrup; Gessner; Bynaum; Donely; Diego; Keller; Wenderlich; Piccolo; Chappius; Annucci; and DOCCS as parties to this action;

FURTHER, that the Clerk of the Court is directed to file Plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Amended Complaint, and this Order upon Defendant T. Perry, CO, regarding the claims alleged in Counts One, Fifteen and Twenty-Nine; Defendant Cliff Chaflin, Sgt., regarding the claims

---

[8] Should Plaintiff seek to pursue one or more of these Counts (claims) that are dismissed **without prejudice** herein, he must file a motion to amend the Amended Complaint and attach to the motion a proposed second amended complaint. *See* Fed.R.Civ.P. 15(a)(2); Loc.R.Civ.P. 15(a). Any second amended complaint, if the motion to amend is granted, shall supersede and replace the Amended Complaint herein in its entirety, and it therefore must re-allege those Counts (claims) against each of the named defendants which the Court has found above can proceed to service. If Plaintiff chooses to file a motion to amend and a proposed second amended complaint, the proposed second amended complaint shall **not** re-allege any Counts (claims) that the Court has dismissed with prejudice herein. Any proposed second amended complaint filed by Plaintiff must also comply with the pleading requirements of Rule 8 and 10 of the Federal Rules of Civil Procedure, and, if motion to amend granted, will be subject to review by the Court pursuant to 28 U.S.C. § 1915(e).

alleged in Count Two; Defendant Beschler, CO, regarding the claims alleged in Count Three; Defendant A. Coles, CO, regarding the claims alleged in Counts Thirteen and Fourteen; Defendant B. Schieber, CO, regarding the claims alleged in Counts Nineteen, Twenty-Eight and Thirty without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;[9]

FURTHER, the Clerk of the Court is directed to forward a copy of this Order by email to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office <Ted.O'brien@ag.ny.gov>;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the Defendants are directed to respond to the Amended Complaint.

SO ORDERED.

Charles Siragusa

Charles J. Siragusa
United States District Judge

DATED: JAN. 18 , 2017
         Rochester, NY

_____

[9] Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, *see* Fed.R.Civ.P. 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail pursuant to N.Y.C.P.LR. § 312-a.