UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRELL GUNN,

                Plaintiff,        **RULE 56 STATEMENT**

    -vs-                            16-CV-6206

CHAD BESCLER, et al.,

                Defendants.

_____

      Defendants Perry, Claflin, Beschler, and Schieber ("Defendants"), by their attorney, Letitia James, Attorney General of the State of New York, Heather L. McKay, Assistant Attorney General, of counsel, as and for a Rule 56 Statement herein submit that there is no genuine issue to be tried with regard to the following material facts:

1.      All of the events in this lawsuit occurred at Elmira Correctional Facility ("Elmira"), a maximum security facility in Elmira, New York.

2.      It is standard procedure for inmates to be subject to random pat frisks, including when going to recreation. McKay Decl., Exh 1 at 44/21-45/23.

3.      Pat frisks are necessary because inmates are known to hide contraband, including weapons, drugs, and noxious substances on their persons, even in their buttocks and underneath their genitals. Perry Decl ⁋ 12; Claflin Decl ⁋ 5; McKay Decl., Exh 2 at 29/10-21.

4.      Proper pat frisk procedure consists of patting down above the clothing the inmate's entire body, including their arms, legs, torso, neck, buttocks, and genital area, while feeling for anything that could be considered contraband. Claflin Decl. ⁋ 4-5; McKay Decl., Exh 2 at 70/19-21.

5.      Plaintiff believes that the three pat frisks at issue in this lawsuit were "needless"

1

because he did not set off the metal detector when he went through it. McKay Decl, Exh 1 at 61-62; 127-128; 2-37.

6. Plaintiff admits that he was not always selected for random pat frisks, and he believes all the pat frisks he experienced were sexually assaultive. McKay Decl, Exh 1 at 125/13-20; Exh 2 at 66/5-1.

7. On March 29, 2013, Plaintiff was pat frisked by Correction Officer Perry while on the way to evening recreation. McKay Decl, Exh 1 at 58/7-16.

8. Plaintiff claims that C.O. Perry, whom Plaintiff had never met before, is a sexual predator with "sexual indecencies." *Id.* 61/15-18, 83/24-84/5.

9. C.O. Perry told Plaintiff to put his hands on the wall and then began pat frisking him, starting with his arms and then going to his waist. *Id.* 62/21-25.

10. Plaintiff alleges that C.O. Perry grabbed the waistband of his underwear and pulled it into his rectum; Plaintiff said he was in pain and C.O. Perry told him to shut the fuck up. *Id.* 63/21-25.

11. Plaintiff alleges that C.O. Perry next frisked Plaintiff's legs, and pulled his underwear up a second time, put his hands between Plaintiff's buttocks, and penetrated Plaintiff's rectum through his clothes. *Id.* 64/2-66/17.

12. There was no skin-to-skin contact; Plaintiff was wearing boxers and state-issued greens, and C.O. Perry was wearing frisk gloves. *Id.* 65/4-20.

13. The alleged penetration was "quick" and happened "instantaneously," as the officer's hands moved back and forth between Plaintiff's legs. *Id.* 67/2-13.

14. Thereafter, Plaintiff's shoes were checked, and he was told to return to his cell. *Id.* 68/3-16.

15. Plaintiff had also not met Sergeant Claflin and C.O. Beschler before March 29, 2013. *Id.* 86/15-87/2.

16. During the frisk, C.O. Beschler was somewhere behind C.O. Perry, who is a "big guy," and used a handheld metal detector when it was time to check Plaintiff's shoes. *Id.* 58/10-16; 69/10-70/13.

17. Plantiff alleges that Sergeant Claflin, who was supervising the frisks of multiple inmates, "promoted" the sexual assault by coming closer during the frisk "to block the view of other people from seeing" it. *Id.* 76/11-77/11.

18. After the frisk, Plaintiff asked C.O. Perry for his name and the officer gave it to him. *Id.* 79/11-22.

19. As Plaintiff walked back to his cell, he alleges that C.O. Beschler kicked him in the shin, "practically tripping" him. *Id.* 78/2-19, 82/16-18.

20. Several hours later, C.O. Perry passed Plaintiff's cell and Plaintiff accused him of sexual assault, to which C.O. Perry responded, "If I sexually assaulted you, it would have been worse than that." *Id.* 83/4-8.

21. Plaintiff wrote up a sick call slip to report the sexual assault. *Id.* 111/4-6. His medical exam took place on March 31, 2013. McKay Decl, Exh 10 at p. 4.

22. Plaintiff had no visible injuries, and he did not even mention any pain in his shin. McKay Decl, Exh 1 at 92/10-15, 116/18-20.

23. No hemorrhoid or other injuries were observed on March 31, 2013. McKay Decl., Exh 9.

24. On April 4, 2013, Plaintiff had a small hemorrhoid. McKay Decl., Exh 10 at p. 5.

25. No medical staff has ever told Plaintiff that his hemorrhoid was caused by the pat frisk.

McKay Decl, Exh 1 at 96/4-10.

26. Plaintiff has no medical proof that penetration through multiple layers of clothes would cause a hemorrhoid. *Id.* 96/15-17.

27. Every time Plaintiff has had a hemorrhoid, it has gone away with hemorrhoid cream. *Id.* 95/11-22.

28. Plaintiff initially testified that he had no mental health issues prior to the March 29, 2013 incident, but he then admitted to being diagnosed with depression in 2002. *Id.* 97/3-10, McKay Decl, Exh 2 at 93/3-14.

29. According to a mental health provider with whom Plaintiff had good rapport, Plaintiff would make claims about having been sexually assaulted, but his "blanket statements" did not typically follow "generally accepted definitions of these things." *Id.* 124/6-21; McKay Decl, Exh 18 at p. 3-4.

