UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRELL GUNN,

                Plaintiff,         **DECLARATION OF**
                                          **BRANDON SCHIEBER**

        -vs-                          **16-CV-6206**

CHAD BESCLER, et al.,

                Defendants.

_____

    **BRANDON SCHIEBER**, pursuant to 28 U.S.C. §1746, declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

    1.    I have been employed as a correction officer by the New York State Department of Corrections and Community Supervision (DOCCS) for the past ten years, and am currently assigned to Lakeview Shock Incarceration Correctional Facility. Before that, I was assigned to Elmira Correctional Facility ("Elmira") for approximately one year.

    2.    I respectfully submit this declaration in support of Defendants' Motion for Summary Judgment, and I make the statements herein based on my personal knowledge or based upon documents that have been created by, provided to, and/or reviewed by me.

    3.    As of June 26, 2013, my job duties included escorting inmates to recreation, conducting random searches of inmates for weapons and other contraband, and occasionally working in the gym gas booth where chemical agents are stored and will be deployed if necessary during recreation.

    4.    On that day, I pat frisked the plaintiff, inmate Darrell Gunn, DIN 03B2443, and other inmates prior to entering the field house for recreation.

1

5. I frisked plaintiff as part of a random search of inmates traveling in that part of the prison at that time of the day.

6. I did not choose who would get pat frisked; the area supervisor selects the inmates and I was just required to perform the frisk.

7. Frisking is necessary to the safety of a maximum correctional facility. Inmates are known to carry contraband including weapons, drugs, noxious substances, etc. Regular frisking of inmates is necessary for institutional security by finding contraband and deterring others from carrying contraband which improves safety for both staff and inmates.

8. Over 400 inmates gather in the field house during recreation, which increases the likelihood of violence or other incidents. Inmates are pat frisked before going to the field house for their own safety.

9. Even if plaintiff passed through the metal detector without setting it off, I still needed to pat frisk him because not all contraband will set off the alarm. Inmates are known to carry drugs and weapons made from nonmetal materials, such as sharpened plastic pens or toothbrushes.

10. My frisk of plaintiff on June 26, 2013 was done in a professional and thorough manner. It was conducted in the same manner as my frisks of other inmates. When I pat frisk an inmate, I pat down above the clothing the inmate's entire body, including their arms, legs, torso, neck, buttocks, and genital area. I am feeling for anything that may be contraband.

11. Although I do not like frisking an inmate's buttocks and genitals, frisking these areas of an inmate is necessary to do a thorough frisk. Inmates may hide weapons, drugs, and other contraband inside their buttocks and genital areas.

12. I did have to come in contact with plaintiff's buttocks and genitals through his clothing, but I did not do this for sexual gratification.

13. I had absolutely no intention of penetrating plaintiff's rectum, and I am unaware of that having happened during the frisk, nor did I observe plaintiff defecate after the frisk.

14. I did not sexually or physically assault Plaintiff at any time, including on June 26, 2013.

15. Plaintiff cleared the frisk without incident, but afterwards he began to stare at me in an aggressive manner. Plaintiff was ordered to proceed to the ball park but he began making verbal threats, including, "I will have your job," and "just wait till you see me again." Plaintiff was ordered to return to his cell due to his disruptive behavior, which he then did without further incident.

16. That same day, I wrote plaintiff a misbehavior report for making threats and failing to follow orders as described in paragraph 13 above, a true and accurate copy of which is attached hereto as **Exhibit A**.

17. I did not write the misbehavior report to retaliate against plaintiff for planning to file a grievance against me; I did not even know that Plaintiff planned to do so. I do not recall plaintiff asking for my name, but even if he had, I would not have known that he was going to grieve me claiming sexual assault.

18. It is my understanding that plaintiff claims that one or more windows were left open near his cell sometime in January 2014, and that I escorted him to recreation later that day. I also understand that plaintiff claims I beat up inmate Greene when plaintiff was at recreation. Plaintiff is incorrect: I was unaware of and had nothing to do with opening windows in Plaintiff's gallery; my job duties were to take inmates from all over the facility, including the various blocks, to their evening recreation; and I did not beat up inmate Greene.

19. It is my further understanding that plaintiff claims, on February 3, 2014, I retaliated against him for reporting those allegations to the Office of Special Investigations

("OSI") by saying to plaintiff, "[h]ey cinnamon, why didn't you come out today? When you come out [of] your cell I'm going to f--- you up! You little bitch."  I did not make that statement to plaintiff, and I did not even know that plaintiff had made a report to OSI.

20. On February 3, 2014, I was assigned to work in the gym gas booth, meaning that after line up at the beginning of my shift, I was required to lock into the gas booth located above the gym.  On that day, therefore, I did not escort any inmates to the gym and had no contact with plaintiff.

21. I further understand that plaintiff claims I retaliated against him by making sexual advances and threats on February 10, 11, and 12, 2014.  I did not make any sexual or threatening statements to plaintiff on those days, and again, I did not even know that plaintiff had made a report to the OSI.