30. On June 11, 2013, C.O. Perry pat frisked Plaintiff prior to evening recreation. McKay Decl, Exh 1 at 123/6-8.

31. C.O. Perry started with Plaintiff's arms, then checked his waist, pulled up his underwear, and went down his legs. *Id.* 126/2-18.

32. Plaintiff alleges that C.O. Perry then put both hands between Plaintiff's buttocks and moved them back and forth in an attempt to penetrate his rectum. *Id.* 126/19-127/9.

33. There was no penetration on June 11, 2013. *Id.* 127/8-11.

34. Nothing was said during the pat frisk on June 11, 2013. *Id.* 129/3-7.

35. Plaintiff does not claim any physical injuries from the pat frisk on June 11, 2013. *Id.* 131/2-6.

36. On July 26, 2013, Plaintiff was pat frisked while on his way to the field house for

recreation. McKay Decl, Exh 2 at 21/15-20.

37. The frisk was conducted by C.O. Schieber, whom Plaintiff had never met before that day. *Id.* 20/11-13.

38. C.O. Schieber started by checking Plaintiff's arms, and he patted down Plaintiff's torso and legs, as well. *Id.* 26/18-25, 28/16-20.

39. According to Plaintiff, when C.O. Schieber got to his waist area, he began trying to penetrate Plaintiff's rectum through his clothing. *Id.* 26/25-27/2.

40. Although there was no skin-to-skin contact, Plaintiff claims that there was "brief" penetration for "two seconds." *Id.* 27/3-11.

41. Nothing was said during the pat frisk on July 26, 2013; after it was done, Plaintiff claims that he asked the officer for his name and the officer told him. *Id.* 30/2-10.

42. According to a misbehavior report authored by C.O. Schieber, Plaintiff stared at him following the frisk, and when C.O. Schieber told Plaintiff to go to rec, Plaintiff began verbally threatening him saying, "I will have your job," and "just wait till you see me again." McKay Decl, Exh 14.

43. Plaintiff alleges that C.O. Schieber "filed [the] misbehavior report against [Plaintiff] because [Plaintiff] was going to file a sexual assault claim against him." *Id.* 42/12-43/2.

44. Plaintiff has no proof of that C.O. Schieber was worried he would file a sexual assault claim. *Id.* 43/3-5.

45. Plaintiff was ordered to return to his cell after the July 26, 2013 pat frisk. *Id.* 39/22-40/2.

46. Plaintiff's grievances relating to the July 26, 2013 events are Grievance Nos. EL-42163-14 and GH-80561-15. Docket No. 34 at p. 95; McKay Decl., Exh 2 at 43/12-44/11;

McKay Decl., Exh 11 & 12.

47. According to Plaintiff, in January 2014, one or more windows in Plaintiff's gallery were opened at some point in the night and remained open until dinner the next day at the latest. *Id.* 51/23-52/22.

48. Plaintiff was asleep when the window was opened and does not know which officer opened it, but he believes it was based on a request by another inmate. *Id.* 52/2-11.

49. When Plaintiff awoke in the morning, he became aware of what had transpired. *Id.* 55/10-21.

50. There were six officers working in the area while the window was open, and none of them was C.O. Schieber. *Id.* 61/9-12, 64/7-9.

51. Plaintiff did not see C.O. Schieber until he came to take the inmates to recreation at approximately 7:00 p.m., by which time the window had been closed. *Id.* 64/7-25.

52. On the way to rec, C.O. Schieber pat frisked inmate Greene, who was sent back to his cell for wearing improper clothing. *Id.* 68/4-17, 71/4-15.

53. Because inmate Greene was gone from the block by the time Plaintiff returned, Plaintiff assumed that C.O. Schieber had beaten him up. *Id.* 72/2-23, 73/13-74/8.

54. Based on his assumption, Plaintiff reported C.O. Schieber to the New York State Office of Special Investigations ("OSI") for the alleged beating and open windows. *Id.*

55. There is no evidence that C.O. Schieber knew about Plaintiff's report to OSI; Plaintiff did not tell anyone about it, and C.O. Schieber has never been interviewed by an OSI investigator. *Id.* 85/5-11; Schieber Decl. at 22.

56. Regarding the result of the investigation, meanwhile, Plaintiff testified, "They found out there was no merit." *Id.* 80/5-8. Plaintiff admitted that it was "unsubstantiated." *Id.*

57. Plaintiff's grievance pertaining to the alleged "sexual advances" by C.O. Schieber is Grievance No. EL-42205-14, which complains of the alleged February 10, 2014 comments. McKay Decl., Exh 15 at p. 5; McKay Decl., Exh 2 at 90/15 to 91/4.

58. When that grievance was investigated on February 14, 2014, Plaintiff reportedly did not have anything further to add. McKay Decl., Exh 15 at p. 11.

Dated: February 18, 2021

LETITIA JAMES
Attorney General for the State of New York
*Attorney for Defendants*

 s/Heather L. McKay
HEATHER L. MCKAY
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone: (585) 546-7430
 heather.mckay@ag.ny.gov

# CERTIFICATE OF SERVICE

I certify that on February 18, 2021, I electronically filed the foregoing Rule 56 Statement with the Clerk of the District Court using CM/ECF system, which sent notification of such filing to the following:

1. n/a

And, I hereby certify that I have mailed, by the United States Postal Service, the document to the following non-CM/ECF participant(s):

1. **Darrell Gunn**
   03-B-2443
   SING SING CORRECTIONAL FACILITY
   354 Hunter Street
   Ossining, NY 10562-5498

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants

_s/ Heather L. McKay_
HEATHER L. MCKAY
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone: (585) 546-7430
heather.mckay@ag.ny.gov