22. No OSI investigator has ever spoken to me about an investigation involving open windows or inmate Greene.  It is my understanding that OSI investigations are generally kept confidential unless they require recorded testimony from an officer, which would be accompanied by the officer and the officer's union representative.  I have never given such testimony to OSI.

23. I did not make sexual statements or threats to plaintiff at any time.

24. I respectfully request that the claims against me in this lawsuit be dismissed.

[Signature Page Follows]

Dated: February 16, 2021              s/ Brandon Schieber
       Brocton, New York              BRANDON SCHIEBER

# CERTIFICATE OF SERVICE

I certify that on February 18, 2021, I electronically filed the foregoing Declaration of Schieber with the Clerk of the District Court using CM/ECF system, which sent notification of such filing to the following:

1. n/a

And, I hereby certify that I have mailed, by the United States Postal Service, the document to the following non-CM/ECF participant(s):

1. **Darrell Gunn**
   03-B-2443
   SING SING CORRECTIONAL FACILITY
   354 Hunter Street
   Ossining, NY 10562-5498

   LETITIA JAMES
   Attorney General of the State of New York
   Attorney for Defendants


   ___s/ Heather L. McKay_____
   HEATHER L. MCKAY
   Assistant Attorney General of Counsel
   NYS Office of the Attorney General
   144 Exchange Boulevard, Suite 200
   Rochester, New York 14614
   Telephone: (585) 546-7430
   heather.mckay@ag.ny.gov

# EXHIBIT A

Side 1                        Elmira                    **Correctional Facility**

# INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| GUNN DARRELL | 03B2443 | G-5-20 |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| FIELD HOUSE ENTRANCE | 7-26-13 | APROX 1545 |

**3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES**

102.10 THREATS TOWARDS STAFF

106.10 FAILURE TO FOLLOW ORDER

**4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE**

ON THE ABOVE DATE AND APROX TIME INMATE GUNN, DARRELL 03B2443 (G-5-20) WAS SELECTED FOR A RANDOM PAT FRISK ENTERING THE BALL PARK. INMATE CLEARED THE FRISK WITHOUT INCIDENT. AFTER THE PAT FRISK INMATE BEGAN TO STARE AT THIS OFFICER IN AN AGRESSIVE MANNER. INMATE WAS ORDERED TO PROCEED TO THE BALL PARK. INMATE BEGAN MAKING VERBAL THREATS TOWARDS THIS OFFICER. INMATE STATED "I WILL HAVE YOUR JOB" INMATE ALSO THEN STATED "JUST WAIT TILL YOU SEE ME AGAIN". INMATE WAS ORDERED TO RETURN TO HIS CELL DUE TO HIS DISRUPTIVE BEHAVIOR. INMATE COMPLIED WITHOUT FURTHER INCIDENT.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 7-26-13 | B SCHIEBER | [signature] | CO |

5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)    SIGNATURES:
   ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)    FIRMAS: 1. _____
2. _____    3. _____

**NOTE: Fold back Page 2 on dotted line before completing below.**

6. WERE OTHER INMATES INVOLVED?    YES ☐    NO ☒    IF YES, GIVE NAME & # _____
   ¿HUBO OTROS RECLUSOS ENVUELTOS?    SÍ ☐    NO ☐    DE SER SÍ DÉ LOS NOMBRES Y DIN _____

7. AT THE TIME OF THIS INCIDENT, WAS INMATE UNDER PRIOR CONFINEMENT/RESTRICTION?    YES ☐    NO ☒
   ¿ESTUVO EL RECLUSO CONFINADO/RESTRINGIDO PREVIO AL INCENDENTE?    SÍ ☐    NO ☐
                                                                OR ♦ O
   AS A RESULT OF THIS INCIDENT, WAS INMATE CONFINED/RESTRICTED?    YES ☐    NO ☐
   ¿SE CONFINÓ/RESTRINGÓ AL RECLUSO COMO RESUTADO DE ESTE INCIDENTE?    SÍ ☐    NO ☐

8. WAS INMATE MOVED AT ANOTHER HOUSING UNIT?    YES ☐    NO ☒
   ¿MUDARON AL RECLUSO A OTRA UNIDAD DE VIVIENDA?    SÍ ☐    NO ☐
   IF YES, (a) CURRENT HOUSING UNIT _____    (b) AUTHORIZED BY _____
   DER SER SÍ, (a) UNIDAD DE VIVIENDA ACTUAL _____    (b) AUTORIZADO POR _____

9. WAS PHYSICAL FORCE USED?    YES ☐    NO ☒    (IF YES, FILE FORM 2104) _____
   ¿SE USÓ FUERZA FISICA?    SÍ ☐    NO ☐    (DER SER SÍ, SOMETA EL FORMULARIO No. 2104) _____

                             AREA SUPERVISOR ENDORSEMENT [signature]
                             ENDOSO DEL SUPERVISOR DEL ÁREA

Distribution: WHITE - Disciplinary Office    CANARY - Inmate (After review) ♦ Distribución: BLANCA - Oficina Disciplinaria    AMARILLA - Recluso (después de la resión)