UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRELL GUNN,

                 Plaintiff,                 **ATTORNEY'S DECLARATION**

       -vs-                           **16-CV-6206**

CHAD BESCLER, et al.,

                 Defendants.

_____

      HEATHER L. MCKAY, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury under the laws of the United States of America that the following is true and correct:

      1.      I am an Assistant Attorney General, of counsel to Letitia James, Attorney General of the State of New York and, in that capacity, represent the defendants, Perry, Claflin, Beschler, and Schieber (collectively, "Defendants"), in the above-captioned proceeding.

      2.      I make this declaration in support of Defendants' motion for summary judgment.

      3.      Attached hereto and made a part hereof as **Exhibit 1** is a copy of the transcript from the partial deposition of the plaintiff Darrell Gunn on May 26, 2020.  All references to this transcript will appear in the motion papers as follows: "Exh 1 at [page number]/[line numbers]."

      4.      Attached hereto and made a part hereof as **Exhibit 2** is a copy of the transcript from the remaining deposition of the plaintiff Darrell Gunn on July 22, 2020.  All references to this transcript will appear in the motion papers as follows: "Exh 2 at [page number]/[line numbers]."

      1.      I obtained the file regarding Plaintiff's trial in the Court of Claims from the archives kept and maintained by the New York State Office of the Attorney General. Defendants

respectfully submit the following documents, which were contained in that file and publicly filed with the Clerk of that Court, as exhibits in support of their motion for summary judgment:

**Exhibit 3.** Decision dismissing Plaintiff's claims, dated December 22, 2016;

**Exhibit 4.** Decision and Order granting in part Plaintiff's motion to late file, dated July 7, 2014;

**Exhibit 5.** Plaintiff's Claim No. 124108;

**Exhibit 6.** Plaintiff's Claim No. 124009;

**Exhibit 7.** Plaintiff's Claim No. 124149; and

**Exhibit 8.** Plaintiff's Claim No. 125097.

5. Attached hereto and made a part hereof as **Exhibit 9** is Plaintiff's Inmate Injury Report dated March 31, 2013, which was identified as Exhibit 5 at Plaintiff's deposition.

6. Attached hereto and made a part hereof as **Exhibit 10** is a portion of Plaintiff's medical records, which was identified as Exhibit 10 at Plaintiff's deposition.

7. Attached hereto and made a part hereof as **Exhibit 11** is a copy of Grievance No. EL-42163-14, which was identified as Exhibit 15 at Plaintiff's deposition

8. Attached hereto and made a part hereof as **Exhibit 12** is a copy of Grievance No. GH-80561-15, which was identified as Exhibit 12 at Plaintiff's deposition

9. Attached hereto and made a part hereof as **Exhibit 13** is Plaintiff's chronological history and disciplinary history print out, which was identified as Exhibit 19 at Plaintiff's deposition.

10. Attached hereto and made a part hereof as **Exhibit 14** is the prison disciplinary hearing packet, which was identified as Exhibit 11 at Plaintiff's deposition.

11. Attached hereto and made a part hereof as **Exhibit 15** is a copy of Grievance No. EL-42205-14, which was identified as Exhibit 16 at Plaintiff's deposition.

12.     Attached hereto and made a part hereof as **Exhibit 16** is Plaintiff's statement to OSI Investigator Lovelace on February 4, 2014, which was identified as Exhibit 24 at Plaintiff's deposition.

13.     Attached hereto and made a part hereof as **Exhibit 17** is Plaintiff's certified list of closed and active grievances appealed to CORC, which was identified as Exhibit 18 at Plaintiff's deposition.

14.     Attached hereto and made a part hereof as **Exhibit 18** is a portion of Plaintiff's mental health records, which was identified as Exhibit 21 at Plaintiff's deposition.

15.     Defendants also present to the Court the following declarations in support of their motion:

     i.     **Declaration of Timothy Perry**, dated February 16, 2021;

     ii.     **Declaration of Jeffrey Claflin**, dated February 16, 2021:

     iii.     **Declaration of Chad Beschler**, dated February 17, 2021; and

     iv.     **Declaration of Brandon Schieber**, dated February 16, 2021, with the following exhibit:

          **Exhibit A**.     Misbehavior report dated July 26, 2013.

16.     As explained in the accompanying Memorandum of Law, Plaintiff's claims should be dismissed in their entirety.

Dated:   February 18, 2021

<div style="margin-left: 40%;">

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants*


  __s/ Heather L. McKay_____
HEATHER L. MCKAY
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone:  (585) 546-7430
heather.mckay@ag.ny.gov

</div>

# CERTIFICATE OF SERVICE

I certify that on February 18, 2021, I electronically filed the foregoing Declaration of McKay with the Clerk of the District Court using CM/ECF system, which sent notification of such filing to the following:

1.     n/a

And, I hereby certify that I have mailed, by the United States Postal Service, the document to the following non-CM/ECF participant(s):

1.     **Darrell Gunn**
   03-B-2443
   SING SING CORRECTIONAL FACILITY
   354 Hunter Street
   Ossining, NY 10562-5498

<div style="margin-left:40%">

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants*

 s/ Heather L. McKay
HEATHER L. MCKAY
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone: (585) 546-7430
heather.mckay@ag.ny.gov

</div>

# EXHIBIT 1

Gunn v Beschler - 5-26-20 - Darrell Gunn

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK


DARRELL GUNN,

Plaintiff,

v                                        Index #16-CV-6206

CHAD BESCHLER, ET AL,

Defendants.

_____X

DEPOSITION OF:    DARRELL GUNN

DATE:             5-26-2020

TIME:             9:57 A.M. TO 1:12 P.M.

LOCATION:          Sing Sing Correctional Facility
                   354 Hunter Street
                   Ossining, New York

```
 1          Gunn v Beschler - 5-26-20 - Darrell Gunn

 2   APPEARANCES:

 3   FOR THE PLAINTIFF:

 4        DARRELL GUNN, ESQ. PRO SE

 5

 6   FOR THE DEFENDANT:

 7        OFFICE OF NY STATE ATTORNEY GENERAL

 8        BY:  HEATHER MCKAY, A.A.G.

 9        144 Exchange Blvd., Suite 200

10        Rochester, New York 14614

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2            I N D E X   O F   P R O C E E D I N G S

3     DARRELL GUNN

4     Direct Examination by Ms. McKay          7

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        Gunn v Beschler - 5-26-20 - Darrell Gunn

2                E X H I B I T   I N D E X

3    Marked as

4    Description

5    Exhibit One                                35

6    Original complaint/claim

7    Exhibit Two                                37

8    First amended complaint

9    Exhibit Three                              39

10   Second amended complaint

11   Exhibit Four                               40

12   Third amended complaint (most recent)

13   Exhibit Five                               117

14   Inmate injury report

15   Exhibit Six                                118

16   Inmate grievance filed 4/11/13 about Sgt. Claflin & Perry

17   Exhibit Seven                              118

18   Inmate grievance complaint 4/16/13 against CO Perry

19   Exhibit Eight                              121

20   Inmate grievance complaint 4/18/13 CO Beschler

21   Exhibit Nine                               137

22   Inmate grievance complaint 6/23/13

23   Exhibit Ten                                139

24   Letter written to State Police 6/14/13 by D. Gunn

25

```
1            Gunn v Beschler - 5-26-20 - Darrell Gunn

2                 R E Q U E S T S

3

4   Any other records that you have involving the incidents at

5   issue in this lawsuit - Page 14

6

7   State Court case - docket number - Page 103

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2                         STIPULATIONS

3           IT IS HEREBY STIPULATED AND AGREED by and between

4     the attorneys for the respective parties hereto as follows:

5           THAT the filing of the transcript of the

6     testimony in the County Clerk's office be waived;

7           THAT all objections to questions except as to the

8     form thereof be reserved until the time of trial; and

9           THAT the transcript of testimony may be signed

10    before any Notary Public or other officer authorized to

11    administer oaths.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1          Gunn v Beschler - 5-26-20 - Darrell Gunn
2                     (On the record; 9:57 a.m.)
3               THE REPORTER:  Okay.  We are now on the
4      record, it is nine fifty-seven a.m.  Would you please
5      raise your right hand?
6               Do you swear or affirm the testimony
7      you're about to give in this cause today is the truth,
8      the whole truth and nothing but the truth?
9               MR. GUNN:  Yes.
10              WITNESS; DARRELL GUNN; Sworn
11              THE REPORTER:  Can you please state your
12     full name for the record?
13              THE WITNESS:  Darrell Gunn.
14              THE REPORTER:  Thank you.  The witness
15     has been sworn.
16              DIRECT EXAMINATION
17              BY MS. MCKAY:
18              Q.   Good morning, Mr. Gunn.
19              A.   Good morning.
20              Q.   Have you ever done a deposition
21     before?
22              A.   No.
23              Q.   Okay.  So it's pretty simple.  I ask
24     you questions and you provide the answers.  You were
25     just sworn in.  Do you understand what that means?
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    Yes.

3                    Q.    Okay.  So you've sworn to tell the

4     truth.  And it's basically the same as if you give any

5     kind of trial testimony.  It's sworn testimony.  Do you

6     understand that?

7                    A.    Right.

8                    Q.    Now, if you don't understand any of

9     my questions, ask me to explain, okay?

10                   A.    Okay.

11                   Q.    If you answer the question, then

12    I'll assume that you understood it.  Do you -- does that

13    make sense?

14                   A.    Yes.

15                   Q.    Okay.  And if you need a break, you

16    can take one, that's fine.  But there's no breaks

17    allowed while a question is pending.  So if I asked you

18    a question, I'll need you to answer that question and

19    then we can take a break.  Does that under -- make

20    sense?

21                   A.    Yes.

22                   Q.    Okay.  And now we're going to be

23    talking about many incidents that you're suing about.

24    So we have a bit of a long day ahead.  I also just

25    wanted to let you know, you know, depending on how it's

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     going, if it's -- if it seems like it would be better to

3     split our time into two or something, we can talk about

4     doing that, especially with the COVID concerns right

5     now.  I know you're wearing a mask, it can be pretty

6     fatiguing.  So do you know if you'd like to split this

7     at this time?  Do you want to see how we're doing?  How

8     do you feel about that?

9                    A.    Yes, we can split it.

10                   Q.    Okay.  So I could -- what we'd have

11    to do is, do you want to agree to just adjourn the dates

12    right now?  First, let's say sixty days, all the dates

13    and then I can have us do this again on another date.

14    So we just split it.  Does that sound like a good plan?

15                   A.    Yes.

16                   Q.    Okay.  Okay.  So what I'll do is

17    I'll -- now that we have your -- your agreement on the

18    record, I will write to the Court and let the Court know

19    that we've agreed to adjourn the dates by sixty days,

20    and then I will notify you when we can do this again,

21    okay?

22                   A.    Okay.

23                   Q.    All right.  Okay.  Now, you've

24    already been doing it, but I just want to make sure that

25    you remember to speak clearly and speak slowly and speak

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     loudly.  This is even more so the case while you're

3     wearing a mask.  We -- the stenographer who is with you

4     will be taking down everything that you say and that

5     will be made into a transcript.  So we need to make sure

6     that we're speaking clearly, okay?

7                    A.    Yes.

8                    Q.    And the other thing too is that we

9     need to make an effort to not speak over one another or

10    interrupt each other.  Sometimes when I'm finishing a

11    question, you'll know what the question, or you'll think

12    you'll know what the question is going to be and you'll

13    try to answer it early.  I need you to wait and make

14    sure that you give only verbal responses, okay?

15                   A.    Okay.

16                   Q.    Okay.  What is your full name?

17                   A.    Darrell Gunn.

18                   Q.    Okay.  Have you ever gone by any

19    other names?

20                   A.    No.

21                   Q.    Have you ever given a different name

22    to police or other officials?

23                   A.    No.

24                   Q.    What's your date of Birth

25                   A.    5/11/70.

1               Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    And what's your max -- what's your

3      maximum amount of education that you've received?

4                    A.    One year of college.

5                    Q.    And where did you attend college?

6                    A.    Onondaga Community College.

7                    Q.    And you can read and speak English?

8                    A.    Yes.

9                    Q.    And where were you born?

10                   A.    Syracuse.

11                   Q.    And did you grow up there?

12                   A.    Yes.

13                   Q.    Did you graduate from high school?

14                   A.    No.

15                   Q.    Did you get a G.E.D.?

16                   A.    Yes.

17                   Q.    What is your level of work

18     experience?

19                   A.    I don't understand.

20                   Q.    Have you had jobs outside of prison?

21                   A.    Yes.

22                   Q.    Okay.  What -- just give a brief

23     summary of what those consisted of.

24                   A.    Restaurants.

25                   Q.    Okay.  Any -- any other jobs that

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2      you've had besides working at restaurants?

3                    A.   Bench welding.

4                    Q.   All right.  And was that all prior

5      to your current incarceration?

6                    A.   Yes, and auto -- auto tire

7      technician and oil.

8                    Q.   Okay.  How about -- how about while

9      in prison, have you had jobs in prison?

10                   A.   I'm currently working in the mess

11     hall.

12                   Q.   What's your height and weight as of

13     today?

14                   A.   Five eight, one eighty-five.

15                   Q.   And how about as of the time of the

16     events you're suing about, what was your height and

17     weight then?

18                   A.   Five eight, one seventy-five.

19                   Q.   That was in approximately 2013?

20                   A.   Yes.

21                   Q.   Okay.  Mr. Gunn, do you have any

22     medical training?

23                   A.   No.

24                   Q.   And how about any legal training?

25                   A.   I have a Legal Research Certificate

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2      and Law Library Management.

3                    Q.    Okay.   That's something you got

4      while you were in prison?

5                    A.    Right.

6                    Q.    Okay.   Have you worked as a law

7      clerk?

8                    A.    Yes.

9                    Q.    Okay.   But you're not doing that

10     currently?

11                   A.    No.

12                   Q.    Is there any reason why not?

13                   A.    Yeah, they're not hiring.

14                   Q.    Okay.   Besides the -- the training

15     that you got to be a law clerk in prison, any other

16     legal training?

17                   A.    No.

18                   Q.    Okay.   Now, did you keep any records

19     of the events in this lawsuit?

20                   A.    I don't understand the question.

21                   Q.    Well, while the incidents were going

22     on, did you keep any kind of a diary or calendar?

23                   A.    Not a calendar, no.

24                   Q.    Okay.   Did you keep any notes of any

25     kind at the time?

1      Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.   I kept letters.  Sick call slips and

3      I have records from previous lawsuits.

4                    Q.   Okay.  So besides -- besides your

5      letters, your sick call slips and your papers for other

6      lawsuits, you don't have any other notes regarding this

7      lawsuit?

8                    A.   Not that I can remember.

9                    Q.   Okay.  Now, you've also received a

10     number of documents from me, correct?

11                   A.   Yes.

12                   Q.   Okay.  So I'm obviously not asking

13     for copies of any of the records that I've provided to

14     you.  But if you do come across any other records that

15     you have involving the incidents at issue in this

16     lawsuit, I would request copies of those, okay?

17                   A.   Okay.

18                   Q.   Okay.  And do you -- what about, do

19     you know of any written statements by other witnesses

20     regarding the incidents here?

21                   A.   No.

22                   Q.   Okay.  Now, Mr. Gunn, are you on any

23     medications today?

24                   A.   Yes.

25                   Q.   Okay.  What are those?

1              Gunn v Beschler - 5-26-20 - Darrell Gunn

2                       A.   Abilify, BuSpar, Prozac, Prazosin,

3     and I take Meloxicam, Tylenol and I take something for

4     cholesterol and I believe something to help me urinate.

5                       Q.   Okay.  Now, do any of those affect

6     your comprehension?

7                       A.   I get dizzy.

8                       Q.   Okay.  Are you feeling dizzy right

9     now?

10                      A.   Yes, I get dizzy and I get

11    headaches.

12                      Q.   Okay.  So will any of those affect

13    your ability to testify truthfully today?

14                      A.   No.

15                      Q.   Okay.  Let me know if you feel the

16    need to stop if you're feeling any dizziness, okay?

17                      A.   Okay.

18                      Q.   And are any of those medications new

19    medications or have you been on them for a while?

20                      A.   I've been on them for a while.

21                      Q.   Okay.  Do you -- approximately -- is

22    it years?

23                      A.   Yes.

24                      Q.   Are you currently being treated for

25    medical issues?

1       Gunn v Beschler - 5-26-20 - Darrell Gunn

2               A.    Yes.

3               Q.    Okay.  Can you summarize those?

4               A.    I'm in pain, I have shoulder pain

5       and neck pain.  The doctor ordered physical therapy and

6       to wait for this physical therapist to come in once the

7       COVID-19 lockdown stops.

8               Q.    Okay.  Any other current medical

9       issues besides the shoulder and neck pain?

10              A.    Something is wrong with my big toe.

11              Q.    Okay.  Anything else besides the

12      shoulder, neck and toe?

13              A.    Back, my back is in pain.

14              Q.    Okay.  Any other current medical

15      issues?

16              A.    No.

17              Q.    Are you currently being treated for

18      any mental health issues?

19              A.    Yes.

20              Q.    What does your mental health

21      treatment consist of?

22              A.    PTSD, nightmares, depression,

23      anxiety and mental illness.

24              Q.    Okay.  And are you taking medication

25      for that?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    Yes.

3                    Q.    That's in the medical -- list of

4     medications you already provided?

5                    A.    Right.

6                    Q.    Now, the medical problems that you -

7     - the medical issues that you listed, how long

8     approximately have you had those?

9                    A.    I don't recall.

10                   Q.    Were you having those medical issues

11    before the incidents here?

12                   A.    No.

13                   Q.    Okay.  So it's sometime between 2013

14    to the present those things occurred?

15                   A.    Yes.

16                   Q.    Okay.  And any of those medical

17    issues are you saying were caused by the -- any of the

18    incidents we're dealing with in this lawsuit?

19                   A.    The depression, nightmares.

20                   Q.    Okay.  Well, hang on, Mr. Gunn.  I'm

21    asking you just about the medical issues and then we can

22    talk about the mental health issues.  Okay?  So just

23    with respect to the --.

24                   A.    The medical issues --.

25                   Q.    Hang on, Mr. Gunn.  I need you to

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2       make sure that you don't cut off my questions.  Okay?

3       That's -- that's one of our rules, because we need to

4       make sure that for the record, it's clear.  So my

5       question is with respect to just the medical issues, did

6       those predate any of the incidents that we're talking

7       about today?

8                       A.   As far as the shoulder, the neck

9       pain and the back pain?  No.  With -- the medical issue

10      that occurred during the lawsuit was hemorrhoids.

11                      Q.   Okay.  And we can talk about that.

12      I'm just asking you, any of your current medical

13      problems.  Are you saying any of your current medical

14      issues were caused by the incidents we're -- we're going

15      to talk about?

16                      A.   No.

17                      Q.   Okay.  And now, you described your

18      mental health issues.  How long have you had those?

19                      A.   I don't recall.

20                      Q.   Okay.  Can you provide any estimate

21      of time?

22                      A.   It wasn't before the issue of the

23      sexual assault.

24                      Q.   Okay.  So are you saying that you

25      didn't have any mental health issues before the first

```
 1          Gunn v Beschler - 5-26-20 - Darrell Gunn
 2    incident on March 29th, 2013?
 3               A.   Correct.
 4               Q.   Okay.  Had you ever seen O.M.H.
 5    staff before that date?
 6               A.   Yes.
 7               Q.   Okay.  What was that for?
 8               A.   The scar on my face.
 9               Q.   I'm asking if you saw any mental
10    health staff before March 29th, 2013?
11               A.   Yes.
12               Q.   Okay.  And what was that for?
13               A.   The scar on my face.
14               Q.   Okay.  So you -- you said that you
15    were seeing mental health staff for a scar on your face?
16               A.   Right.
17               Q.   Okay.  Can you explain what you mean
18    by that?
19               A.   I have a scar on my face, I busted
20    my face open.
21               Q.   Okay.  And so you talked to O.M.H.
22    staff about what had caused that?
23               A.   Right.
24               Q.   Okay.  Do you remember when
25    approximately that was?
```

```
 1            Gunn v Beschler - 5-26-20 - Darrell Gunn
 2                     A.   No, I don't recall.
 3                     Q.   Okay.  Other than the time with the
 4       scar on your face.  Did you see any O.M.H. staff before
 5       March 29th, 2013?
 6                     A.   No.
 7                     Q.   Okay.  Have you had any suicidal
 8       feelings ever?
 9                     A.   No.
10                     Q.   You've never attempted suicide?
11                     A.   No.
12                     Q.   Okay.  And is there anything that
13       you can think of that would prevent you from giving
14       truthful testimony today?
15                     A.   No.
16                     Q.   Okay.  How was your health at the
17       time of the events we're going to be talking about?
18                     A.   It was -- I was in pain.
19                     Q.   Okay.  That was your pre-existing
20       medical injuries you're saying?
21                     A.   Right.
22                     Q.   Okay.  That was your shoulder and --
23       was that your shoulder at the time?
24                     A.   Yes.
25                     Q.   Okay.
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    Shoulder and back.

3                    Q.    Okay.  Any other physical health

4      issues that you had at that time?

5                    A.    No.

6                    Q.    Okay.  And then you were having  --

7      did you have any mental health issues before March 29,

8      2013?

9                    A.    Depression.

10                   Q.    Okay.  How long have you had

11     depression?

12                   A.    I don't recall.

13                   Q.    Okay.  Is it since childhood?

14                   A.    Possibly.  They never diagnosed me

15     since childhood, but I was assaulted by prison guards in

16     2010 and I did a year in SHU for something I didn't do

17     and the box time did a lot of harm to me emotionally.

18     So I felt upset about the --

19                   Q.    Okay.

20                   A.    -- injustice.

21                   Q.    Okay.  So you're saying that you

22     were assaulted by prison staff in 2010?

23                   A.    Yes.

24                   Q.    Okay.  And then, when was the one

25     year in SHU?

```
1          Gunn v Beschler - 5-26-20 - Darrell Gunn
2                    A.    2010.
3                    Q.    Was it after that incident?
4                    A.    Yes.
5                    Q.    Okay.  And so were you issued a
6     misbehavior report in connection with that incident with
7     the guards?
8                    A.    Yes.
9                    Q.    Okay.  And then that's when you were
10    sentenced to serve a one-year SHU?
11                   A.    Right.
12                   Q.    Where did you serve that sentence?
13                   A.    Upstate Correctional Facility.
14                   Q.    So you were there until 2011?
15                   A.    Yes.
16                   Q.    Okay.  Any other incidents prior to
17    March 29th, 2013?
18                   A.    No.
19                   Q.    Were you taking any medications as
20    of March 29th, 2013?
21                   A.    Naproxen.
22                   Q.    What were you taking that for?
23                   A.    For pain.
24                   Q.    Okay.  Were you on any other
25    medications at any of the times for the incidents we're
```

```
 1          Gunn v Beschler - 5-26-20 - Darrell Gunn

 2     going to be talking about?

 3                    A.   No.

 4                    Q.   Okay.  Now, what's your current

 5     conviction that you're serving time for?

 6                    A.   Murder, first-degree.

 7                    Q.   Okay.  So do you have a conviction

 8     for murder in first-degree and attempted murder in

 9     first-degree?

10                    A.   Yes.

11                    Q.   And what's the date of that

12     conviction?

13                    A.   2003, October 2003.

14                    Q.   Okay.  Did that go to trial?

15                    A.   No.

16                    Q.   Okay.

17                    A.   Guilty plea.

18                    Q.   And what is your sentence?

19                    A.   Life without parole.

20                    Q.   Okay.  So you have no expected

21     release date, correct?

22                    A.   Correct.

23                    Q.   Did you believe that was a fair

24     sentence?

25                    A.   No.
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.  Were you guilty of the

3     offenses?

4                    A.    No.

5                    Q.    But you took the plea.

6                    A.    Yes.

7                    Q.    Now, do you have any prior felonies?

8                    A.    Yes.

9                    Q.    Okay.  How many prior felonies do

10    you have?

11                   A.    Cocaine possession.  I believe

12    that's it.

13                   Q.    Okay.  Was that a conviction for

14    possession of controlled substance in the fifth degree?

15                   A.    Yes.

16                   Q.    And when was that conviction?

17                   A.    I don't recall.

18                   Q.    1997 sound right?

19                   A.    Correct.

20                   Q.    And you were sentenced to two to

21    four years?

22                   A.    Correct.

23                   Q.    And then were you released on

24    parole?

25                   A.    Yes.

```
1            Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    And then did you come back in after

3      that for a violation?

4                    A.    Correct.

5                    Q.    Okay.  Do you remember when that

6      was?

7                    A.    I don't recall.

8                    Q.    Okay.  And then were you released to

9      parole again?

10                   A.    Correct.

11                   Q.    Okay.  Any violations after that?

12                   A.    No.

13                   Q.    Okay.  So then when you came in on

14     your current term were you still on parole?

15                   A.    No.

16                   Q.    Okay.  Any other convictions besides

17     the ones we've just talked about?

18                   A.    I don't recall.  I had -- did county

19     time.

20                   Q.    Okay.  So you're talking about

21     you've had misdemeanor convictions?

22                   A.    Yes.

23                   Q.    Okay.  Besides those, any other

24     felony convictions?

25                   A.    No.
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Okay.  How about any convictions

3     outside of New York State?

4                    A.   Marijuana possession in New Jersey.

5                    Q.   Okay.  When was that?

6                    A.   I don't recall.

7                    Q.   Was it before or after the

8     possession of controlled substance fifth in New York

9     State?

10                   A.   After.

11                   Q.   So was it once you were released on

12    parole from that?

13                   A.   No, actually, I don't -- I don't

14    recall because it was -- it -- prior, it had to be

15    prior.

16                   Q.   Okay.  So prior to 1997?

17                   A.   Right.

18                   Q.   Okay.  Any other convictions outside

19    of New York besides the one in New Jersey?

20                   A.   No.

21                   Q.   Okay.  Do you have any other

22    lawsuits?

23                   A.   Yes.

24                   Q.   Okay.  What are the lawsuits that

25    you have?

         1              Gunn v Beschler - 5-26-20 - Darrell Gunn

         2                        A.    I have a lawsuit for retaliation.

         3                        Q.    Okay.   Is that one in federal court?

         4                        A.    Yes.

         5                        Q.    Okay.   Do you have the docket

         6      number?

         7                        A.    Yes.

         8                        Q.    Okay.   What is it?

         9                        A.    19-CV-10039CS.

        10                        Q.    Okay.   Besides that retaliation

        11      lawsuit and this lawsuit, do you have any others in

        12      federal court?

        13                        A.    Yes.

        14                        Q.    Okay.   How many others do you have

        15      in federal court?

        16                        A.    I don't recall.

        17                        Q.    Okay.   Do you have the docket

        18      numbers of your other federal lawsuits?

        19                        A.    Not with me.

        20                        Q.    Okay.   And you don't recall how

        21      many, I mean, can you estimate how many other federal

        22      lawsuits you have?

        23                        A.    Four.

        24                        Q.    Four besides this one and the other

        25      one you mentioned?

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2                      A.    Right.

3                      Q.    Okay.  So you estimate that you've

4     got six total federal?

5                      A.    Correct.

6                      Q.    Okay.  And those are all ongoing?

7                      A.    Not -- no.

8                      Q.    Okay.  How many are still open?

9                      A.    I would say four.  And I have an --

10                     Q.    Okay.

11                     A.    -- and I have an appeal that's still

12    open for my state lawsuit.

13                     Q.    Okay.  Hang on, let's talk about

14    federal only first, okay.  So you have four open federal

15    lawsuits right now, including this one?

16                     A.    Yes.

17                     Q.    Okay.  What happened for the other

18    federal lawsuits, how were they resolved?

19                     A.    They're still pending.

20                     Q.    No, the -- the ones that are no

21    longer pending.  You said there's -- there's like, two,

22    correct?

23                     A.    One.  The -- the timing was off.  I

24    have to re-submit a declaration saying why I'm late

25    filing it.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.  So one of them was dismissed?

3                    A.    Right, unless I can --

4                    Q.    Okay.

5                    A.    -- determine why the delay.

6                    Q.    Okay.  And then what about -- was

7     the other one dismissed also?  So you've had two

8     dismissed?

9                    A.    Well, no, I don't -- I don't believe

10    I have any federal lawsuits dismiss yet.  They're still

11    pending.  I have an assault, and I just filed another

12    assault and one for heat, the heat was turned off and I

13    have this one and I have the assault.  So I have

14    basically five.

15                   Q.    Okay.  So there's this one.  And

16    then there's one for -- you said the heat was turned

17    off, correct?

18                   A.    Yes.

19                   Q.    Okay.  When was that approximately,

20    that that happened?

21                   A.    2007, '07 -- well, '17.  Yeah, '17.

22                   Q.    Okay.  What facility?

23                   A.    Green Haven.

24                   Q.    Okay.  And then there's three other

25    lawsuits and they're about assaults?  Is that what you

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2    said?

3                    A.    Right.

4                    Q.    Okay.  When -- do you remember when

5    approximately those other assaults were?

6                    A.    I don't recall.

7                    Q.    Okay.  Is one of them the one from

8    2010 that you already mentioned?

9                    A.    No, I didn't do a federal lawsuit in

10   that one.  I did a state lawsuit and it was dismissed

11   for being untimely --.

12                   Q.    Okay.

13                   A.    When I tried to file it with the

14   notice of intent and --.

15                   Q.    All right, that's -- that's fine.

16   That's fine.

17                   A.    Yeah, I try to file a notice of

18   intent as the claim it's -- as itself, so I didn't get

19   any relief.

20                   Q.    Okay.  Okay.  So now you're saying

21   you're suing about three other assaults besides what

22   this lawsuit is about, correct?

23                   A.    Correct.

24                   Q.    Okay.  And can you estimate at all

25   what time when those assaults occurred?

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2                       A.   I don't recall.

3                       Q.   Okay.  Is it before or after the

4      incidents that we're going to be talking about?

5                       A.   After.

6                       Q.   Okay.  So those three additional

7      assaults were -- were they after 2014?

8                       A.   Yes.

9                       Q.   Okay.

10                      A.   One -- one was actually 2014, the

11     19-CV-10039 was in 2014.

12                      Q.   Okay.  Do you remember approximately

13     what month?

14                      A.   September.

15                      Q.   Okay.  Now, did any of those -- did

16     any of those other incidents involve any of the

17     defendants in this case?

18                      A.   Perry's name was mentioned in this

19     case.

20                      Q.   No, I'm asking you if any of those

21     other lawsuits that you have in Federal Court, do any of

22     those involve any of the defendants in this case?

23                      A.   No.

24                      Q.   Okay.

25                      A.   But Perry's name was mentioned in

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2      the retaliation case.

3                    Q.   Okay.  You're talking about 19-CV-

4      10039?

5                    A.   Yes.

6                    Q.   Okay.  But you're not suing CO Perry

7      in that lawsuit, correct?

8                    A.   Correct.

9                    Q.   Okay.  Okay.  Now, we've talked

10     about your federal lawsuits.  How many state lawsuits

11     have you brought?

12                   A.   I did one.

13                   Q.   Okay.  I -- and I'm talking about

14     all of the state lawsuits that you've brought.  If you -

15     - how many -- how many state court actions have you

16     brought in total?

17                   A.   Well, I did one.  They -- what they

18     did was, it was --.

19                   Q.   Okay.  Are you talking about the

20     lawsuit -- is there --?

21                   A.   I had --.

22                   Q.   Let me -- let me -- let me, Mr.

23     Gunn, let me ask you a fresh question.  Do you have any

24     state court actions involving the incidents at issue in

25     this case?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.   Yes, they dismissed it.  I have  --

3     they're -- they're in appeal right now in the Court of

4     appeals.  What had happened was, I had four different

5     claims against the defendants and to make  --

6                    Q.   Okay.

7                    A.   -- life easier during the trial,

8     they did the trial one --.

9                    Q.   They consolidated them?

10                   A.   Correct.

11                   Q.   Okay.  So you filed four lawsuits in

12    the Court of claims, is that correct?

13                   A.   Correct.

14                   Q.   Okay.  Okay.  And then they were

15    consolidated, right?

16                   A.   Correct.

17                   Q.   Okay.  And those cases were tried,

18    right?

19                   A.   Yes.

20                   Q.   Okay.  So there was a Court of

21    Claims -- Claims trial regarding the March 29th, 2013

22    events, correct?

23                   A.   Right.

24                   Q.   Okay.  And at that trial, you called

25    witnesses, correct?

```
1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2                   A.   Yes.

3                   Q.   And you testified?

4                   A.   Yes.

5                   Q.   And all the officers testified?

6                   A.   Yes.

7                   Q.   And what was the outcome of that

8     trial?

9                   A.   Dismissed.

10                  Q.   Okay.  And you received no damages

11    awarded?

12                  A.   No.

13                  Q.   Is that correct, no damages award?

14                  A.   Correct.

15                  Q.   Okay.  Do you remember the judge who

16    presided over that trial?

17                  A.   Catherine Schaewe (phonetic

18    spelling), how do you pronounce that name?

19                  Q.   Judge Schaewe?

20                  THE REPORTER:  Yeah.  Your guess is as

21    good as my mine, sorry. I can spell it on the record if

22    you'd like.  S-C --

23                  MS. MCKAY:  No, I -- that sounds familiar

24    --

25                  THE REPORTER:  Okay.
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    MS. MCKAY:  -- from what I've seen, yeah.

3      Thank you.

4                    THE REPORTER:  Yeah.

5                    BY MS. MCKAY:  (Cont'g.)

6                    Q.   Okay.  Now, besides that.  Those

7      four Court of Claims actions, do you have any other

8      state court actions that you've brought about anything,

9      just any other lawsuits?

10                   A.   Yes.

11                   Q.   Okay.  Approximately how many other

12     state court actions have you brought?

13                   A.   I brought property claim actions

14     that were dismissed.

15                   Q.   Okay.  Do you have an approximate --

16                   A.   Several.

17                   Q.   -- number?

18                   A.   Several.

19                   Q.   Okay.  Was it over ten?

20                   A.   No.

21                   Q.   Okay.  Over five?

22                   A.   Approximately five.

23                   Q.   Okay.  Okay now, I want you to just

24     take a look at some documents.  So if you could please

25     take a look at what's been marked as Exhibit One.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Do you recognize that document?

3          A.    Yes.

4          Q.    Okay.  What is that?

5          A.    It's my claim.

6          Q.    Okay.  Is this your original

7     complaint?

8          A.    Yes.

9          Q.    Okay.  You've drafted a number of

10    complaints in this lawsuit, correct?

11         A.    Correct.

12         Q.    Okay.  Now, is this in your

13    handwriting?

14         A.    Yes.

15         Q.    And are the contents true and

16    accurate?

17         A.    Yes.

18         Q.    And you've signed this document?  I

19    believe it's on page forty-eight of fifty-one, if you

20    look up in the top right-hand corner.

21         A.    Yes, I did on --

22         Q.    Okay.

23         A.    -- page forty-four.

24         Q.    Okay.  So that's your signature at

25    the bottom of that -- of the page.  It says page forty-

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     eight of fifty-one.  Is that your signature, Mr. Gunn?

3                    A.    Right.

4                    Q.    Okay.  And you signed this on March

5     29th, 2016, correct?

6                    A.    Correct.

7                    Q.    And did you mail it the same day?

8                    A.    Yes.

9                    Q.    And why did you wait so long to file

10    your lawsuit?

11                   A.    Access to the law library.  It's

12    cold.  Depression.

13                   Q.    Okay.  And you were aware of the

14    statute of limitations, correct?

15                   A.    Yes.

16                   Q.    And how long is the statute of

17    limitations?

18                   A.    Three years.

19                   Q.    Okay.  And you filed it three years

20    to the date, right?

21                   A.    I don't know.

22                   Q.    Okay.  I'd like you to take a look

23    at what's been marked as Exhibit Two.  I can take One

24    back for now, just stick that in order.

25                         Thank you.  Do you recognize that

```
 1          Gunn v Beschler - 5-26-20 - Darrell Gunn

 2     document?

 3                    A.   Yes.

 4                    Q.   Okay.  Is this your first amended

 5     complaint?  Mr. Gunn, have you answered the question?

 6                    A.   What's that, I didn't hear it.

 7                    Q.   Is this your -- is the document

 8     Exhibit Two, is that your first amended complaint?

 9                    A.   This is my first amended complaint,

10     yes.

11                    Q.   Okay.  And some of it is

12     handwritten.  Are those portions in your handwriting?

13                    A.   Correct.

14                    Q.   And then there's portions that are

15     typed.  Did you type them?

16                    A.   Yes.

17                    Q.   Okay.  And then, does your signature

18     appear on page one ninety-one?

19                    A.   Yes, one ninety-one and one ninety-

20     two.

21                    Q.   Okay.  And you had this document

22     notarized?

23                    A.   No.  Yes.

24                    Q.   And are the contents true and

25     accurate?
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                     A.    Correct.

3                     Q.    Okay.  Next, I'd like to have you

4     take a look at what's been marked as the Exhibit Three.

5     Thank you.  And here's this.  Do you recognize that

6     document?

7                     A.    Yes.

8                     Q.    Is that your second amended

9     complaint?

10                    A.    Yes.

11                    Q.    Okay.  Now, portions of this one are

12    typed.  Did you type them?

13                    A.    Correct.

14                    Q.    And then portions are handwritten.

15    Are those your handwriting?

16                    A.    Yes.

17                    Q.    Okay.  And you signed this document,

18    correct, on page one ten?  Mr. Gunn?

19                    A.    Yeah.

20                    Q.    You signed this document, correct,

21    Exhibit Three?

22                    A.    Yes.  I'm still looking for the

23    page.

24                    Q.    Okay.  I think it's on page one ten.

25                    A.    Yeah, I found it.

          1          Gunn v Beschler - 5-26-20 - Darrell Gunn

          2                    Q.    Okay.

          3                    A.    Yeah, I signed it.

          4                    Q.    So you dated at June 1st, 2017?

          5                    A.    Correct.

          6                    Q.    Okay.  And are the contents true and

          7          accurate?

          8                    A.    Yes.

          9                    Q.    Okay.  And you've attached a number

         10          of exhibits, correct?

         11                    A.    Correct.

         12                    Q.    Okay.  Are those all the documents

         13          that you mentioned that you held on to during the

         14          incidents?

         15                    A.    Yes.

         16                    Q.    Okay.  Now, I'd like you to take a

         17          look at what's been marked as Exhibit Four.  Where's

         18          Four?  Do you recognize that document?

         19                    A.    Yes.

         20                    Q.    Okay.  And is that your most recent

         21          complaint in this lawsuit?

         22                    A.    Yes.

         23                    Q.    Okay.  Is that one actually your

         24          third amended complaint?

         25                    A.    Yes.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.  And that one's handwritten.

3     Did you -- is that your handwriting?

4                    A.    Correct.

5                    Q.    Okay.  I'm not sure if there's any

6     typewritten portions, but if there are any typewritten,

7     did you type those as well?

8                    A.    Yes.

9                    Q.    Okay.  And you signed this document,

10    correct?

11                   A.    Yes.

12                   Q.    And you dated it June 19th, 2019?

13                   A.    That's right.

14                   Q.    Okay.  Are the contents of this

15    document true and accurate?

16                   A.    Correct.

17                   Q.    Okay.  You can set those aside.

18    Thank you.  Mr. Gunn?

19                   A.    Yes.

20                   Q.    I just want to make sure.  It looks

21    like you have documents in front of you.  I just want to

22    make sure if -- if -- I'm going to talk to you about

23    those, about your memory of events.  And I don't want

24    you to be reading off the documents that are not in

25    evidence that we've not made it an exhibit.  Okay?  So

1            Gunn v Beschler - 5-26-20 - Darrell Gunn

2       what I'd like you to do is just close those and set them

3       to the side, so that we can discuss from your memory.

4       Does that make sense?

5                    A.    Yes.

6                    Q.    Okay.  So just -- if you can, can

7       you just cover those like just put -- put them away or

8       put your folder over them.  There you go.  If there's

9       anything that you need to look at, just you can -- you

10      can tell me, but once it's need -- we'll need to note

11      for the record what you're looking at.  Does that make

12      sense?

13                   A.    Uh-huh.

14                   Q.    Okay.  Okay.  So now, the events

15      that you're suing about in this lawsuit took place at

16      Elmira Correctional Facility, right?

17                   A.    Correct.

18                   Q.    Okay.  And that's a maximum security

19      facility?

20                   A.    Yes.

21                   Q.    Okay.  Now, a number of your claims

22      involved pat frisks, right?

23                   A.    Yes.

24                   Q.    Okay.  And had you ever been pat

25      frisked in prison before this -- these events?

1            Gunn v Beschler - 5-26-20 - Darrell Gunn

2                        A.    Yes.

3                        Q.    Okay.  Approximately, how many

4      times?

5                        A.    I don't recall.

6                        Q.    Okay.  Was it a significant number

7      of times or just a couple?

8                        A.    Several.

9                        Q.    Would several be under ten?

10                       A.    No.

11                       Q.    Okay.  Would it be under twenty?

12                       A.    Yes.

13                       Q.    Okay.  Had you been pat frisked on

14     your prior bid?

15                       A.    Yes.

16                       Q.    Okay.  Would you agree that pat

17     frisks are a normal part of prison life?

18                       A.    Correct.

19                       Q.    Okay.  And if you include the prior

20     bid, would you say that it was more than twenty times?

21     Do you have an approximate number of times you're pat

22     frisked?

23                       A.    Correct.

24                       Q.    It would be -- sorry, Mr. Gunn, I

25     want to make sure I understand you.  Over twenty times

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2      if you include both bids?

3                    A.   Correct.

4                    Q.   Okay.  Was it over thirty times?

5                    A.   I don't recall.

6                    Q.   Okay.  Do you know the pat frisk

7      procedure?

8                    A.   Directive 4910.

9                    Q.   Well, I'm asking -- you having

10     experienced pat frisks, can you describe what the normal

11     pat frisk procedure is?

12                   A.   Well, you place your hands on the

13     wall.

14                   Q.   Okay.

15                   A.   You step back and you allow the

16     officer to pat frisk you.

17                   Q.   Okay.  Well, when do pat frisks take

18     place?

19                   A.   When there's supervision around,

20     when there was a supervisor.

21                   Q.   Okay.  Do you -- do you know when

22     pat frisks take place?

23                   A.   Random pat frisk.  There's random

24     pat frisk when there is a supervisor, going to and from

25     the yard -- the recreation.

```
1              Gunn v Beschler - 5-26-20 - Darrell Gunn

2                      Q.   Okay.  And when you say the

3      supervisor, if you're going to go see a supervisor, you

4      get pat frisk?

5                      A.   No.  Needs -- there needs to be a

6      supervisor present.

7                      Q.   Oh, okay.  Okay.  So you said that

8      pat frisks occur -- random pat frisks, correct?

9                      A.   Yes.

10                     Q.   Okay.  And then also when you're

11     going to and returning from the rec?

12                     A.   Correct.

13                     Q.   Okay.  Any other times when pat

14     frisks happened?

15                     A.   I don't recall.

16                     Q.   How about visits like this?

17                     A.   Correct.

18                     Q.   Okay.

19                     A.   Yeah, visits.

20                     Q.   Court appearances?

21                     A.   Right.

22                     Q.   And any transports?

23                     A.   Right.

24                     Q.   Okay.  So you said that the officer

25     tells you to put your hands on the wall.  Is that the
```

    1          Gunn v Beschler - 5-26-20 - Darrell Gunn

    2     first step?

    3                    A.    Yes.

    4                    Q.    Okay.  And what happens then?

    5                    A.    They began to pat frisk you or tell

    6     you to empty your pockets.

    7                    Q.    Okay.  So do you empty your pockets

    8     or do they?

    9                    A.    It's either/or.

   10                    Q.    Okay.  So you might empty your

   11     pockets before you put your hands on the wall?

   12                    A.    Correct.

   13                    Q.    Okay.  And then what happens once

   14     you got your hands on the wall?

   15                    A.    They begin to pat frisk you.

   16                    Q.    Okay.  And can you describe what the

   17     pat frisking process is?

   18                    A.    They use both of their hands to

   19     check for weapons or contraband.

   20                    Q.    Okay.  So the purpose of the pat

   21     frisk is to look for weapons or contraband on your

   22     person?

   23                    A.    Uh-huh.

   24                    Q.    Is that a yes?

   25                    A.    Yes.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Okay.  And where do they check?

3                    A.   The extremities and the torso.

4                    Q.   Okay.  Any other spots that they

5     have to check besides your extremities -- and you mean

6     your arms and legs?

7                    A.   Yes.

8                    Q.   Okay.  Any spots besides your arms,

9     legs and torso?

10                   A.   Clothing.

11                   Q.   Okay.  Do they -- where do they

12    check your clothing?

13                   A.   Pockets.

14                   Q.   Okay.  So do they -- do they feel

15    you all over?

16                   A.   I don't understand.

17                   Q.   Okay.  I'm just wondering do the --

18    you said that they check with their hands, correct?

19                   A.   Right.

20                   Q.   Okay.  So do they touch you all over

21    to check for contraband or weapons?

22                   A.   Yes.

23                   Q.   Okay.  And is it normal procedure to

24    check in the groin area?

25                   A.   No.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Okay.  And is it normal procedure to

3     check in the buttocks area?

4                    A.   No.

5                    Q.   Okay.  And are you aware of any

6     inmates concealing weapons there?

7                    A.   No.

8                    Q.   Okay.  Okay, so what happens after

9     they rub their hands on you like you've described?

10                   A.   The pat frisk is over.

11                   Q.   Okay.  What about your shoes?

12                   A.   They don't normally check the shoes.

13                   Q.   Okay.  Do they ever check the shoes?

14                   A.   No, I don't recall.

15                   Q.   So all the pat frisks you've had,

16    they've not checked your shoes?

17                   A.   Correct.

18                   Q.   Okay.  So what happens once the pat

19    frisk is over?

20                   A.   They tell you, you can leave the

21    wall.

22                   Q.   Okay.  Do you get your possessions

23    back?

24                   A.   Correct.

25                   Q.   Okay.  Now, you're accusing the

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2       defendants of sexual assault, correct?

3                       A.    Correct.

4                       Q.    And you would agree that sexual

5       assault is a serious accusation?

6                       A.    Very serious.

7                       Q.    Okay.  And now allegations of sexual

8       assault are investigated by the Office of Special

9       Investigations, right?

10                      A.    Correct.

11                      Q.    And you've spoken with O.S.I.

12      investigators before?  Go ahead.

13                      A.    I've spoken to Inspector General,

14      Mr. Gessner and he told me he is going to come back but

15      he never came back to speak to me and --.

16                      Q.    Okay.  That's okay, Mr. Gunn.  We

17      can get into some of the details.  But I'm just asking

18      you -- you -- you're familiar with the O.S.I. process?

19                      A.    Yeah, I -- I felt that and it was

20      very biased.

21                      Q.    Okay.  Now, the investigation that

22      they do into sexual assault, that's a PREA

23      investigation, right?

24                      A.    I didn't experience PREA.  PREA was

25      -- didn't exist in 2013.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.   Okay.   Now, they did do --

3     they did an investigation into sexual assault

4     allegations, correct, just generally speaking?

5                    A.    No.

6                    Q.    Okay.   So you're not familiar with -

7     - with their O.S.I. doing investigations in the sexual

8     assaults?

9                    A.    The O.S.I. investigator told me he's

10    going to come back to speak to me.   He never came back

11    to speak to me.

12                   Q.    Well, Mr. Gunn, we'll talk about the

13    specific O.S.I. investigations relating to your

14    allegations.   I'm just asking you generally speaking, as

15    of these events, were you aware that O.S.I. does

16    investigations into sexual assault?

17                   A.    Yes.

18                   Q.    Okay.   And now, and inmates are

19    keep-locked during the investigation, is that correct?

20                   A.    No.

21                   Q.    Okay.   And do you know what PREA

22    stands for?

23                   A.    Prison Rape Elimination Act.

24                   Q.    Okay.   And it's your understanding

25    that PREA investigations were not taking place at any of

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2       these times, is that correct?

3                       A.   Correct.

4                       Q.   Okay.  So how do inmates report a

5       sexual assault?

6                       A.   You tell a prison guard.

7                       Q.   All right.  So you report it to

8       security?

9                       A.   I report it to the prison guard.

10                      Q.   Right.  Security officers?

11                      A.   Yes.

12                      Q.   Okay.  And what about med -- to

13      medical staff?

14                      A.   I wrote it down on sick call, sick

15      call slip.

16                      Q.   Okay.  So you can also report it to

17      medical staff?

18                      A.   Right.

19                      Q.   Is there anybody else that you can

20      report a sexual assault to?

21                      A.   Mental Health.

22                      Q.   Okay.  When you -- do you see O.M.H.

23      staff regularly?

24                      A.   Correct.

25                      Q.   Okay.  And are all these staff

```
1            Gunn v Beschler - 5-26-20 - Darrell Gunn
2      members doing rounds in your area?
3                    A.   No.
4                    Q.   Okay.  So how do you -- how do you -
5      - when do you see O.M.H. staff?
6                    A.   Maybe once a month.  And since the
7      lockdown --
8                    Q.   Okay, do you meet them in your cell?
9                    A.   -- I haven't seen them, huh?
10                   Q.   Do they -- do you see them in your
11     cell or do you go somewhere to?
12                   A.   I'd go somewhere.
13                   Q.   Okay.  And then they have sick call
14     every day, is that correct?
15                   A.   No.
16                   Q.   What days do they have sick call?
17                   A.   Monday, Tuesday, Thursday, Friday.
18                   Q.   Okay.  So they have sick calls four
19     days a week, is this at Elmira?
20                   A.   Could you just repeat that?
21                   Q.   Is it -- we're talking about at
22     Elmira, correct?
23                   A.   Correct.
24                   Q.   Okay.  And you have sick call at
25     Elmira four days a week?
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    Correct.

3                    Q.    Okay.   What if you need medical care

4     the other days?

5                    A.    We have to wait until Monday,

6     Tuesday, Thursday and Friday.

7                    Q.    Okay.   Okay.   Anybody else that you

8     can report a sexual assault to?

9                    A.    The clergy.

10                   Q.    Okay.   The clergy staff at the

11    prison?   Is that correct?

12                   A.    Yes.

13                   Q.    Okay.   Anyone else that you can

14    report the sexual assault to?

15                   A.    I don't believe so.

16                   Q.    Okay.   And now if substantiated,

17    sexual assaults are subject to discipline, correct?

18                   A.    I don't believe so.

19                   Q.    Okay.   A staff member could lose

20    their job if they committed a sexual assault, correct?

21                   A.    It hasn't happened so far.

22                   Q.    Okay.   Do you -- well, I'm just

23    asking you if you're -- would sexual assaults if they're

24    -- if they're substantiated, would they be subject to

25    discipline?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.   I filed a grievance and nothing

3     happened.  I've got retaliated against for filing a

4     grievance.  That's what happened.

5                    Q.   Okay.  And once you report a sexual

6     assault, medical staff conducts an examination, right?

7                    A.   Correct.

8                    Q.   And then, are you also referred to

9     O.M.H.?

10                   A.   Yes.

11                   Q.   Okay.  Now, we've talked a little

12    bit about the sick call process.  So what are the -- how

13    do you get medical care as an inmate at Elmira?

14                   A.   You put your sick call slip on the

15    gate.

16                   Q.   Okay.  And is there also an

17    emergency process for medical care?

18                   A.   Yes.

19                   Q.   Okay.  So when it's sick call, where

20    do you put your -- you fill out a slip, correct?

21                   A.   Correct.

22                   Q.   Okay.  And where do you put that

23    slip?

24                   A.   On the gate.

25                   Q.   All right.  And what happens from

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     there?

3                    A.    Someone picks it up.  And if you

4     want --

5                    Q.    But do you know --

6                    A.    -- and if you want --

7                    Q.    -- do you --

8                    A.    -- emergency sick call, you tell the

9     person guard.

10                   Q.    Okay.  Well, let's just talk about

11    regular sick call first.  So you leave that on your gate

12    and then does the -- does the C.O. take it?

13                   A.    I believe so.

14                   Q.    Do you know where it goes from

15    there?

16                   A.    Medical.

17                   Q.    Okay.  Is there a mailbox going to

18    medical?

19                   A.    I don't recall.

20                   Q.    And then what happens once you've

21    submitted the sick call request?

22                   A.    You're scheduled to go on sick call

23    in the morning.

24                   Q.    Okay.  Is it the next morning?

25                   A.    Correct.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                     Q.    Okay.  And what time -- what time is

3      sick call?

4                     A.    I believe six a.m.

5                     Q.    Okay.  Is there anything in the

6      evening?

7                     A.    No.

8                     Q.    Now you said you were taking

9      medications.  Did a nurse bring those to you to take?

10                    A.    No, I get self care.

11                    Q.    So you would see med -- the medical

12     staff when you needed a refill?

13                    A.    No.  I would just drop a slip in a

14     refill box and I will receive the medication at my cell.

15                    Q.    Okay.  Now, when we're -- you also

16     mentioned emergency medical care.  So how do you get

17     that?

18                    A.    You tell the prison guard.  You

19     write it on the slip and you tell the prison guard that

20     you need emergency.

21                    Q.    Okay.  So you still -- you still

22     write a slip, is that correct?

23                    A.    Correct.

24                    Q.    Okay.  Is that the only time when

25     you've seen medical staff other than if you go to sick

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     call in the morning?

3                    A.    Then there was call-outs.

4                    Q.    Okay.  So when do you have medical

5     call-outs?

6                    A.    When you're scheduled to see your

7     medical provider.

8                    Q.    Okay.  And do they sometimes

9     schedule those at sick call?

10                   A.    No.

11                   Q.    They never have you see a doctor

12    after sick call?

13                   A.    Yes.

14                   Q.    Okay.  So when do you get medical

15    call-outs?

16                   A.    My guess is when the doctor has the

17    opportunity to see you.

18                   Q.    Okay.  Can you ask for a medical

19    call-out?

20                   A.    Yes.

21                   Q.    Okay.  How do you do that?

22                   A.    You put in for sick call.

23                   Q.    Okay.  And then what -- how do you

24    get a medical call-out from there?

25                   A.    Well, it depends on your diagnosis,

1         Gunn v Beschler - 5-26-20 - Darrell Gunn

2    your -- your ailments and what needs that you're dealing

3    with -- the signs -- your symptoms that you have.

4              Q.   Okay.  So they do that -- they do an

5    exam and decide if you need to see more medical staff?

6              A.   Correct.

7              Q.   Okay.  So the first date that we're

8    going to be talking about is March 29th, 2013.  So

9    describe what happened on that day.

10             A.   I was going to recreation and turned

11   the corner coming out of G Block and I cleared the

12   magnetometer.  And there was a big guy standing there

13   and he pointed at me.

14             Q.   Okay.  You said a big guy.  Who is

15   that?

16             A.   C.O. Perry.

17             Q.   Okay.  And so where was he standing?

18             A.   He was standing off side of the

19   magnetometer.

20             Q.   Okay.  And approximately where is

21   this within the facility?

22             A.   G Block pivot.

23             Q.   Okay.

24             A.   Laundry -- the laundry room

25   corridor.

```
1          Gunn v Beschler - 5-26-20 - Darrell Gunn
2                    Q.    And is that the way that you go to
3     get to rec?
4                    A.    Correct.
5                    Q.    Okay.  Anyone else present besides
6     C.O. Perry at that time?
7                    A.    Yes.
8                    Q.    Okay.  Who else was present?
9                    A.    Chad Beschler.
10                   Q.    Okay.  And what's his title?
11                   A.    C.O.
12                   Q.    Okay.  So there were two C.O.s
13    there, correct?
14                   A.    Right, and a sergeant.
15                   Q.    Okay.  And now, were you going to
16    the rec in a group?
17                   A.    Yes.
18                   Q.    Okay.  Were there other inmates
19    there?
20                   A.    Not at the moment.
21                   Q.    Okay.  What do you mean by that?
22                   A.    When I cleared the magnetometer, he
23    pointed at me and told me to get on the wall.  The rest
24    of the group went down the corridor and waited to go to
25    rec.
```

```
 1          Gunn v Beschler - 5-26-20 - Darrell Gunn

 2                    Q.    Okay.

 3                    A.    So I was stopped by myself.

 4                    Q.    Okay.  So where -- where were they

 5     in relation to you?

 6                    A.    What do you say?  Twenty -- twenty,

 7     thirty feet down the hallway.

 8                    Q.    Okay.  Okay.  So describe the

 9     hallway.  Is it a straight hallway?

10                    A.    Yes.

11                    Q.    Okay.  And is that also where the

12     pat frisk took place?

13                    A.    Correct.

14                    Q.    Okay.  And that's where the

15     magnetometer is located?

16                    A.    Correct.

17                    Q.    Okay.  Any other staff present

18     besides the three officers you mentioned?

19                    A.    Sergeant Claflin.  Sergeant Claflin.

20                    Q.    Okay.  So any other staff members

21     besides C.O. Perry, C.O. Beschler and Sergeant Claflin?

22                    A.    I don't recall.

23                    Q.    You -- you don't recall?

24                    A.    No.

25                    Q.    Okay.  And where were each of them
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     located?

3                    A.   They were all within the

4     magnetometer area.

5                    Q.   Do you remember exactly where each

6     one was?

7                    A.   No, I don't recall.

8                    Q.   Okay.  And so what happened when you

9     went through the magnetometer?

10                    A.   C.O. Perry pointed at me and told me

11    to get on the wall.

12                    Q.   Okay.  Did it -- it alert anything?

13                    A.   No.  There was no alarm.  There was

14    no signal.

15                    Q.   Okay.  Were you randomly selected?

16                    A.   I -- I wouldn't say I was randomly

17    selected.  I would say that C.O. Perry is a sexual

18    predator.  And he picked me for his sexual indecencies.

19                    Q.   Okay.  And did you -- you feel that

20    this was a needless pat frisk, correct?

21                    A.   Correct.

22                    Q.   Okay.  What do you mean by needless

23    pat frisk?

24                    A.   There was no alarm.  There was no

25    signal. I was on my way to the rec.  And he picked me

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     because he felt he wanted to become sexually aroused

3     when he'd seen me.

4                    Q.    Okay.  So are you saying that it's

5     needless because the alarm didn't sound?

6                    A.    Correct.

7                    Q.    Okay.  So you don't believe that a

8     pat frisk was necessary if the alarm didn't sound,

9     right?

10                   A.    Correct.

11                   Q.    Okay.  So what happened once he told

12    you that you were going to be pat frisked?

13                   A.    I complied.

14                   Q.    Okay.  So what exactly did he say to

15    you?

16                   A.    Put your hands on the wall.

17                   Q.    Okay.  And you did so?

18                   A.    Yes.

19                   Q.    Okay.  Then what happened?

20                   A.    He began pat frisking me.

21                   Q.    Okay.  Can you describe exactly

22    happened -- what happened?

23                   A.    He began touching me.  My arms,

24    started on top of my arms.  And he began squeezing me,

25    squeezed my arms and he worked his way down and  --

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2                   Q.   Okay.  So where did he check other -

3     - after he checked your arms?

4                   A.   He -- he went to my waist and he

5     grabbed my underwear.

6                   Q.   Okay.  Did he do that right after he

7     check your arms?

8                   A.   Yes.

9                   Q.   Okay.

10                  A.   He grabbed my underwear.

11                  Q.   Okay.  Where did he -- where did he

12    grab your underwear?

13                  A.   From behind.

14                  Q.   Okay.  Is it at the waistband,

15    somewhere else?

16                  A.   Yes, the waistband.

17                  Q.   Okay.  Okay.  So he grabbed it in

18    your back?

19                  A.   Right.

20                  Q.   Okay.  And then what happened?

21                  A.   He yanked my underwear up, pulled up

22    my underwear into my rectum --

23                  Q.   Okay.

24                  A.   -- very hard.  I explained to him

25    that I was in pain.  And he told me to shut the fuck up.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Okay.  What happened after he pulled

3     your underwear up like that from the back?

4                    A.   He began to pat frisk my leg.

5                    Q.   Okay.  Both legs?

6                    A.   Yes.  And then --.

7                    Q.   After he did -- after he checked

8     your legs?

9                    A.   He grabbed my underwear again and

10    pulled up even harder.

11                   Q.   Okay.  Did he grab your underwear in

12    the same location?

13                   A.   Yes.  And I believe I was saying I'm

14    in pain and he said shut the fuck up.  And he took both

15    of his hands and he insert them in my rectum and rubbed

16    back and forth -- back and forth in between my legs,

17    between my butt.

18                   Q.   Okay.

19                   A.   And planted his finger in my rectum.

20                   Q.   Okay.  So I want you to explain.

21    Now, so before this, he's holding your underwear

22    waistband.  Is that correct?

23                   A.   Yeah, he pulls -- he pulls it up,

24    all the way up.

25                   Q.   Okay.  And then what did he do with

```
 1          Gunn v Beschler - 5-26-20 - Darrell Gunn
 2     his hands?
 3                    A.    He puts them in my rectum.
 4                    Q.    Okay.  So now, is he in any of your
 5     clothes or outside of them?
 6                    A.    He's outside.
 7                    Q.    Okay.  So what clothes are you
 8     wearing at the time?
 9                    A.    State.
10                    Q.    Okay.  So you have a jumpsuit on?
11                    A.    No.
12                    Q.    Okay.  What do you have on at the
13     time?
14                    A.    Greens.
15                    Q.    Okay.  So it's separate pants and
16     shirt?
17                    A.    Yes.
18                    Q.    Okay.  Okay.  So now, and then you
19     also have boxers on?
20                    A.    Correct.
21                    Q.    Okay.  Any other things besides the
22     pants, boxers and the shirt that you're wearing?
23                    A.    No.
24                    Q.    Okay.  And so then he's still
25     outside of your clothing then, correct, at all times?
```

1        Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    Yes.

3                    Q.    Okay.  And where -- where does he

4        put his hands?

5                    A.    Between my legs.

6                    Q.    Okay.  And --?

7                    A.    Between my butt.

8                    Q.    Okay.  And is it one hand or both

9        hands?

10                   A.    Both.

11                   Q.    Okay.  And he puts it in your -- in

12       your buttocks?

13                   A.    Correct.

14                   Q.    Okay.  And what does he do once he

15       puts his hands there?

16                   A.    He's penetrating my rectum with his

17       finger.

18                   Q.    Okay.  Is it one finger?

19                   A.    One finger.

20                   Q.    Okay.  Okay, what happens once he

21       does that?

22                   A.    The sergeant is standing right next

23       to me.  And I look at the sergeant and the sergeant --

24       I'm in disbelief -- it's just -- it's just -- I'm --I'm

25       -- I'm at a loss of words.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.  And so what happens once  --

3     how long does he have his finger there?

4                    A.    It was -- it was quick, it was --

5                    Q.    Okay.

6                    A.    -- going back and forth.

7                    Q.    So it happens -- is it happen -- it

8     happens instantaneously?

9                    A.    Right.  He's -- he was going back

10    and forth.

11                   Q.    Okay.  He is moving his hands you're

12    saying?

13                   A.    Yes.

14                   Q.    Okay.  Did the sergeant say anything

15    at the time?

16                   A.    No.  He is blocking everybody from

17    the view whereas everybody is down the hallway and he's

18    standing by with his -- with his body.

19                   Q.    Okay.  He is blocking who?

20                   A.    The group that's down there waiting

21    to go to rec.

22                   Q.    Okay.  The other inmates?

23                   A.    Yes.

24                   Q.    Okay.  Okay, and what happens after

25    he puts his finger in you buttocks the way you

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     described?

3                    A.   He tells me to take it back to my

4     cell.

5                    Q.   Okay.  Is the pat frisk ended at

6     that point?

7                    A.   Yes.

8                    Q.   Okay.

9                    A.   No -- no, that's not true.  He -- he

10    checks my sneaker.

11                   Q.   Okay.  So what position --?

12                   A.   He checks my sneaker.  The other --

13                   Q.   What position are you --?

14                   A.   -- the other C.O. comes and checks

15    my sneaker.  They take my sneakers off and checked both

16    of my sneakers.

17                   Q.   Okay.  I thought you said you had

18    not had your sneakers checked.  Is that correct?

19                   A.   Yeah, until that day --.

20                   Q.   What do you mean?

21                   A.   Until that day.

22                   Q.   Okay.  You were saying you've never

23    had your sneakers checked?

24                   A.   Until that day.

25                   Q.   Okay.  Okay, so what position are

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2      you in when they checked your sneakers?

3                    A.   I'm on the wall.

4                    Q.   Okay.  So you -- are you staying --

5      do you -- are you on the wall the whole time?

6                    A.   Yes.

7                    Q.   Okay.  And you have your arms, your

8      hands up?

9                    A.   Yes.

10                   Q.   Okay.  Okay now, who checks your

11     sneakers?

12                   A.   Beschler assisted with the hand

13     magnetometer.  He had a little hand wand that went over

14     -- went across it, so he came over and helped.

15                   Q.   Okay.  So I want to get an idea of

16     where the other officers were, when the pat frisk was

17     taking place.  Do you know?

18                   A.   At the magnetometer.

19                   Q.   Okay.  And how far away from the

20     magnetometer were you?

21                   A.   Not far.

22                   Q.   Can you estimate how many feet?

23                   A.   Two feet.

24                   Q.   Okay.  And where were the -- where

25     was -- where was C.O. Perry when the -- during the pat

1            Gunn v Beschler - 5-26-20 - Darrell Gunn

2      frisk?

3                    A.   He was right on me.

4                    Q.   Okay.  Was he directly behind you?

5                    A.   Yes.

6                    Q.   Okay.  And then where is Sergeant

7      Claflin?

8                    A.   He's right there.

9                    Q.   Okay.  So is he to the left or

10     right?

11                   A.   To -- to my left.

12                   Q.   He's to your left?

13                   A.   Yes.

14                   Q.   Okay.  And how many feet away is he?

15                   A.   One foot.

16                   Q.   And what about C.O. Beschler.  Where

17     was he located?

18                   A.   To the magnetometer, about two feet

19     away.

20                   Q.   Well, where was he -- how far was he

21     from you?

22                   A.   I couldn't really tell because I was

23     facing the wall.

24                   Q.   Okay.  Do you know was he to your

25     left or your right?

         1          Gunn v Beschler - 5-26-20 - Darrell Gunn

         2                      A.    My right.

         3                      Q.    Okay.  Now, which way was it to get

         4          to rec from where you were?

         5                      A.    Straight ahead to my left.

         6                      Q.    Okay.  Okay, where were the inmates

         7          that were lined up?

         8                      A.    To the left.

         9                      Q.    Okay.  Further down that hall?

        10                      A.    Correct.

        11                      Q.    Okay.  Okay.  Now, how long did the

        12          sexual assault last?

        13                      A.    I don't recall.

        14                      Q.    Okay.  Can you describe -- was it

        15          seconds, minutes?

        16                      A.    I don't recall.  I'm having

        17          nightmares.

        18                      Q.    All right.  So you can't provide any

        19          estimate of time for how long the sexual assault took?

        20                      A.    When he pat frisked me to the time I

        21          got back to my cell, I would say maybe fifteen minutes.

        22                      Q.    Okay.  So you're saying the whole --

        23          the whole pat frisk until you got back to your cell was

        24          fifteen minutes.

        25                      A.    Correct.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Okay.  So is there any -- besides

3     the penetrating with the finger, is there any other part

4     of the pat frisk that you're saying was sexually

5     assaulting?

6                    A.   The buttocks -- he was rubbing on my

7     butt.

8                    Q.   Okay.  With his hands you're talking

9     about?

10                   A.   Yes.

11                   Q.   Okay.  And still from behind he was

12    touching your butt?

13                   A.   Yes.

14                   Q.   Okay.  Okay.  And how long did that

15    -- was he touching your butt -- buttocks for?

16                   A.   Back and forth for about, I would

17    say, a couple of minutes.

18                   Q.   Okay.  And did the group of inmates

19    stay there the whole time?

20                   A.   I don't recall.

21                   Q.   Okay.  You don't know if they ended

22    up leaving or not?

23                   A.   Well, when a sergeant was blocking

24    the view, I'm quite sure there was somebody down there

25    watching.

    1          Gunn v Beschler - 5-26-20 - Darrell Gunn

    2                    Q.   Okay.  So during the pat frisk they

    3     were there?

    4                    A.   I believe so.

    5                    Q.   Okay.  Now, what happened -- tell me

    6     how they -- you said they checked your shoes at the end

    7     of the pat frisk?

    8                    A.   Correct.

    9                    Q.   Okay.  And what -- what happened for

   10     the checking your shoes?

   11                    A.   Nothing, no signal, no alarm.

   12                    Q.   Okay.  And how did they check the

   13     shoes?

   14                    A.   With a handheld magnetometer.

   15                    Q.   Okay.  So did they remove your

   16     shoes?

   17                    A.   Yes.

   18                    Q.   Okay.  And then they checked the

   19     shoe with the handheld device?

   20                    A.   Correct.

   21                    Q.   Okay.  And then returned the shoes

   22     to you?  Is that correct?  They gave you your shoes

   23     back.

   24                    A.   Correct.

   25                    Q.   Did they check both shoes?

```
 1          Gunn v Beschler - 5-26-20 - Darrell Gunn
 2                    A.   Both shoes.
 3                    Q.   Okay.  And what happened once you
 4     got the shoes back?
 5                    A.   They told to me take it back to the
 6     cell.
 7                    Q.   Okay.  Who told you that?
 8                    A.   C.O. Perry.
 9                    Q.   Did anyone else say anything to you?
10                    A.   No.
11                    Q.   Now, you believe C.O. Perry did this
12     for sexual gratification?
13                    A.   Yes.
14                    Q.   Why do you believe that?
15                    A.   Why else would he sexually assault
16     me?
17                    Q.   Okay.  So the fact that he sexually
18     assaulted you is what you're saying shows that he was
19     doing it for sexual gratification?
20                    A.   Yes.
21                    Q.   Any other reasons why you believe
22     that he was doing it for sexual gratification?
23                    A.   Yeah, because it's not his job
24     description to pat frisk someone without cause and to do
25     hardship to me like that.
```

```
 1           Gunn v Beschler - 5-26-20 - Darrell Gunn
 2                    Q.   Okay.  So because the magnetometer
 3      didn't go off, you're saying?
 4                    A.   Correct.
 5                    Q.   Okay.  Now, how exactly was Sergeant
 6      Claflin involved?
 7                    A.   He was standing right there.
 8                    Q.   Okay.  And he had no physical
 9      contact with you?
10                    A.   None.
11                    Q.   Okay.  And you said that he was
12      about a foot away.
13                    A.   Correct.
14                    Q.   Was he there the whole time?
15                    A.   The whole time.
16                    Q.   And he said nothing?
17                    A.   Not a word.
18                    Q.   Okay.  Could Sergeant Claflin see
19      the sexual assault?
20                    A.   Did he see it?
21                    Q.   Right.
22                    A.   Absolutely.
23                    Q.   Okay.  So he knew you were being
24      sexually assaulted?
25                    A.   He was promoting it.
```

1        Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.  What do you mean by that?

3                    A.    He was -- he stood, he came even

4        closer to block the view of the other people from

5        seeing, he -- he was promoting it.  It was --

6                    Q.    Okay.  So when you say --?

7                    A.    -- it was a -- it was a silence  --

8        it was -- it was in silence because a lot of the things

9        get done in silence, and they have a code and he didn't

10       --.

11                   Q.    Okay.  Well, Mr. Gunn, hang on.  Let

12       me just -- so you're saying that he promoted the sexual

13       assault by standing between you and the other inmates?

14                   A.    Yes.

15                   Q.    Okay.  Besides standing between you,

16       was he involved in any other way?

17                   A.    Yes.

18                   Q.    Okay.  How was he involved?

19                   A.    When I asked C.O. Perry his name I

20       was walking back to my cell and that's when Beschler

21       kicked me.

22                   Q.    Okay.  So hang on, I just want to

23       understand.  We're talking about Sergeant Claflin.  Did

24       -- was he involved in any way other than standing

25       between you and the other inmates?

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2                      A.   No, he is not preventing them from

3      attacking me.

4                      Q.   Okay.  That's fine.  I'm just trying

5      to understand if he was -- if he was involved in doing

6      anything for the pat frisk besides standing there

7      between you.  Is that a no?

8                      A.   I don't recall.

9                      Q.   Okay.  You don't recall if Sergeant

10     Claflin did anything else besides stand there?

11                     A.   Right.

12                     Q.   Okay.  Okay.  Now, you said C.O.

13     Beschler, he used the handheld device to check your

14     shoes, correct?

15                     A.   Correct.

16                     Q.   Okay.  Was C.O. Beschler involved in

17     any other ways?

18                     A.   Yes, he kicked me.

19                     Q.   Okay.  So what happened once -- now,

20     you said it was C.O. Perry who told you to return to

21     your cell?

22                     A.   Correct.

23                     Q.   Okay.  And what happened once he

24     said that?

25                     A.   I immediately went to my cell.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.  So you turned back the other

3     way and went that way?

4                    A.    Correct.

5                    Q.    Okay.  Did you -- were you with

6     anyone else?

7                    A.    No.

8                    Q.    Okay.  So it was just you returning?

9                    A.    Right.

10                   Q.    Okay.  So you -- did you get to your

11    cell?

12                   A.    Eventually, yes, after I got kicked.

13                   Q.    Okay.  So who kicked you?

14                   A.    Chad Beschler.

15                   Q.    Okay.  Where did he kick you?

16                   A.    Kicked me in my left shin.

17                   Q.    Okay.  And where -- where did that

18    occur within the facility?

19                   A.    Right by the magnetometer.

20                   Q.    Okay.  So tell me, was he still near

21    the other officers?

22                   A.    No, he was by the magnetometer.  So

23    when I asked C.O. Perry his name, they automatically

24    started retaliating against me.  So I said, what is your

25    name?   And he said -- and he said his name is Perry.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     And when I was walking back --

3                    Q.    Okay.  So --

4                    A.    -- an officer kicked me.

5                    Q.    So after -- was -- at this time did

6     you have your shoes back on?

7                    A.    Yes.

8                    Q.    Okay.  And he told you to return to

9     your cell before this conversation?

10                   A.    Correct.

11                   Q.    Okay.  And then before you -- was it

12    before you went to go back to your cell you asked what

13    his name was?

14                   A.    Correct.

15                   Q.    Okay.  And why did you ask him his

16    name?

17                   A.    So I can file a grievance.

18                   Q.    Okay.  And what did he answer?

19                   A.    Perry.

20                   Q.    Okay.  So he gave you his correct

21    name.

22                   A.    Correct.

23                   Q.    Okay.  And then what happened once

24    he told you his name?

25                   A.    I got kicked.

```
1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Okay.  Were you still standing in

3     the same place?

4                    A.   No.

5                    Q.   Okay.  So had you started walking?

6                    A.   Correct.

7                    Q.   Okay.  And did you go back through

8     the magnetometer?

9                    A.   No.

10                   Q.   Okay.  Which way were you walking at

11    this time?

12                   A.   The other way.

13                   Q.   Okay.  Was it towards your right?

14                   A.   Right.

15                   Q.   Okay.  So you started walking and

16    then how did you get kicked?

17                   A.   With his boots.

18                   Q.   Okay.

19                   A.   It was a hard kick to my shin.

20                   Q.   Okay.  Did C.O. Beschler say

21    anything to you?

22                   A.   No.

23                   Q.   Okay.  And do you know why he kicked

24    you?

25                   A.   He was retaliating because I was
```

         1          Gunn v Beschler - 5-26-20 - Darrell Gunn

         2     going to write CO Perry up and report the sexual

         3     assault.

         4                    Q.   Okay.  So based on your -- based on

         5     your asking him his name?

         6                    A.   Correct.

         7                    Q.   Do you know if C.O. Beschler heard

         8     you?

         9                    A.   Excuse me?

        10                    Q.   Do you know if C.O. Beschler heard

        11     you?

        12                    A.   Yes.

        13                    Q.   How do you know?

        14                    A.   Because I asked him his name.  I

        15     asked him his name and I said, "What is your name?"

        16                    Q.   I know.  I'm asking you though if

        17     C.O. Beschler heard your question to C.O. Perry.

        18                    A.   Yes, he heard me.

        19                    Q.   Okay.  Is it based on anything that

        20     he said that you know he heard?

        21                    A.   No, because when Perry responded, he

        22     said his name loud enough that everybody in the area

        23     knew what happened and he was involved.

        24                    Q.   Okay.  Okay.  And did you say

        25     anything to the officer other than what's your name?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    That's it.

3                    Q.    Okay.  And then did you get escorted

4     back to your cell?

5                    A.    No.

6                    Q.    Okay.  Did you walk there alone?

7                    A.    Yes.

8                    Q.    How far away is your cell?

9                    A.    It's not right in the block, so I

10    couldn't -- I couldn't recall.  I wouldn't be able to

11    estimate how far it is.  Maybe thirty, forty feet maybe.

12                   Q.    Okay.  Can you see it where -- from

13    where you were -- from the pat frisk, can you see your

14    cell?

15                   A.    No.

16                   Q.    Okay.  And you said that he

17    practically tripped you, right?

18                   A.    Correct.

19                   Q.    What do you mean by that?

20                   A.    I thought if I lost my balance, they

21    would have probably beat me up.

22                   Q.    Okay.  That's just what you were

23    guessing would have happened?

24                   A.    Yes, I was in fear.

25                   Q.    Okay.  And then you walked to your

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2      cell, correct?

3                          A.    Correct.

4                          Q.    And any other incidents after that?

5                          A.    C.O. Perry came to my cell and I

6      told him, you sexually assaulted me and he said, "If I

7      sexually assaulted you, it would have been worse than

8      that."

9                          Q.    Okay.  When did that conversation

10     take place?

11                         A.    When he came to my cell after that.

12                         Q.    Okay.  How many minutes later was

13     that?

14                         A.    I don't recall.

15                         Q.    Okay.  Was it a short time later or

16     hours?

17                         A.    Hours.

18                         Q.    Was C.O. Perry working in your --

19     your cell block?

20                         A.    Correct.

21                         Q.    Okay.  So do you know what job C.O.

22     Perry had that day?

23                         A.    No.

24                         Q.    Did you know him prior to March

25     29th, 2013?

```
1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2                   A.   No.

3                   Q.   Okay.  So you had no prior problems

4      with him?

5                   A.   No.

6                   Q.   Okay.  After the pat frisk then, you

7      said -- was it that day or a different day that he

8      talked to you?

9                   A.   I'm sorry?

10                  Q.   When he had that conversation with

11     you in your cell, was that the same day as the pat

12     frisk?

13                  A.   Same day, yes.  Same night rather.

14                  Q.   Okay.  So tell me the contents of

15     that conversation.

16                  A.   I told him I would report the sexual

17     assault.

18                  Q.   Okay.  And then he --?

19                  A.   And he said to me --.

20                  Q.   And then he said what in response?

21                  A.   If it was a sexual assault it

22     would've been worse than that.

23                  Q.   Okay.  Did he say anything else?

24                  A.   No.

25                  Q.   Did you say anything else?
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.   No.

3                    Q.   Do you have any contact with C.O.

4     Perry after that?

5                    A.   Yes.

6                    Q.   Okay.  When was the next contact you

7     had with him?

8                    A.   I believe June 13th he sexually

9     assaulted me.

10                   Q.   Okay.  So the next time you had

11    contact with him was the next incident that we'll be

12    talking about in your lawsuit?

13                   A.   Yeah, because March 29th is the only

14    date that is being recognized, but he sexually assaulted

15    me plenty of times after that.

16                   Every time I would go -- go to the yard

17    he would pick me for sexual assault.

18                   Q.   Okay.

19                   A.   And --

20                   Q.   Okay.  So you're saying.

21                   A.   -- this is --

22                   Q.   But I'm just asking when was the --

23    when was your next contact with C.O. Perry at all.  Do

24    you remember?

25                   A.   Yeah, I believe it was June 13th --

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Okay.

3                    A.   -- when he sexually assaulted me.

4                    Q.   Okay.  So did you even see C.O.

5     Perry between those dates after March 29th or was it

6     until June that you -- you didn't see him?

7                    A.   I don't recall because --

8                    Q.   Okay.

9                    A.   -- there was so much retaliation

10    going on.

11                   Q.   Okay.  So the last time -- the next

12    time that you saw him after March 29th, you think was in

13    June of 2013?

14                   A.   Correct.

15                   Q.   Okay.  Okay.  How about Sergeant

16    Claflin?  Do you know him before March 29th, 2013?

17                   A.   No.

18                   Q.   Okay.  So no prior problems with

19    him?

20                   A.   No.

21                   Q.   Okay.  And any subsequent contact

22    with Sergeant Claflin after March 29th, 2013?

23                   A.   No.

24                   Q.   Okay.  And how about C.O. Beschler?

25    Do you know him before March 29th, 2013?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                      A.    No.

3                      Q.    Okay.  And did you have any

4     subsequent contact with C.O. Beschler after --

5                      A.    No.

6                      Q.    -- this event?  Okay.  Now, do you

7     have any injuries after this -- the incident on March

8     29th, 2013?

9                      A.    Yes.

10                     Q.    Okay.  You said that you had a

11    hemorrhoid, correct?

12                     A.    Correct.

13                     Q.    Okay.  Is it one?

14                     A.    Yes, yes.

15                     Q.    Okay.  And it was on your rectum?

16                     A.    Yes.

17                     Q.    Okay.  Do you know was it interior

18    or exterior?

19                     A.    No, I don't.

20                     Q.    Do you know if it was visible?

21                     A.    I believe so.

22                     Q.    Okay.  What -- when did you get the

23    hemorrhoid?

24                     A.    I don't recall.

25                     Q.    Okay.  So you don't remember when --

```
 1              Gunn v Beschler - 5-26-20 - Darrell Gunn

 2      when it came about?

 3                      A.    Correct.

 4                      Q.    Was it shortly after the pat frisk?

 5                      A.    Correct.

 6                      Q.    Okay.  Do you remember if it was

 7      days later or hours later?

 8                      A.    Days.

 9                      Q.    Okay.  Can you estimate how many

10      days later?

11                      A.    No.

12                      Q.    And how long before it healed?

13                      A.    I'm still getting hemorrhoid.

14                      Q.    Okay.  Well, I'm talking about the

15      one that appeared days later.  How long before that

16      healed?

17                      A.    I don't recall.

18                      Q.    Okay.  That one did heal, correct?

19                      A.    Correct.

20                      Q.    Okay.  Had you ever had a hemorrhoid

21      before that?

22                      A.    No.

23                      Q.    And you said that you have them  --

24      have you had them since?

25                      A.    Correct.
```

1              Gunn v Beschler - 5-26-20 - Darrell Gunn

2                          Q.    Okay.   Approximately, how many

3         hemorrhoids have you had since?

4                          A.    Three.

5                          Q.    Okay.   Now, the hemorrhoid that you

6         had in the days after this event, did you require any

7         medical treatment for it?

8                          A.    They gave me ointment.

9                          Q.    Did it help?

10                         A.    Yes.

11                         Q.    And it went away?

12                         A.    Yes.

13                         Q.    Okay.   Any other treatment besides

14        the ointment?

15                         A.    No.

16                         Q.    Do you have any medical proof that

17        the hemorrhoid was caused by the pat frisk?

18                         A.    No.

19                         Q.    Has any medical staff told you that?

20                         A.    Well, I believe that happened

21        because right after the sexual assault that's what

22        caused the hemorrhoid.

23                         Q.    Right.  That's because it happened

24        after the assault, correct?

25                         A.    Right, but it happened not after --

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     not just after the May 29th sexual assault but after

3     another one, the June 4th sexual assault.  So it kept

4     reoccurring sexual assaults.  There's a pattern here.

5                    Q.   Okay.  But I'm asking you, did any

6     medical staff tell you that the pat frisk was -- was the

7     cause?

8                    A.   The medical staff told me let me

9     know if C.O. Perry does it to you again.  That's what

10    the medical staff told me.  They reported to mental

11    health, they referred me to mental health.

12                   Q.   Okay.  So you saw medical for this,

13    correct?

14                   A.   Yes.

15                   Q.   Okay.  Do you remember when?

16                   A.   I think it was two days later in the

17    evening.  It wasn't in the morning.

18                   Q.   Okay.  And why the delay?

19                   A.   Because there was no PREA during --

20    there was no PREA initiated in New York State during

21    this time.  There was no -- that didn't exist in 2013.

22                   Q.   Okay.  Did you --?

23                   A.   So I guess they were unprepared.

24                   Q.   Okay.  But did you wait to report

25    the incident?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    No, I reported it to every officer.

3     I reported to C.O. Perry himself and he told me he would

4     do -- he would assault me even worse than that -- and

5     that's -- that's what's going to happen.

6                    Q.    Okay.  So no medical staff has told

7     you that the pat frisk caused the hemorrhoid, correct?

8                    A.    I wouldn't say that.

9                    Q.    Okay.  Why -- what's your basis for

10    believing that?

11                   A.    I will say that the medical staff

12    told me, let me know if C.O. Perry pat frisks you again.

13                   Q.    Okay.  So you -- so you told medical

14    staff what happened during the pat frisk, correct?

15                   A.    Yes.

16                   Q.    Okay.  And then medical staff told

17    you to tell them -- to go to medical if it happened

18    again?

19                   A.    No, my medical provider Jill

20    Northrup told me to tell her personally that if C.O.

21    Perry pat frisks me again, tell her personally.

22                   Q.    Okay.  And who is Ms. Northrup?

23                   A.    My medical provider -- she was my

24    medical provider in Elmira.

25                   Q.    Okay.  Do you know her title?

```
 1              Gunn v Beschler - 5-26-20 - Darrell Gunn
 2                        A.    Nurse Practitioner.
 3                        Q.    Okay.  Did she say anything else to
 4       you about it besides tell her if it happened again?
 5                        A.    No, she referred me to mental
 6       health.
 7                        Q.    Okay.  Okay.  So after your
 8       examination she referred you to mental health?
 9                        A.    Yes.
10                        Q.    Okay.  Any other physical injury
11       besides the hemorrhoid?
12                        A.    Pain in my shin.
13                        Q.    Okay.  Did you report that to
14       medical?
15                        A.    No.
16                        Q.    Why not?
17                        A.    Because I was worried about the
18       sexual assault.
19                        Q.    Okay.  Did you have -- get any
20       medical -- did you require any medical care for your
21       shin?
22                        A.    No.
23                        Q.    Okay.  How long did the pain in your
24       shin last?
25                        A.    I don't recall.
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Was it hours?

3                    A.   Yes.

4                    Q.   Okay.   What other physical injuries?

5                    A.   None.

6                    Q.   Okay.   Do you remember when your

7     examination took place?

8                    A.   No, I don't recall.

9                    Q.   Was it days later?

10                   A.   Yes.

11                   Q.   Okay.   Now, you're not claiming any

12    permanent injuries, correct?

13                   A.   Rectum.   Hemorrhoids.

14                   Q.   Okay.   So you're claiming that --

15    you're claiming rectal injuries?

16                   A.   Yeah, my hemorrhoids.

17                   Q.   Okay.   So how -- why do you believe

18    those are permanent?

19                   A.   I don't know.

20                   Q.   Okay.   So you believe that

21    subsequent hemorrhoids that you got were caused by the

22    March -- March 29th, 2013 incident?

23                   A.   Correct.

24                   Q.   Okay.   Do you have any medical

25    evidence of that?

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.   I believe so.

3                    Q.   Okay.  What is your -- what medical

4       evidence do you have?

5                    A.   The -- Jill Northrup, nurse

6       practitioner, when she discovered the hemorrhoids after

7       the sexual assault.

8                    Q.   Okay.  So that same conversation you

9       had where she told you to tell you if it happened again?

10                   A.   Yes.

11                   Q.   Okay.  Did Ms. Northrup treat you

12      for any subsequent hemorrhoids?

13                   A.   No, I was transferred to Green

14      Haven.

15                   Q.   Okay.  Do you remember when?

16                   A.   August.  No, when was I transferred

17      to Green Haven?  I don't recall.

18                   Q.   Okay.  It was in 2014 or 2013?

19                   A.   2014.

20                   Q.   You don't recall what month?

21                   A.   Correct.

22                   Q.   Do you remember was it in the middle

23      of the year, summer, do you know?

24                   A.   Yes, I do remember it was --.

25                   Q.   It's okay if you don't recall.  I

```
1              Gunn v Beschler - 5-26-20 - Darrell Gunn

2         don't want you to guess.

3                        A.   Okay.

4                        Q.   Okay.  Now, when were the other  --

5         you said you had hemorrhoids three times since then?

6                        A.   Yes.

7                        Q.   Okay.  When were those?

8                        A.   I don't recall.

9                        Q.   You don't recall when?

10                       A.   No.

11                       Q.   Okay.  Did you get any treatment for

12        those?

13                       A.   Yes.

14                       Q.   Okay.  What was your treatment?

15                       A.   The hemorrhoid cream --

16                       Q.   Okay.

17                       A.   -- and hemorrhoid patch.

18                       Q.   Okay.  And did they go away?

19                       A.   Yes.

20                       Q.   Okay.  Any other treatment that you

21        received?

22                       A.   No.

23                       Q.   Do you remember who treated you for

24        those?

25                       A.   Green Haven.
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Okay.  Were they all at Green Haven?

3                    A.   Yes.

4                    Q.   Okay.  And did any medical staff

5          there tell you that they were caused by the March 29th,

6          2013 incident?

7                    A.   No.

8                    Q.   Did they tell you that they were

9          caused by a sexual assault?

10                   A.   No.

11                   Q.   So I'm just trying to understand

12         what's the basis for your belief.  Was it -- you believe

13         that it was the penetration that caused these?

14                   A.   Correct.

15                   Q.   Okay.  And do you have any medical

16         proof that that would cause a hemorrhoid?

17                   A.   No.

18                   Q.   Okay.  Now, are you claiming any

19         non-physical injuries?

20                   A.   Depression, nightmares.

21                   Q.   Okay.

22                   A.   Anxiety, despair.

23                   Q.   Okay.  So -- so now you said

24         depression.  Now, you were depressed before this

25         incident, correct?

1        Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.   I don't recall.

3                    Q.   Okay.  You don't recall if you had -
4   - I thought you said that you -- you may have been
5   depressed since childhood, correct?

6                    A.   Correct.  They have been -- no one
7   ever diagnosed me.

8                    Q.   Okay.  Did you feel depressed before
9   this incident?

10                   A.   No.

11                   Q.   Okay.  So you're saying you never
12  felt depressed before this?

13                   A.   No, not like this.

14                   Q.   Well, what do you mean by -- I'm
15  just trying to understand.  Did you feel any depression
16  before this?

17                   A.   No.

18                   Q.   No.  Okay.  Okay.  And what do you
19  mean by not like this?

20                   A.   It's hopelessness.

21                   Q.   Okay.  And how long did that
22  hopelessness last?

23                   A.   It still is hopelessness.

24                   Q.   Okay.  So has it changed at all
25  since that time?

```
1              Gunn v Beschler - 5-26-20 - Darrell Gunn

2                         A.    No.

3                         Q.    Okay.  You've had no relief in your

4        --

5                         A.    No.

6                         Q.    Okay.  But you've never been

7        suicidal, correct?

8                         A.    Correct.

9                         Q.    Now, you mentioned nightmares.  What

10       are those?

11                        A.    Having pat frisks by C.O. Perry  --

12                        Q.    Okay.

13                        A.    -- and being assaulted by prison

14       guards.

15                        Q.    Okay.  How frequently do you have

16       nightmares?

17                        A.    Frequently.

18                        Q.    Okay.  What does that mean?

19                        A.    Nightly sometimes.

20                        Q.    Okay.  So you're saying you're

21       having nightmares every night?

22                        A.    Almost.

23                        Q.    Okay.  Do you remember your

24       nightmares?

25                        A.    Sometimes.
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Okay.  How do you know you're having

3     them if you don't remember all of them?

4                    A.   Because I wake up sweat, cold.

5                    Q.   Okay.  So how many of your

6     nightmares do you remember?

7                    A.   Well, some of them.

8                    Q.   Well, you said that you have these

9     nightly, so I'm trying to understand how many do you

10    remember?

11                   A.   Well, some of them.

12                   Q.   Okay.  So sometimes you wake up and

13    you're sweaty, so you believe you've had a nightmare?

14                   A.   Yeah.  Well, I wake up right out of

15    my sleep.

16                   Q.   Okay.  But you don't remember the

17    nightmare?

18                   A.   Yeah, because it would be a tragic

19    nightmare where you don't want to remember.

20                   Q.   Okay.  Okay.  Now, what happens when

21    -- do you go back to sleep?

22                   A.   Sometimes.

23                   Q.   Okay.  Any other issues involving

24    your nightmares?

25                   A.   No.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Okay.  And you mentioned anxiety,

3     describe that.

4                    A.   Yes.  I have waiting for a long

5     time, problem waiting and twitching.

6                    Q.   Okay.  You're saying, your anxiety

7     makes you twitch?

8                    A.   Yes.

9                    Q.   Where?

10                   A.   My leg.

11                   Q.   Okay.  Just can you describe the

12    twitch?

13                   A.   It's rapid, very fast.

14                   Q.   Okay.  But what are you doing with

15    your leg when it happens?

16                   A.   It just won't stop moving.

17                   Q.   Okay.  You stop moving your leg?

18                   A.   It -- it doesn't stop.

19                   Q.   Okay.  Where does it twitch?

20                   A.   Between my foot and my leg.

21                   Q.   Okay.  Like are you bouncing your

22    leg up and down?

23                   A.   Right.

24                   Q.   Okay.  When does that happen?

25                   A.   All the time.  And I have a fear of

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     showers and fear of recreation.

3                    Q.    Okay.  Why is that?

4                    A.    Because I don't want to get pat

5     frisked because of the episodes that I have previously

6     had with C.O. Perry in Elmira --

7                    Q.    Okay.  Do you --

8                    A.    -- and they had beat up --.

9                    Q.    Do you take showers?

10                   A.    Excuse me?

11                   Q.    Do you go to showers?

12                   A.    No, I use to take showers -- I don't

13    take showers anymore.

14                   Q.    Okay.  When did you stop taking

15    showers?

16                   A.    After the incidents I have been

17    having.

18                   Q.    So you haven't showered since 2013?

19                   A.    I wouldn't say 2013, every now and

20    then I would take a shower when it's -- I feel safe, but

21    not on regular --

22                   Q.    Okay.  So you --

23                   A.    -- basis.

24                   Q.    Okay.  So you've skipped showers

25    since then?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    Yes.

3                    Q.    But then you take them sometimes?

4                    A.    Correct.

5                    Q.    Okay.  And do you go to rec?

6                    A.    No.

7                    Q.    Okay.  Do you ever go to rec?

8                    A.    Never.

9                    Q.    Have you gone to any rec since this

10   incident?

11                   A.    Sometimes.

12                   Q.    Okay.  What do you mean by

13   sometimes?

14                   A.    I used to go to rec in Green Haven

15   until the prison guards told me not to go to rec.

16                   Q.    Okay.  Why did they tell you not to?

17                   A.    During the pat frisk they told me

18   not to go to rec no more.

19                   Q.    Okay.  What -- what -- what happened

20   during the pat frisk?

21                   A.    Choke me maybe had my arms on the

22   wall for around six minutes until I was ready to fall,

23   hit my head on the bench.

24                   Q.    Did you -- did you say somebody

25   choked you?

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2                      A.    Yes.

3                      Q.    Okay.  So was there a different

4      incident?

5                      A.    Yes.

6                      Q.    Okay.  And that was at Green Haven?

7                      A.    Yes.

8                      Q.    Okay.  When approximately was that?

9                      A.    2015 --

10                     Q.    Okay.

11                     A.    -- July 5th.

12                     Q.    Okay.  And do you have a lawsuit

13     about that?

14                     A.    Yes.

15                     Q.    Okay.  Is that one that's still

16     pending in federal court?

17                     A.    That's in state court.

18                     Q.    Do you have a docket number or

19     anything for that?

20                     A.    Not with me.

21                     Q.    Okay.  If you have that I would

22     request that within thirty days, okay?

23                     A.    Okay.

24                     Q.    Okay.  So after that incident at

25     Green Haven in July of 2015 you have not gone to any

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2      rec?

3                    A.    Correct.

4                    Q.    Okay.  What other mental injuries?

5                    A.    Well, I'm -- I'm working with my new

6      psychiatrist so.

7                    BY MS. MCKAY:  (Cont'g.)

8                    Q.    Okay.  We can talk about your

9      treatment in a minute.  I just want to understand if

10     there is any other injuries.

11                   A.    That's -- that's about it right now.

12                   Q.    Okay.  So have you received mental

13     health treatment?

14                   A.    Yes.

15                   Q.    Okay.  What treatment have you

16     received?

17                   A.    Medication.

18                   Q.    Okay.  That's the meds we already

19     talked about?

20                   A.    Correct.

21                   Q.    Okay.  Any other meds that you've

22     taken?

23                   A.    No.

24                   Q.    Okay.  Is it just Prozac?

25                   A.    Prozac and BuSpar, pro -- Prazosin -

```
 1          Gunn v Beschler - 5-26-20 - Darrell Gunn
 2      - Prazosin --
 3                      Q.   Okay.
 4                      A.   -- and Abilify.
 5                      Q.   Okay.  And have you seen O.M.H.
 6      staff for these injuries?
 7                      A.   Yes.
 8                      Q.   Okay.  Now you said -- you said that
 9      you were referred for O.M.H., correct?
10                      A.   Yes.
11                      Q.   Okay.  And do you remember when you
12      saw O.M.H. staff?
13                      A.   Yes.
14                      Q.   When after the incident did you see
15      them?
16                      A.   I don't recall.
17                      Q.   Okay.  And since that time, how
18      frequently have you seen mental health staff?
19                      A.   Monthly.
20                      Q.   Okay.  And does it help?
21                      A.   Well, at first, it didn't help
22      because the therapist -- the clinician was married to a
23      prison guard and he has sexually harassed me so I
24      wouldn't communicate with her.  And I explained that to
25      her and I ask the director to change the therapist and
```

1         Gunn v Beschler - 5-26-20 - Darrell Gunn

2    she wouldn't.

3                    Q.   Okay.

4                    A.   Then I later found out that the

5    director is also married to a prison guard.  So it was

6    very scary.

7                    Q.   Okay.  So was it -- were you

8    concerned -- did -- did the therapist say anything to

9    you about that?

10                   A.   Yes, she said that everything is

11   confidential.

12                   Q.   Okay.  So she told you that she

13   would keep it confidential but you didn't -- you didn't

14   feel comfortable?

15                   A.   Correct.

16                   Q.   Okay.  Okay.  So then how long

17   before the O.M.H. staff were able to help?

18                   A.   Until I started taking medication.

19   I would never take --

20                   Q.   Okay.

21                   A.   -- medication because I felt it was

22   unsafe for me to take medication.

23                   Q.   Okay.  So when did you start -- when

24   did you start taking medication?

25                   A.   When I got to Green Haven.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.  And before that you wouldn't

3      agree to take medication?

4                    A.    Correct.

5                    Q.    Okay.  And you -- you felt that

6      there was a relationship between your therapist and

7      someone who sexually harassed you, you said?

8                    A.    Marriage.

9                    Q.    Okay.  Then they were married?

10                   A.    Yeah.  They were married.

11                   Q.    Okay.

12                   A.    Mrs. Brush (phonetic spelling) and

13     Mr. Brush.  C.O. Brush --

14                   Q.    Okay.

15                   A.    -- and Mrs. Brush.

16                   Q.    And you felt that the person married

17     to the therapist had sexually harassed you?

18                   A.    Yeah.  Yeah.  C.O. Brush is married

19     to the clinician Brush.

20                   Q.    Okay.  Okay.  So once you started

21     taking the medications it helped?

22                   A.    Not exactly.

23                   Q.    Okay.  What do you mean by that?

24                   A.    Because things haven't changed.

25     Things still remained the same.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.  So there's -- has it helped

3      at all?

4                    A.    No.

5                    Q.    Okay.  So your medications haven't

6      helped at all?

7                    A.    I'm still working with the

8      psychiatrists.

9                    Q.    Okay.  So yes or no, has your

10     medication helped at all?

11                   Q.    A little.

12                   Q.    Okay.  And have the therapy sessions

13     helped at all?

14                   A.    A little.

15                   Q.    Okay.  Can you estimate how much

16     it's helped?

17                   A.    Well, the nightmares are becoming

18     more manageable with the medication that I'm taking.

19     And the Pro --

20                   Q.    Okay.

21                   A.    -- the Prozac helps with the

22     depression.

23                   Q.    Okay.  And so after this incident,

24     can you -- on a scale of one to ten, how bad were your

25     mental injuries?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    Ten.

3                    Q.    Okay.  And since you've received the

4        treatment, what would you estimate from one to ten?

5                    A.    Seven.

6                    Q.    Okay.  So you would say you're at a

7        seven now?

8                    A.    Yes.

9                    Q.    Okay.  And would you say you've been

10       at a seven since about when you went to Green Haven and

11       got this treatment?

12                   A.    No.

13                   Q.    Okay.  What do you mean by that?

14                   A.    I would say I'm about at seven since

15       I've been in Sing Sing.

16                   Q.    Okay.  When did you get to Sing

17       Sing?

18                   A.    August.

19                   Q.    Of 2019?

20                   A.    Correct

21                   Q.    Okay.  So it was a slow progression

22       since --since you started taking the medications?

23                   A.    Yes.

24                   Q.    Okay.  Now, you're seeking over

25       fifteen million dollars for the pat frisk, correct?

1        Gunn v Beschler - 5-26-20 - Darrell Gunn

2                A.    Correct.

3                Q.    Okay.  And how did you arrive at

4    that figure?

5                A.    I don't know.

6                Q.    What do you mean you don't know?

7                A.    I just came up with a number.

8                Q.    Okay.  You just --

9                A.    There is no --

10              Q.    -- pulled out a number?

11              A.    Yeah.  There's no numbers available

12    to estimate damages so I just came up with a number.

13              Q.    Okay.  You say the full extent of

14    injuries cannot be measured, what do you mean by that?

15              A.    Because I'm still suffering from

16    pain and injuries.  It's still ongoing.

17              Q.    And you say you cannot live a normal

18    life anymore, what do you mean by that?

19              A.    I can't go to rec.  I can't take

20    showers.  I have nightmares.  Hemorrhoids.

21              Q.    Okay.  So all that stuff we've --

22    all that stuff we've already talked about, you're

23    saying?

24              A.    Yeah.  Hemorrhoids.

25              Q.    Okay.  So what did you do to -- did

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     you report the March 29th, 2013 incident?

3                    A.   Yes.

4                    Q.   Okay.  What did you do to report it?

5                    A.   I wrote down on sick call.  I told

6     the prison guard Perry and that was it.

7                    Q.   Okay.  Okay.  Do you remember when

8     you wrote the sick call slips?

9                    A.   Yes.

10                    Q.   When?

11                    A.   That same day, the same night,

12    rather.

13                    Q.   Okay.  Do you date them?

14                    A.   Yes.

15                    Q.   Okay.  Do you date them the date

16    that you write them?

17                    A.   Yes.

18                    Q.   And then what do you do with -- how

19    many sick call slips did you write or just one?

20                    A.   I don't recall.

21                    Q.   Okay.  You don't recall if it was

22    one?

23                    A.   Or two or three because you might

24    not be called for sick call.  And I didn't get called

25    for sick call.  I went for my examination in the

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     evening.

3                    Q.    Okay.  So you're saying when the

4     exam took place it was in the evening?

5                    A.    Correct.

6                    Q.    Okay.  Do you remember when

7     approximately what time?

8                    A.    Seven -- seven or eight p.m. maybe.

9                    Q.    Okay.  But you don't remember

10    exactly?

11                   A.    Correct.

12                   Q.    And who did that exam?

13                   A.    I don't know.  I don't recall.  Some

14    lady, she was very biased.  There were six -- at least

15    six prison guards in the exam room with me so I felt

16    very uncomfortable.

17                   Q.    Okay.  You don't know the name of

18    the medical provider?

19                   A.    No.

20                   Q.    Okay.  Now when you say you told

21    C.O. Perry, you're just talking about that conversation

22    that you had that you already testified to?

23                   A.    That I already testified to?

24                   Q.    Right.  You're saying -- you said

25    that -- when I asked you if you reported it, you said

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2      you told C.O. Perry, that's the conversation where you

3      said that he told you it could have been worse?

4                    A.   Correct.

5                    Q.   Okay.  Did you do anything else to

6      report it besides that conversation and the sick call

7      slip?

8                    A.   No.

9                    Q.   Okay.  Okay.  Now what did you do --

10     what did you do with the sick call slip?

11                   A.   Put it on the gate.

12                   Q.   Okay.  And do you know what happened

13     from there?

14                   A.   No.

15                   Q.   Okay.  Did an officer take it?

16                   A.   I don't know.

17                   Q.   Okay.  But after that you got -- you

18     got the exam?

19                   A.   Yes.

20                   Q.   Okay.  So you got the -- the exam

21     happened because you did the sick call slip, correct?

22                   A.   Correct.

23                   Q.   Okay.  And now, do you remember what

24     day the exam took place?

25                   A.   It was approximately a day or two

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     after.

3                    Q.    Okay.  Was it the same day that you

4     submitted the sick call slip?

5                    A.    It's possible.

6                    Q.    Okay.  Do you remember how much time

7     passed between you submitting the sick call slip and the

8     exam?

9                    A.    I don't recall.

10                   Q.    Okay.  So what happened during the

11    exam?

12                   A.    There were five or six prison guards

13    in the room.  There was barely enough room for me to be

14    in the room and they took my pants down.  And they

15    checked my --.

16                   Q.    When you say they, who are you

17    talking about?

18                   A.    The -- there was a female nurse and

19    then there was a male nurse.

20                   Q.    Okay.

21                   A.    So they checked -- they checked my

22    rectum and they found that there was no bleeding.  There

23    was no abrasion and there was no swelling.

24                   Q.    Okay.  And did they check anywhere

25    else other than your rectum?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    No.

3                    Q.    Okay.  Did they ask you where you

4     were injured?

5                    A.    No.

6                    Q.    Okay.  So how did they know to check

7     your rectum?

8                    A.    Because I reported the sexual

9     assault.

10                   Q.    Okay.

11                   A.    And I wrote in the statement, the

12    sexual assault that I was sexually assaulted by C.O.

13    Perry.

14                   Q.    Okay.  So you described to them

15    where you were sexually assaulted?

16                   A.    Yes.

17                   Q.    Okay.  And then they looked at those

18    -- that spot?

19                   A.    Yes.

20                   Q.    Okay.  Okay.  Do you remember

21    anything else from the exam?

22                   A.    Yes, I'm not sure if I filled out

23    the form for an injury report because I'm allowed to

24    fill out the form, what caused my injury.  That should

25    be on the record, but --

```
1          Gunn v Beschler - 5-26-20 - Darrell Gunn
2                    Q.    Okay.  You're --.
3                    A.    -- it's hard to FOIL -- it's hard to
4     get FOIL records, so I don't know.  I was waiting for my
5     medical report and my mental health chart so maybe it's
6     there.
7                    Q.    Okay.  Did you receive any medical
8     treatment?
9                    A.    Yes, he gave me ice and Tylenol.
10                   Q.    Okay.  Did you use that?
11                   A.    Yes.
12                   Q.    Did it help?
13                   A.    Yes, I was already taking Naproxen.
14                   Q.    Okay.  Do you know if any injuries
15    were visible at the time?
16                   A.    No.  Naproxen kept the swelling
17    down.
18                   Q.    Okay.  No, I'm asking -- you said
19    no, does that mean no, there were no visible injuries?
20                   A.    Right.
21                   Q.    Okay.  Okay.  Now, at any time did
22    you file a grievance about this incident?
23                   A.    Did I file a grievance?
24                   Q.    Right.
25                   A.    Correct.
```

1       Gunn v Beschler - 5-26-20 - Darrell Gunn

2               Q.   Okay.  Actually, if we could, I'd

3       like to have you just take a look at what's been marked

4       as Exhibit Five.  Is that the inmate injury report that

5       was completed during that examination?

6               A.   Correct.

7               Q.   Okay.  And you mentioned the portion

8       where you can write it in.  Do you see your handwriting

9       on that page?

10              A.   Yes.

11              Q.   Okay.  Is it under inmate's

12      statements there?

13              A.   Right.

14              Q.   Okay.  And that's -- that's in your

15      handwriting?

16              A.   Correct.

17              Q.   And then it's signed by you as well?

18              A.   Right.

19              Q.   Okay.  And dated 03/31/13?

20              A.   Correct.

21              Q.   Okay.  So the examination, do you

22      know that it -- did it occur on March 31st, 2013?

23              A.   Yes.

24              Q.   Okay.  Okay.  You can set that

25      aside.  Thank you.  Okay.  Now, how many grievances did

1            Gunn v Beschler - 5-26-20 - Darrell Gunn

2      you file about the incident?

3                      A.   I would say close to a dozen.

4                      Q.   Well, just specifically about this -

5      - this particular incident on March 29th?

6                      A.   Oh, March 29th?  Two.  One for --

7                      Q.   Okay.

8                      A.   -- one for Sergeant Claflin and one

9      for C.O. Perry.

10                     Q.   Okay.  So if you could take a look

11     at what's been marked as Exhibit Six.  Is that one of

12     the grievances you filed?

13                     A.   Correct.

14                     Q.   Okay.  And that's your handwriting?

15                     A.   Yes.

16                     Q.   And is that document true and

17     accurate?

18                     A.   Yes.

19                     Q.   And it's signed by you?

20                     A.   Yes.

21                     Q.   You used extra sheets of paper,

22     correct?

23                     A.   Correct.

24                     Q.   Okay.  Next, taking a look at what's

25     been marked as Exhibit Seven.  Sorry.  Actually, if we

1         Gunn v Beschler - 5-26-20 - Darrell Gunn

2    can go back just to Exhibit Six for a minute.  Is that -

3    - that's the -- you said that you wrote them for

4    different people, which one -- who was this grievance

5    against?

6                      A.   Sergeant Claflin.

7                      Q.   Which ones -- Exhibit Six was the

8    one you wrote against Sergeant Claflin?

9                      A.   Sergeant Claflin is the last two

10   pages.  They gave the same number to this --

11                     Q.   Okay.

12                     A.   -- to two different grievances.

13                     Q.   Okay.  So -- so Exhibit Six consists

14   of two that they consolidated?

15                     A.   Yes.

16                     Q.   Okay.  And the first -- the first

17   four pages are a grievance against Perry?

18                     A.   Correct.

19                     Q.   And you wrote that on April 11th,

20   2013?

21                     A.   Correct.

22                     Q.   And then the last two pages, are

23   those your grievance against Sergeant Claflin?

24                     A.   Correct.

25                     Q.   Okay.  And you wrote that on April

```
1              Gunn v Beschler - 5-26-20 - Darrell Gunn

2       14th, 2013?

3                      A.   Right.

4                      Q.   Why did you wait to write these

5       grievances?

6                      A.   I guess the stress.

7                      Q.   Well, I don't want you to guess.  Do

8       you remember why?

9                      A.   I don't recall.

10                     Q.   Okay.  That's fine.  Okay.  So

11      looking next at Exhibit Seven, what's that grievance?

12                     A.   I was retaliated against.  They put

13      me on --.

14                     Q.   Okay.  And how -- how were you

15      retaliated again?

16                     A.   Put me in keep lock.

17                     Q.   Okay.  So you wrote another

18      grievance against C.O. Perry?

19                     A.   Yes.

20                     Q.   Okay.  And when were you keep

21      locked?

22                     A.   On 03/29.

23                     Q.   Okay.  Just that day?

24                     A.   Yes.

25                     Q.   And you don't -- do you know why?
```

```
1        Gunn v Beschler - 5-26-20 - Darrell Gunn
2                    A.    No, I don't.  03/29 --
3                    Q.    Okay.  Is this --
4                    A.    -- 03/30 and 03/31.
5                    Q.    Okay.  So from 03/29 to 03/31 of
6    2013?
7                    A.    Yes.
8                    Q.    Okay.  Then is this grievance
9    contained in Exhibit Seven, is that in your handwriting?
10                   A.    Correct.
11                   Q.    And it's signed by you?
12                   A.    Yes.
13                   Q.    And the contents are true and
14   accurate?
15                   A.    Yes.
16                   Q.    And did you write that grievance on
17   April 16th, 2013?
18                   A.    Yes.
19                   Q.    And do you remember why you waited
20   until then to write it?
21                   A.    I don't recall.
22                   Q.    Okay.  Next, I'd like you to take a
23   look at what's been marked as Exhibit Eight.  Is that
24   another grievance you wrote?
25                   A.    Correct.
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                      Q.    So is that in your handwriting?

3                      A.    Yes.

4                      Q.    And it's signed by you?

5                      A.    Yes.

6                      Q.    And you wrote it on April 18th,

7     2013?

8                      A.    Yes.  This is for C.O. Claflin.

9                      Q.    Sergeant Claflin?

10                     A.    No, actually, Beschler.  C.O.

11    Beschler --

12                     Q.    Okay.

13                     A.    -- for kicking me.

14                     Q.    C.O. Beschler, you're saying?

15                     A.    Yes.

16                     Q.    And again, do you remember why you

17    waited to write it until April 18th, 2013?

18                     A.    I don't recall.

19                     Q.    Okay.  Now, the other date that you

20    mentioned regarding C.O. Perry, you said was in June of

21    2013, correct?

22                     A.    Yes.

23                     Q.    Okay.  And now this claim involves,

24    is it another pat frisk?

25                     A.    Yes.

1         Gunn v Beschler - 5-26-20 - Darrell Gunn

2                   Q.   You can set that -- you can set that

3    aside.  Okay.  Now, do you remember exactly what date

4    this occurred?

5                   A.   No, I don't recall.

6                   Q.   Okay.  June -- June 11th, 2013, does

7    that sound correct?

8                   A.   Yes.

9                   Q.   Okay.  Okay.  So what happened on

10   that day?

11                  A.   I went to the yard and C.O. Perry

12   picked me out off the line, told me to get on the wall

13   for pat frisk.

14                  Q.   Okay.  So where was this in the

15   facility?

16                  A.   Outside, by the magnetometer.

17                  Q.   Okay.  So it's a different location

18   than the first pat frisk?

19                  A.   Yes.

20                  Q.   Okay.  So you were done with rec?

21                  A.   No, on the way to rec.

22                  Q.   Okay.  Do you go through the

23   magnetometer on your way to rec and back from?

24                  A.   No, only to.  Only -- only to.

25                  Q.   What do you mean?

1        Gunn v Beschler - 5-26-20 - Darrell Gunn

2                A.    You only go through it once.

3                Q.    Okay.  But -- oh, okay.  So you only

4    go through the magnetometer when you go to rec?

5                A.    Right.

6                Q.    Okay.  You don't go through it when

7    you come back from rec?

8                A.    Correct.

9                Q.    Okay.  So this time you were going -

10   - you were coming back from rec?

11               A.    No, was going to rec.

12               Q.    Okay.  You were still going to,

13   okay.  And did you go through the magnetometer?

14               A.    Yes.

15               Q.    Okay.  And did it sound?

16               A.    No.

17               Q.    Okay.  And then what happened?

18               A.    He picked me for pat frisk.

19               Q.    Okay.  What did he say?

20               A.    Get on the wall.

21               Q.    Okay.  Had you been pat frisked

22   anytime since the March 29th, 2013 incident?

23               A.    I don't recall.

24               Q.    Okay.  I'm just trying to

25   understand.  Is it like when you would get pat frisked,

1           Gunn v Beschler - 5-26-20 - Darrell Gunn

2      would it be like a weekly event, monthly?

3                   A.    No.

4                   Q.    Okay.  So was it ever something that

5      happened regularly or I mean, how frequently would pat

6      frisks happen?

7                   A.    Well, with this guy, he is a sexual

8      predator so with me it was -- it was all the time.

9                   Q.    Well, I'm just trying to understand

10     how many -- were you pat frisk by anybody other than

11     C.O. Perry during this time?

12                  A.    C.O. Shieber.

13                  Q.    Okay.  So were you -- so were there

14     any pat frisks that were conducted that were not -- that

15     are not involved in this lawsuit?

16                  A.    No.

17                  Q.    Okay.  So all of the pat frisks that

18     you experienced are -- were sexually assaultive, is that

19     correct?

20                  A.    Correct.

21                  Q.    Okay.  So he told you to get on the

22     wall?

23                  A.    Yes.

24                  Q.    And you complied?

25                  A.    Yes.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.  And then what happened?

3                    A.    He emptied my pockets.

4                    Q.    Okay.  What happened after he

5          emptied your pockets?

6                    A.    He took my bag.

7                    Q.    Sorry.  What?

8                    A.    My net bag.  I had a net bag with my

9          shower equipment.

10                   Q.    Okay.  Okay.  So after he took the

11         bag and emptied your pockets, then what?

12                   A.    He began pat frisking me.

13                   Q.    Okay.  So where did he pat frisk

14         you?

15                   A.    Began on my arms, you know,

16         squeezing and touching me in my arms.  Then began at my

17         waist, grabbed my underwear, pulled my underwear up,

18         then went down on my leg, squeezing and rubbing my legs

19         and then he took both of his hands and went back and

20         forth trying to penetrate my rectum again.

21                   Q.    Okay.  So did he put -- he out his

22         hands between your buttocks?

23                   A.    Yes.

24                   Q.    Okay.  Was it one or both hands?

25                   A.    Both.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                         Q.    Okay.  And you say trying to

3      penetrate?

4                         A.    Yes.

5                         Q.    What do you mean by that?

6                         A.    Trying to use his fingers, to go in

7      between my butthole.

8                         Q.    Okay.  And did he do so?

9                         A.    No.

10                        Q.    Okay.  So there was no penetration?

11                        A.    Correct.

12                        Q.    Okay.  And are you -- what were you

13     wearing at the time?

14                        A.    Range (sic).

15                        Q.    Okay.  Was it pants and boxers?

16                        A.    Yes.

17                        Q.    Okay.  And was he over your clothes?

18                        A.    Yes.

19                        Q.    Okay.  So there was no skin to skin

20     contact for this one either?

21                        A.    Right.

22                        Q.    Okay.  Do you believe that this was

23     another needless pat frisk?

24                        A.    Absolutely.

25                        Q.    And you believe that he did this for

```
 1            Gunn v Beschler - 5-26-20 - Darrell Gunn
 2     sexual gratification?
 3                    A.    Yes.
 4                    Q.    Okay.  How long would -- did that
 5     sexual assault take place?
 6                    A.    A few minutes.
 7                    Q.    Okay.  What happened after he
 8     touched your buttocks?
 9                    A.    He told me to get my things, to get
10     the fuck out of here.
11                    Q.    Okay.  And then what did you do?
12                    A.    I got my stuff and I left.
13                    Q.    Where did you go?
14                    A.    I went to -- to the -- what they
15     call the -- I forgot the name of the -- the area.
16                    Q.    Did you go --?
17                    A.    To the rec area.
18                    Q.    Okay.  So you went to rec after
19     that?
20                    A.    Yes.
21                    Q.    So was this pat frisk like the one
22     on March 29th, 2013?
23                    A.    Yes.
24                    Q.    Okay.  Except he did not penetrate
25     your rectum, correct?
```

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    Correct.

3                    Q.    Did you say anything during that pat

4     -- the pat frisk on June 11th?

5                    A.    No.

6                    Q.    Did he say anything?

7                    A.    No.

8                    Q.    Okay.  Were there any witnesses to

9     the June 11th, 2013 pat frisk?

10                   A.    There were some sergeants around,

11    but they didn't witness -- they didn't want -- no one

12    wants to be a witness to anything.

13                   Q.    Okay.  How many sergeants?

14                   A.    I've seen four sergeants, but I

15    could be wrong.

16                   Q.    Okay.

17                   A.    There were C.O.s around, standing

18    around.  It was a group -- there was a lot of people.

19                   Q.    So there were -- so there were a lot

20    of people there?

21                   A.    Yes.

22                   Q.    Okay.  And you described the

23    sergeants, where were they, how far were they?

24                   A.    A few feet away.

25                   Q.    Okay.  And how about the C.O.s?

    1          Gunn v Beschler - 5-26-20 - Darrell Gunn

    2                    A.    Two feet away.

    3                    Q.    Were there any other pat frisks

    4     going on?

    5                    A.    Yeah.

    6                    Q.    And were there other inmates there?

    7                    A.    Yeah.

    8                    Q.    Could the people who were in that

    9     area see what C.O. Perry was doing?

   10                    A.    Sure, they could see.

   11                    Q.    Okay.  And none of them said

   12     anything?

   13                    A.    No.

   14                    Q.    None of them did anything to stop

   15     him?

   16                    A.    No.

   17                    Q.    Do you know the names of any of the

   18     people?

   19                    A.    No.

   20                    Q.    Okay.  And then you said you went to

   21     rec, correct?

   22                    A.    Yes.

   23                    Q.    For -- during that pat frisk, did

   24     they check your shoes?

   25                    A.    No.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.  Did you have any injuries

3     from the June 11th, 2013 incident?

4                    A.    No.  Mental injuries.

5                    Q.    Okay.  So no physical injuries?

6                    A.    No.

7                    Q.    Okay.  And what men -- what mental

8     injuries did you have?

9                    A.    Depression, anxiety, emotional

10    duress.

11                   Q.    Okay.  Is it what we talked about

12    before?

13                   A.    Yes.

14                   Q.    Okay.  So you did -- did you see any

15    medical staff for any injuries?

16                   A.    No.  Well, actually, I did.  I've

17    seen Jill Northrup.

18                   Q.    Okay.  Do you remember when you saw

19    her?

20                   A.    The 13th, I think it was.

21                   Q.    Okay.  So that was another -- was it

22    another examination for sexual assault allegation?

23                   A.    Yes.

24                   Q.    Okay.  Do you know if there was an

25    injury report -- an inmate injury report completed?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.   Yes.

3                    Q.   Okay.  Do you recall if there was

4     one?

5                    A.   Yes.

6                    Q.   Okay.  Do you have a copy of that?

7                    A.   Yes.

8                    Q.   Okay.  Within thirty days, could you

9     send me a copy of that inmate injury report?  *RQ

10                   A.   Okay.

11                   Q.   Do you remember if you wrote on that

12    inmate injury report?

13                   A.   I didn't.

14                   Q.   Okay.  Did you sign it?

15                   A.   No.

16                   Q.   Okay.  Do you remember if there were

17    any injuries identified?

18                   A.   Hemorrhoid.  That was when I caught

19    hemorrhoid.

20                   Q.   Okay.  Was that the only injury?

21                   A.   Yes.

22                   Q.   Okay.  Now you're demanding eight

23    million dollars for this injury -- for this incident.

24    How did you arrive at that figure?

25                   A.   I don't know.

1              Gunn v Beschler - 5-26-20 - Darrell Gunn

2                        Q.    Okay.  So you just picked a number

3       like -- like the other claim?

4                        A.    Yes.

5                        Q.    Okay.  Did you report this sexual

6       assault?

7                        A.    Yes.

8                        Q.    When?

9                        A.    I don't recall.

10                       Q.    Okay.  How did you report it?

11                       A.    Sick call.  And when I went to the

12      rec area, I tried to report to the prison guards and

13      they told me to get out of here.  And I tried to go to

14      the library and they wouldn't let me go to the library.

15                       Q.    Okay.  So you tried to tell a C.O.

16      in the rec area?

17                       A.    Yes.

18                       Q.    Do you know who it was?

19                       A.    No.

20                       Q.    So do you know who prevented you

21      from reporting it to security?

22                       A.    No.  Some guy at the table.  He  --

23      he wouldn't let me go to sick call.  I mean, he wouldn't

24      let me go to the library.

25                       Q.    Okay.  So while you were in rec, you

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     asked to go to the library?

3                    A.    Right.

4                    Q.    Okay.  Did you say anything to him

5     other than that you wanted to go to the library?

6                    A.    Yeah, I wanted to report a sexual

7     assault.

8                    Q.    Okay.  Then did you stay at rec?

9                    A.    Yes.  I couldn't go back, I had to

10    wait --.

11                   Q.    Okay.  How long were you at rec?

12                   A.    I don't recall.

13                   Q.    Do you remember what you did at rec?

14                   A.    I had to wait to go back to my cell.

15    I didn't do anything.

16                   Q.    Okay.  What -- what do you do in the

17    field house?

18                   A.    Oh, that's what it's called, the

19    field house.  I couldn't remember.  There is T.V.s.

20    There is track.  There is showers.  There is telephones.

21    There is a ping pong table.  Weights so --.

22                   Q.    Okay.  Do you remember if you used

23    any of those?

24                   A.    No, I didn't do anything.  I tried

25    to go to the library so I could report it, but he

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     wouldn't let me go.

3               Q.   Okay.  Besides trying to report it

4     to -- to that C.O. or go to the -- the library at that

5     time, did you do anything else to report it?

6               A.   Sick call.

7               Q.   Okay.  Do you remember when you did

8     a sick call slip?

9               A.   That evening.

10              Q.   Okay.  What did you do with the sick

11    call slip?

12              A.   Put it on the gate.

13              Q.   Okay.  Did you request emergency

14    sick call?

15              A.   No.

16              Q.   After the March 29th incident, did

17    you request emergency sick call?

18              A.   No.

19              Q.   Okay.  So do you remember when the

20    sick call happened?

21              A.   I believe the 13th.

22              Q.   Okay.  And then later that -- later

23    that night you received the exam?

24              A.   No, the 13th.

25              Q.   Okay.  Okay.  When -- when on the

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2     13th was the exam?

3                    A.    Either the 13th or the 14th.

4                    Q.    Do you remember what time of day?

5                    A.    Yes, it was before noon.

6                    Q.    Okay.  Now, did you have any contact

7     with C.O. Perry after that pat frisk on June 11th, 2013?

8                    A.    Yes.

9                    Q.    Okay.  When else did you have

10    contact with him?

11                   A.    He would intimidate me.  He harassed

12    me.  He was -- he was still pat frisking me.  I can't

13    remember the dates, but I was still getting pat frisked

14    by him.

15                   Q.    Okay.  And were those sexually

16    assaultive pat frisks?

17                   A.    Absolutely.

18                   Q.    Okay.  And approximately how many

19    other times did this happen?

20                   A.    Four.

21                   Q.    Okay.  Any other contacts with C.O.

22    Perry?

23                   A.    None.

24                   Q.    Okay.  Now, did you grieve the

25    incident?

         1          Gunn v Beschler - 5-26-20 - Darrell Gunn

         2                    A.   Yes.

         3                    Q.   And do you remember how many -- did

         4     you file one grievance?

         5                    A.   I believe so.

         6                    Q.   Okay.  If you could please take a

         7     look at what's been marked as Exhibit Nine.  Do you

         8     recognize that as the grievance that you wrote?

         9                    A.   Yes.

        10                    Q.   Okay.  And you wrote that on June

        11     23rd, 2013?

        12                    A.   Yes.

        13                    Q.   And that's in your handwriting?

        14                    A.   Yes.

        15                    Q.   And signed by you?

        16                    A.   Yes.

        17                    Q.   And are the contents of that

        18     document true and accurate?

        19                    A.   Yes.

        20                    Q.   And do you remember why you waited

        21     until June 23rd to draft this?

        22                    A.   I don't recall.

        23                    Q.   Okay.  Did you also report C.O.

        24     Perry to the police?

        25                    A.   Yes.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.    Okay.  When did you do that?

3                    A.    I don't recall.  I also reported him

4          to the district attorney, Chemung County, but they

5          refused to file charges.

6                    Q.    Okay.  So no -- no charges or

7          anything came off the reporting?

8                    A.    Well, when I was sending out the

9          mail, it came back.  It's just -- I was getting

10         overwhelmed with it and --.

11                   Q.    Okay.  Wait.  So the documents you -

12         - the reports that you sent out were returned to you?

13                   A.    Yes.

14                   Q.    Okay.  Did they go to the A.D.A.?

15                   A.    No.  I sent them to the Court.  The

16         Court wouldn't forward them.

17                   Q.    Okay.  So you sent the document

18         intended to go to the A.D.A. to the Court?

19                   A.    Right.

20                   Q.    Okay.  And the Court sent it back to

21         you?

22                   A.    Right.

23                   Q.    Okay.  And then where did you send

24         the one to the police?

25                   A.    Troopers.

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   Okay.

3                    A.   State police.

4                    Q.   And was that returned to you?

5                    A.   Yeah.  They responded with the

6     inspector general.

7                    A.   Okay.  So there -- do you remember -

8     - and you said you don't remember when it was?

9                    A.   Correct.

10                   Q.   And why did you write to the state

11    police?

12                   A.   I wanted to press charges.

13                   Q.   Did anything come of the letter that

14    you wrote to the police?

15                   A.   No.

16                   Q.   Okay.  If you could please take a

17    look at what's been marked as Exhibit Ten.

18                   Do you recognize that document?

19                   A.   Yes.

20                   Q.   Okay.  Is this the letter that you

21    wrote to the state police?

22                   A.   Yes.

23                   Q.   Okay.  Is that in your handwriting?

24                   A.   Yes.

25                   Q.   And it's signed by you?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.    Yes.

3                    Q.    And the contents are true and

4          accurate?

5                    A.    Yes.

6                    Q.    And you wrote that on June 14th,

7          2013?

8                    A.    Correct.

9                    Q.    Now are you claiming -- you can set

10         that one aside, we're through with that.

11                   Are you claiming that C.O. Perry

12         retaliated against you?

13                   A.    Yes.

14                   Q.    Okay.  And describe what is your

15         retaliation claim against C.O. Perry?

16                   A.    Denied me meals.  Denied me law

17         library.  Denied me recreation.

18                   Q.    Well, is it --?

19                   A.    Keep locking.

20                   Q.    Okay.  So are you claiming that this

21         pat frisk was retaliatory or something else?

22                   A.    Pat frisk is retaliatory too.

23                   Q.    Okay.  So what was this pat -- are

24         you saying that June 11th, 2013 pat frisk was

25         retaliatory?

1             Gunn v Beschler - 5-26-20 - Darrell Gunn

2                        A.    Correct.

3                        Q.    Okay.  And what was it in

4     retaliation for?

5                        A.    Reporting the March -- the March

6     29th pat frisk.

7                        Q.    Okay.  Do you have any proof that

8     C.O. Perry did this to retaliate against you?

9                        A.    When I filed the complaint and the

10    injury report, all the C.O.s there, retaliate --

11    retaliation is normal.

12                       Q.    So you -- you believe that those

13    other officers told C.O. Perry?

14                       A.    Absolutely.

15                       Q.    Okay.  But you weren't present for

16    any of that?

17                       A.    No.

18                       Q.    Okay.

19                       A.    They thought it was funny.

20                       Q.    Any other -- okay.  Any other

21    evidence that you believe it was retaliatory?

22                       A.    No.  It's predatory.  Not only

23    retaliatory, it's predatory.

24                       Q.    Okay.  Are you talking about how he

25    was doing it for sexual gratification?

1          Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    A.   Yes.

3                    Q.   Okay.  Okay.  So I think this is a

4     good place for us to stop and then we can resume on

5     another day.  Does that sound good?

6                    A.   Okay.

7                    Q.   Okay.  We can talk about your other

8     incidents on another day if that works, okay?

9                    A.   All right.

10                    Q.   Okay.  So if I could -- could we

11    hold -- can we hold onto those exhibits and then we'll

12    work on getting another date?

13                    THE COURT REPORTER:  Okay.  Do you want

14    to go off the record now?

15                    MS. MCKAY:  Yeah.  We'll go off.  Okay.

16                    (Off the record, 1:08 p.m. to 1:11 p.m.)

17                    THE COURT REPORTER:  Back on the record.

18                    BY MS. MCKAY:  (Cont'g.)

19                    Q.   Okay.  So Mr. Gunn, I just also

20    wanted to explain to you the process.  So as I explained

21    before, the stenographer is going to provide us with a

22    transcript of the proceedings today.  And I'm going to

23    provide you with a copy of those and it will have a

24    sheet called an errata sheet on it, okay?

25                    A.   Uh-huh.

1      Gunn v Beschler - 5-26-20 - Darrell Gunn

2                    Q.   And that sheet will give you an

3      opportunity -- you can look through and look for any

4      errors and if you see any, like, mistakes or any errors

5      in the transcript, you can write those on there and then

6      sign it and send it to me, okay?

7                    A.   Okay.

8                    Q.   So the kinds of errors that I want

9      you to keep an eye out for, sometimes -- they don't

10     happen a lot, but sometimes there'll be a grammatical

11     mistake like, you know, you said one form of night and

12     they wrote knight with a -- with a K.

13                   A.   Okay.

14                   Q.   And so we just -- sometimes we will

15     try to note the mistake there.  The other thing I want

16     you to just look out for when you review it is to make

17     sure that there is no substantive errors in terms of the

18     way that something was explained if -- if you need to

19     correct something, I need you to tell me as soon as you

20     can, okay?

21                   A.   Okay.

22                   Q.   Okay.

23                   THE COURT REPORTER:  All set?

24                   MS. MCKAY:  Yes.

25                   THE WITNESS:  Yeah.

```
1              Gunn v Beschler - 5-26-20 - Darrell Gunn

2                        MS. MCKAY:  That's great.

3                        THE COURT REPORTER:  We're off the

4        record.

5                        MS. MCKAY:  We can go off.  Okay.

6                        (Off the record, 1:12 p.m.)

7                        (The deposition concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              Gunn v Beschler - 5-26-20 - Darrell Gunn

2

3    STATE OF                )
     COUNTY OF               )
4

              I, DARRELL GUNN, have read the foregoing record of
5    my testimony taken at the time and place noted in the heading
     hereof and do hereby acknowledge:
6
     (Please check one)
7              ( ) That it is a true and correct transcript of
     same.
8
              ( ) With the exceptions noted in the attached
     errata sheet, it is a true and correct transcript of same.
9

10                                  X
                                    DARRELL GUNN
11
     Sworn to before me this
12   _____day of _____ 2020.
     X_____
13   NOTARY PUBLIC
     My Commission Expires:
14   _____

15

16

17

18

19

20

21

22

23

24

25

1            Gunn v Beschler - 5-26-20 - Darrell Gunn

2

3       I, HANNAH ALLEN, do hereby certify that the foregoing

4   testimony of DARRELL GUNN was taken by me, in the cause, at

5   the time and place, and in the presence of counsel, as stated

6   in the caption hereto, at Page 1 hereof; that before giving

7   testimony said witness was duly sworn to testify the truth,

8   the whole truth and nothing but the truth; that the foregoing

9   typewritten transcription, consisting of pages number 1 to

10  144, inclusive, is a true record prepared by me and completed

11  by Associated Reporters Int'l., Inc. from materials provided

12  by me.

13

14  HANNAH ALLEN, Reporter

15

16

17

18

19

20

21

22

23

24

25

1              Gunn v Beschler - 5-26-20 - Darrell Gunn

2              ASSOCIATED REPORTERS INTERNATIONAL, INC.
                         (800) 523-7887
3
      Date:
4     Case Name:  Gunn v Beschler
      Index Number:  16-CV-6206
5     Deponent:  DARRELL GUNN
      Deposition Date:  5-26-20
6     Examining Attorney:  Heather McKay

7     Dear Ms. McKay,

8
      Please read and make any changes and/or corrections in your
      testimony and sign the transcript in the presence of a notary
9
      public.  Please do so within thirty (30) days.  If you fail
10    to sign the transcript within thirty (30) days, it will be
      delivered to the appropriate parties without signature.
11    Return the transcript with corrections, if any, to:

12           OFFICE OF NY STATE ATTORNEY GENERAL
             BY:  HEATHER MCKAY, A.A.G.
13           144 Exchange Blvd., Suite 200
             Rochester, New York 14614
14
      CORRECTIONS:
15
      _____        Word or phrase: _____
16
                      Corrected to:   _____
      _____        Word or phrase: _____
17
                      Corrected to:   _____
18    _____        Word or phrase: _____
                      Corrected to:   _____
19    _____        Word or phrase: _____
                      Corrected to:   _____
20    _____        Word or phrase: _____
                      Corrected to:   _____
21    _____        Word or phrase: _____
                      Corrected to:   _____
22    _____        Word or phrase: _____
                      Corrected to:   _____
23
      _____
      Date Signed
24                                    _____

                                      DARRELL GUNN
25

| A |
|---|

**A.A.G** 2:8  147:12
**A.D.A** 138:14,18
**a.m** 1:13  7:2,4  56:4
**Abilify** 15:2  105:4
**ability** 15:13
**able** 82:10  106:17
**abrasion** 114:23
**Absolutely** 75:22  127:24  136:17
  141:14
**Access** 37:11
**accurate** 36:16  38:25  40:7  41:15
  118:17  121:14  137:18  140:4
**accusation** 49:5
**accusing** 48:25
**acknowledge** 145:5
**Act** 50:23
**actions** 32:15,24  35:7,8,12,13
**additional** 31:6
**adjourn** 9:11,19
**administer** 6:11
**affect** 15:5,12
**affirm** 7:6
**agree** 9:11  43:16  49:4  107:3
**agreed** 6:3  9:19
**agreement** 9:17
**ahead** 8:24  49:12  71:5
**ailments** 58:2
**AL** 1:8
**alarm** 61:13,24  62:5,8  73:11
**alert** 61:12
**allegation** 131:22
**allegations** 49:7  50:4,14
**ALLEN** 146:3,14
**allow** 44:15
**allowed** 8:17  115:23
**amended** 4:8,10,12  38:4,8,9  39:8
  40:24
**amount** 11:3
**and/or** 147:8
**answer** 8:11,18  10:13  79:18
**answered** 38:5
**answers** 7:24
**anxiety** 16:23  96:22  100:2,6
  131:9
**anybody** 51:19  53:7  125:10
**anymore** 101:13  110:18
**anytime** 124:22
**appeal** 28:11  33:3

**appeals** 33:4
**appear** 38:18
**appearances** 2:2  45:20
**appeared** 88:15
**appropriate** 147:10
**approximate** 35:15  43:21
**approximately** 12:19  15:21  17:8
  19:25  29:19  30:5  31:12  35:11
  35:22  43:3  58:20  89:2  103:8
  112:7  113:25  136:18
**April** 119:19,25  121:17  122:6,17
**area** 47:24  48:3  52:2  61:4  81:22
  128:15,17  130:9  133:12,16
**arms** 47:6,8  62:23,24,25  63:3,7
  69:7  102:21  126:15,16
**aroused** 62:2
**arrive** 110:3  132:24
**aside** 41:17  117:25  123:3  140:10
**asked** 8:17  76:19  78:23  79:12
  81:14,15  112:25  134:2
**asking** 14:12  17:21  18:12  19:9
  31:20  44:9  49:17  50:14  53:23
  81:5,16  85:22  90:5  116:18
**assault** 18:23  29:11,12,13  49:2
  49:5,8,22  50:3,16  51:5,20
  53:8,14,20  54:6  71:12,19
  74:15  75:19  76:13  81:3  84:17
  84:21  85:17  89:21,24  90:2,3
  91:4  92:18  94:7  96:9  115:9,12
  128:5  131:22  133:6  134:7
**assaulted** 21:15,22  74:18  75:24
  83:6,7  85:9,14  86:3  98:13
  115:12,15
**assaulting** 72:5
**assaultive** 125:18  136:16
**assaults** 29:25  30:5,21,25  31:7
  50:8  53:17,23  90:4
**assisted** 69:12
**Associated** 146:11  147:2
**assume** 8:12
**attached** 40:9  145:8
**attacking** 77:3
**attempted** 20:10  23:8
**attend** 11:5
**attorney** 2:7  138:4  147:6,12
**attorneys** 6:4
**August** 94:16  109:18
**authorized** 6:10
**auto** 12:6,6

**automatically** 78:23
**available** 110:11
**award** 34:13
**awarded** 34:11
**aware** 37:13 48:5 50:15

---

**B**

**B** 4:2
**back** 16:13,13 18:9 21:2 25:2
  37:24 44:15 48:23 49:14,15
  50:10,10 63:18 64:3,16,16
  67:6,9 68:3 71:21,23 72:16
  73:23 74:4,5 76:20 78:2 79:2
  79:6,12 80:7 82:4 99:21 119:2
  123:23 124:7,10 126:19 134:9
  134:14 138:9,20 142:17
**bad** 108:24
**bag** 126:6,8,8,11
**balance** 82:20
**barely** 114:13
**based** 81:4,4,19
**basically** 8:4 29:14
**basis** 91:9 96:12 101:23
**beat** 82:21 101:8
**becoming** 108:17
**began** 46:5 62:20,23,24 64:4
  126:12,15,16
**belief** 96:12
**believe** 15:4 23:23 24:11 29:9
  36:19 53:15,18 55:13 56:4
  62:7 64:13 73:4 74:11,14,21
  85:8,25 87:21 89:20 93:17,20
  94:2 96:12 99:13 127:22,25
  135:21 137:5 141:12,21
**believing** 91:10
**bench** 12:3 102:23
**Beschler** 1:1,8 2:1 3:1 4:1,20
  5:1 6:1 7:1 8:1 9:1 10:1 11:1
  12:1 13:1 14:1 15:1 16:1 17:1
  18:1 19:1 20:1 21:1 22:1 23:1
  24:1 25:1 26:1 27:1 28:1 29:1
  30:1 31:1 32:1 33:1 34:1 35:1
  36:1 37:1 38:1 39:1 40:1 41:1
  42:1 43:1 44:1 45:1 46:1 47:1
  48:1 49:1 50:1 51:1 52:1 53:1
  54:1 55:1 56:1 57:1 58:1 59:1
  59:9 60:1,21 61:1 62:1 63:1
  64:1 65:1 66:1 67:1 68:1 69:1
  69:12 70:1,16 71:1 72:1 73:1
  74:1 75:1 76:1,20 77:1,13,16

**78:1,14 79:1 80:1,20 81:1,7**
  81:10,17 82:1 83:1 84:1 85:1
  86:1,24 87:1,4 88:1 89:1 90:1
  91:1 92:1 93:1 94:1 95:1 96:1
  97:1 98:1 99:1 100:1 101:1
  102:1 103:1 104:1 105:1 106:1
  107:1 108:1 109:1 110:1 111:1
  112:1 113:1 114:1 115:1 116:1
  117:1 118:1 119:1 120:1 121:1
  122:1,10,11,14 123:1 124:1
  125:1 126:1 127:1 128:1 129:1
  130:1 131:1 132:1 133:1 134:1
  135:1 136:1 137:1 138:1 139:1
  140:1 141:1 142:1 143:1 144:1
  145:1 146:1 147:1,4
**better** 9:2
**biased** 49:20 112:14
**bid** 43:14,20
**bids** 44:2
**big** 16:10 58:12,14
**Birth** 10:24
**bit** 8:24 54:12
**bleeding** 114:22
**block** 58:11,22 76:4 82:9 83:19
**blocking** 67:16,19 72:23
**Blvd** 2:9 147:13
**body** 67:18
**boots** 80:17
**born** 11:9
**bottom** 36:25
**bouncing** 100:21
**box** 21:17 56:14
**boxers** 65:19,22 127:15
**break** 8:15,19
**breaks** 8:16
**brief** 11:22
**bring** 56:9
**brought** 32:11,14,16 35:8,12,13
**Brush** 107:12,13,13,15,18,19
**BuSpar** 15:2 104:25
**busted** 19:19
**butt** 64:17 66:7 72:7,12,15
**butthole** 127:7
**buttocks** 48:3 66:12 67:25 72:6
  72:15 126:22 128:8

---

**C**

**C** 3:2
**C.O** 55:12 58:16 59:6,11 60:21
  60:21 61:10,17 68:14 69:25

70:16 74:8,11 76:19 77:12,16
77:20 78:23 80:20 81:7,10,17
81:17 83:5,18,21 85:3,23 86:4
86:24 87:4 90:9 91:3,12,20
98:11 101:6 107:13,18 112:21
113:2 115:12 118:9 120:18
122:8,10,14,20 123:11 125:11
125:12 130:9 133:15 135:4
136:7,21 137:23 140:11,15
141:8,13
**C.O.s** 59:12 129:17,25 141:10
**calendar** 13:22,23
**call** 14:2,5 51:14,15 52:13,16
52:24 54:12,14,19 55:8,11,21
55:22 56:3 57:2,9,12,22 111:5
111:8,19,24,25 113:6,10,21
114:4,7 128:15 133:11,23
135:6,8,11,14,17,20
**call-out** 57:19,24
**call-outs** 57:3,5,15
**called** 33:24 111:24,24 134:18
142:24
**calls** 52:18
**caption** 146:6
**care** 53:3 54:13,17 56:10,16
92:20
**case** 5:7 10:2 31:17,19,22 32:2
32:25 147:4
**cases** 33:17
**Catherine** 34:17
**caught** 132:18
**cause** 7:7 74:24 90:7 96:16
146:4
**caused** 17:17 18:14 19:22 89:17
89:22 91:7 93:21 96:5,9,13
115:24
**cell** 52:8,11 56:14 68:4 71:21
71:23 74:6 76:20 77:21,25
78:11 79:9,12 82:4,8,14 83:2
83:5,11,19 84:11 134:14
**Certificate** 12:25
**certify** 146:3
**Chad** 1:8 59:9 78:14
**change** 105:25
**changed** 97:24 107:24
**changes** 147:8
**charges** 138:5,6 139:12
**chart** 116:5
**check** 46:19 47:2,5,12,18,21,24
48:3,12,13 63:2,7 73:12,25

77:13 114:24 115:6 130:24
145:6
**checked** 48:16 63:3 64:7 68:15
68:18,23 69:2 73:6,18 114:15
114:21,21
**checking** 73:10
**checks** 68:10,12,14 69:10
**Chemung** 138:4
**childhood** 21:13,15 97:5
**Choke** 102:21
**choked** 102:25
**cholesterol** 15:4
**Claflin** 4:16 60:19,19,21 70:7
75:6,18 76:23 77:10 86:16,22
118:8 119:6,8,9,23 122:8,9
**claim** 30:18 35:13 36:5 122:23
133:3 140:15
**claiming** 93:11,14,15 96:18
140:9,11,20
**claims** 33:5,12,21,21 35:7 42:21
**clear** 18:4
**cleared** 58:11 59:22
**clearly** 9:25 10:6
**clergy** 53:9,10
**clerk** 13:7,15
**Clerk's** 6:6
**clinician** 105:22 107:19
**close** 42:2 118:3
**closer** 76:4
**clothes** 65:5,7 127:17
**clothing** 47:10,12 65:25
**Cocaine** 24:11
**code** 76:9
**cold** 37:12 99:4
**college** 11:4,5,6
**come** 14:14 16:6 25:2 49:14
50:10 124:7 139:13
**comes** 68:14
**comfortable** 106:14
**coming** 58:11 124:10
**Commission** 145:13
**committed** 53:20
**communicate** 105:24
**Community** 11:6
**complaint** 4:8,10,12,18,20,22
36:7 38:5,8,9 39:9 40:21,24
141:9
**complaint/claim** 4:6
**complaints** 36:10

**completed** 117:5 131:25 146:10
**complied** 62:13 125:24
**comprehension** 15:6
**concealing** 48:6
**concerned** 106:8
**concerns** 9:4
**concluded** 144:7
**conducted** 125:14
**conducts** 54:6
**confidential** 106:11,13
**connection** 22:6
**consist** 16:21
**consisted** 11:23
**consisting** 146:9
**consists** 119:13
**consolidated** 33:9,15 119:14
**Cont'g** 35:5 104:7 142:18
**contact** 75:9 85:3,6,11,23 86:21
  87:4 127:20 136:6,10
**contacts** 136:21
**contained** 121:9
**contents** 36:15 38:24 40:6 41:14
  84:14 121:13 137:17 140:3
**contraband** 46:19,21 47:21
**controlled** 24:14 26:8
**conversation** 79:9 83:9 84:10,15
  94:8 112:21 113:2,6
**conviction** 23:5,7,12 24:13,16
**convictions** 25:16,21,24 26:2,18
**copies** 14:13,16
**copy** 132:6,9 142:23
**corner** 36:20 58:11
**correct** 14:10 19:3 23:21,22
  24:19,22 25:4,10 28:5,22
  29:17 30:22,23 32:7,8 33:10
  33:12,13,16,22,25 34:13,14
  36:10,11 37:5,6,14 38:13 39:2
  39:13,18,20 40:5,10,11 41:4
  41:10,16 42:17 43:18,23 44:3
  45:8,12,17 46:12 47:18 48:17
  48:24 49:2,3,10 50:4,19 51:2
  51:3,24 52:14,22,23 53:2,11
  53:17,20 54:7,20,21 55:25
  56:22,23 58:6 59:4,13 60:13
  60:16 61:20,21 62:6,10 64:22
  65:20,25 66:13 68:18 71:10,25
  73:8,20,22,24 75:4,13 77:14
  77:15,22 78:4 79:10,14,20,22
  80:6 81:6 82:18 83:2,3,20
  86:14 87:11,12 88:3,5,18,19

88:25 89:24 90:13 91:7,14
93:12,23 94:21 96:14,25 97:5
97:6 98:7,8 102:4 104:3,20
105:9 106:15 107:4 109:20,25
110:2 112:5,11 113:4,21,22
116:25 117:6,16,20 118:13,22
118:23 119:18,21,24 121:10,25
122:21 123:7 124:8 125:19,20
127:11 128:25 129:2 130:21
139:9 140:8 141:2 143:19
145:7,8
**Corrected** 147:16,17,18,19,20,21
  147:22
**Correctional** 1:14 22:13 42:16
**corrections** 147:8,11,14
**corridor** 58:25 59:24
**counsel** 146:5
**county** 6:6 25:18 138:4 145:3
**couple** 43:7 72:17
**court** 1:2 5:7 9:18,18 27:3,12
  27:15 31:21 32:15,24 33:3,12
  33:20 35:7,8,12 45:20 103:16
  103:17 138:15,16,18,20 142:13
  142:17 143:23 144:3
**cover** 42:7
**COVID** 9:4
**COVID-19** 16:7
**cream** 95:15
**current** 12:5 16:8,14 18:12,13
  23:4 25:14
**currently** 12:10 13:10 15:24
  16:17
**cut** 18:2

---

**D**

**D** 3:2,2 4:2,24
**damages** 34:10,13 110:12
**Darrell** 1:1,5,11 2:1,4 3:1,3
  4:1 5:1 6:1 7:1,10,13 8:1 9:1
  10:1,17 11:1 12:1 13:1 14:1
  15:1 16:1 17:1 18:1 19:1 20:1
  21:1 22:1 23:1 24:1 25:1 26:1
  27:1 28:1 29:1 30:1 31:1 32:1
  33:1 34:1 35:1 36:1 37:1 38:1
  39:1 40:1 41:1 42:1 43:1 44:1
  45:1 46:1 47:1 48:1 49:1 50:1
  51:1 52:1 53:1 54:1 55:1 56:1
  57:1 58:1 59:1 60:1 61:1 62:1
  63:1 64:1 65:1 66:1 67:1 68:1
  69:1 70:1 71:1 72:1 73:1 74:1

75:1  76:1  77:1  78:1  79:1  80:1
81:1  82:1  83:1  84:1  85:1  86:1
87:1  88:1  89:1  90:1  91:1  92:1
93:1  94:1  95:1  96:1  97:1  98:1
99:1  100:1  101:1  102:1  103:1
104:1  105:1  106:1  107:1  108:1
109:1  110:1  111:1  112:1  113:1
114:1  115:1  116:1  117:1  118:1
119:1  120:1  121:1  122:1  123:1
124:1  125:1  126:1  127:1  128:1
129:1  130:1  131:1  132:1  133:1
134:1  135:1  136:1  137:1  138:1
139:1  140:1  141:1  142:1  143:1
144:1  145:1,4,10  146:1,4
147:1,5,24
**date** 1:12  9:13  10:24  19:5  23:11
23:21  37:20  58:7  85:14  111:13
111:15,15  122:19  123:3  142:12
147:3,5,23
**dated** 40:4  41:12  117:19
**dates** 9:11,12,19  86:5  136:13
**day** 8:24  37:7  52:14  58:9  68:19
68:21,24  83:22  84:7,7,11,13
111:11  113:24,25  114:3  120:23
123:10  136:4  142:5,8  145:12
**days** 9:12,19  52:16,19,25  53:4
88:7,8,10,15  89:6  90:16  93:9
103:22  132:8  147:9,10
**dealing** 17:18  58:2
**Dear** 147:7
**decide** 58:5
**declaration** 28:24
**DEFENDANT** 2:6
**defendants** 1:9  31:17,22  33:5
49:2
**degree** 24:14
**delay** 29:5  90:18
**delivered** 147:10
**demanding** 132:22
**Denied** 140:16,16,17
**depending** 8:25
**depends** 57:25
**Deponent** 147:5
**deposition** 1:11  7:20  144:7
147:5
**depressed** 96:24  97:5,8,12
**depression** 16:22  17:19  21:9,11
37:12  96:20,24  97:15  108:22
131:9

**describe** 44:10  46:16  58:9  60:8
62:21  71:14  100:3,11  140:14
**described** 18:17  48:9  68:2
115:14  129:22
**description** 4:4  74:24
**despair** 96:22
**details** 49:17
**determine** 29:5
**device** 73:19  77:13
**diagnosed** 21:14  97:7
**diagnosis** 57:25
**diary** 13:22
**different** 10:21  33:4  84:7  103:3
119:4,12  123:17
**Direct** 3:4  7:16
**Directive** 44:8
**directly** 70:4
**director** 105:25  106:5
**disbelief** 66:24
**discipline** 53:17,25
**discovered** 94:6
**discuss** 42:3
**dismiss** 29:10
**dismissed** 29:2,7,8  30:10  33:2
34:9  35:14
**district** 1:2,3  138:4
**dizziness** 15:16
**dizzy** 15:7,8,10
**docket** 5:7  27:5,17  103:18
**doctor** 16:5  57:11,16
**document** 36:2,18  38:2,7,21  39:6
39:17,20  40:18  41:9,15  118:16
137:18  138:17  139:18
**documents** 14:10  35:24  40:12
41:21,24  138:11
**doing** 9:4,7,24  13:9  50:7  52:2
74:19,22  77:5  100:14  130:9
141:25
**dollars** 109:25  132:23
**dozen** 118:3
**draft** 137:21
**drafted** 36:9
**drop** 56:13
**duly** 146:7
**duress** 131:10

---
**E**
---
**E** 3:2,2,2  4:2,2  5:2,2
**early** 10:13
**easier** 33:7

**education** 11:3
**effort** 10:9
**eight** 4:19 12:14,18 37:2 112:8
 121:23 132:22
**eighty-five** 12:14
**either** 127:20 136:3
**either/or** 46:9
**Elimination** 50:23
**Elmira** 42:16 52:19,22,25 54:13
 91:24 101:6
**emergency** 54:17 55:8 56:16,20
 135:13,17
**emotional** 131:9
**emotionally** 21:17
**emptied** 126:3,5,11
**empty** 46:6,7,10
**ended** 68:5 72:21
**English** 11:7
**episodes** 101:5
**equipment** 126:9
**errata** 142:24 145:8
**errors** 143:4,4,8,17
**escorted** 82:3
**especially** 9:4
**ESQ** 2:4
**estimate** 18:20 27:21 28:3 30:24
 69:22 71:19 82:11 88:9 108:15
 109:4 110:12
**ET** 1:8
**evening** 56:6 90:17 112:2,4
 135:9
**event** 87:6 89:6 125:2
**events** 12:16 13:19 20:17 33:22
 41:23 42:14,25 50:15
**Eventually** 78:12
**everybody** 67:16,17 81:22
**evidence** 41:25 93:25 94:4
 141:21
**exactly** 61:5 62:14,21 75:5
 107:22 112:10 123:3
**exam** 58:5 112:4,12,15 113:18,20
 113:24 114:8,11 115:21 135:23
 136:2
**examination** 3:4 7:16 54:6 92:8
 93:7 111:25 117:5,21 131:22
**Examining** 147:6
**exceptions** 145:8
**Exchange** 2:9 147:13
**Excuse** 81:9 101:10

**exhibit** 4:5,7,9,11,13,15,17,19
 4:21,23 35:25 37:23 38:8 39:4
 39:21 40:17 41:25 117:4
 118:11,25 119:2,7,13 120:11
 121:9,23 137:7 139:17
**exhibits** 40:10 142:11
**exist** 49:25 90:21
**expected** 23:20
**experience** 11:18 49:24
**experienced** 44:10 125:18
**Expires** 145:13
**explain** 8:9 19:17 64:20 142:20
**explained** 63:24 105:24 142:20
 143:18
**extent** 110:13
**exterior** 87:18
**extra** 118:21
**extremities** 47:3,5
**eye** 143:9

---
**F**

**F** 3:2
**face** 19:8,13,15,19,20 20:4
**facility** 1:14 22:13 29:22 42:16
 42:19 58:21 78:18 123:15
**facing** 70:23
**fact** 74:17
**fail** 147:9
**fair** 23:23
**fall** 102:22
**familiar** 34:23 49:18 50:6
**far** 18:8 53:21 69:19,21 70:20
 82:8,11 129:23
**fast** 100:13
**fatiguing** 9:6
**fear** 82:24 100:25 101:2
**federal** 27:3,12,15,18,21 28:4
 28:14,18 29:10 30:9 31:21
 32:10 103:16
**feel** 9:8 15:15 47:14 61:19 97:8
 97:15 101:20 106:14
**feeling** 15:8,16
**feelings** 20:8
**feet** 60:7 69:22,23 70:14,18
 82:11 129:24 130:2
**felonies** 24:7,9
**felony** 25:24
**felt** 21:18 49:19 62:2 97:12
 106:21 107:5,16 112:15
**female** 114:18

field 134:17,19
fifteen 71:21,24 109:25
fifth 24:14 26:8
fifty-one 36:19 37:2
fifty-seven 7:4
figure 110:4 132:24
file 30:13,17 37:9 79:17 116:22
 116:23 118:2 137:4 138:5
filed 4:16 29:11 33:11 37:19
 54:2 118:12 141:9
filing 6:5 28:25 54:3
fill 54:20 115:24
filled 115:22
fine 8:16 30:15,16 77:4 120:10
finger 64:19 66:17,18,19 67:3
 67:25 72:3
fingers 127:6
finishing 10:10
first 4:8 9:12 18:25 28:14 38:4
 38:8,9 46:2 55:11 58:7 105:21
 119:16,16 123:18
first-degree 23:6,8,9
five 4:13 12:14,18 29:14 35:21
 35:22 114:12 117:4
FOIL 116:3,4
folder 42:8
follows 6:4
foot 70:15 75:12 100:20
foregoing 145:4 146:3,8
forgot 128:15
form 6:8 115:23,24 143:11
forth 64:16,16 67:6,10 72:16
 126:20
forty 82:11
forty- 36:25
forty-eight 36:19
forty-four 36:23
forward 138:16
found 39:25 106:4 114:22
four 4:11 24:21 27:23,24 28:9
 28:14 33:4,11 35:7 40:17,18
 52:18,25 119:17 129:14 136:20
frequently 98:15,17 105:18
 125:5
fresh 32:23
Friday 52:17 53:6
frisk 44:6,11,16,23,24 45:4
 46:5,15,21 48:10,19 60:12
 61:20,23 62:8 64:4 68:5 69:16
 70:2 71:23 72:4 73:2,7 74:24

77:6 82:13 84:6,12 88:4 89:17
 90:6 91:7,14 102:17,20 109:25
 122:24 123:13,18 124:18
 125:10 126:13 127:23 128:21
 129:4,9 130:23 136:7 140:21
 140:22,24 141:6
frisked 42:25 43:13,22 62:12
 71:20 101:5 124:21,25 136:13
frisking 46:17 62:20 126:12
 136:12
frisks 42:22 43:17 44:10,17,22
 45:8,8,14 48:15 91:12,21
 98:11 125:6,14,17 130:3
 136:16
front 41:21
fuck 63:25 64:14 128:10
full 7:12 10:16 110:13
funny 141:19
Further 71:9

G

G 3:2 58:11,22
G.E.D 11:15
gate 54:15,24 55:11 113:11
 135:12
general 2:7 49:13 139:6 147:12
generally 50:4,14
Gessner 49:14
getting 88:13 136:13 138:9
 142:12
give 7:7 8:4 10:14 11:22 143:2
given 10:21
giving 20:13 146:6
go 23:14 42:8 45:3 49:12 52:11
 52:12 55:22 56:25 59:2,24
 67:21 75:3 79:12 80:7 85:16
 85:16 91:17 95:18 99:21
 101:11 102:5,7,14,15,18
 110:19 119:2 123:22 124:2,4,4
 124:6,13 127:6 128:13,16
 133:13,14,23,24 134:2,5,9,14
 134:25 135:2,4 138:14,18
 142:14,15 144:5
goes 55:14
going 8:22 9:2 10:12 13:21
 18:14 20:17 23:2 31:4 41:22
 44:24 45:3,11 49:14 50:10
 55:17 58:8,10 59:15 62:12
 67:6,9 81:2 86:10 91:5 124:9
 124:11,12 130:4 142:21,22

**good** 7:18,19 9:14 34:21 142:4,5
**grab** 63:12 64:11
**grabbed** 63:5,10,17 64:9 126:17
**graduate** 11:13
**grammatical** 143:10
**gratification** 74:12,19,22 128:2
 141:25
**great** 144:2
**Green** 29:23 94:13,17 95:25 96:2
 102:14 103:6,25 106:25 109:10
**Greens** 65:14
**grievance** 4:16,18,20,22 54:2,4
 79:17 116:22,23 119:4,17,23
 120:11,18 121:8,16,24 137:4,8
**grievances** 117:25 118:12 119:12
 120:5
**grieve** 136:24
**groin** 47:24
**group** 59:16,24 67:20 72:18
 129:18
**grow** 11:11
**guard** 51:6,9 55:9 56:18,19
 105:23 106:5 111:6
**guards** 21:15 22:7 98:14 102:15
 112:15 114:12 133:12
**guess** 34:20 57:16 90:23 95:2
 120:6,7
**guessing** 82:23
**guilty** 23:17 24:2
**Gunn** 1:1,1,5,11 2:1,1,4 3:1,1,3
 4:1,1,24 5:1,1 6:1,1 7:1,1,9
 7:10,13,18 8:1,1 9:1,1 10:1,1
 10:17 11:1,1 12:1,1,21 13:1,1
 14:1,1,22 15:1,1 16:1,1 17:1
 17:1,20,25 18:1,1 19:1,1 20:1
 20:1 21:1,1 22:1,1 23:1,1
 24:1,1 25:1,1 26:1,1 27:1,1
 28:1,1 29:1,1 30:1,1 31:1,1
 32:1,1,23 33:1,1 34:1,1 35:1
 35:1 36:1,1 37:1,1,2 38:1,1,5
 39:1,1,18 40:1,1 41:1,1,18
 42:1,1 43:1,1,24 44:1,1 45:1
 45:1 46:1,1 47:1,1 48:1,1
 49:1,1,16 50:1,1,12 51:1,1
 52:1,1 53:1,1 54:1,1 55:1,1
 56:1,1 57:1,1 58:1,1 59:1,1
 60:1,1 61:1,1 62:1,1 63:1,1
 64:1,1 65:1,1 66:1,1 67:1,1
 68:1,1 69:1,1 70:1,1 71:1,1
 72:1,1 73:1,1 74:1,1 75:1,1

 76:1,1,11 77:1,1 78:1,1 79:1
 79:1 80:1,1 81:1,1 82:1,1
 83:1,1 84:1,1 85:1,1 86:1,1
 87:1,1 88:1,1 89:1,1 90:1,1
 91:1,1 92:1,1 93:1,1 94:1,1
 95:1,1 96:1,1 97:1,1 98:1,1
 99:1,1 100:1,1 101:1,1 102:1,1
 102:1 103:1,1 104:1,1 105:1,1
 106:1,1 107:1,1 108:1,1 109:1
 109:1 110:1,1 111:1,1 112:1,1
 113:1,1 114:1,1 115:1,1 116:1
 116:1 117:1,1 118:1,1 119:1,1
 120:1,1 121:1,1 122:1,1 123:1
 123:1 124:1,1 125:1,1 126:1,1
 127:1,1 128:1,1 129:1,1 130:1
 130:1 131:1,1 132:1,1 133:1,1
 134:1,1 135:1,1 136:1,1 137:1
 137:1 138:1,1 139:1,1 140:1,1
 141:1,1 142:1,1,19 143:1,1
 144:1,1 145:1,1,4,10 146:1,1
 146:4 147:1,1,4,5,24
**guy** 58:12,14 125:7 133:22

## H

**H** 4:2
**hall** 12:11 71:9
**hallway** 60:7,9,9 67:17
**hand** 7:5 66:8 69:12,13
**handheld** 73:14,19 77:13
**hands** 44:12 45:25 46:11,14,18
 47:18 48:9 62:16 64:15 65:2
 66:4,9,15 67:11 69:8 72:8
 126:19,22,24
**handwriting** 36:13 38:12 39:15
 41:3 117:8,15 118:14 121:9
 122:2 137:13 139:23
**handwritten** 38:12 39:14 41:2
**hang** 17:20,25 28:13 76:11,22
**HANNAH** 146:3,14
**happen** 67:7 91:5 100:24 125:6
 136:19 143:10
**happened** 28:17 29:20 33:4 45:14
 53:21 54:3,4 58:9 61:8 62:11
 62:19,22,22 63:20 64:2 73:5,9
 74:3 77:19,23 79:23 81:23
 82:23 89:20,23,25 91:14,17
 92:4 94:9 102:19 113:12,21
 114:10 123:9 124:17 125:5
 126:2,4 128:7 135:20
**happens** 46:4,13 48:8,18 54:25

55:20 66:20 67:2,7,8,24 99:20 100:15
**harassed** 105:23 107:7,17 136:11
**hard** 63:24 80:19 116:3,3
**harder** 64:10
**hardship** 74:25
**harm** 21:17
**Haven** 29:23 94:14,17 95:25 96:2 102:14 103:6,25 106:25 109:10
**head** 102:23
**headaches** 15:11
**heading** 145:5
**heal** 88:18
**healed** 88:12,16
**health** 16:18,20 17:22 18:18,25 19:10,15 20:16 21:3,7 51:21 90:11,11 92:6,8 104:13 105:18 116:5
**hear** 38:6
**heard** 81:7,10,17,18,20
**heat** 29:12,12,16
**Heather** 2:8 147:6,12
**height** 12:12,16
**held** 40:13
**help** 15:4 89:9 105:20,21 106:17 116:12
**helped** 69:14 107:21 108:2,6,10 108:13,16
**helps** 108:21
**hemorrhoid** 87:11,23 88:13,20 89:5,17,22 91:7 92:11 95:15 95:17 96:16 132:18,19
**hemorrhoids** 18:10 89:3 93:13,16 93:21 94:6,12 95:5 110:20,24
**hereof** 145:5 146:6
**hereto** 6:4 146:6
**high** 11:13
**hiring** 13:13
**hit** 102:23
**hold** 142:11,11
**holding** 64:21
**hopelessness** 97:20,22,23
**hours** 83:16,17 88:7 93:2
**house** 134:17,19
**huh** 52:9
**Hunter** 1:14

---

**I**

---

**ice** 116:9
**idea** 69:15

**identified** 132:17
**illness** 16:23
**immediately** 77:25
**incarceration** 12:5
**incident** 19:2 22:3,6 85:11 87:7 90:25 93:22 96:6,25 97:9 102:10 103:4,24 105:14 108:23 111:2 116:22 118:2,5 124:22 131:3 132:23 135:16 136:25
**incidents** 5:4 8:23 13:21 14:15 14:20 17:11,18 18:6,14 22:16 22:25 31:4,16 32:24 40:14 83:4 101:16 142:8
**include** 43:19 44:2
**including** 28:15
**inclusive** 146:10
**indecencies** 61:18
**Index** 1:7 147:4
**initiated** 90:20
**injured** 115:4
**injuries** 20:20 87:7 93:4,12,15 96:19 104:4,10 105:6 108:25 110:14,16 116:14,19 131:2,4,5 131:8,15 132:17
**injury** 4:14 92:10 115:23,24 117:4 131:25,25 132:9,12,20 132:23 141:10
**injustice** 21:20
**inmate** 4:14,16,18,20,22 54:13 117:4 131:25 132:9,12
**inmate's** 117:11
**inmates** 48:6 50:18 51:4 59:18 67:22 71:6 72:18 76:13,25 130:6
**insert** 64:15
**inspector** 49:13 139:6
**instantaneously** 67:8
**Int'l** 146:11
**intended** 138:18
**intent** 30:14,18
**interior** 87:17
**INTERNATIONAL** 147:2
**interrupt** 10:10
**intimidate** 136:11
**investigated** 49:8
**investigation** 49:21,23 50:3,19
**investigations** 49:9 50:7,13,16 50:25
**investigator** 50:9

**investigators** 49:12
**involve** 31:16,22
**involved** 42:22 75:6 76:16,18,24
  77:5,16 81:23 125:15
**involves** 122:23
**involving** 5:4 14:15 32:24 99:23
**issue** 5:5 14:15 18:9,22 32:24
**issued** 22:5
**issues** 15:25 16:9,15,18 17:7,10
  17:17,21,22,24 18:5,14,18,25
  21:4,7 99:23
**it's** 42:10 94:25 101:20 114:5
  141:23

---

### J

**Jersey** 26:4,19
**Jill** 91:19 94:5 131:17
**job** 53:20 74:23 83:21
**jobs** 11:20,25 12:9
**judge** 34:15,19
**July** 103:11,25
**jumpsuit** 65:10
**June** 40:4 41:12 85:8,25 86:6,13
  90:3 122:20 123:6,6 129:4,9
  131:3 136:7 137:10,21 140:6
  140:24

---

### K

**K** 143:12
**keep** 13:18,22,24 106:13 120:16
  120:20 140:19 143:9
**keep-locked** 50:19
**kept** 14:2 90:3 116:16
**kick** 78:15 80:19
**kicked** 76:21 77:18 78:12,13,16
  79:4,25 80:16,23
**kicking** 122:13
**kind** 8:5 13:22,25
**kinds** 143:8
**knew** 75:23 81:23
**knight** 143:12
**know** 8:25,25 9:5,6,18 10:11,12
  14:19 15:15 37:21 44:6,21
  50:21 55:5,14 69:17 70:24
  72:21 80:23 81:7,10,13,16,20
  83:21,24 86:16,25 87:17,20
  90:9 91:12,25 93:19 94:23
  99:2 110:5,6 112:13,17 113:12
  113:16 115:6 116:4,14 117:22
  120:25 126:15 130:17 131:24

132:25 133:18,20 143:11

---

### L

**lady** 112:14
**late** 28:24
**laundry** 58:24,24
**law** 13:2,6,15 37:11 140:16
**lawsuit** 5:5 13:19 14:7,16 17:18
  18:10 27:2,11,11 28:12 30:9
  30:10,22 32:7,20 36:10 37:10
  40:21 42:15 85:12 103:12
  125:15
**lawsuits** 14:3,6 26:22,24 27:18
  27:22 28:15,18 29:10,25 31:21
  32:10,10,14 33:11 35:9
**leave** 48:20 55:11
**leaving** 72:22
**left** 70:9,11,12,25 71:5,8 78:16
  128:12
**leg** 64:4 100:10,15,17,20,22
  126:18
**legal** 12:24,25 13:16
**legs** 47:6,9 64:5,8,16 66:5
  126:18
**let's** 9:12 28:13 55:10
**letter** 4:24 139:13,20
**letters** 14:2,5
**level** 11:17
**library** 13:2 37:11 133:14,14,24
  134:2,5,25 135:4 140:17
**life** 23:19 33:7 43:17 110:18
**limitations** 37:14,17
**line** 123:12
**lined** 71:7
**list** 17:3
**listed** 17:7
**little** 54:11 69:13 108:11,14
**live** 110:17
**located** 60:15 61:2 70:17
**location** 1:14 64:12 123:17
**lock** 120:16
**lockdown** 16:7 52:7
**locked** 120:21
**locking** 140:19
**long** 8:24 17:7 18:18 21:10 37:9
  37:16 67:3 71:11,19 72:14
  88:12,15 92:23 97:21 100:4
  106:16 128:4 134:11
**longer** 28:21
**look** 35:24,25 36:20 37:22 39:4

40:17 42:9 46:21 66:23 117:3
 118:10,24 121:23 137:7 139:17
 143:3,3,16
**looked** 115:17
**looking** 39:22 42:11 120:11
**looks** 41:20
**lose** 53:19
**loss** 66:25
**lost** 82:20
**lot** 21:17 76:8 129:18,19 143:10
**loud** 81:22
**loudly** 10:2

---

**M**

**magnetometer** 58:12,19 59:22
 60:15 61:4,9 69:13,18,20
 70:18 73:14 75:2 78:19,22
 80:8 123:16,23 124:4,13
**mail** 37:7 138:9
**mailbox** 55:17
**male** 114:19
**manageable** 108:18
**Management** 13:2
**March** 19:2,10 20:5 21:7 22:17
 22:20 33:21 37:4 58:8 83:24
 85:13 86:5,12,16,22,25 87:7
 93:22,22 96:5 111:2 117:22
 118:5,6 124:22 128:22 135:16
 141:5,5
**Marijuana** 26:4
**marked** 4:3 35:25 37:23 39:4
 40:17 117:3 118:11,25 121:23
 137:7 139:17
**Marriage** 107:8
**married** 105:22 106:5 107:9,10
 107:16,18
**mask** 9:5 10:3
**materials** 146:11
**max** 11:2
**maximum** 11:3 42:18
**McKay** 2:8 3:4 7:17 34:23 35:2,5
 104:7 142:15,18 143:24 144:2
 144:5 147:6,7,12
**meals** 140:16
**mean** 19:17 27:21 47:5 59:21
 61:22 68:20 76:2 82:19 97:14
 97:19 98:18 102:12 107:23
 109:13 110:6,14,18 116:19
 123:25 125:5 127:5 133:23
**means** 7:25

**measured** 110:14
**med** 51:12 56:11
**medical** 12:22 15:25 16:8,14
 17:3,6,7,10,16,21,24 18:5,9
 18:12,13 20:20 51:13,17 53:3
 54:6,13,17 55:16,18 56:11,16
 56:25 57:4,7,14,18,24 58:5
 89:7,16,19 90:6,8,10,12 91:6
 91:11,13,16,17,19,23,24 92:14
 92:20,20 93:24 94:3 96:4,15
 112:18 116:5,7 131:15
**medication** 16:24 56:14 104:17
 106:18,21,22,24 107:3 108:10
 108:18
**medications** 14:23 15:18,19 17:4
 22:19,25 56:9 107:21 108:5
 109:22
**meds** 104:18,21
**meet** 52:8
**Meloxicam** 15:3
**member** 53:19
**members** 52:2 60:20
**memory** 41:23 42:3
**men** 131:7
**mental** 16:18,20,23 17:22 18:18
 18:25 19:9,15 21:7 51:21
 90:10,11 92:5,8 104:4,12
 105:18 108:25 116:5 131:4,7
**mentioned** 27:25 30:8 31:18,25
 40:13 56:16 60:18 98:9 100:2
 117:7 122:20
**mess** 12:10
**middle** 94:22
**million** 109:25 132:23
**mine** 34:21
**minute** 104:9 119:2
**minutes** 71:15,21,24 72:17 83:12
 102:22 128:6
**misbehavior** 22:6
**misdemeanor** 25:21
**mistake** 143:11,15
**mistakes** 143:4
**moment** 59:20
**Monday** 52:17 53:5
**month** 31:13 52:6 94:20
**monthly** 105:19 125:2
**morning** 7:18,19 55:23,24 57:2
 90:17
**moving** 67:11 100:16,17

murder 23:6,8,8

## N

N 3:2,2 4:2
name 7:12 10:16,21 31:18,25
  34:18 76:19 78:23,25,25 79:13
  79:16,21,24 81:5,14,15,15,22
  81:25 112:17 128:15 147:4
names 10:19 130:17
Naproxen 22:21 116:13,16
near 78:20
necessary 62:8
neck 16:5,9,12 18:8
need 8:15,18 10:5,9,13 15:16
  17:25 18:3 42:9,10,10 53:3
  56:20 58:5 143:18,19
needed 56:12
needless 61:20,22 62:5 127:23
needs 45:5,5 58:2
net 126:8,8
never 20:10 21:14 49:15 50:10
  57:11 68:22 97:11 98:6 102:8
  106:19
new 1:3,15 2:10 15:18 26:3,4,8
  26:19,19 90:20 104:5 147:13
night 84:13 98:21 111:11 135:23
  143:11
nightly 98:19 99:9
nightmare 99:13,17,19
nightmares 16:22 17:19 71:17
  96:20 98:9,16,21,24 99:6,24
  108:17 110:20
nine 4:21 7:4 137:7
ninety- 38:19
ninety-one 38:18,19
non-physical 96:19
noon 136:5
normal 43:17 44:10 47:23 48:2
  110:17 141:11
normally 48:12
Northrup 91:20,22 94:5,11
  131:17
notarized 38:22
notary 6:10 145:13 147:8
note 42:10 143:15
noted 145:5,8
notes 13:24 14:6
notice 30:14,17
notify 9:20
number 5:7 14:10 27:6 35:17

36:9 40:9 42:21 43:6,21
  103:18 110:7,10,12 119:10
  133:2 146:9 147:4
numbers 27:18 110:11
nurse 56:9 92:2 94:5 114:18,19
NY 2:7 147:12

## O

O 3:2,2
O.M.H 19:4,21 20:4 51:22 52:5
  54:9 105:5,9,12 106:17
O.S.I 49:11,18 50:7,9,13,15
oaths 6:11
objections 6:7
obviously 14:12
occur 45:8 78:18 117:22
occurred 17:14 18:10 30:25
  123:4
October 23:13
offenses 24:3
office 2:7 6:6 49:8 147:12
officer 6:10 44:16 45:24 79:4
  81:25 91:2 113:15
officers 34:5 51:10 60:18 69:16
  78:21 141:13
officials 10:22
oh 45:7 118:6 124:3 134:18
oil 12:7
ointment 89:8,14
okay 7:3,23 8:3,9,10,15,22 9:10
  9:16,16,21,22,23 10:6,14,15
  10:16,18 11:22,25 12:8,21
  13:3,6,9,14,18,24 14:4,9,12
  14:16,17,18,22,25 15:5,8,12
  15:15,16,17,21 16:3,8,11,14
  16:24 17:13,16,20,22 18:2,11
  18:17,20,24 19:4,7,12,14,17
  19:21,24 20:3,7,12,16,19,22
  20:25 21:3,6,10,13,19,21,24
  22:5,9,16,24 23:4,7,14,16,20
  24:2,9,13 25:5,8,11,13,16,20
  25:23 26:2,5,16,18,21,24 27:3
  27:5,8,10,14,17,20 28:3,6,8
  28:10,13,14,17 29:2,4,6,15,19
  29:22,24 30:4,7,12,20,20,24
  31:3,6,9,12,15,24 32:3,6,9,9
  32:13,19 33:6,11,14,14,17,20
  33:24 34:10,15,25 35:6,11,15
  35:19,21,23,23 36:4,6,9,12,22
  36:24 37:4,13,19,22 38:4,11

38:17,21 39:3,11,17,24 40:2,6
40:9,12,16,20,23 41:2,5,9,14
41:17,25 42:6,14,14,18,21,24
43:3,6,11,13,16,19 44:4,6,14
44:17,21 45:2,7,7,10,13,18,24
46:4,7,10,13,16,20 47:2,4,8
47:11,14,17,20,23 48:2,5,8,8
48:11,13,18,22,25 49:7,16,16
49:21 50:2,2,6,18,21,24 51:4
51:12,16,22,25 52:4,8,13,18
52:24 53:3,7,7,10,13,16,19,22
54:5,11,16,19,22 55:10,17,24
56:2,5,15,21,24 57:4,8,14,18
57:21,23 58:4,7,14,17,20,23
59:5,8,10,12,15,18,21 60:2,4
60:8,8,11,14,17,20,25 61:8,12
61:15,19,22 62:4,7,11,14,17
62:19,21 63:2,6,9,11,14,17,17
63:20,23 64:2,5,11,18,20,25
65:4,7,10,12,15,18,18,21,24
66:3,6,8,11,14,18,20,20 67:2
67:5,11,14,19,22,24,24 68:5,8
68:11,17,22,25,25 69:4,7,10
69:10,15,19,24 70:4,6,9,14,24
71:3,6,6,9,11,11,14,22 72:2,8
72:11,14,14,18,21 73:2,5,9,12
73:15,18,21 74:3,7,17 75:2,5
75:8,11,18,23 76:2,6,11,15,18
76:22 77:4,9,12,12,16,19,23
78:2,5,8,10,13,15,17,20 79:3
79:8,11,15,18,20,23 80:2,5,7
80:10,13,15,18,20,23 81:4,19
81:24,24 82:3,6,12,16,22,25
83:9,12,15,21 84:3,6,14,18,23
85:6,10,18,20 86:2,4,8,11,15
86:15,18,21,24 87:3,6,10,13
87:15,17,22,25 88:6,9,14,18
88:20 89:2,5,13 90:5,12,15,18
90:22,24 91:6,9,13,16,22,25
92:3,7,7,10,13,19,23 93:4,6
93:11,14,17,20,24 94:3,8,11
94:15,18,25 95:3,4,7,11,14,16
95:18,20 96:2,4,15,18,21,23
97:3,8,11,18,18,21,24 98:3,6
98:12,15,18,20,23 99:2,5,12
99:16,20,20,23 100:2,6,11,14
100:17,19,21,24 101:3,7,14,22
101:24 102:5,7,12,16,19 103:3
103:6,8,10,12,15,21,22,23,24
104:4,8,12,15,18,21,24 105:3

105:5,8,11,17,20 106:3,7,12
106:16,16,20,23 107:2,5,9,11
107:14,20,20,23 108:2,5,9,12
108:15,20,23 109:3,6,9,13,16
109:21,24 110:3,8,13,21,25
111:4,7,7,13,15,21 112:3,6,9
112:17,20 113:5,9,9,12,15,17
113:20,23 114:3,6,10,20,24
115:3,6,10,14,17,20,20 116:2
116:7,10,14,18,21,21 117:2,7
117:11,14,19,21,24,24,25
118:7,10,14,24 119:11,13,16
119:25 120:10,10,14,17,20,23
121:3,5,8,22 122:12,19,23
123:3,6,9,9,14,17,20,22 124:3
124:3,6,9,12,13,15,17,19,21
124:24 125:4,13,17,21 126:2,4
126:10,10,13,21,24 127:2,8,10
127:12,15,17,19,22 128:4,7,11
128:18,24 129:8,13,16,22,25
130:11,20 131:2,5,7,11,14,18
131:21,24 132:3,6,8,10,14,16
132:20,22 133:2,5,10,15,25
134:4,8,11,16,22 135:3,7,10
135:13,19,22,25,25 136:6,9,15
136:18,21,24 137:6,10,23
138:2,6,11,14,17,20,23 139:2
139:7,16,20,23 140:14,20,23
141:3,7,15,18,20,24 142:3,3,6
142:7,8,10,13,15,19,24 143:6
143:7,13,20,21,22 144:5
**once** 16:6 26:11 42:10 46:13
    48:18 52:6 54:5 55:20 62:11
    66:14,20 67:2 74:3 77:19,23
    79:23 107:20 124:2
**one's** 41:2
**one-year** 22:10
**ones** 25:17 28:20 119:7
**ongoing** 28:6 110:16
**Onondaga** 11:6
**open** 19:20 28:8,12,14
**opportunity** 57:17 143:3
**order** 37:24
**ordered** 16:5
**original** 4:6 36:6
**Ossining** 1:15
**outcome** 34:7
**outside** 11:20 26:3,18 65:5,6,25
    123:16

**overwhelmed** 138:10

**P**

**P** 3:2
**p.m** 1:13 112:8 142:16,16 144:6
**page** 5:5,7 36:19,23,25,25 38:18
  39:18,23,24 117:9 146:6
**pages** 119:10,17,22 146:9
**pain** 16:4,4,5,9,13 18:9,9 20:18
  22:23 63:25 64:14 92:12,23
  110:16
**pants** 65:15,22 114:14 127:15
**paper** 118:21
**papers** 14:5
**parole** 23:19 24:24 25:9,14
  26:12
**part** 43:17 72:3
**particular** 118:5
**parties** 6:4 147:10
**passed** 114:7
**pat** 42:22,24 43:13,16,21 44:6
  44:10,11,16,17,22,23,24 45:4
  45:8,8,13 46:5,15,17,20 48:10
  48:15,18 60:12 61:20,23 62:8
  62:12,20 64:4 68:5 69:16,25
  71:20,23 72:4 73:2,7 74:24
  77:6 82:13 84:6,11 88:4 89:17
  90:6 91:7,12,14,21 98:11
  101:4 102:17,20 109:25 122:24
  123:13,18 124:18,21,25 125:5
  125:10,14,17 126:12,13 127:23
  128:21 129:3,4,9 130:3,23
  136:7,12,13,16 140:21,22,23
  140:24 141:6
**patch** 95:17
**pattern** 90:4
**pending** 8:17 28:19,21 29:11
  103:16
**penetrate** 126:20 127:3 128:24
**penetrating** 66:16 72:3
**penetration** 96:13 127:10
**people** 76:4 119:4 129:18,20
  130:8,18
**permanent** 93:12,18
**Perry** 4:16,18 32:6 58:16 59:6
  60:21 61:10,17 69:25 74:8,11
  76:19 77:20 78:23,25 79:19
  81:2,17,21 83:5,18,22 85:4,23
  86:5 90:9 91:3,12,21 98:11
  101:6 111:6 112:21 113:2

  115:13 118:9 119:17 120:18
  122:20 123:11 125:11 130:9
  136:7,22 137:24 140:11,15
  141:8,13
**Perry's** 31:18,25
**person** 46:22 55:9 107:16
**personally** 91:20,21
**phonetic** 34:17 107:12
**phrase** 147:15,16,18,19,20,21,22
**physical** 16:5,6 21:3 75:8 92:10
  93:4 131:5
**pick** 85:17
**picked** 61:18,25 123:12 124:18
  133:2
**picks** 55:3
**ping** 134:21
**pivot** 58:22
**place** 42:15 44:12,18,22 50:25
  60:12 69:17 80:3 83:10 93:7
  112:4 113:24 128:5 142:4
  145:5 146:5
**Plaintiff** 1:6 2:3
**plan** 9:14
**planted** 64:19
**plea** 23:17 24:5
**please** 7:4,11 35:24 137:6
  139:16 145:6 147:8,9
**plenty** 85:15
**pockets** 46:6,7,11 47:13 126:3,5
  126:11
**point** 68:6
**pointed** 58:13 59:23 61:10
**police** 4:24 10:22 137:24 138:24
  139:3,11,14,21
**pong** 134:21
**portion** 117:7
**portions** 38:12,14 39:11,14 41:6
**position** 68:11,13,25
**possession** 24:11,14 26:4,8
**possessions** 48:22
**possible** 114:5
**Possibly** 21:14
**practically** 82:17
**practitioner** 92:2 94:6
**Prazosin** 15:2 104:25 105:2
**pre-existing** 20:19
**PREA** 49:22,24,24 50:21,25 90:19
  90:20
**predate** 18:6

predator 61:18 125:8
predatory 141:22,23
prepared 146:10
presence 146:5 147:8
present 17:14 45:6 59:5,8 60:17
　141:15
presided 34:16
press 139:12
pretty 7:23 9:5
prevent 20:13
prevented 133:20
preventing 77:2
previous 14:3
previously 101:5
prior 12:4 22:16 24:7,9 26:14
　26:15,16 43:14,19 83:24 84:3
　86:18
prison 11:20 12:9,9 13:4,15
　21:15,22 42:25 43:17 50:23
　51:6,9 53:11 56:18,19 98:13
　102:15 105:23 106:5 111:6
　112:15 114:12 133:12
pro 2:4 104:25 108:19
probably 82:21
problem 100:5
problems 17:6 18:13 84:3 86:18
procedure 44:7,11 47:23 48:2
proceedings 142:22
process 46:17 49:18 54:12,17
　142:20
progression 109:21
promoted 76:12
promoting 75:25 76:5
pronounce 34:18
proof 89:16 96:16 141:7
property 35:13
provide 7:24 18:20 71:18 142:21
　142:23
provided 14:13 17:4 146:11
provider 57:7 91:19,23,24
　112:18
Prozac 15:2 104:24,25 108:21
psychiatrist 104:6
psychiatrists 108:8
PTSD 16:22
public 6:10 145:13 147:9
pulled 63:21 64:2,10 110:10
　126:17
pulls 64:23,23

purpose 46:20
put 42:7,7,8 45:25 46:11 54:14
　54:20,22 57:22 62:16 66:4
　113:11 120:12,16 126:21
　135:12
puts 65:3 66:11,15 67:25

**Q**

question 8:11,17,18,18 10:11,11
　10:12 13:20 18:5 32:23 38:5
　81:17
questions 6:7 7:24 8:9 18:2
quick 67:4
quite 72:24

**R**

R 3:2 5:2
raise 7:5
random 44:23,23 45:8
randomly 61:15,16
Range 127:14
Rape 50:23
rapid 100:13
re-submit 28:24
read 11:7 145:4 147:8
reading 41:24
ready 102:22
really 70:22
reason 13:12
reasons 74:21
rec 45:11 59:3,16,25 61:25
　67:21 71:4 102:5,7,9,14,15,18
　104:2 110:19 123:20,21,23
　124:4,7,10,11 128:17,18
　130:21 133:12,16,25 134:8,11
　134:13
recall 17:9 18:19 20:2 21:12
　24:17 25:7,18 26:6,14 27:16
　27:20 30:6 31:2 43:5 44:5
　45:15 48:14 55:19 60:22,23
　61:7 71:13,16 72:20 77:8,9
　82:10 83:14 86:7 87:24 88:17
　92:25 93:8 94:17,20,25 95:8,9
　97:2,3 105:16 111:20,21
　112:13 114:9 120:9 121:21
　122:18 123:5 124:23 132:3
　133:9 134:12 137:22 138:3
receive 56:14 116:7
received 11:3 14:9 34:10 95:21
　104:12,16 109:3 135:23

**recognize** 36:2 37:25 39:5 40:18
  137:8 139:18
**recognized** 85:14
**record** 7:2,4,12 9:18 18:4 34:21
  42:11 115:25 142:14,16,17
  144:4,6 145:4 146:10
**records** 5:4 13:18 14:3,13,14
  116:4
**recreation** 44:25 58:10 101:2
  140:17
**rectal** 93:15
**rectum** 63:22 64:15,19 65:3
  66:16 87:15 93:13 114:22,25
  115:7 126:20 128:25
**referred** 54:8 90:11 92:5,8
  105:9
**refill** 56:12,14
**refused** 138:5
**regarding** 14:6,20 33:21 122:20
**regular** 55:11 101:21
**regularly** 51:23 125:5
**relating** 50:13
**relation** 60:5
**relationship** 107:6
**release** 23:21
**released** 24:23 25:8 26:11
**relief** 30:19 98:3
**remained** 107:25
**remember** 9:25 14:8 19:24 25:5
  30:4 31:12 34:15 61:5 85:24
  87:25 88:6 90:15 93:6 94:15
  94:22,24 95:23 98:23 99:3,6
  99:10,16,19 105:11 111:7
  112:6,9 113:23 114:6 115:20
  120:8 121:19 122:16 123:3
  131:18 132:11,16 134:13,19,22
  135:7,19 136:4,13 137:3,20
  139:7,8
**remove** 73:15
**reoccurring** 90:4
**repeat** 52:20
**report** 4:14 22:6 51:4,7,9,16,20
  53:8,14 54:5 81:2 84:16 90:24
  92:13 111:2,4 113:6 115:23
  116:5 117:4 131:25,25 132:9
  132:12 133:5,10,12 134:6,25
  135:3,5 137:23 141:10
**reported** 90:10 91:2,3 112:25
  115:8 138:3

**Reporter** 7:3,11,14 34:20,25
  35:4 142:13,17 143:23 144:3
  146:14
**Reporters** 146:11 147:2
**reporting** 133:21 138:7 141:5
**reports** 138:12
**request** 14:16 55:21 103:22
  135:13,17
**require** 89:6 92:20
**Research** 12:25
**reserved** 6:8
**resolved** 28:18
**respect** 17:23 18:5
**respective** 6:4
**responded** 81:21 139:5
**response** 84:20
**responses** 10:14
**rest** 59:23
**restaurants** 11:24 12:2
**resume** 142:4
**retaliate** 141:8,10
**retaliated** 54:3 120:12,15
  140:12
**retaliating** 78:24 80:25
**retaliation** 27:2,10 32:2 86:9
  140:15 141:4,11
**retaliatory** 140:21,22,25 141:21
  141:23
**return** 77:20 79:8 147:11
**returned** 73:21 138:12 139:4
**returning** 45:11 78:8
**review** 143:16
**right** 7:5 8:7 9:4,12,23 12:4
  13:5 15:8 17:5 19:16,23 20:21
  22:11 24:18 26:17 28:2,15
  29:3 30:3,15 33:3,15,18,23
  37:3,20 41:13 42:16,22 45:21
  45:23 47:19 49:9,23 51:7,10
  51:18 54:6,25 59:14 62:9 63:6
  63:19 66:22 67:9 70:3,8,10,25
  71:2,18 75:7,21 77:11 78:9,19
  80:13,14 82:9,17 89:21,23,25
  99:14 100:23 104:11 112:24
  116:20,24 117:13,18 120:3
  124:5 127:21 134:3 138:19,22
  142:9
**right-hand** 36:20
**Rochester** 2:10 147:13
**room** 58:24 112:15 114:13,13,14

rounds 52:2
RQ 132:9
rub 48:9
rubbed 64:15
rubbing 72:6 126:18
rules 18:3

## S

S 3:2 5:2,2
S-C 34:22
safe 101:20
saw 19:9 86:12 90:12 105:12
  131:18
saying 17:17 18:13,24 20:20
  21:21 28:24 30:20 62:4 64:13
  67:12 68:22 71:22 72:4 74:18
  75:3 76:12 85:20 97:11 98:20
  100:6 110:23 112:3,24 122:14
  140:24
says 36:25
scale 108:24
scar 19:8,13,15,19 20:4
scary 106:6
Schaewe 34:17,19
schedule 57:9
scheduled 55:22 57:6
school 11:13
SE 2:4
second 4:10 39:8
seconds 71:15
security 42:18 51:8,10 133:21
see 9:7 20:4 45:3 51:22 52:5,10
  56:11 57:6,11,17 58:5 75:18
  75:20 82:12,13 86:4,6 105:14
  117:8 130:9,10 131:14 143:4
seeing 19:15 76:5
seeking 109:24
seen 19:4 35:2 52:9 56:25 62:3
  105:5,18 129:14 131:17
selected 61:15,17
self 56:10
send 132:9 138:23 143:6
sending 138:8
sense 8:13,20 42:4,12
sent 138:12,15,17,20
sentence 22:12 23:18,24
sentenced 22:10 24:20
separate 65:15
September 31:14
sergeant 59:14 60:19,19,21

66:22,23,23 67:14 70:6 72:23
  75:5,18 76:23 77:9 86:15,22
  118:18 119:6,8,9,23 122:9
sergeants 129:10,13,14,23
serious 49:5,6
serve 22:10,12
serving 23:5
sessions 108:12
set 41:17 42:2 117:24 123:2,2
  140:9 143:23
seven 4:17 109:5,7,10,14 112:8
  112:8 118:25 120:11 121:9
seventy-five 12:18
sexual 18:23 49:2,4,7,22 50:3,7
  50:16 51:5,20 53:8,14,17,20
  53:23 54:5 61:17,18 71:12,19
  74:12,19,22 75:19 76:12 81:2
  84:16,21 85:17 89:21 90:2,3,4
  92:18 94:7 96:9 115:8,12
  125:7 128:2,5 131:22 133:5
  134:6 141:25
sexually 62:2 72:4 74:15,17
  75:24 83:6,7 85:8,14 86:3
  105:23 107:7,17 115:12,15
  125:18 136:15
Sgt 4:16
sheet 142:24,24 143:2 145:8
sheets 118:21
Shieber 125:12
shin 78:16 80:19 92:12,21,24
shirt 65:16,22
shoe 73:19
shoes 48:11,12,13,16 73:6,10,13
  73:16,21,22,25 74:2,4 77:14
  79:6 130:24
short 83:15
shortly 88:4
shoulder 16:4,9,12 18:8 20:22
  20:23 21:2
shower 101:20 126:9
showered 101:18
showers 101:2,9,11,12,13,15,24
  110:20 134:20
shows 74:18
SHU 21:16,25 22:10
shut 63:25 64:14
sic 127:14
sick 14:2,5 51:14,14 52:13,16
  52:18,24 54:12,14,19 55:8,11
  55:21,22 56:3,25 57:9,12,22

111:5,8,19,24,25 113:6,10,21
114:4,7 133:11,23 135:6,8,10
135:14,17,20
**side** 42:3 58:18
**sign** 132:14 143:6 147:8,10
**signal** 61:14,25 73:11
**signature** 36:24 37:2 38:17
147:10
**signed** 6:9 36:18 37:4 39:17,20
40:3 41:9 117:17 118:19
121:11 122:4 137:15 139:25
147:23
**significant** 43:6
**signs** 58:3
**silence** 76:7,8,9
**simple** 7:23
**Sing** 1:14,14 109:15,15,16,17
**six** 4:15 28:4 56:4 102:22
112:14,15 114:12 118:11 119:2
119:7,13
**sixty** 9:12,19
**skin** 127:19,19
**skipped** 101:24
**sleep** 99:15,21
**slip** 51:15 54:14,20,23 56:13,19
56:22 113:7,10,21 114:4,7
135:8,11
**slips** 14:2,5 111:8,19
**slow** 109:21
**slowly** 9:25
**sneaker** 68:10,12,15
**sneakers** 68:15,16,18,23 69:2,11
**somebody** 72:24 102:24
**soon** 143:19
**sorry** 34:21 43:24 84:9 118:25
126:7
**sound** 9:14 24:18 62:5,8 123:7
124:15 142:5
**sounds** 34:23
**speak** 9:25,25,25 10:9 11:7
49:15 50:10,11
**speaking** 10:6 50:4,14
**Special** 49:8
**specific** 50:13
**specifically** 118:4
**spell** 34:21
**spelling** 34:18 107:12
**split** 9:3,6,9,14
**spoken** 49:11,13

**spot** 115:18
**spots** 47:4,8
**squeezed** 62:25
**squeezing** 62:24 126:16,18
**staff** 19:5,10,15,22 20:4 21:22
51:13,17,23,25 52:5 53:10,19
54:6 56:12,25 58:5 60:17,20
89:19 90:6,8,10 91:6,11,14,16
96:4 105:6,12,18 106:17
131:15
**stand** 77:10
**standing** 58:12,17,18 66:22
67:18 75:7 76:13,15,24 77:6
80:2 129:17
**stands** 50:22
**start** 106:23,24
**started** 62:24 78:24 80:5,15
106:18 107:20 109:22
**state** 2:7 4:24 5:7 7:11 26:3,9
28:12 30:10 32:10,14,15,24
35:8,12 65:9 90:20 103:17
139:3,10,21 145:3 147:12
**stated** 146:5
**statement** 115:11
**statements** 14:19 117:12
**STATES** 1:2
**statute** 37:14,16
**stay** 72:19 134:8
**staying** 69:4
**stenographer** 10:3 142:21
**step** 44:15 46:2
**stick** 37:24
**STIPULATED** 6:3
**STIPULATIONS** 6:2
**stood** 76:3
**stop** 15:16 100:16,17,18 101:14
130:14 142:4
**stopped** 60:3
**stops** 16:7
**straight** 60:9 71:5
**Street** 1:14
**stress** 120:6
**stuff** 110:21,22 128:12
**subject** 53:17,24
**submitted** 55:21 114:4
**submitting** 114:7
**subsequent** 86:21 87:4 93:21
94:12
**substance** 24:14 26:8

substantiated 53:16,24
substantive 143:17
suffering 110:15
suicidal 20:7 98:7
suicide 20:10
suing 8:23 12:16 30:21 32:6
  42:15
Suite 2:9 147:13
summarize 16:3
summary 11:23
summer 94:23
supervision 44:19
supervisor 44:20,24 45:3,3,6
sure 9:24 10:5,14 18:2,4 41:5
  41:20,22 43:25 72:24 115:22
  130:10 143:17
swear 7:6
sweat 99:4
sweaty 99:13
swelling 114:23 116:16
sworn 7:10,15,25 8:3,5 145:11
  146:7
symptoms 58:3
Syracuse 11:10

**T**

T 4:2 5:2
T.V.s 134:19
table 133:22 134:21
take 8:16,19 15:3,3 35:24,25
  37:22,23 39:4 40:16 44:17,22
  55:12 56:9 68:3,15 74:5 83:10
  101:9,12,13,20 102:3 106:19
  106:22 107:3 110:19 113:15
  117:3 118:10 121:22 128:5
  137:6 139:16
taken 104:22 145:5 146:4
talk 9:3 17:22 18:11,15 28:13
  41:22 50:12 55:10 104:8 142:7
talked 19:21 25:17 32:9 54:11
  84:8 104:19 110:22 131:11
talking 8:23 18:6 20:17 23:2
  25:20 31:4 32:3,13,19 52:21
  58:8 72:8 76:23 85:12 88:14
  112:21 114:17 141:24
technician 12:7
telephones 134:20
tell 8:3 42:10 46:5 48:20 51:6
  55:8 56:18,19 70:22 73:5
  78:20 84:14 90:6 91:17,20,21

92:4 94:9 96:5,8 102:16
  133:15 143:19
tells 45:25 68:3
ten 4:23 35:19 39:18,24 43:9
  108:24 109:2,4 139:17
term 25:14
terms 143:17
testified 34:3,5 112:22,23
testify 15:13 146:7
testimony 6:6,9 7:6 8:5,5 20:14
  145:5 146:4,7 147:8
Thank 7:14 35:3 37:25 39:5
  41:18 117:25
therapist 16:6 105:22,25 106:8
  107:6,17
therapy 16:5 108:12
there's 44:19
thereof 6:8
they're 13:13 29:25 33:3
thing 10:8 143:15
things 17:14 65:21 76:8 107:24
  107:25 128:9
think 10:11 20:13 39:24 86:12
  90:16 131:20 142:3
third 4:12 40:24
thirty 44:4 60:7 82:11 103:22
  132:8 147:9,10
thought 68:17 82:20 97:4 141:19
three 4:9 29:24 30:21 31:6
  37:18,19 39:4,21 60:18 89:4
  95:5 111:23
Thursday 52:17 53:6
time 1:13 6:8 9:3,7 12:15 13:25
  18:21 20:3,17,23 21:4,17 23:5
  25:19 30:25 56:2,2,24 59:6
  65:8,13 67:15 69:5 71:19,20
  72:19 75:14,15 79:5 80:11
  83:15 85:10,16 86:11,12 90:21
  97:25 100:5,25 105:17 112:7
  114:6 116:15,21 124:9 125:8
  125:11 127:13 135:5 136:4
  145:5 146:5
times 22:25 43:4,7,20,21,25
  44:4 45:13 51:2 65:25 85:15
  95:5 136:19
timing 28:23
tire 12:6
title 59:10 91:25
today 7:7 12:13 14:23 15:13
  18:7 20:14 142:22

**toe** 16:10,12
**told** 49:14 50:9 59:23 61:10
  62:11 63:25 74:5,7 77:20 79:8
  79:24 83:6 84:16 89:19 90:8
  90:10 91:3,6,12,13,16,20 94:9
  102:15,17 106:12 111:5 112:20
  113:2,3 123:12 125:21 128:9
  133:13 141:13
**top** 36:20 62:24
**torso** 47:3,9
**total** 28:4 32:16
**touch** 47:20
**touched** 128:8
**touching** 62:23 72:12,15 126:16
**track** 134:20
**tragic** 99:18
**training** 12:22,24 13:14,16
**transcript** 6:5,9 10:5 142:22
  143:5 145:7,8 147:8,10,11
**transcription** 146:9
**transferred** 94:13,16
**transports** 45:22
**treat** 94:11
**treated** 15:24 16:17 95:23
**treatment** 16:21 89:7,13 95:11
  95:14,20 104:9,13,15 109:4,11
  116:8
**trial** 6:8 8:5 23:14 33:7,8,21
  33:24 34:8,16
**tried** 30:13 33:17 133:12,13,15
  134:24
**tripped** 82:17
**Troopers** 138:25
**true** 36:15 38:24 40:6 41:15
  68:9 118:16 121:13 137:18
  140:3 145:7,8 146:10
**truth** 7:7,8,8 8:4 146:7,8,8
**truthful** 20:14
**truthfully** 15:13
**try** 10:13 30:17 143:15
**trying** 77:4 96:11 97:15 99:9
  124:24 125:9 126:20 127:2,6
  135:3
**Tuesday** 52:17 53:6
**turned** 29:12,16 58:10 78:2
**twenty** 43:11,20,25 60:6,6
**twitch** 100:7,12,19
**twitching** 100:5
**two** 4:7 9:3 24:20 28:21 29:7
  37:23 38:8,20 59:12 69:23

  70:18 90:16 111:23 113:25
  118:6 119:9,12,14,22 130:2
**Tylenol** 15:3 116:9
**type** 38:15 39:12 41:7
**typed** 38:15 39:12
**typewritten** 41:6,6 146:9

---

**U**

**U** 5:2
**Uh-huh** 42:13 46:23 142:25
**uncomfortable** 112:16
**understand** 7:25 8:6,8 11:19
  13:20 43:25 47:16 76:23 77:5
  96:11 97:15 99:9 104:9 124:25
  125:9
**understanding** 50:24
**understood** 8:12
**underwear** 63:5,10,12,21,22 64:3
  64:9,11,21 126:17,17
**UNITED** 1:2
**unprepared** 90:23
**unsafe** 106:22
**untimely** 30:11
**upset** 21:18
**Upstate** 22:13
**urinate** 15:4
**use** 46:18 101:12 116:10 127:6

---

**V**

**v** 1:1,7 2:1 3:1 4:1 5:1 6:1 7:1
  8:1 9:1 10:1 11:1 12:1 13:1
  14:1 15:1 16:1 17:1 18:1 19:1
  20:1 21:1 22:1 23:1 24:1 25:1
  26:1 27:1 28:1 29:1 30:1 31:1
  32:1 33:1 34:1 35:1 36:1 37:1
  38:1 39:1 40:1 41:1 42:1 43:1
  44:1 45:1 46:1 47:1 48:1 49:1
  50:1 51:1 52:1 53:1 54:1 55:1
  56:1 57:1 58:1 59:1 60:1 61:1
  62:1 63:1 64:1 65:1 66:1 67:1
  68:1 69:1 70:1 71:1 72:1 73:1
  74:1 75:1 76:1 77:1 78:1 79:1
  80:1 81:1 82:1 83:1 84:1 85:1
  86:1 87:1 88:1 89:1 90:1 91:1
  92:1 93:1 94:1 95:1 96:1 97:1
  98:1 99:1 100:1 101:1 102:1
  103:1 104:1 105:1 106:1 107:1
  108:1 109:1 110:1 111:1 112:1
  113:1 114:1 115:1 116:1 117:1
  118:1 119:1 120:1 121:1 122:1

123:1 124:1 125:1 126:1 127:1
128:1 129:1 130:1 131:1 132:1
133:1 134:1 135:1 136:1 137:1
138:1 139:1 140:1 141:1 142:1
143:1 144:1 145:1 146:1 147:1
147:4
**verbal** 10:14
**view** 67:17 72:24 76:4
**violation** 25:3
**violations** 25:11
**visible** 87:20 116:15,19
**visits** 45:16,19

---

### W

**waist** 63:4 126:17
**waistband** 63:14,16 64:22
**wait** 10:13 16:6 37:9 53:5 90:24
120:4 134:10,14 138:11
**waited** 59:24 121:19 122:17
137:20
**waiting** 67:20 100:4,5 116:4
**waived** 6:6
**wake** 99:4,12,14
**walk** 82:6
**walked** 82:25
**walking** 76:20 79:2 80:5,10,15
**wall** 44:13 45:25 46:11,14 48:21
59:23 61:11 62:16 69:3,5
70:23 102:22 123:12 124:20
125:22
**wand** 69:13
**want** 9:7,11,24 35:23 41:20,21
41:23 43:25 55:4,6 64:20
69:15 76:22 95:2 99:19 101:4
104:9 120:7 129:11 142:13
143:8,15
**wanted** 8:25 62:2 134:5,6 139:12
142:20
**wants** 129:12
**wasn't** 90:17
**wasn't** 18:22
**watching** 72:25
**way** 59:2 61:25 62:25 64:24
67:25 71:3 76:16,24 78:3,3
80:10,12 123:21,23 143:18
**ways** 77:17
**we'll** 42:10 50:12 85:11 142:11
142:15
**we're** 8:22 9:7 10:6 17:18 18:6
18:14,14 20:17 22:25 31:4

52:21 56:15 58:7 76:23 140:10
144:3
**we've** 9:19 25:17 32:9 41:25
54:11 110:21,22
**weapons** 46:19,21 47:21 48:6
**wearing** 9:5 10:3 65:8,22 127:13
**week** 52:19,25
**weekly** 125:2
**weight** 12:12,17
**Weights** 134:21
**welding** 12:3
**went** 59:24 61:9 63:4 69:13,14
77:25 78:3 79:12 89:11 109:10
111:25 123:11 126:18,19
128:14,18 130:20 133:11
**weren't** 141:15
**WESTERN** 1:3
**witness** 7:10,13,14 129:11,12
143:25 146:7
**witnesses** 14:19 33:25 129:8
**wondering** 47:17
**word** 75:17 147:15,16,18,19,20
147:21,22
**words** 66:25
**work** 11:17 142:12
**worked** 13:6 62:25
**working** 12:2,10 83:18 104:5
108:7
**works** 142:8
**worried** 92:17
**worse** 83:7 84:22 91:4 113:3
**would've** 84:22
**wouldn't** 61:16 82:10 91:8
101:19 105:24 106:2 107:2
133:14,23,23 135:2 138:16
**write** 9:18 56:19,22 81:2 111:16
111:19 117:8 120:4 121:16,20
122:17 139:10 143:5
**written** 4:24 14:19
**wrong** 16:10 129:15
**wrote** 51:14 111:5,8 115:11
119:3,8,19,25 120:17 121:24
122:6 132:11 137:8,10 139:14
139:21 140:6 143:12

---

### X

**X** 1:10 3:2 4:2,2 145:10,12

---

### Y

**yanked** 63:21

**yard** 44:25 85:16 123:11
**yeah** 13:13 29:21 30:17 34:20
  35:2,4 39:19,25 40:3 45:19
  49:19 64:23 68:19 74:23 85:13
  85:25 93:16 99:14,18 107:10
  107:18,18 110:11,24 130:5,7
  134:6 139:5 142:15 143:25
**year** 11:4 21:16,25 94:23
**years** 15:22 24:21 37:18,19
**York** 1:3,15 2:10 26:3,8,19
  90:20 147:13
**you're** 98:20
**you've** 56:25 99:13 101:24

---
**Z**
---

---
**0**
---
**03/29** 120:22 121:2,5
**03/30** 121:4
**03/31** 121:4,5
**03/31/13** 117:19
**07** 29:21

---
**1**
---
**1** 146:6,9
**1:08** 142:16
**1:11** 142:16
**1:12** 1:13 144:6
**10039** 32:4
**103** 5:7
**117** 4:13
**118** 4:15,17
**11th** 119:19 123:6 129:4,9 131:3
  136:7 140:24
**121** 4:19
**137** 4:21
**139** 4:23
**13th** 85:8,25 131:20 135:21,24
  136:2,3
**14** 5:5
**144** 2:9 146:10 147:13
**14614** 2:10 147:13
**14th** 120:2 136:3 140:6
**16-CV-6206** 1:7 147:4
**16th** 121:17
**17** 29:21,21
**18th** 122:6,17
**19-CV-** 32:3
**19-CV-10039** 31:11
**19-CV-10039CS** 27:9

**1997** 24:18 26:16
**19th** 41:12
**1st** 40:4

---
**2**
---
**200** 2:9 147:13
**2003** 23:13,13
**2007** 29:21
**2010** 21:16,22 22:2 30:8
**2011** 22:14
**2013** 12:19 17:13 19:2,10 20:5
  21:8 22:17,20 33:21 49:25
  58:8 83:25 86:13,16,22,25
  87:8 90:21 93:22 94:18 96:6
  101:18,19 111:2 117:22 119:20
  120:2 121:6,17 122:7,17,21
  123:6 124:22 128:22 129:7
  131:3 136:7 137:11 140:7,24
**2014** 31:7,10,11 94:18,19
**2015** 103:9,25
**2016** 37:5
**2017** 40:4
**2019** 41:12 109:19
**2020** 145:12
**23rd** 137:11,21
**29** 21:7
**29th** 19:2,10 20:5 22:17,20
  33:21 37:5 58:8 83:25 85:13
  86:5,12,16,22,25 87:8 90:2
  93:22 96:5 111:2 118:5,6
  124:22 128:22 135:16 141:6

---
**3**
---
**30** 147:9,10
**31st** 117:22
**35** 4:5
**354** 1:14
**37** 4:7
**39** 4:9

---
**4**
---
**4/11/13** 4:16
**4/16/13** 4:18
**4/18/13** 4:20
**40** 4:11
**4910** 44:8
**4th** 90:3

---
**5**
---
**5-26-20** 1:1 2:1 3:1 4:1 5:1 6:1

```
 7:1  8:1  9:1  10:1  11:1  12:1
13:1 14:1 15:1 16:1 17:1 18:1
19:1 20:1 21:1 22:1 23:1 24:1
25:1 26:1 27:1 28:1 29:1 30:1
31:1 32:1 33:1 34:1 35:1 36:1
37:1 38:1 39:1 40:1 41:1 42:1
43:1 44:1 45:1 46:1 47:1 48:1
49:1 50:1 51:1 52:1 53:1 54:1
55:1 56:1 57:1 58:1 59:1 60:1
61:1 62:1 63:1 64:1 65:1 66:1
67:1 68:1 69:1 70:1 71:1 72:1
73:1 74:1 75:1 76:1 77:1 78:1
79:1 80:1 81:1 82:1 83:1 84:1
85:1 86:1 87:1 88:1 89:1 90:1
91:1 92:1 93:1 94:1 95:1 96:1
97:1 98:1 99:1 100:1 101:1
102:1 103:1 104:1 105:1 106:1
107:1 108:1 109:1 110:1 111:1
112:1 113:1 114:1 115:1 116:1
117:1 118:1 119:1 120:1 121:1
122:1 123:1 124:1 125:1 126:1
127:1 128:1 129:1 130:1 131:1
132:1 133:1 134:1 135:1 136:1
137:1 138:1 139:1 140:1 141:1
142:1 143:1 144:1 145:1 146:1
147:1,5
```

**5-26-2020** 1:12
**5/11/70** 10:25
**523-7887** 147:2
**5th** 103:11

---

### 6

**6/14/13** 4:24
**6/23/13** 4:22

---

### 7

**7** 3:4

---

### 8

**800** 147:2

---

### 9

**9:57** 1:13  7:2

EXHIBIT 2

Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK


DARRELL GUNN,

Plaintiff,

v                                    CIVIL ACTION #6:16-CV-06206

CHAD BEDCLER, et al,

Defendants.

_____X

              DEPOSITION OF:    DARRELL GUNN

              DATE:             7-22-2020

              TIME:             10:00 a.m. to 1:01 p.m.

              LOCATION:         Sing Sing Correctional Facility

                                354 Hunter Street

                                Ossining, New York 10562

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2    APPEARANCES:

3    FOR THE PLAINTIFF:

4       DARRELL GUNN, pro se

5

6    FOR THE DEFENDANT:

7       NEW YORK STATE ATTORNEY GENERAL

8       BY:  HEATHER MCKAY, A.A.G.

9       144 Exchange Blvd., Suite 200

10       Rochester, New York 14614

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2         I N D E X   O F   P R O C E E D I N G S

3   DARRELL GUNN

4   Direct Examination by Ms. McKay              6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2               E X H I B I T   I N D E X

3   Marked as

4   Description

5   Exhibit Eleven                          38

6   Prison Disciplinary packet

7   Exhibit Twelve                          41

8   Grievance Packet 7/26/2013

9   Exhibit Thirteen
                                            80
10  Supporting deposition with Investigator Gessner

11  Exhibit Fourteen
                                            95
12  Letter to (OSI from D. Gunn)

13  Exhibit Fifteen                         86

14  Grievance packet EL-42163

15  Exhibit Sixteen                         89

16  Grievance packet (CO. Schieber)

17  Exhibit Seventeen                        93

18  Movement to strike answer

19  Exhibit Eighteen
                                            91
20  List of Appeals to CORC (D. Gunn)

21  Exhibit Nineteen
                                            91
22  Inmate disciplinary history (D. Gunn)

23  Exhibit Twenty                          98

24  Medical Records (D. Gunn)

25  Exhibit Twenty-one                      119

```
 1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2   OMH PHI Core History report

 3   Exhibit Twenty-two                         125

 4   Sick call note 3/30/2013

 5   Exhibit Twenty-three                       97

 6   Report of interview of Inmate Greene Lovelace

 7   Exhibit Twenty-four                        78

 8   Report of interview w/Lovelace

 9   Exhibit twenty-five                        126

10   Sick call note 5/31/2013

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                  (On the record 10:00 a.m.)

3                  THE REPORTER:  Okay.  We are now on the

4      record.  It is ten a.m.  Would you please raise your

5      right hand?  Do you swear or affirm the testimony you're

6      about to give in this cause today is the truth, the

7      whole truth and nothing but the truth?

8                  MR. GUNN:  Yes.

9                  WITNESS; DARRELL GUNN; Sworn

10                 THE REPORTER:  Can you please state your

11     full name for the record?

12                 THE WITNESS:  Darrell Gunn.

13                 THE REPORTER:  Thank you, Mr. Gunn.  And

14     a reminder, just keep your voice up again with the mask.

15     Okay?

16                 THE WITNESS:  Okay.

17                 THE REPORTER:  Thank you.

18                 DIRECT EXAMINATION

19                 BY MS. MCKAY:

20                 Q.   Good morning, Mr. Gunn.

21                 A.   Good morning.

22                 Q.   Okay.  We are here to complete your

23     deposition.  Do you recall meeting with me a couple

24     months ago I think it was?

25                 A.   Yes.  I got the transcripts last

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      night.

3                Q.    Okay.   Great.   So you've had -- have

4      you had a chance to review that transcript?

5                A.    Yes.

6                Q.    Okay.   And did you receive an errata

7      sheet as well?

8                A.    Yes.

9                Q.    Okay.   So you can use that like we

10     talked about last time, use that if you have any things

11     that you need that you would request to be corrected.

12     Do you know if you have any of that right now?

13               A.    Yeah.   I have it with me right now.

14               Q.    Okay.   The -- the errata sheet, you

15     do?

16               A.    Yeah.

17               Q.    Okay.   Did you complete that?

18               A.    I haven't had it notarized yet.

19               Q.    Okay.   Okay.   That's fine.   Once you

20     get it notarized, you can mail it back to me, okay?

21               A.    Okay.

22               Q.    Okay.   Now, I'd like to talk with

23     you about what you labelled as Count Four in your

24     complaint, okay?   Mr. Gunn?

25               A.    Yes.

 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2                      Q.   Okay.  So you described -- now last

 3      time we talked about some pat frisks, correct?

 4                      A.   Right.

 5                      Q.   Okay.  And those were pat frisks

 6      conducted by C.O. Perry?

 7                      A.   Correct.

 8                      Q.   Okay.  Now, I'd like to talk with

 9      you about a pat frisk conducted by C.O. Harkness.  Do

10      you recall that?

11                      A.   Yes.

12                      Q.   Okay.  Do you remember when this pat

13      frisk was by C.O. Harkness?

14                      A.   Yes.  It was an interview done by

15      Sergeant -- I don't recall his -- the Sergeant's name,

16      but I was going into an interview just like I was going

17      to an interview here and I was being pat frisked.

18                      Q.   Okay.  So were you going into the

19      Sergeant's office?

20                      A.   Correct.

21                      Q.   Okay.  And is that normally

22      something you would be pat frisked before you go?

23                      A.   I believe so.

24                      Q.   Okay.  And do you remember why you

25      were going to see the Sergeant?

```
1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.   For a grievance interview.

3                    Q.   Okay.  Okay.  Now, I'd like to talk

4      with you just briefly.  Can you describe C.O. Harkness?

5                    A.   Over three-hundred pounds,

6      approximately thirty-two years old, six feet -- six two.

7                    Q.   Okay.  And do you know what job he

8      had on that day?

9                    A.   No.

10                   Q.   Okay.  Was this the first that you

11     saw him that day?  Was the pat frisk?

12                   A.   Yes.

13                   Q.   Okay.  And prior to this pat frisk,

14     did you know him?

15                   A.   No.

16                   Q.   Okay.  So you had no prior problems

17     with him?

18                   A.   No.

19                   Q.   Okay.  Now, do you remember what

20     date this pat frisk occurred?

21                   A.   I don't recall.

22                   Q.   Okay.  Do you remember if it was

23     before or after the pat frisk by C.O. Perry?

24                   A.   After.

25                   Q.   Okay.  Does April 19th, 2013, sound
```

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2    right?

3                         A.    Correct.

4                         Q.    Okay.  Okay.  So tell me what

5    happened when you were pat frisked?

6                         A.    Well, it was another officer there

7    and the other officer said be careful, he doesn't like

8    pat frisk and they told me to put my hands on --.

9                         Q.    Okay.  Hang on, Mr. Gunn.  I just

10   want to ask you -- do you know the name of the other

11   officer?

12                        A.    No.

13                        Q.    Okay.  Did you know the other

14   officer?

15                        A.    No.  He was an older guy.

16                        Q.    Okay.  And who did he say that to?

17                        A.    To Harkness.

18                        Q.    Okay.  Did Officer Harkness say

19   anything?

20                        A.    He said he -- he -- he -- he's okay,

21   he's got it.

22                        Q.    Okay.  And what happened after that

23   unknown officer said that to C.O. Harkness?

24                        A.    I was ordered to put my hands on the

25   wall.

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2                    Q.   Okay.  Do you remember who gave you
 3      that order?
 4                    A.   Harkness.
 5                    Q.   Okay.  What happened next?
 6                    A.   I put my hands on the wall.
 7                    Q.   Okay.  And once you had your hands
 8      on the wall, what happened?
 9                    A.   Harkness began to pat frisk me.
10                    Q.   Okay.  Can you describe the pat
11      frisk?
12                    A.   He began pat frisking me and putting
13      his pelvis where I could feel him, his whole body on me.
14                    Q.   Okay.  So did he start by doing
15      that?
16                    A.   Yes.
17                    Q.   Okay.  Did he feel any part of your
18      body when he was starting the pat frisk?
19                    A.   Yes.  He started with my -- with his
20      hands on my arms and he was feeling my arms, and I could
21      feel his penis on my legs, and on my buttocks.
22                    Q.   Okay.  So you're talking about -- he
23      was having his pelvis pressed against you.  Is that
24      correct?
25                    A.   Yes.
```

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2                        Q.    Okay.  And that was while he was rub
3        -- rubbing his hands on your arms.  Is that correct?
4                        A.    Right.
5                        Q.    Okay.  What other -- was he checking
6        any other part of your body at this -- this time?
7                        A.    No.
8                        Q.    Okay.  So what -- how long was he
9        pressed up against your pelvis?
10                       A.    About thirty seconds.
11                       Q.    Okay.  Did he say anything at that
12       time?
13                       A.    No.
14                       Q.    Okay.  Did you say anything at that
15       time?
16                       A.    No.
17                       Q.    Okay.  So what happened after that?
18                       A.    The pat frisk was over.
19                       Q.    Okay.  Okay.  Now, you believed that
20       this was -- was for -- why do you -- why did -- do you
21       know why C.O. Harkness did this, pressed his pelvis
22       against you?
23                       A.    Retaliation.
24                       Q.    Okay.  Do you believe it was for
25       sexual gratification?
```

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2                    A.    Yes.
 3                    Q.    Okay.  And why do you believe that?
 4                    A.    Because he was erect.
 5                    Q.    Okay.  Did anything else happen when
 6      he was -- had his pelvis pressed against you?
 7                    A.    No.
 8                    Q.    Okay.  And then the pat frisk ended?
 9                    A.    Correct.
10                    Q.    Okay.  Did he check any other part
11      of your body, like your legs?
12                    A.    No.
13                    Q.    How about your shoes?  Did he check
14      your shoes?
15                    A.    No.
16                    Q.    And he said nothing to you during
17      the pat frisk?
18                    A.    No.
19                    Q.    Is that correct?
20                    A.    Correct.
21                    Q.    Okay.  Were there any witnesses to
22      the pat frisk?
23                    A.    Another officer that was standing
24      there.
25                    Q.    Okay.  Is that the same unknown
```

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2    officer who spoke to Harkness?

3                      A.    Correct.

4                      Q.    Okay.  Did that officer say anything

5    during the pat frisk?

6                      A.    No.

7                      Q.    But he saw the pat frisk?

8                      A.    Correct.

9                      Q.    Were any other people present

10   besides the -- that unknown officer?

11                     A.    No.

12                     Q.    That unknown officer, could he see

13   what C.O. Harkness was doing?

14                     A.    Absolutely.

15                     Q.    Okay.  But he did nothing?

16                     A.    Did absolutely nothing.

17                     Q.    What happened after the pat frisk

18   was complete?

19                     A.    I went into the Sergeant's office.

20                     Q.    Okay.  Did you have any further

21   issue in the Sergeant's office?

22                     A.    They yelled in there and asked the

23   Sergeant, was he okay.

24                     Q.    Okay.  I'm not sure I understand

25   what -- who -- who yelled?

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2                      A.   I don't know which officer yelled,
 3      but they said, are you okay because the door was shut.
 4      And he said are you okay in there, Sarge?  Do you need -
 5      -
 6                      Q.   Okay.
 7                      A.   -- is everything all right?
 8                      Q.   Okay.  Anything else -- did the
 9      officers say anything else when you were in the
10      Sergeant's office?
11                      A.   No.
12                      Q.   Was the Sergeant able to see the pat
13      frisk?
14                      A.   No.
15                      Q.   Did you tell the Sergeant anything
16      about what had happened?
17                      A.   No.
18                      Q.   Did you complete the interview with
19      the Sergeant?
20                      A.   Yes.
21                      Q.   And what happened once you were done
22      with the interview?
23                      A.   I was in distress and feared for my
24      life because of the retaliation I kept receiving for
25      making complaints and the sexual assaults I kept
```

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2     receiving.

3                     Q.   Well, I'm just wondering that day

4     when you finished the interview with the Sergeant, what

5     happened after that?  Did you go anywhere?

6                     A.   I went back to my cell.

7                     Q.   Okay.  Did you -- were you escorted

8     there?

9                     A.   No.

10                    Q.   Okay.  So how did you go back to

11    your cell?

12                    A.   On my own.

13                    Q.   Did you see the officers when you

14    left your -- the Sergeant's office?

15                    A.   No.

16                    Q.   And how far away is your cell -- was

17    your cell from the Sergeant's office?

18                    A.   Upstairs, on the second gallery.

19                    Q.   So you just walked up there

20    yourself?

21                    A.   Correct.

22                    Q.   Okay.  Now, we can break it down.

23    Did you have any physical injuries from this incident?

24                    A.   No.

25                    Q.   Okay.  Did you have any injuries?

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        A.   Mental.

3                        Q.   Okay.  And can you briefly describe

4        your mental injuries you're claiming from the incident

5        with C.O. Harkness?

6                        A.   Depression, distress and emotional

7        duress, nightmares.

8                        Q.   Okay.  So is it more of what we

9        talked about with respect to the C.O. Perry pat frisk?

10                       A.   Correct.

11                       Q.   Did you receive any medical care for

12       injuries relating to this incident -- the pat frisk by

13       C.O. Harkness?

14                       A.   Mental.

15                       Q.   I'm just asking any medical care.

16                       A.   Mental, I take medication.

17                       Q.   Okay.  Did you receive any medical

18       care --

19                       A.   No.

20                       Q.   -- from medical staff?  Okay.  Okay.

21       And you were seeing O.M.H. practitioners?

22                       A.   Correct.

23                       Q.   And you continued to see them?

24                       A.   Yes.

25                       Q.   Okay.  Okay.  Now, you indicated in

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2    your complaint, you did not file a grievance for this

 3    incident, correct?

 4                    A.    Correct.

 5                    Q.    And you did not grieve it because

 6    you did not believe it was a prison condition, correct?

 7                    A.    Right.

 8                    Q.    Okay.  And you're seeking one

 9    million dollars in damages?

10                    A.    Yes.

11                    Q.    And how did you arrive at that

12    figure?

13                    A.    It's just a number.

14                    Q.    Sorry.  I didn't understand that.

15                    A.    It's just a number.

16                    Q.    Okay.  It's just a number, you're

17    saying?

18                    A.    Correct.

19                    Q.    Okay.  Okay.  Now, I'd like to turn

20    to what you labelled as Count Eight in your complaint,

21    okay?

22                    A.    Okay.

23                    Q.    Now, that involves a C.O. Schieber.

24    Can you describe him briefly?

25                    A.    Schieber is very aggressive, he's --
```

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      .

3                    Q.   Well, hang on, Mr. Gunn.  I -- just

4      to start, can you give me a physical description of

5      Officer Schieber?

6                    A.   Six two, two-hundred and twenty

7      pounds.  A white male.

8                    Q.   Okay.  Any identifying

9      characteristics like tattoos or scars?

10                   A.   None.  None that I can remember.  I

11     got -- I don't recall, brown hair.

12                   Q.   Okay.  And do you know what Officer

13     Schieber's job was at this time?

14                   A.   I don't recall.

15                   Q.   Okay.  Okay.  Now, you are claiming

16     that Officer Schieber conducted a sexual pat frisk as

17     well, correct?

18                   A.   Yes.

19                   Q.   Now, prior to that pat frisk, did

20     you know Officer Schieber?

21                   A.   Yes.

22                   Q.   Okay.  When -- when did you first

23     become familiar with Officer Schieber?

24                   A.   He was beating up other prisoners in

25     the facility.

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    Q.   Okay.  Mr. Gunn, that isn't a time

3      period.  I am asking you when did you become familiar

4      with Officer Schieber?

5                    A.   Well, I was familiar with him when

6      other inmates were complaining about him being --

7                    Q.   Okay.  Do you remember when that

8      was?

9                    A.   -- barbaric and brutal.  Months

10     earlier.

11                   Q.   Okay.  Had you had any contact with

12     Officer Schieber yourself before the pat frisk?

13                   A.   No.

14                   Q.   Okay.  So you're saying you knew of

15     him before the pat frisk?

16                   A.   Correct.

17                   Q.   Okay.  Did he work in your area?

18                   A.   No.

19                   Q.   Okay.  So you personally had no

20     prior problems with Officer Schieber?

21                   A.   Correct.

22                   Q.   And you had filed no grievances

23     against Officer Schieber at that time?

24                   A.   Correct.

25                   Q.   I just want to go back to the

 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2      incident regarding Officer Harkness for a quick moment,

 3      okay?

 4                    A.    Okay.

 5                    Q.    Did you have any contact with

 6      Officer Harkness after that April 2013 pat frisk?

 7                    A.    No.

 8                    Q.    Okay.  You never saw him again?

 9                    A.    No.

10                    Q.    And that's correct?

11                    A.    Correct.

12                    Q.    Okay.  Do you remember the date of

13      the pat frisk by Officer Schieber?

14                    A.    I don't recall.

15                    Q.    Okay.  Do you remember where you

16      were going when you were pat frisked by Officer

17      Schieber?

18                    A.    To the yard.

19                    Q.    So was it during rec?

20                    A.    Yes.

21                    Q.    Okay.  Does, for the date, July

22      26th, 2013, sound correct?

23                    A.    Correct.

24                    Q.    Do you remember what time of day

25      this pat frisk occurred?

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.    Approximately three a.m. -- I mean

3        three p.m.

4                    Q.    Okay.  Where was the pat frisk?

5                    A.    On the stair -- stairway wall.  By

6        the stairway -- stairwell leading to the yard.

7                    Q.    Okay.  Is there a magnetometer

8        there?

9                    A.    Correct.

10                   Q.    Okay.  And were you on your way to

11       rec?

12                   A.    Yes.

13                   Q.    Okay.  Did you go through the

14       magnetometer?

15                   A.    Yes.

16                   Q.    And you go through that every time

17       you go to rec, correct?

18                   A.    Correct.

19                   Q.    Okay.  And what happened during the

20       pat frisk?

21                   A.    He began pat frisking me by my arms.

22                   Q.    Your arms?  Is that what you said?

23                   A.    Yes.

24                   Q.    Okay.  Did he say anything to you

25       before he started the pat frisk?
```

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                       A.    No.  He pointed to me.

3                       Q.    Okay.  Is that how you knew you were

4       selected for a random pat frisk?

5                       A.    Well, prior to him pointing to me,

6       the prison guards at the magnetometer told him that I'm

7       the one that'd be filing grievances.

8                       Q.    Okay.  So is that the first

9       conversation that you remember?

10                      A.    Correct.

11                      Q.    Okay.  So was this before or after

12      you went through the magnetometer?

13                      A.    It was after.

14                      Q.    Okay.  So where did you go once you

15      went through the magnetometer?

16                      A.    I went to the wall.

17                      Q.    Okay.  Were you getting in line?

18                      A.    Right.  There was a line, he pointed

19      to me and I -- I had to go to the wall.

20                      Q.    Okay.  So were you in line when this

21      officer -- when the officer said that?

22                      A.    Correct.

23                      Q.    Okay.  And which officer said that?

24                      A.    I don't know his name.

25                      Q.    Okay.  So how many officers were in

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2    this area?
3                    A.   I would say four.
4                    Q.   Okay.  Do you know any of them?
5                    A.   No.
6                    Q.   One of them you now know was Officer
7    Schieber?
8                    A.   Correct.
9                    Q.   Okay.  So then there were three
10   other officers besides him?
11                   A.   Correct.
12                   Q.   And who said the statement about
13   your grievance?
14                   A.   The officer at the magneme --
15   magnetometer.
16                   Q.   Okay.  Not Officer Schieber?
17                   A.   Correct.
18                   Q.   Okay.  And what exactly did that
19   officer say?
20                   A.   He's the one that'd be filing
21   grievances.
22                   Q.   Okay.  Do you remember any other
23   officers saying anything?
24                   A.   No.  I don't recall.
25                   Q.   Okay.  Did you say anything?
```

    1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

    2                     A.   No.

    3                     Q.   Did Officer Schieber say anything?

    4                     A.   No.

    5                     Q.   Okay.  So what happened after the

    6      officer said that?

    7                     A.   He pointed to me to get on the wall.

    8                     Q.   Okay.  And who's he?

    9                     A.   Officer Schieber.

   10                     Q.   Okay.  Okay.  And did you -- where -

   11      - where was he ordering you to the wall?  The out of

   12      line?

   13                     A.   Correct.

   14                     Q.   Okay.  So how far did you have to

   15      walk to get on the wall?

   16                     A.   Not far, a couple of feet.

   17                     Q.   Okay.  And was the line of inmates

   18      still there?

   19                     A.   No, they're headed up the stairs

   20      towards the yard.

   21                     Q.   Okay.  Was anyone else being pat

   22      frisked?

   23                     A.   Correct.

   24                     Q.   I -- I'm asking, was anyone else pat

   25      frisked?

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.    Yes.

3                    Q.    Okay.  Do you remember how many pat

4      frisks were conducted?

5                    A.    One other one.

6                    Q.    Okay.  Do they always do two?

7                    A.    There was another officer do --

8      doing a pat frisk and there were two officers at the

9      magne -- magnetometer.  So --

10                   Q.    Okay.

11                   A.    -- there was --.

12                   Q.    So were there -- were there three

13     officers there or --?

14                   A.    There were four.

15                   Q.    Okay.  Two at the magnetometer.  One

16     officer was pat frisking someone else.  Is that correct?

17                   A.    Correct.

18                   Q.    And Officer Schieber pat frisked

19     you?

20                   A.    Correct.

21                   Q.    Okay.  Okay.  So describe the --

22     what happened for the pat frisk?

23                   A.    I had my hands on the wall.  He

24     began pat frisking me -- my arms and then he came down

25     on my waist area, and he went to my butthole and tried

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2     to penetrate my butthole.
 3                         Q.    Okay.  Did you have clothes on?
 4                         A.    Correct.
 5                         Q.    With pants and boxers?
 6                         A.    Yes.
 7                         Q.    Okay.  Was there any skin to skin
 8     contact with Officer Schieber?
 9                         A.    No.
10                         Q.    Okay.  Was there any penetration?
11                         A.    Briefly.
12                         Q.    Okay.  Can you estimate how long
13     that lasted?
14                         A.    It caused a bowel movement.
15                         Q.    Can you estimate how long you were
16     penetrated?
17                         A.    Two seconds.
18                         Q.    Okay.  Now, what do you mean it
19     caused a bowel movement?
20                         A.    I had to use the bathroom.
21                         Q.    Okay.  Did you -- did you use the
22     bathroom?
23                         A.    Yes.
24                         Q.    Okay.  When?
25                         A.    On my cell.
```

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    Q.   Okay.  So did you go right there?

3                    A.   On the way down towards -- when I

4      was walking back to my cell.

5                    Q.   Okay.  Okay.  So you're saying you

6      had an accident?

7                    A.   Correct.

8                    Q.   Before the pat frisk, do you -- did

9      you empty your pockets?

10                   A.   I put my belongings on the table.

11                   Q.   Okay.  And did this pat frisk start

12     like the others, checking your arms?

13                   A.   Yes.

14                   Q.   And then where did he check?

15                   A.   He checked my buttocks.

16                   Q.   Okay.  Did he check your torso at

17     all?

18                   A.   I believe so.

19                   Q.   Okay.  Did he check your legs?

20                   A.   I believe so.

21                   Q.   Was this pat frisk conducted in the

22     same manner as the other pat frisks we've talked about?

23                   A.   No.

24                   Q.   Okay.  Well, was it conducted in the

25     same manner as the ones by C.O. Perry?

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2                    A.    No.
 3                    Q.    Okay.  And was it conducted in the
 4      same manner as the one by Officer Harkness?
 5                    A.    No.
 6                    Q.    Okay.  Okay.  How was this one
 7      different?
 8                    A.    He was looking for contraband in my
 9      rectum as if I had planted something in my rectum.
10                    Q.    Okay.  And so -- now, all the pat
11      frisks are looking for contraband, right?
12                    A.    All of them?
13                    Q.    I'm just asking you, pat frisks in
14      general are looking for contraband, right?
15                    A.    I believe so.
16                    Q.    Okay.  And you're familiar with the
17      fact that contraband gets into prison, right?
18                    A.    Yes.
19                    Q.    So -- and they're looking for drugs,
20      weapons, that sort of thing?
21                    A.    Correct.
22                    Q.    Okay.
23                    A.    And --.
24                    Q.    Now --.
25                    A.    And --.
```

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        Q.    Did -- when we talked about Officer

3        Schieber, did he say anything to you during the pat

4        frisk?

5                        A.    No.

6                        Q.    Okay.  Did you say anything to him?

7                        A.    I asked him what his name was.

8                        Q.    Okay.  And was that during the pat

9        frisk?

10                       A.    After.

11                       Q.    Okay.  So did you say anything

12       during the pat frisk?

13                       A.    No.

14                       Q.    Okay.  So what happened at the end

15       of the pat frisk?

16                       A.    I asked him what his name was.

17                       Q.    Okay.  And did -- did Officer

18       Schieber respond?

19                       A.    Yes.

20                       Q.    What did he say?

21                       A.    Schieber and he spelled it.  Well,

22       first -- first he told me to get my stuff.

23                       Q.    Okay.  And what happened after he

24       told you to get your stuff?

25                       A.    I asked him his name.

1          Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                          Q.    Okay.  And what happened after you

3      asked him that?

4                          A.    He wanted to know why I wanted to

5      know his name.

6                          Q.    Okay.  Did he say anything to you

7      about that?

8                          A.    He said -- no, he -- he just wanted

9      to know why I -- he asked me why do you want to know my

10      name.  And I said --

11                          Q.    Okay.  So and --.

12                          A.    -- you touched my asshole.

13                          Q.    Okay.  So what -- he asked you why

14      you wanted to know his name?

15                          A.    I said you touched my asshole.

16                          Q.    Okay.  Hang on, Mr. Gunn.  You're

17      stepping ahead.  I'm asking you, Officer Schieber asked

18      you in response why you wanted to know his name?

19                          A.    Correct.

20                          Q.    Okay.  And then what did you say in

21      response?

22                          A.    You touched my asshole.

23                          Q.    Okay.  And what did he say in

24      response to that?

25                          A.    Schieber.

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2                    Q.   Okay.  And you said he also spelled

 3      his name?

 4                    A.   Correct.

 5                    Q.   Okay.  Did he say anything else to

 6      you?

 7                    A.   To get back to my cell.

 8                    Q.   Okay.  Did you say anything else to

 9      him?

10                    A.   No.

11                    Q.   Okay.  So did you go to rec?

12                    A.   No, I went back to my cell.  I had a

13      -- I had a bowel movement.

14                    Q.   Okay.  Were you able to go back --

15      were you able to go to rec at that point?

16                    A.   No.

17                    Q.   Okay.  Do you know why he ordered

18      you back to your cell?

19                    A.   No.

20                    Q.   Did you tell him you needed to use

21      the bathroom?

22                    A.   No.

23                    Q.   Okay.  Did you have any further

24      contact with Officer Schieber that day?

25                    A.   He refused to give me chow and my
```

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2     law library callout.

3                        Q.    Okay.  Was that that day?

4                        A.    Correct.

5                        Q.    Okay.  What do you mean that he

6     refused to do that?

7                        A.    He took the list for -- for that

8     company that night for you to sign up for the activities

9     and he refused to give me what I put down for, I put

10    down for chow and law library.

11                       Q.    Okay.  So when you say chow, does

12    that mean you couldn't go to the mess hall?

13                       A.    Correct.

14                       Q.    Okay.  Did they bring you a tray?

15                       A.    No.

16                       Q.    So what did you do for eat -- to eat

17    that night?

18                       A.    I didn't eat.

19                       Q.    Okay.  Okay.  Now, how do you know

20    that Officer Schieber prevented you from going to the

21    law library and chow?

22                       A.    Because I got legal mail that night

23    and I asked the officer why I didn't go to the law

24    library and I didn't receive chow, and he said that I

25    was keep lock.

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    Q.   Okay.  Do you know which officer

3      said that?

4                    A.   No.  The officer that gave out legal

5      mail was the officer who said that.

6                    Q.   Okay.  Do you know how he knew that

7      you were keep lock?

8                    A.   No.

9                    Q.   Was that officer working in your

10     area?  That was giving out legal mail?

11                   A.   Yes.

12                   Q.   What about Officer Schieber, was he

13     working in your area?

14                   A.   I don't recall.

15                   Q.   All right.  Now, you described three

16     other officers who were present but -- during the pat

17     frisk by Officer Schieber, did they say anything during

18     it?

19                   A.   Nothing at all.

20                   Q.   Did they see that -- what he was

21     doing during the pat frisk?

22                   A.   Well, I don't recall because there

23     were other inmates going to the yard.

24                   Q.   Okay.  So you're not sure if anyone

25     saw the pat frisk?

```
 1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2                      A.    Correct.
 3                      Q.    Okay.  Okay.  Do you believe that
 4       Officer Schieber retaliated against you?
 5                      A.    Correct.
 6                      Q.    Okay.  And what -- why do you
 7       believe that?
 8                      A.    Because I filed grievances against
 9       C.O. Perry, C.O. Taylor, C.O. Brash and other grievances
10       and I filed a sexual assault.
11                      Q.    Okay.  So you're talking about all
12       of the -- any grievance that you filed regarding sexual
13       assault during a pat frisk?
14                      A.    And retaliation, because there was a
15       lot of retaliation going on.
16                      Q.    Were all of your grievances
17       regarding sexual assault relating to pat frisks?
18                      A.    Yes.
19                      Q.    Okay.  Tell me what the process is,
20       do you have to sign up for chow or are you just
21       automatically going to go?
22                      A.    You have to sign up for it.
23                      Q.    Okay.  Do you sign up for it every
24       day?
25                      A.    Yes.
```

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2                    Q.   Sorry.  My question is:   Do you

 3      need to sign up for it every day?

 4                    A.   I beg your pardon?

 5                    Q.   Just to clarify my question.  Do you

 6      need to sign up for chow every day?

 7                    A.   Yes.

 8                    Q.   No, I'm just saying if you want to

 9      go to chow, you always have to sign up that day?

10                    A.   Correct.

11                    Q.   Okay.  Okay.  Did you report this

12      pat frisk to anyone?

13                    A.   Yes.

14                    Q.   Okay.  Who?

15                    A.   To the C.O. that was at the center

16      gate.

17                    Q.   Okay.  When did you report it?

18                    A.   On my way back to my cell.

19                    Q.   Okay.  Do you remember who those

20      officers were?

21                    A.   I don't recall.

22                    Q.   Okay.  Do you remember the

23      conversation you had with them?

24                    A.   Yes.

25                    Q.   Okay.  What happened?
```

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                      A.    They told me to lift weights, not to

3      come out of my cell, that writing grievances that I was

4      there when I was in the rec and to --.

5                      Q.    Okay.  So this -- so they knew about

6      your grievances too?

7                      A.    Correct.

8                      Q.    Was Officer Schieber a part of that

9      conversation?

10                     A.    No, this was at the center gate.

11                     Q.    Okay.  So you'd already walked away

12     from him?

13                     A.    Yes.

14                     Q.    Okay.  Now, you received a

15     misbehavior report from Officer Schieber, correct?

16                     A.    Yes.

17                     Q.    Now, did you feel that the pat frisk

18     that Officer Schieber did was needless?

19                     A.    Absolutely.

20                     Q.    And you believed that because you

21     didn't set off the magnetometer?

22                     A.    Correct.

23                     Q.    What about the pat frisk by Officer

24     Harkness, do you believe that was needless?

25                     A.    Well, I -- I'm not sure.

 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2                      Q.    Okay.  All right.  I'd like you to

 3      take a look at what's been marked -- well, if we could

 4      mark it, please.  It's got a -- eleven if we could just

 5      do Exhibit Eleven, please.

 6                      Is that the prison disciplinary packet

 7      from the misbehavior report issued by Officer Schieber?

 8                      A.    Correct.

 9                      Q.    Okay.  And that first page, is that

10      the misbehavior report that you were served with?

11                      A.    Yes.

12                      Q.    And it was written by Officer

13      Schieber, correct?

14                      A.    Yes.

15                      Q.    And he wrote it on July 26th, 2013?

16                      A.    Correct.

17                      Q.    And you were charged with threats

18      towards staff and failure to follow orders?

19                      A.    Right.

20                      Q.    Okay.  You -- did you attend the

21      hearing on this misbehavior report?

22                      A.    Yes.

23                      Q.    It was presided over by a hearing

24      officer?

25                      A.    Yes.

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    Q.   And you called witnesses?

3                    A.   Yes.

4                    Q.   And you testified?

5                    A.   Yes.

6                    Q.   And you were found guilty of the

7      charges, correct?

8                    A.   Correct.

9                    Q.   And you were sentenced to fifty days

10     keep lock?

11                   A.   I believe so.

12                   Q.   Okay.  Now, after the pat frisk, did

13     you stare at Officer Schieber in an aggressive manner?

14                   A.   No.

15                   Q.   Did you stare at him at all?

16                   A.   No.

17                   Q.   Did you state I will have your job?

18                   A.   No.

19                   Q.   Did you state just wait until you

20     see me again?

21                   A.   No.

22                   Q.   And then you were ordered to return

23     to your cell, correct?  Mr. Gunn, you were ordered to

24     return to your cell, correct?

25                   A.   I was ordered to return to my cell

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2        after I asked him his name.

3                    Q.    That's fine.  I am confirming you

4        were asked to -- you were ordered to go back to your

5        cell, right?

6                    A.    Correct.  It was not in the sense

7        that was narrated in this false misbehavior report.

8                    Q.    I understand, Mr. Gunn.  That's why

9        we went through it piece by piece.  So I am just asking

10       you, you see where the misbehavior report separately

11       says inmate was ordered to return to his cell, correct?

12       I'm just asking you if that --?

13                   A.    Yes.

14                   Q.    I'm just asking you if that portion

15       of this misbehavior is correct.  You were, in fact,

16       ordered to return to your cell?

17                   A.    Yes.

18                   Q.    Okay.  Now, you claimed that the

19       misbehavior report was retaliatory, correct?

20                   A.    Yes.

21                   Q.    Why do you believe that it was

22       retaliatory?

23                   A.    Because I filed a grievance.

24                   Q.    Okay.  Which grievance are you

25       talking about?  Are you talking about the grievance that

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2    you filed in regards to this July pat frisk?

3                    A.    Correct.

4                    Q.    Okay.  Let's take a look at what's

5    marked as Exhibit Twelve.

6                    Okay.  Now, do you recognize that as the

7    grievance packet from your grievance?

8                    A.    Yes.

9                    Q.    Okay.  And the grievance in here,

10   looks like pages four through nine, are those in your

11   handwriting?

12                   A.    Yes.

13                   Q.    Okay.  And the statements you made

14   in your grievance, are those true and accurate?

15                   A.    Yes.

16                   Q.    Okay.  And you signed your

17   grievance, correct?

18                   A.    Yes.

19                   Q.    Now, it looks like there's a couple

20   of documents.  So on page four, did you write that

21   grievance on August 18th, 2015?

22                   A.    Yes.

23                   Q.    Okay.  And then on page seven, it

24   looks like you wrote another grievance.

25                   A.    Well, that's an appeal statement to

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      C.O.R.C.

3                    Q.    Okay.  That's your appeal statement,

4      okay.  And you did your appeal on October 30th, 2015?

5                    A.    Correct.

6                    Q.    Okay.

7                    A.    October 30th, 2015.

8                    Q.    Okay.  Now, are you saying that the

9      misbehavior part was in retaliation for this grievance

10     about the July incident?

11                   A.    Could you -- could you repeat that?

12                   Q.    Are you saying that -- we talked

13     about your misbehavior report, right?

14                   A.    Uh-huh.

15                   Q.    Was the -- are you saying that the

16     misbehavior report was filed -- was written in

17     retaliation for your grievance in Exhibit Twelve?

18                   A.    No.

19                   Q.    Okay.  What do you mean?

20                   A.    I believe that he filed a

21     misbehavior report against me because I was going to

22     file a sexual assault claim against him.

23                   Q.    Okay.  So you're saying he was --

24     when he wrote the misbehavior report, he did it because

25     he was worried you would file, you said?

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                       A.   Yes.

3                       Q.   Okay.  So do you -- do you have any

4       proof that he was worried about that?

5                       A.   No.

6                       Q.   Okay.  You don't believe that based

7       on anything that the officer said?

8                       A.   Right.

9                       Q.   Okay.

10                      A.   Well, he -- he told me to take it

11      back to my cell.

12                      Q.   Right, okay.  Okay.  Is this your

13      only grievance relating to the July 20 -- July 26th,

14      2013, pat frisk?

15                      A.   I don't recall.

16                      Q.   Okay.  Do you have a memory of

17      writing any other grievance?  You're shaking your head.

18      Is that a no?

19                      A.   Right.

20                      Q.   Okay.  So you don't have a memory of

21      any other grievance, correct?

22                      A.   Of other incidents, I have.

23                      Q.   No, I'm not -- I'm not asking about

24      other incidents, just in regards to the July 2013 pat

25      frisk by Officer Schieber.  Do you have any other

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2   grievances?

3               A.    I don't recall.

4               Q.    Okay.  Now, when you're looking at

5   Exhibit Twelve, do you -- is there any memory you have

6   of any documents missing that you wrote regarding that

7   incident?

8               A.    No.

9               Q.    Okay.  So you don't have a specific

10  memory of any other grievances, correct?

11              A.    Correct.

12              Q.    Okay.  Now, did you file -- did you

13  appeal your prison disciplinary determination?

14              A.    Yes.

15              Q.    Okay.  And what was the result of

16  the appeal?

17              A.    It was expunged.

18              Q.    Okay.  Did you appeal to the

19  superintendent first?

20              A.    Yes.

21              Q.    Okay.  And the guilty determination

22  was affirmed at that time, right?

23              A.    Correct.

24              Q.    Okay.  And then did you file an

25  Article 78 proceeding?

```
 1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2                         A.    Right.  And that was expunged.
 3                         Q.    Okay.  How did you learn of the
 4        expunging?
 5                         A.    I went -- I did the process, I went
 6        through the Article 78 and I applied --.
 7                         Q.    Right.  I'm saying how did -- what
 8        notice did you receive that it was expunged?
 9                         A.    From the -- from the C.O.R.C.
10                         Q.    Did you get any papers about it, do
11        you remember?  I don't want you to guess.  I'm just
12        asking if you remember.
13                         A.    Yes.
14                         Q.    Okay.  Do you still have the
15        document you received from the court?
16                         A.    No, I -- no.
17                         Q.    Okay.
18                         A.    And it's lost somewhere.
19                         Q.    Was it a decision from the court?
20                         A.    Correct.
21                         Q.    Okay.  And it said that the -- there
22        was no opposition, is that correct?
23                         A.    No, there was opposition.  They
24        expunged the decision.
25                         Q.    Okay.  It said that it had been
```

```
1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2     administratively reversed?
3                    A.   Correct.
4                    Q.   Okay.  Okay.  Do you know why it was
5     reversed?
6                    A.   No.
7                    Q.   Okay.
8                    A.   I guess there's --.
9                    Q.   There was -- there was no reason
10    given?
11                   A.   I guess the --.
12                   Q.   Well, Mr. Gunn, I don't want you to
13    guess.  I'm just asking if you know.
14                   A.   The attorney general agreed with the
15    disciplinary hearing tape that I had submitted, they --
16    they agreed with --- with me.
17                   Q.   Okay.  Did they send you something
18    that said that?
19                   A.   I believe so.
20                   Q.   Okay.  How do you know that they
21    agreed with you?
22                   A.   It was in the pro se catalog where
23    they -- the attorney general are -- I'm saying, I don't
24    -- I don't know how to say it, but they're -- they're
25    are not contending (sic) the --.
```

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2                      Q.   Okay.  Mr. Gunn, did you -- now, in
3        response -- so you filing the Article 78 in the trial
4        level, correct?
5                      A.   Uh-huh, yes.
6                      Q.   Is that -- yes.  Okay.  And then
7        there was a verified answer in return prepared, right?
8                      A.   Right.
9                      Q.   Okay.  And the A.G.'s office
10       prepared that.  It had all of the documents pertaining
11       to your hearing, correct?
12                     A.   Correct.
13                     Q.   Okay.  And then it went to the
14       Appellate Division, right?
15                     A.   Correct.
16                     Q.   Okay.  And then the Appellate
17       Division -- did you ever get a brief -- you never got a
18       brief from the A.G.'s office, correct?
19                     A.   No.
20                     Q.   Okay.  You -- you prepared a brief,
21       right?
22                     A.   Right.
23                     Q.   Okay.  And then you received notice
24       in a letter that said that they were administratively
25       reversing it, correct?
```

1          Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                      A.    Right.

3                      Q.    Okay.  That letter didn't say why

4          though, right?

5                      A.    Right.

6                      Q.    Okay.  They just say we're

7          administratively reversing it?

8                      A.    Right.

9                      Q.    Okay.  And then they send that to

10         the Court too, correct?

11                     A.    Correct.

12                     Q.    Okay.  And then the Court issued a

13         decision which is the one that you received, right?

14                     A.    Yes.

15                     Q.    Okay.  And that said that it had

16         been administratively reversed and therefore it was

17         removed?

18                     A.    Right.

19                     Q.    Okay.

20                     A.    I don't know if it was removed or

21         not, but it was expunged.

22                     Q.    That's fine.  So the Court's

23         decision said that it was administratively reversed so

24         the case was done, right?

25                     A.    Correct.

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        Q.    Okay.  Okay.  And the Court didn't

3        provide any other explanation than that, right?

4                        A.    Right.

5                        Q.    Okay.  And the A.G.'s office didn't

6        provide any other explanation on that, right?

7                        A.    Right.

8                        Q.    Okay.  Did you have any injuries

9        after the July 26th, 2013, pat frisk?

10                       A.    No.

11                       Q.    Okay.

12                       A.    Just mental injuries.

13                       Q.    Okay.  So you had no physical

14       injuries, correct?

15                       A.    Correct.

16                       Q.    Okay.  And can -- is your mental

17       injuries the same thing that you described, the

18       depression and the nightmares?

19                       A.    Yes.

20                       Q.    Okay.

21                             So did you -- so did you continue to see

22       O.M.H. staff?

23                       A.    Yes.

24                       Q.    Okay.  But you didn't receive any

25       medical care, correct?

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        A.    None.

3                        Q.    Okay.  And you're seeking five

4       million dollars in damages?

5                        A.    Correct.

6                        Q.    And how did you arrive with that

7       figure?

8                        A.    It's just a number.

9                        Q.    Okay.  Okay.  Now, we've talked

10      about a couple of pat frisks over this time period.  Do

11      you know if C.O. Perry -- do you know anything about

12      whether he knows Officer Harkness?

13                       A.    I'm quite sure he does.

14                       Q.    Okay.  And what's your basis for

15      believing that?

16                       A.    There's a brotherhood and --.

17                       Q.    Well, no -- Mr. Gunn, you wouldn't

18      say that every officer employed at Elmira knows every

19      other officer, right?

20                       A.    I would say somewhat.

21                       Q.    Okay.  Okay.  Do you know if Officer

22      Perry knows Officer Harkness?  Have you ever seen them

23      have any contact?

24                       A.    No.

25                       Q.    Okay.  Have you ever seen any

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2       contact between Officer Harkness and Officer Schieber?

3                    A.    No.

4                    Q.    Okay.  And how about Officer

5       Schieber and Officer Perry, have you ever seen them have

6       any contact?

7                    A.    No.

8                    Q.    Okay.  So when you say that they

9       know one another, you're talking about like -- because

10      they're C.O.s together at the facility?

11                   A.    Correct.

12                   Q.    Okay.  Now, did you have -- after

13      this July 2013 pat frisk, did you have any further

14      contact with Officer Schieber?

15                   A.    Yes.

16                   Q.    Okay.  Was he working in your area

17      later or how did you come across him?

18                   A.    He would come to my cell and

19      sexually harass me, and --.

20                   Q.    Okay.  Do you know where he was

21      working at the time?

22                   A.    No.

23                   Q.    Okay.  All right.  Now, in Count

24      Nine of your complaint, you're claiming that your cell

25      block was cold.  Is that correct?

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        A.    Yes.

3                        Q.    Okay.  So describe what happened

4        with that.

5                        A.    There was a -- an officer overnight

6        closing the windows, and someone yelled, don't close the

7        windows and he left the windows open.

8                        Q.    Okay.  So you said it was -- in --

9        at the nighttime?

10                       A.    During the nighttime, during --.

11                       Q.    Okay.  And do you remember what day

12       that was?

13                       A.    It was in January, I believe.

14                       Q.    Okay.

15                       A.    December or January late -- late

16       December, early January and --.

17                       Q.    Okay.  So you don't remember the

18       exact day?

19                       A.    Correct.

20                       Q.    Okay.  But it was sometime in late

21       December or early January?

22                       A.    Right.  There was a polar vortex.

23       There was a --

24                       Q.    Okay.

25                       A.    -- weather formation.

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    Q.   Okay.  So do you know which -- do

3      you know which officer was closing the window?

4                    A.   No, I don't.  He worked the

5      overnight shift and --.

6                    Q.   Okay.  Okay.  And do you know who

7      said not to close it?

8                    A.   The officer that -- well, an inmate

9      told him not to close the windows, so --.

10                   Q.   Okay.  Do you know which inmate?

11                   A.   No.

12                   Q.   Okay.  And where is the window?

13                   A.   The cell block windows.  They are

14     controlled by one crank -- there are cranks and they

15     control several of the windows and you have to --.

16                   Q.   Okay.  And all these windows located

17     in the hallway?

18                   A.   In the block, in the cell block.

19                   Q.   Okay.  But there's not any windows

20     in the cells, correct?

21                   A.   Correct.

22                   Q.   Okay.  So they're out -- are they in

23     the central area of the block, these windows?

24                   A.   Right.  Right, right.

25                   Q.   Okay.

```
1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2                       A.   The cells are facing the windows.
3                       Q.   Okay.  So how -- how -- can you
4       describe where the window is that you're talking about?
5                       A.   Three -- about three feet from the
6       cells.
7                       Q.   Okay.  So there's a line of cells,
8       correct?
9                       A.   Right.
10                      Q.   Okay.  And then is it a hallway?
11                      A.   Correct.
12                      Q.   Okay.  And then is the window on
13      that hallway?
14                      A.   Right.  On a -- on the wall, there
15      is a wall of windows.
16                      Q.   Okay.  And does every wind -- is
17      there a window for - lined up with every cell?
18                      A.   No, there is a wall of windows.
19                      Q.   Okay.  I'm just trying to understand
20      how many windows are there.
21                      A.   More than a dozen.
22                      Q.   Okay.  All in a row up there?
23                      A.   Correct.
24                      Q.   Okay.  So how many cells are in the
25      hallway that you were just talking about?  If you know.
```

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        A.    Maybe -- maybe it's fifty, sixty

3        cells.

4                        Q.    Okay.  And -- but do you know how

5        many -- you said there's maybe a dozen windows along

6        that hallway?

7                        A.    Right.  There is --

8                        Q.    Okay.

9                        A.    -- it's pretty much.

10                       Q.    Okay.  Did you hear what the

11       discussion that you're describing when the inmate told

12       the officer not to close it?

13                       A.    No, it was overnight.  I was -- it

14       was sleeping -- I was sleeping and --.

15                       Q.    Okay.  Okay.

16                       A.    And that's when --.

17                       Q.    And so how do you -- how do you know

18       that that conversation happened?

19                       A.    Because the next morning when they

20       changed their shift, the officer told the other officers

21       not to close the windows.

22                       Q.    The overnight officer told the

23       daytime officers not to close the window?

24                       A.    Correct.

25                       Q.    Okay.  But I'm asking how do you

```
1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      know about the conversation that the inmate and the

3      overnight officer had?

4                      A.    Well, that's what the rumor was.

5                      Q.    Okay.  So other inmates told you

6      that?

7                      A.    Right.

8                      Q.    Okay.  And you said you don't know

9      which inmate it was, correct?

10                     A.    Correct.

11                     Q.    Okay.  And then when the daytime

12     officers came in and took over, did you hear the

13     overnight officer tell them not to close it?

14                     A.    No.

15                     Q.    Okay.  So that was based on other

16     people telling -- other inmates telling you that as

17     well?

18                     A.    Correct.

19                     Q.    Okay.  When did you learn that

20     stuff?

21                     A.    There was an inmate who was

22     freezing, and he was trying to get the windows closed,

23     and nobody would close the windows.  And to make a long

24     story short, Officers Schieber ended up beating up that

25     inmate.
```

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        Q.   Okay.  So how long was the window

3        open?

4                        A.   Roughly all day and almost all

5        night.

6                        Q.   Okay.  Are you talking about that

7        initial night?

8                        A.   Right.

9                        Q.   Okay.  So it was left open that

10       night and then it was left open most of that day?

11                       A.   All of that day until chow.  Until

12       they went to eating in chow.

13                       Q.   Okay.

14                       A.   Santiago, Sergeant Santiago.

15                       Q.   Do you have -- do you have an

16       approximate time when you went to chow that night and

17       the window was closed?

18                       A.   Approximately seven o'clock, that's

19       when the breakfast runs.  Officer Santiago, that's the

20       sergeant's name that I had an interview with when C.O.

21       Harkness sexually assaulted me.

22                       Q.   Okay.  So you remember his name now?

23                       A.   Yes, Santiago.

24                       Q.   Okay.  And is he the one who closed

25       the window?

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2                           A.    Yeah, he's the one who ordered the -
3        - ordered to close the windows.
4                           Q.    Okay.  And you said that they closed
5        it when you were at dinner?
6                           A.    Correct.
7                           Q.    Okay.  And approximately what time
8        was your dinner?
9                           A.    Six p.m.
10                          Q.    Okay.  Okay.  So do you -- the only
11       -- I'm -- I'm trying to understand.  Can you see the
12       window from your cell that was open?
13                          A.    Absolutely, there were -- there were
14       windows open and actually they were open for -- for
15       days.
16                          Q.    Okay.
17                          A.    It wasn't just one evening.
18                          Q.    Okay.  I'm not sure I follow because
19       you said that it was closed, correct?  That next day?
20                          A.    It was closed on one evening when
21       Sergeant Santiago came and -- and interjected when
22       Inmate Greene became very agitated that --.
23                          Q.    Okay.  Okay.  So did -- what
24       happened after it was closed?  Did anything else happen
25       with the windows after that?
```

 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2                     A.    No.

 3                     Q.    Okay.  So we can talk a little bit

 4      about -- you said it was Inmate Greene, correct?

 5                     A.    Yes.

 6                     Q.    Okay.  Now, I'm just trying to

 7      understand when you were in your cell, you said there is

 8      a whole bunch of windows, right?

 9                     A.    You're right, right, right.

10                     Q.    And from your cell, can you see all

11      the windows or just some of them?

12                     A.    You can see most of them.

13                     Q.    Okay.  So do you remember

14      whereabouts your cell was in the hallway that you

15      described?

16                     A.    I'm in the -- I'm in the front.  I

17      was in five cell, so the windows are up top, but the air

18      was so cold, and the wind would blow.

19                           If you put sheets up, the sheets will

20      just blow right back into your cell.  There was nothing

21      to protect you.

22                     Q.    Okay.  So you're saying that you

23      felt the cold air from the open window, correct?

24                     A.    Absolutely.

25                     Q.    Okay.  I'm just trying to understand

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      if you could see the window from your cell?

3                      A.    Absolutely.

4                      Q.    Okay.  So -- so where was your cell

5      located in the hallway that we're talking about?

6                      A.    Five cell.

7                      Q.    Okay.  So it starts at one?

8                      A.    Right.

9                      Q.    Okay.  So you're five cells down?

10                     A.    Right.

11                     Q.    In a row of fifty or sixty?

12                     A.    Correct.

13                     Q.    Okay.  And then, can you describe

14     approximately where that window was that was open?

15                     A.    It was a whole row of windows.

16                     Q.    Okay.

17                     A.    I think the whole row -- it was a

18     whole row of windows.

19                     Q.    Okay.  So can you estimate how far

20     the open window was from your cell?

21                     A.    Four feet, five feet.

22                     Q.    Okay.  Okay.  Now, besides the rumor

23     about an inmate wanting the window open, do you -- did

24     you hear any other explanations for why the window was

25     open?

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.   No.

3                    Q.   Okay.  Do you know what temperature

4      it was in your cell when the window was open?

5                    A.   No.

6                    Q.   Okay.  You don't have a thermometer

7      in there?

8                    A.   Correct.

9                    Q.   Okay.  And approximately how many

10     officers were working in the area when the window was

11     open?

12                   A.   I would say six.

13                   Q.   And was anyone else present when the

14     windows were open?

15                   A.   A lieutenant.

16                   Q.   Okay.  A lieutenant did rounds in

17     the area?

18                   A.   Correct.

19                   Q.   Do you know the lieutenant's name?

20                   A.   No.

21                   Q.   What time did those rounds take

22     place?

23                   A.   I don't recall.

24                   Q.   Okay.  Do you remember if it was

25     morning, midday or later?

 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2                      A.    Midday.

 3                      Q.    Okay.  Before you went to chow then

 4      that night?

 5                      A.    Right.

 6                      Q.    Okay.  Did the lieutenant say

 7      anything about how the window was open?

 8                      A.    No.

 9                      Q.    Okay.  You didn't hear anything?

10                      A.    The only thing I heard was that the

11      officer ordered the windows to stay open.

12                      Q.    The overnight officer you're talking

13      about?

14                      A.    Yes.

15                      Q.    And you don't know who that officer

16      was, correct?

17                      A.    No.

18                      Q.    Okay.  Did any medical staff come

19      through the area when the window was open?

20                      A.    No.

21                      Q.    What about any mental health staff?

22                      A.    No.

23                      Q.    Any other administrators besides the

24      lieutenant?

25                      A.    No.

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                         Q.   Do you remember was there a sick

3      call that day?

4                         A.   I don't recall.

5                         Q.   Right.  Okay.  Now, did you say

6      anything or do anything to report the windows being open

7      personally?

8                         A.   No.

9                         Q.   Okay.  So you described Inmate

10     Greene, did you witness him complaining about the

11     windows?

12                        A.   Yes.

13                        Q.   Okay.  And when about was that?

14                        A.   Every day.

15                        Q.   Okay.  I'm just trying to understand

16     the window -- the day that we're talking about where the

17     window was open, did you -- did you hear them talk about

18     that window?

19                        A.   Yes.

20                        Q.   Okay.  And do you know who he was

21     talking to?

22                        A.   Yes.

23                        Q.   Who was that?

24                        A.   The officers that were in charge.

25                        Q.   Okay.  So one of the six that you

```
1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2    mentioned?
3                   A.   Correct.
4                   Q.   Okay.  Do you know the name of that
5    officer?
6                   A.   No.
7                   Q.   And was Officer Schieber one of the
8    six officers that you described?
9                   A.   No.
10                  Q.   Okay.  Was Officer Schieber involved
11   at all?
12                  A.   Yes.
13                  Q.   Okay.  So when did Officer Schieber
14   get involved?
15                  A.   On the way to rec.
16                  Q.   Okay.  Okay.  So what happened when
17   it was time to -- was it time to go to rec or time to go
18   to chow?
19                  A.   Time to go to rec.
20                  Q.   Okay.  Do you remember what time
21   that was?
22                  A.   Seven to eight.  Seven p.m.
23                  Q.   Okay.  So that was after the window
24   had been closed when you were at chow?
25                  A.   Correct.
```

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    Q.   Okay.  And that was the first that

3      you saw of Officer Schieber?

4                    A.   No.

5                    Q.   No, I'm asking that day when it was

6      time for rec, that was when you first saw him that day?

7                    A.   I don't recall.

8                    Q.   Okay.  So you don't recall seeing

9      Officer Schieber beforehand?

10                   A.   No.

11                   Q.   Is that correct?

12                   A.   Right.

13                   Q.   Okay.  So then it was time to go to

14     rec around seven p.m. you said?

15                   A.   Correct.

16                   Q.   Okay.  So what happened at that

17     time?

18                   A.   We went to rec and they pulled out -

19     - they picked Greene for pat frisk.

20                   Q.   Okay.  And what about you, were you

21     picked for a pat frisk?

22                   A.   No.

23                   Q.   Okay.

24                   A.   Oh, wait, wait a minute.  I recall

25     maybe -- I don't recall.

```
 1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2                        Q.    Okay.  So you don't recall whether
 3       you were pat frisked?
 4                        A.    Right.
 5                        Q.    Okay.  When you go to rec, some
 6       inmates are pat frisk, correct?
 7                        A.    Correct.
 8                        Q.    Okay.  And you're not always
 9       selected, right?
10                        A.    Right.
11                        Q.    Okay.  So sometimes you're selected,
12       sometimes other inmates are selected for a pat frisk?
13                        A.    Right.
14                        Q.    Okay.  And Officer Schieber was in-
15       charge of doing pat frisks, is that correct?  At that --
16       that -- that day we're talking about?
17                        A.    I don't know if he was in charge,
18       but he picked Greene for a pat frisk.
19                        Q.    Okay.  I'll rephrase it.  Officer
20       Schieber -- on the day with the window, Officer Schieber
21       was involved in doing pat frisks?
22                        A.    Yes.
23                        Q.    Okay.  Was he over at the
24       magnetometer?
25                        A.    Correct.
```

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    Q.   Okay.  But -- and do you remember if

3      you saw the pat frisk?

4                    A.   Yes.

5                    Q.   You -- you did?

6                    A.   Yes.

7                    Q.   Okay.  So -- but you don't remember

8      if you were pat frisk, correct?

9                    A.   Correct.

10                   Q.   Okay.  Do you remember what you --

11     how -- where were you during the pat frisk?

12                   A.   I was observing the pat frisk.

13                   Q.   Sorry, what was that?

14                   A.   I stood by lots of pat frisk.  I

15     stood by lots of pat frisk.

16                   Q.   Okay.  You were allowed to just

17     stand there?

18                   A.   Off to a distance.

19                   Q.   Okay.  Were you with any other

20     inmates?

21                   A.   Yeah, there were several other

22     inmates.

23                   Q.   Okay.  And how many officers?

24                   A.   It was around six.

25                   Q.   Okay.  And one of those was

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2    Schieber?

3                    A.    Correct.

4                    Q.    Okay.  And did Officer Schieber

5    conduct the pat frisk?

6                    A.    Yes.

7                    Q.    All right.  Were there other inmates

8    being pat frisked?

9                    A.    Yes.

10                   Q.    Okay.  Do you remember how many

11   others?

12                   A.    No.

13                   Q.    Okay.  Okay.  And what do you

14   remember about the pat frisk of Inmate Greene?

15                   A.    That he began pat frisking and he

16   didn't make it back -- he didn't make it to rec.  He --

17   he was ordered back to the cell.

18                   Q.    Okay.  Now, you -- do you see the

19   entire pat frisk of Inmate Greene?

20                   A.    Yes.

21                   Q.    Okay.  And it was done in the same

22   manner as the pat frisk of you, correct, by C.O.

23   Schieber?

24                   A.    No.

25                   Q.    Okay.  What do you mean by that?
```

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.    I mean that C.O. Schieber checked my

3      rectum.  I don't believe he checked Mr. Greene's rectum.

4                    Q.    Okay.  So Inmate Greene was -- was

5      the pat frisk of Inmate Greene sexual in anyway?

6                    A.    No.

7                    Q.    Okay.  So you didn't feel that it

8      was inappropriate, the pat frisk that you saw?

9                    A.    Not exactly.

10                    Q.    Okay.  I'm just talking about the

11      pat frisk.  When you say not exactly, I'm just asking

12      was the pat frisk inappropriate in anyway of Inmate

13      Greene that you witnessed?

14                    A.    I believe it was needless.

15                    Q.    Okay.  Other than that, the manner

16      in which it was conducted, was it appropriate?

17                    A.    I seen him touch his groin, his

18      groin area --.

19                    Q.    Right.  Mr. Gunn -- okay.  So I

20      asked you if that pat frisk was sexual?

21                    A.    Right.  But he didn't check his

22      rectum.

23                    Q.    Okay.  So I'll ask you again, did

24      you believe that the pat frisk of Inmate Greene that you

25      saw was sexual in any way?

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.    No.

3                    Q.    No, okay.  But you're saying that he

4      -- so describe to me what you're talking about then?

5                    A.    He checked his groin and he checked

6      his buttocks.

7                    Q.    Okay.  And is that just an

8      appropriate search?

9                    A.    I would say he -- it was a needless

10     search because he didn't bring -- when he went to the

11     magnetometer, there was no alarm or signal.

12                   Q.    Okay.  So we've talked about it

13     before, you believe that it's needless if the

14     magnetometer doesn't go off, correct?

15                   A.    Correct.

16                   Q.    Okay.  Other than that, was the pat

17     frisk conducted in an appropriate way?

18                   A.    You could say yes.

19                   Q.    Okay.  So a regular pat frisk does

20     involve checking the groin and buttocks area?

21                   A.    Right.

22                   Q.    Okay.  And that's what you saw

23     happen with Inmate Greene that day?

24                   A.    Correct.

25                   Q.    Okay.  Okay.  So what happened once

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      that pat frisk was completed?

3                      A.   I went -- I went to rec.

4                      Q.   Okay.  But did Inmate Greene go to

5      rec?

6                      A.   No.

7                      Q.   Okay.  Do you know where he went?

8                      A.   He -- he was escorted back to his

9      cell.

10                     Q.   Okay.  Do you know why?

11                     A.   He -- they said he had layers of

12     clothing.

13                     Q.   Okay.  So he -- they said that he

14     was wearing something he couldn't go to rec in?

15                     A.   Correct.

16                     Q.   Okay.  Do you know if that was true

17     or not?

18                     A.   No.

19                     Q.   You don't know?

20                     A.   I don't know.

21                     Q.   Okay.  Okay.  Now, are you claiming

22     that Officer Schieber retaliated against you in any

23     other way?

24                     A.   Yes, I wrote the Inspector General

25     about Inmate Greene.

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2                    Q.   Okay.  What did you write to the
3        Inspector General for?
4                    A.   Because Schieber beat Inmate Greene
5        up.
6                    Q.   Okay.  When did that happen?
7                    A.   That same night.
8                    Q.   Okay.  So you're talking about once
9        Inmate Greene went back to his cell?
10                   A.   Right.
11                   Q.   Okay.  And when you went to rec?
12                   A.   Right.
13                   Q.   Okay.  So you wrote to the Office of
14       Special Investigations about that?
15                   A.   Correct.
16                   Q.   Okay.
17                   A.   And the windows.
18                   Q.   Do you remember when you wrote that?
19       When you wrote to them?
20                   A.   I don't recall.
21                   Q.   Okay.  Now, you were not present
22       when you said that Inmate Greene was beaten up, correct?
23                   A.   Right.
24                   Q.   Okay.  So how do you know about
25       that?
```

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                      A.   Because he was put in the box.

3                      Q.   Okay.  And by box you mean the

4      solitary housing unit?

5                      A.   Yes.

6                      Q.   The SHU?

7                      A.   Correct.

8                      Q.   Okay.  So was he moved to another

9      location?

10                     A.   Right.

11                     Q.   Okay.  When was that?

12                     A.   That night.

13                     Q.   Okay.  Was he gone before you got

14     back from rec?

15                     A.   Correct.

16                     Q.   So how did you find out that he was

17     in the SHU?

18                     A.   I believe instinct.  That's the only

19     place we can go.

20                     Q.   Okay.  So you just assumed that he

21     was taken to SHU?

22                     A.   Right.

23                     Q.   Okay.  And how did you know that

24     force had been used?

25                     A.   Because C.O. Schieber is known in

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2      the facility for beating people up.
 3                      Q.   Okay.  So you assumed that C.O.
 4      Schieber had beaten up Inmate Greene?
 5                      A.   Correct.
 6                      Q.   Okay.  And then based on that, you
 7      wrote to the O.S.I.?
 8                      A.   Yes, and the windows too.
 9                      Q.   Okay.  You had mentioned the windows
10      in your complaint, you're saying?
11                      A.   Right.
12                      Q.   Okay.  Do you know if Inmate Greene
13      wrote to O.S.I.?
14                      A.   No.  Well, actually he didn't.
15                      Q.   You know that he did not?
16                      A.   Right.
17                      Q.   Okay.  How do you know that?
18                      A.   Because I spoke to the Inspector
19      General, Lovelace.
20                      Q.   Okay.  And how do you know that
21      Inmate Greene did not write to them?
22                      A.   Because Lovelace told me he didn't
23      get a report from Greene and he was going to go check on
24      him after he finished the interview with me.
25                      Q.   Okay.  Okay.  So now, based on you
```

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2     reporting that to O.S.I., that's why you think that

3     Officer Schieber retaliated against you?

4                    A.   Correct.

5                    Q.   Okay.  So what was it that Officer

6     Schieber did to retaliate against you?

7                    A.   He came by my cell, blowing kisses

8     at me, called me cinnamon and called me a faggot.

9                    Q.   Okay.  How many times did that

10    occur?

11                   A.   Several times.

12                   Q.   Okay.  Can you estimate at all?

13                   A.   Three.

14                   Q.   Okay.  Do you remember when that

15    was?

16                   A.   I don't recall.

17                   Q.   Okay.  In your complaint you

18    described January 31st, 2014.  Does that sound right?

19                   A.   Correct.

20                   Q.   Okay.  And then on February 3rd,

21    2014, does that sound right?

22                   A.   Correct.

23                   Q.   Okay.  Anything else that you

24    remember him doing besides saying those things, blowing

25    kisses and calling you cinnamon?

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.    And he also threw water on me.

3                    Q.    Okay.  That was the February 3rd,

4      2014?

5                    A.    Yeah.  I don't recall.

6                    Q.    Okay.  Does that -- does that sound

7      right though --

8                    A.    Yes.

9                    Q.    --- about that time?  Okay.  Okay.

10     Anything else that you remember Officer Schieber doing?

11                   A.    Yeah, he was threatening to beat me

12     up.

13                   Q.    Okay.  When was that?

14                   A.    He would tell me to come out of my

15     cell so he could beat me up.

16                   Q.    Okay.  And was that the same day

17     that he was calling you cinnamon?

18                   A.    Correct.

19                   Q.    Okay.  So it's that same time period

20     of January to early February 2014?

21                   A.    Yes.

22                   Q.    Okay.  What else that he did?

23                   A.    That's it.

24                   Q.    Okay.  Okay.  Then you said that you

25     met with this O.S.I. Investigator Lovelace?

    1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
    2                    A.    Yes.
    3                    Q.    Do you know if Officer Schieber knew
    4      about the O.S.I. investigation?
    5                    A.    Yes.
    6                    Q.    Okay.  How do you know that he knew?
    7                    A.    Because they always know.
    8                    Q.    Okay.  But it wasn't based on
    9      anything that he said?
   10                    A.    Right.
   11                    Q.    Okay.  Okay.  When you met with
   12      Investigator Lovelace, did you give a statement?
   13                    A.    I believe so.
   14                    Q.    Okay.  And do you know anything
   15      about Investigator Lovelace's discussions with Inmate
   16      Greene?
   17                    A.    No.
   18                    Q.    Okay.  When you met with
   19      Investigator Lovelace, was that the first time that you
   20      met with an O.S.I. Investigator?
   21                    A.    No, I met with Investigator Gessner.
   22                    Q.    Okay.  So you had already met an
   23      investigator before, or do you remember when?
   24                    A.    Yeah, I don't recall.
   25                    Q.    Okay.

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                      A.   I met with an investigator about

3      C.O. Perry and he said he would come back and see me.

4      He never came back to see me.

5                      Q.   Okay.  So do you -- you said that

6      you've met with Investigator Gessner as well?

7                      A.   Correct.

8                      Q.   Okay.  Do you remember what you

9      talked to Investigator Gessner about?

10                     A.   C.O. Perry and the retaliation I was

11     experiencing for the sexual assaults.

12                     Q.   Okay.  Was that a different O.S.I.

13     investigation from when you spoke with Investigator

14     Lovelace?

15                     A.   Correct.

16                     Q.   Okay.  Okay.  I just want to get a

17     couple of exhibits set up.  Can we go off the record?

18                     (Off the record 11:34 a.m. to 11:36 a.m.)

19                     THE REPORTER:  All right.  We're back on

20     the record.

21                     BY MS. MCKAY:  (Cont'g.)

22                     Q.   Okay.  Mr. Gunn, you have in front

23     of you what's been marked as Exhibit Twenty-four,

24     correct?

25                     A.   Okay.

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    Q.   Do you see that exhibit?

3                    A.   Yes.

4                    Q.   Okay.  And is that the report of

5        your interview with Investigator Lovelace?

6                    A.   Yeah.

7                    Q.   Okay.  Is that in your handwriting?

8                    A.   No.

9                    Q.   Okay.  Is that the investigator's

10       handwriting?

11                   A.   Yes.

12                   Q.   Okay.  Did you review this document?

13                   A.   Yes.

14                   Q.   Okay.  And then your signature

15       appears on page two?

16                   A.   Correct.

17                   Q.   Okay.  So the contents are true and

18       accurate?

19                   A.   Right.

20                   Q.   Okay.  And you met with Investigator

21       Lovelace on February 4th, 2014?

22                   A.   Correct.

23                   Q.   Okay.  Did you hear from

24       Investigator Lovelace before that date?

25                   A.   No.

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                      Q.    Okay.  Did you hear from

3      Investigator Lovelace after that date?

4                      A.    No.

5                      Q.    Okay.  Do you know what the result

6      of the investigation was?

7                      A.    Yes, they found out that there was

8      no merit.

9                      Q.    Okay.  So it was unsubstantiated?

10                     A.    Correct.

11                     Q.    Okay.  But you didn't hear from

12     officer or Investigator Lovelace after that?

13                     A.    Right.

14                     Q.    Okay.  Now, could you take a look at

15     what's been marked as Exhibit Thirteen?

16                     Now, is that the supporting deposition

17     from your interview with Investigator Gessner?

18                     A.    Correct.

19                     Q.    Okay.  And your signature -- did you

20     sign that document?

21                     A.    Yes.

22                     Q.    Is this one in your handwriting?

23                     A.    No.

24                     Q.    Okay.  So is this the investigator's

25     handwriting?

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                   A.    Yes.

3                   Q.    When the investigator's write it, do

4       they write it in front of you?

5                   A.    Yes.

6                   Q.    Okay.  And did you review this

7       document before you signed it?

8                   A.    Yes.  I was under the impression

9       that he would come back in two weeks and do this

10      interview, but he -- he became untruthful.

11                  Q.    Well, so Mr. -- Investigator Gessner

12      did not return.  Is that correct?

13                  A.    Correct.

14                  Q.    After this interview, okay.  And

15      this interview was on March 24th, 2014?

16                  A.    Right, because he said he was

17      unprepared that I have so many grievances and he said he

18      didn't have time to finish reviewing the grievances and

19      the complaints, and he wanted to come back, and he never

20      did.

21                  Q.    Okay.  Okay.  But the contents of

22      this -- this document are true and accurate?

23                  A.    No.

24                  Q.    Well, I'm just -- how are they not?

25                  A.    Because at the end it says that

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2        Schieber had recently changed his ways and I don't

3        believe he has.

4                          Q.   Okay.  So at the -- you're talking

5        about the last two lines there --

6                          A.   Yes.

7                          Q.   -- the rest -- okay.  And so just

8        with respect to the rest of that document, is that true

9        and accurate?

10                         A.   Yes.

11                         Q.   Okay.  Because you signed it, right?

12                         A.   Right.

13                         Q.   Okay.  And so after the interview or

14       du -- was it during the interview that the investigator

15       wrote these -- wrote this out?

16                         A.   Yeah.

17                         Q.   Okay.  And it was based on what you

18       said -- told them, correct?

19                         A.   Yes.

20                         Q.   And then down in the bottom two

21       lines you're talking about, it says C.O. Schieber has

22       recently changed his ways, but I still don't trust any

23       C.O.s to leave my cell.  Is that what that says?

24                         A.   Right.

25                         Q.   Okay.  And you said that, correct?

    1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
    2                    A.    Right.
    3                    Q.    Okay.  But now, you don't believe
    4      that's true?
    5                    A.    Correct.
    6                    Q.    Okay.  But at the time when you
    7      signed it, did you believe that that was true?
    8                    A.    Yes.
    9                    Q.    Okay.  Okay.  And then you said --
   10      did you -- do you know the result of this investigation?
   11                    A.    Yeah, they said that it was onset --
   12      unsubstantiated.
   13                    Q.    Okay.  So that one was
   14      unsubstantiated as well?
   15                    A.    Yes.
   16                    Q.    Okay.  And you didn't see of --
   17      Investigator Gessner again?
   18                    A.    Correct.
   19                    Q.    Okay.  The -- when you talk about
   20      those sexual advances by C.O. Schieber in January and in
   21      February of 2014, do you have any physical injuries from
   22      -- from those events?
   23                    A.    No, just mental.
   24                    Q.    Okay.  So is it the same mental
   25      injuries we've talked about the depression and

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2        nightmares?

3                        A.    Correct.

4                        Q.    Okay.  And did you continue to see

5        O.M.H. staff --

6                        A.    Yes.

7                        Q.    Okay.  Did you talk to O.M.H. staff

8        about the sexual advances?

9                        A.    Yes.

10                       Q.    Okay.  Do you know why C.O. Schieber

11       made those advances at you?

12                       A.    I believe he has a homosexual

13       behavior.

14                       Q.    Okay.  So you believe he did it for

15       sexual gratification?

16                       A.    Yes.

17                       Q.    Do you know anything about Officer

18       Schieber's personal life?

19                       A.    He's very aggressive and he likes to

20       beat people up.

21                       Q.    Okay.  Do you know anything about

22       whether -- you said that you believe that he has

23       homosexual idiosyncrasies, is that -- that's based on

24       how the pat frisks and the sexual advances?

25                       A.    Right.

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                      Q.   Okay.  Do you have any other basis

3      for that belief?

4                      A.   No.

5                      Q.   Okay.  When you wrote to O.S.I.

6      regarding Inmate Greene, did you tell anyone you had

7      done that?

8                      A.   No.

9                      Q.   Okay.  Do you know if anyone knew

10     that you had done that?

11                     A.   No.

12                     Q.   Now the last date that you mentioned

13     in -- let me -- so Count Eleven of your complaint talks

14     about the sexual advances by Officer Schieber, right?

15     If you don't recall, that's okay.

16                     A.   Count Eleven?

17                     Q.   Right.  Do you remember if that one

18     pertains to Officer Schieber?

19                     A.   Yeah, I believe so.

20                     Q.   Okay.  Okay.  And that one pertains

21     to the same.  The incidents that we were talking about

22     regarding the sexual advances -- what he would say to

23     you, is that right?

24                     A.   Correct.

25                     Q.   Okay.  Okay.  So that -- those

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      advances took place through to -- what is it, do you

3      remember when they stopped?

4                      A.   No, I don't recall.

5                      Q.   Okay.  Did you file any grievances

6      regarding the -- the contact you had with Officer

7      Schieber?

8                      A.   Absolutely.

9                      Q.   Okay.  So if you could take a look

10     at what's been marked as Exhibit Fifteen.  Now, do you

11     recognize Exhibit Fifteen as one of the grievance

12     packets?

13                     A.   Yes.

14                     Q.   Okay.  Do you see your grievance in

15     there?

16                     A.   Yes.

17                     Q.   Okay.  Is that -- where is that?

18     There's page numbers down at the bottom right hand

19     corner.

20                     A.   Five, six, seven.

21                     Q.   Okay.  And are the -- that -- is

22     that grievance in your handwriting?

23                     A.   Yes.

24                     Q.   And are the contents true and

25     accurate?

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2                    A.    Correct.
3                    Q.    And you signed that document?
4                    A.    Yes.
5                    Q.    Okay.  And just for the record, this
6        is grievance number EL 42163-14, correct?
7                    A.    Yes.
8                    Q.    Okay.  And your grievance was
9        denied?
10                   A.    No.
11                   Q.    Well, did you appeal to C.O.R.C.?
12                   A.    Yes.
13                   Q.    Okay.  So why do you say that it was
14       not denied?
15                   A.    Because there was a second part from
16       C.O.R.C.
17                   Q.    Okay.  Once it got to the appeal
18       level you're saying?
19                   A.    Yes.
20                   Q.    Okay.  And do you know what result
21       there was?
22                   A.    Well, they say they unanimously
23       accepted it in part, but they give the reasons for the
24       superintendent.
25                   Q.    All right.  Do you know why it was
```

1          Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2     accepted in part?
3                    A.    No.
4                    Q.    Okay.  You're -- you're looking at
5     the first page of Exhibit Fifteen?
6                    A.    Correct.
7                    Q.    Okay.  And C.O.R.C. indicated that
8     they were accepting only to the extent that C.O.R.C.
9     upholds the determination of the superintendent.  Is
10    that correct?
11                   A.    Yeah.
12                   Q.    Okay.  Okay.  And the superintendent
13    had denied your grievance, correct?
14                   A.    Yes.
15                   Q.    Okay.  Now I'd like to have you take
16    a look at what's been marked as Exhibit Sixteen.  Now,
17    is that your other grievance regarding C.O. Scheiber?
18                   A.    This is the grievance on
19    Superintendent Paul Chappie Jr.
20                   Q.    Right.  But it also relates to the
21    sexual -- what you say is the sexual abuse by C.O.
22    Scheiber, correct?
23                   A.    Yes.
24                   Q.    Okay.  And specifically your -- this
25    is your entire grievance packet, correct?

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.    Yes.

3                    Q.    From grievance number EL 42205-14?

4                    A.    Correct.

5                    Q.    Okay.  And your grievance appears on

6       page, is it five to six or just page five?

7                    A.    Page five.

8                    Q.    Okay.  Is that document in your

9       handwriting on page five?

10                   A.    Yes.

11                   Q.    Okay.  And you signed that document?

12                   A.    Yes.

13                   Q.    And the contents are true and

14      accurate?

15                   A.    Correct.

16                   Q.    Okay.  All right.  And that

17      grievance was denied, correct?

18                   A.    Yes.

19                   Q.    Okay.  Those are your two grievances

20      regarding C.O. Schieber, correct?

21                   A.    Well, I -- I tried to write a

22      grievance against the superintendent, but they're

23      biased, and they won't allow you to write grievances

24      against the superintendent for some reason.  And

25      C.O.R.C., again, unanimously accepted it in part.

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                      But again, determination on the

3      superintendent for the reasons stated below.  But I

4      don't -- I don't get it.

5                      Q.   Okay.  You're talking about what's

6      on page one of Exhibit Sixteen?

7                      A.   Yes.

8                      Q.   Okay.  And you're saying that you --

9      you wanted this grievance to be against the

10     superintendent, right?

11                     A.   Right.

12                     Q.   You wanted to hold him responsible

13     for C.O. Schieber?

14                     A.   Yes.

15                     Q.   Okay.  Okay.  And you filed just the

16     one that we looked at in Exhibit Fifteen against C.O.

17     Schieber?

18                     A.   What?

19                     Q.   And you filed just the one that we

20     already looked at Exhibit Fifteen against C.O. Schieber,

21     correct?

22                     A.   Right.

23                     Q.   Okay.  And then this is the only

24     other one that you did.  And this one was supposed to be

25     against the superintendent, correct?

```
 1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2                      A.   Yes.

 3                      Q.   Sorry, Exhibit Sixteen?

 4                      A.   Right.

 5                      Q.   Okay.  Okay.  Did you have any --

 6        strike that, sorry.  I'd like to have you take a look at

 7        Exhibit Eighteen.  Is that your list of appeals to

 8        C.O.R.C.?

 9                      A.   Yes.

10                      Q.   Okay.  And the first page of Exhibit

11        Eighteen shows your active cases, correct?

12                      A.   Yes.

13                      Q.   As of the date it was printed?

14                      A.   Correct.

15                      Q.   Okay.  And then the second two pages

16        are your closed cases, correct?

17                      A.   Yes.

18                      Q.   Okay.  So does that appear to be a

19        true and accurate list of your grievances?

20                      A.   Yes.

21                      Q.   Okay.  Please take a look at what's

22        been marked as Exhibit Nineteen.  Is that your inmate

23        disciplinary history?

24                      A.   Yes.

25                      Q.   Okay.  And you see your inmate I.D.
```

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2       and name at the top there?

3                    A.    Right.

4                    Q.    Okay.  Is that true -- does that

5       truly and accurately show which disciplinary convictions

6       you've had?

7                    A.    Yes.

8                    Q.    Okay.  And if you take a look at the

9       last page there of Exhibit Nineteen, is that your

10      chronological history display?

11                   A.    Right.

12                   Q.    Okay.  So that shows what locations

13      you were housed in during your incarceration since 2003?

14                   A.    Correct.

15                   Q.    Okay.  Okay.  Now you would agree

16      that your physical injuries regarding all of your claims

17      are relatively modest, correct?

18                   A.    Yes.

19                   Q.    Some of the incidents you didn't

20      have any physical injury at all, correct?

21                   A.    I wouldn't say at all.  I will say

22      that they are modest.

23                   Q.    I'm just asking about physical for

24      some of the incidents, right.  We talked about some, you

25      said you had no physical injury, correct?

1     Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.    Correct.

3                    Q.    Okay.  And you've struggled for most

4     of your life with depression, correct?

5                    A.    I was never diagnosed with

6     depression.

7                    Q.    Well I'm just asking you, would you

8     agree that you've struggled for most of your life with

9     depression?

10                   A.    No.

11                   Q.    Okay.  And when were you first

12    diagnosed?  Do you remember?

13                   A.    No, I don't recall.  Actually, in

14    2000 -- 2002, I believe.

15                   Q.    Okay.  Were you in custody at the

16    time?

17                   A.    Yes.

18                   Q.    Was it shortly after this

19    incarceration began, your current bid?

20                   A.    Correct.

21                   Q.    Okay.  I'd like to have you take a

22    look at Exhibit Seventeen.  You know what, actually, can

23    you hand that back to Ms. Allen, I just want to make

24    sure that we only get what we need.  Okay.  Can we go

25    off just for a second?  I just want to make sure we get

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      the exhibit.

3                          (Off the record, 11:59 a.m. to 12:00

4      p.m.)

5                          THE REPORTER:  We're back on the record.

6                          BY MS. MCKAY:  (Cont'g.)

7                          Q.   Okay.  So Mr. Gunn, you have what's

8      been marked as Exhibit Seventeen in front of you,

9      correct?

10                         A.   Yes.

11                         Q.   Okay.  And that document is in your

12     handwriting?

13                         A.   Yes.

14                         Q.   Okay.  And is it signed by you on

15     page two?

16                         A.   Yes.

17                         Q.   Do you remember what day you wrote

18     it?

19                         A.   September 20th.

20                         Q.   Okay.  And if you look at page one,

21     that's got -- Mr. Gunn, can you look at page one that

22     has the caption from this case, correct?

23                         A.   Yes.

24                         Q.   Okay.  So this is the document you

25     filed with the court in this case, right?

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        A.    Right.

3                        Q.    Okay.  And are the contents true and

4        accurate?

5                        A.    Yes.

6                        Q.    Okay.  You were moving to strike

7        your -- the answer, correct?

8                        A.    Excuse me?

9                        Q.    You were moving to strike an answer,

10       correct?

11                       A.    Moving to strike an answer.

12                       Q.    Right.  That's what that was, right,

13       it says at the top motion to strike answer?

14                       A.    Oh, yes.

15                       Q.    Okay.  Okay, that's all that I

16       needed with that one.  Okay.  I think we had skipped

17       over Exhibit Fourteen.  So if you would please take a

18       look at that.  Okay.  Do you have that exhibit, Mr.

19       Gunn?

20                       A.    Yes.

21                       Q.    Okay.  So Exhibit Fourteen is a

22       typed document, correct?

23                       A.    Yes.

24                       Q.    Okay.  And did you type that

25       document?

      1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

      2                    A.    Yes.

      3                    Q.    Okay.  And did you sign it?

      4                    A.    Yes.

      5                    Q.    And the contents are true and

      6     accurate?

      7                    A.    Correct.

      8                    Q.    And is the last page the envelope

      9     you sent to them?

     10                    A.    Yes.

     11                    Q.    Okay.  Is Exhibit Fourteen the

     12     letter that you sent to the O.S.I.?

     13                    A.    Yes.

     14                    Q.    Okay.  Now it's in regards to the

     15     Inmate Greene incident?

     16                    A.    Right.

     17                    Q.    Okay.  And are the contents true and

     18     accurate?

     19                    A.    Correct.

     20                    Q.    And when you sent this letter you

     21     didn't tell anyone you sent it, correct?

     22                    A.    Right.

     23                    Q.    Okay.  We're all set with that one.

     24     Mr. Gunn, actually, regarding -- did you write that

     25     letter in Exhibit Fourteen on January 24th, 2014?

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        A.    Yes.

3                        Q.    Okay.  We're all set with that.  Do

4        you know -- do you know if Inmate Greene was interviewed

5        by O.S.I.?

6                        A.    Yes.

7                        Q.    You know he was?

8                        A.    Yes.

9                        Q.    Okay.  Taking a look at what's been

10       marked as Exhibit Twenty-three.  Is that the report of

11       interview of Inmate Greene by Investigator Lovelace?

12                       A.    Correct.

13                       Q.    And that report of interview is four

14       pages, correct?

15                       A.    Right, right.

16                       Q.    And then Mr. Greene has signed on

17       page four of four?

18                       A.    Right.

19                       Q.    Okay.  And turning to the next page,

20       is that a grievance by Mr. Greene?

21                       A.    Yes.

22                       Q.    Okay.  And were you -- are you --

23       were you familiar with Inmate Greene's writing?

24                       A.    No.

25                       Q.    Okay.  Okay.  Next, I'd like to have

```
 1    Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2   you take a look at Exhibit Twenty.  And if you flip
 3   through that exhibit, is that your medical records?
 4                   A.   Yes.
 5                   Q.   Okay.  Do you see your DIN and name
 6   on those records?
 7                   A.   Yes.
 8                   Q.   Okay.  Now you have a history of
 9   GERD -- GERD, right, G-E-R-D?
10                   A.   That's the first I've ever heard of
11   that.
12                   Q.   Okay.  You've not -- you're not
13   familiar with that condition?
14                   A.   No.
15                   Q.   Okay.
16                   A.   What is that?
17                   Q.   Well, I'm just asking you if you're
18   -- is it -- do you experience like irritable bowel or
19   something?
20                   A.   Yes.
21                   Q.   Okay.  Do you remember when you
22   first started experiencing irritable bowel?
23                   A.   During the sexual assaults.
24                   Q.   Okay.  Are you aware of any
25   connection between your irritable bowel syndrome and
```

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      hemorrhoids?

3                    A.    No.

4                    Q.    Okay.  No medical staff has ever

5      talked to you about that?

6                    A.    No.

7                    Q.    Are you aware that you were

8      diagnosed with G.E.R.D.?

9                    A.    No.

10                   Q.    Okay.  But you're -- you would agree

11     that you have irritable bowel syndrome?

12                   A.    Yes.

13                   Q.    Okay.  Okay.  Do you see where

14     there's page numbers at the bottom, right-hand corner of

15     Exhibit Twenty?  There -- there are small page numbers,

16     do you see those?

17                   A.    Yes.

18                   Q.    Okay.  I'd like to have you take a

19     look at page four of Exhibit Twenty.  Okay.  Is that the

20     entry pertaining to the March 29th, 2013, pat frisk by

21     C.O. Perry?

22                   A.    Yes.

23                   Q.    Okay.  And that entry indicates that

24     you were complaining of being sexually assaulted on

25     Friday night during pat frisk, claims officer pulled

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2     underwear up into genital area and violently squeezed

3     his genital area.  Complains of genital area and rectum

4     soreness.  Is that correct?

5                    A.   Yes.

6                    Q.   Okay.  So that's what you reported

7     to medical staff?

8                    A.   Yes.

9                    Q.   Okay.  And you saw medical staff on

10    March 31st, 2013?

11                   A.   Correct.

12                   Q.   Okay.  And then in the next box

13    after that it says denies having any skin to skin

14    contact, right?

15                   A.   Right.

16                   Q.   Okay.  And that's true and correct?

17                   A.   Correct.

18                   Q.   Okay.  Then it indicates was not

19    fondled at any time during the encounter.  Is that true

20    and accurate?

21                   A.   That's not true.

22                   Q.   Okay.  So you -- you didn't say that

23    to the medical staff?

24                   A.   No.

25                   Q.   Okay.  Then next to plan, it says

    1     Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

    2     genital and rectal area examined no redness, swelling,

    3     abrasions or open areas noted.  Is that accurate?

    4                     A.    Correct.

    5                     Q.    From your examination?

    6                     A.    Correct.

    7                     Q.    Okay.  Scrotal sac soft, no lumps or

    8     bumps noted, rectal area clean and no open areas or

    9     redness noted.  Is that correct?

   10                     A.    Correct.

   11                     Q.    Okay.  And then the nurse notified

   12     the doctor, correct?

   13                     A.    Yes.

   14                     Q.    Okay.  Did you have any other

   15     examinations?

   16                     A.    No.

   17                     Q.    Okay.  And you were -- down at the

   18     bottom it says plan may apply ice to area and may take

   19     Tylenol.

   20                     A.    Correct.

   21                     Q.    Is that the treat -- is that the

   22     treatment you received?

   23                     A.    Yes.

   24                     Q.    Okay.  Okay.  Turning to page five

   25     the next time --.

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                      A.    And they -- and they also --.

3                      Q.    Go ahead, Mr. Gunn.

4                      Q.    They also referred me to M.H.U.

5                      Q.    Okay.  Yeah.  So on page four also

6        indicates that they sent -- they did an M.H.U. referral,

7        correct?

8                      A.    Right.

9                      Q.    Okay.  Now you next requested

10       medical care on April 4th, 2013?

11                     A.    Right.

12                     Q.    Okay.  And at that one you claim sex

13       -- you were sexually assaulted on 3/29/13, officer

14       pulled his underwear up and penetrated rectum with his

15       finger.  Is that what you reported to medical staff that

16       day?

17                     A.    Yes.

18                     Q.    Okay.  And did -- an exam was done,

19       right?

20                     A.    Correct.

21                     Q.    Okay.  And the nurse noted that your

22       rectum had no tearing or bleeding, correct?

23                     A.    Correct.

24                     Q.    And then the small hemorrhoid noted,

25       right?

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2                        A.   Yes.
3                        Q.   They also examined the rest of that,
4        the area, right, your genitals?
5                        A.   Yes.
6                        Q.   Okay.  And there weren't any other
7        issues with your genitals, correct?
8                        A.   Correct.
9                        Q.   And then they gave you hemorrhoid
10       cream, right?
11                       A.   Yes.
12                       Q.   Okay.  So that entry is true and
13       accurate?
14                       A.   Yes.
15                       Q.   Okay.  Now the next morning you went
16       to a.m. sick call right for five thirteen?
17                       A.   Four, yeah, five thirteen, yeah,
18       right.
19                       Q.   Okay.  And you complained of genital
20       aches, stated an incident with officers.  Was that the
21       same incident or a different one?
22                       A.   Same officers.
23                       Q.   Well, I'm not -- I'm just wondering
24       is it the same -- was it from the pat frisk or something
25       else?
```

1          Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                              A.    The pat frisk.

3                              Q.    Okay.  Okay.  Then turning to page

4      six of Exhibit Twenty.  You next went to medical on

5      April 8th, 2013?

6                              A.    Correct.

7                              Q.    Okay.  And you complained of back,

8      neck pain, you wanted Robaxin renewed because of

9      increased shoulder, neck and back pain, correct?

10                             A.    Yes.

11                             Q.    Okay.  And it says states pulled out

12     back yesterday, correct?

13                             A.    Yes.

14                             Q.    Okay.  So you had injured your back

15     the day before, it was April 7th, 2013?  Is that

16     correct?

17                             A.    April?

18                             Q.    Well, here let me ask it this way

19     Mr. Gunn, it's indicates you stated pulled back out

20     yesterday.  Is that what you told medical staff?

21                             A.    I don't recall.

22                             Q.    Okay.  Do you have any reason to

23     disbelieve that you said that?

24                             A.    No.

25                             Q.    Okay.  And then after that the next

       1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

       2       time you attended sick call was on May 17th, 2013?

       3                       A.    Correct.

       4                       Q.    And it was for follow up for your

       5       back pain?

       6                       A.    Yes.

       7                       Q.    And they restarted your Robaxin?

       8                       A.    Okay.  Yes.

       9                       Q.    Okay.  And you next went to sick

      10       call on June 13th, 2013, correct?

      11                       A.    Yes.

      12                       Q.    Okay.  And you stated that you were

      13       sexually assaulted by a security officer, states that

      14       during pat frisk officer squeezed his testicles and

      15       buttocks.  Is that correct?

      16                       A.    Yes.

      17                       Q.    Okay.  And there was an exam done,

      18       correct?

      19                       A.    Yes.

      20                       Q.    And they found no swelling noted on

      21       the exam, no tenderness noted, continue to monitor.  Is

      22       that accurate from the -- that examination?

      23                       A.    Yes.

      24                       Q.    Okay.  And you were given over-the-

      25       counter Motrin?

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.    Yes.

3                    Q.    Okay.  And after that you next went

4      to sick call on June 20th, 2013?

5                    A.    Correct.

6                    Q.    Okay.  And you complained of scrotal

7      pain, is that correct?

8                    A.    Yes.

9                    Q.    And you asked that your complaint be

10     placed in your chart, right?

11                   A.    Yes.

12                   Q.    Okay.  And then did you -- you next

13     sought out medical care on August 2nd, 2013?

14                   A.    Yes.

15                   Q.    Okay.  And you went to sick call

16     stating continues to experience harassing pat frisk,

17     stated several days ago a C.O. probed his rectum during

18     a pat frisk, right?

19                   A.    Correct.

20                   Q.    Okay.  And then on August 28th,

21     2013, you again reported to medical, scrotal pain,

22     correct?

23                   A.    Yes.

24                   Q.    Okay.  And that was only when you

25     were pat frisked, no pain when you were at the medical

```
 1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2     care provider, right?
 3                    A.    No.
 4                    Q.    Okay.  So if we look at that entry
 5     on 8/20/13 it's page seven on Exhibit Twenty.  It
 6     indicates scrotal pain only when he is pat frisked, no
 7     pain now.  Is that true and accurate?
 8                    A.    No.
 9                    Q.    Okay.  Do you have -- so why is that
10     not true and accurate?
11                    A.    Because I never said that.
12                    Q.    Okay.  So you never said that you
13     were not in pain when you saw them, but that you had
14     been during the pat frisk?
15                    A.    I told them that I was in pain and
16     that I'm not only in pain when I'm having pat frisk done
17     with me.
18                    Q.    Okay.  So you didn't say that it
19     just was painful when the pat frisk was going on?
20                    A.    Correct.
21                    Q.    Okay.  Further down that section it
22     says patient.  Do you see where it says assessment
23     there?  I'm still on page seven of twenty, Exhibit
24     Twenty.  And then it says the word ago.  Do you see
25     that?
```

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2                      A.   No.
3                      Q.   Okay.  Do you see --?
4                      A.   Okay.  Okay.
5                      Q.   Yeah.  The last -- the last sentence
6        --?
7                      A.   This should be the last time, a
8        month ago.
9                      Q.   Okay.  So it says -- do you see
10       where it says patient admits to this writer that needs
11       help with self esteem?
12                     A.   Yes.
13                     Q.   Okay.  Do you remember that
14       conversation?
15                     A.   I don't recall.
16                     Q.   Okay.  It was in August of 2013,
17       right?
18                     A.   Right.
19                     Q.   Okay.  So do you have a memory as to
20       what you said to that medical care provider that day?
21                     A.   No.
22                     Q.   Okay.  Okay.  Then the next time you
23       got medical -- needed medical care was on October 21st,
24       2013, right?
25                     A.   Yes.
```

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                         Q.   You're still at Elmira, right?

3                         A.   Yes.

4                         Q.   Okay.  And you were complaining of

5        back and neck injury and sore throat, right?

6                         A.   Right.

7                         Q.   And on November 13th, 2013, you were

8        complaining of neck pain, you said you slept on it

9        wrong?

10                        A.   Correct.

11                        Q.   Okay.  And you'd been given Voltaren

12       before that, right?

13                        A.   Right.

14                        Q.   Okay.  And then in December of 2013,

15       you asked to see a doctor concerning your increased

16       back, neck and shoulder pain?

17                        A.   Correct.

18                        Q.   Okay.

19                        A.   Because an x-ray was done on

20       November 12, '13 and I think something in my cervical

21       neck -- there's something wrong with my neck.

22                        Q.   Okay.

23                        A.   And they are not addressing that.

24                        Q.   Okay.  So you had an x-ray of your

25       neck in -- it was in November of 2013?

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        A.    Correct.

3                        Q.    Okay.  And then looking it up page -

4        - the entry for January 3rd, 2014, on page nine of

5        Exhibit Twenty.  You had P.T. right, physical therapy?

6                        A.    Right.

7                        Q.    And a TENS unit?

8                        A.    Correct.

9                        Q.    Is that correct?  Okay.  And you

10       were also complaining about dry skin and itches?

11                       A.    Correct.

12                       Q.    And you were given lotion for that,

13       right?

14                       A.    Yes.

15                       Q.    And then they ordered an M.R.I. for

16       your shoulder?

17                       A.    Where do you see that?

18                       Q.    Well, I'm asking you if you had --

19       I'm looking at the entry for January 3rd, 2014,

20       providers orders, it says M.R.I. for your left shoulder.

21                       A.    Okay.

22                       Q.    Did you -- did you have the M.R.I.

23       of your left shoulder?

24                       A.    Yes.

25                       Q.    Okay.  Okay.  And then you saw

1    Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2    medical staff next on January 24th, 2014.  And you were

3    still complaining of the back, neck and shoulder pain,

4    right?

5                    A.    Yes.

6                    Q.    And you indicated it was from a

7    four-year-old injury?

8                    A.    Yes.

9                    Q.    They offered you ibuprofen, but you

10   said it bothers your stomach, right?

11                   Q.    Correct.

12                   Q.    Okay.  Then you next saw medical on

13   January -- January 28th, 2014, correct?

14                   A.    Right.

15                   Q.    Okay.  And you claim the sexual

16   assault on 1/24/14?

17                   A.    Correct.

18                   Q.    Okay.  And you claim that during pat

19   frisk had groin and buttocks rubbed and groped, is that

20   correct?

21                   A.    Yes.

22                   Q.    Okay.  And it was no skin to skin

23   contact occurred, correct?

24                   A.    Right.

25                   Q.    Okay.  And you next ask for medical

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2        care on February 5th.  Go ahead, you wanted to say

3        something?

4                      A.    Yes.  M.H.U. referral was submitted.

5                      Q.    Okay.  So on January 28th, 2014,

6        they referred you for a M.H.U., correct?

7                      A.    Right.  No examination was done.

8                      Q.    Okay.  So no physical examination

9        was done, correct?

10                     A.    No.

11                     Q.    Is that correct?

12                     A.    Correct.

13                     Q.    Okay.  And they -- but they referred

14       you to O.M.H. staff?

15                     A.    Correct.

16                     Q.    Okay.  And then the next time that

17       you requested medical care was February 18th, 2014?

18                     A.    But there's something else

19       interesting about this, they returned me to block and

20       secured me.

21                     Q.    Okay.  Hang on, just for purposes of

22       the record.  So you're looking at page sixteen, excuse

23       me, page ten of Exhibit Twenty, right?  Mr. Gunn, is

24       that correct, you're looking at that page --?

25                     A.    Yes.
```

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                          Q.    Okay.  Okay.  So what else did you

3        want to say about that entry?

4                          A.    They returned me to the block and

5        secured me.

6                          Q.    Okay.  You're saying they returned

7        you to your cell after sick call?

8                          A.    Yes.

9                          Q.    Okay.  Okay.  So now, Mr. Gunn.

10                         A.    Yes.

11                         Q.    Turning to page eleven of Exhibit

12       Twenty.  The next time that you requested medical care

13       was February 18th, 2014.  Is that correct?

14                         A.    Yes.

15                         Q.    Okay.  And you had received the

16       M.R.I., correct?

17                         A.    Yes.

18                         Q.    Okay.  There was an M.R.I. of your

19       neck, back and shoulder?

20                         A.    Yes.

21                         Q.    Okay.  Okay.  Now you -- did you

22       receive the results then of that M.R.I.?

23                         A.    Yes, I did.

24                         Q.    Okay.  And it says verbalized

25       understanding?

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                       A.    It says follow up with ortho --

3       orthopedic or something.  They -- they basically

4       diagnosed me with arthritis.

5                       Q.    Okay.  And they referred you to an

6       orthopedist?

7                       A.    I believe so.

8                       Q.    Okay.  And it says will continue to

9       monitor, no other needs or complaints.  Is that

10      accurate?

11                      A.    No.

12                      Q.    Okay.  What do you mean by that?

13                      A.    There's complaints, I -- I have

14      complaints.

15                      Q.    I'm just -- did you verbalize other

16      things to then -- to the medical staff?

17                      A.    No.

18                      Q.    Okay.  And then on March 10th, 2014,

19      that was the next time that you requested medical care,

20      correct?

21                      A.    Yes.

22                      Q.    Okay.  And you -- you -- that part

23      is -- it says that you advised that you were scheduled

24      in the ortho clinic in the near future.  Is that

25      relating to the neck, back and shoulder?

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.    Where are you at?

3                    Q.    It would be the entry from March

4      10th, 2014.  Do you see that?  That middle entry on page

5      eleven.

6                    A.    Yeah.

7                    Q.    Okay.  And they were referring, they

8      said that you were being referred to an ortho clinic,

9      right?

10                   A.    Yes.

11                   Q.    Okay.

12                   A.    But it also -- this also says I have

13     not been relieved of pain and I have blood in my stool.

14                   Q.    Okay.  Okay.  Do you know why you

15     had blood in your stool?

16                   A.    No.

17                   Q.    Okay.  And then you next received

18     medical care on March 21st, 2014?

19                   A.    Right.

20                   Q.    Okay.  That was concerning your left

21     shoulder as well, right?

22                   A.    Correct.

23                   Q.    Okay.  Okay.  That's all we need to

24     do for Exhibit Twenty.  Now you've seen -- you've been

25     seen by O.M.H. staff, correct, for mental health care?

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2                        A.    Yes.
3                        Q.    Okay.  Are you familiar with a
4        social worker, Catherine Russell?
5                        A.    Yes.
6                        Q.    Okay.  Do you remember where you saw
7        her?
8                        A.    Green Haven.
9                        Q.    Okay.  Was she a regular social
10       worker that you saw, or do you see multiples, how does
11       that work?
12                       A.    They only had two social workers and
13       she was one of them.
14                       Q.    Okay.  Were all of your visits with
15       her?
16                       A.    Not all of them.
17                       Q.    Okay.  Do you remember how many
18       visits you had with her?
19                       A.    A few, several.
20                       Q.    Okay.
21                       A.    They were --.
22                       Q.    And at -- at Green Haven -- did you
23       go to Green Haven after you were in Elmira?
24                       A.    Correct.
25                       Q.    Okay.  And there you started to have
```

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2     some relief with the mental health treatment, correct?
3                    A.    Not exactly.
4                    Q.    Okay.  What do you mean by not
5     exactly?
6                    A.    After Ms. -- after I'd seen Ms.
7     Russell, she was no help to my therapy.
8                    Q.    Okay.  What do you mean by that?
9                    A.    She is -- she was a part of the
10    problem.
11                   Q.    Okay.  Can you --?
12                   A.    With the prison guards.
13                   Q.    Can you describe Ms. Russell's
14    physical description?
15                   A.    She's bowlegged.
16                   Q.    Okay.
17                   A.    White female, maybe fifty years old.
18                   Q.    About fifty you said?
19                   A.    Yes.
20                   Q.    Okay.
21                   A.    Very biased.
22                   Q.    Okay.  Just about her physical
23    appearance, can you estimate her weight, is she
24    overweight, underweight?
25                   A.    She's not overweight.  She's about a
```

```
1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
2    size seven or six.
3                  Q.   Okay.  You said that there was one
4    other social worker at Green Haven?
5                  A.   Yes.
6                  Q.   Do you remember that person's name?
7                  A.   Rose -- Roessel, Roessel, I can't
8    pronounce her name right now.
9                  Q.   Okay.  Can you describe that
10   person's physical characteristics?
11                 A.   White hair, she's about sixty, she
12   listens --.
13                 Q.   Okay.  So you had a good rapport
14   with that social worker?
15                 A.   I believe so.
16                 Q.   Okay.  And can you try to spell that
17   social worker's name?
18                 A.   Roessel, R-O-E-S-S-E-L.
19                 Q.   Okay.  That was the one that you had
20   a good relationship with?
21                 A.   Yes.
22                 Q.   Okay.  And what was -- what -- can
23   you spell the other social worker's name?
24                 A.   Russel?
25                 Q.   Yeah.
```

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2                      A.   R-U-S-S-E-L.
 3                      Q.   Okay.  Okay.  So it was Social
 4      Worker Russel that you had issues with, correct?
 5                      A.   Yes.
 6                      Q.   Okay.  And you felt that she was
 7      very biased?
 8                      A.   Yes.
 9                      Q.   Okay.  But Social Worker Roessel is
10      that how you pronounced it?
11                      A.   Yes.
12                      Q.   Okay.  And you had a good
13      relationship with her, correct?
14                      A.   Yes.
15                      Q.   Okay.  And did she help you start to
16      feel better?
17                      A.   Yes.  I began taking medication when
18      I was in Green Haven.
19                      Q.   Okay.  Okay.  Could you take a look
20      at what's been marked as Exhibit Twenty-one?  And just
21      flip through that, do you recognize that as your mental
22      health records?
23                      A.   Roessel.  Yeah, this is Roessel.
24                      Q.   Okay.  So that's the name there it
25      says entered by and then it says Catherine Roessel,
```

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2    correct?

 3                    A.    Yes, yes.

 4                    Q.    Okay.  And that's the one that you

 5    described that you had a good relationship with?

 6                    A.    Yes.

 7                    Q.    Okay.  Then do you see your

 8    patient's name on there?

 9                    A.    Yes.

10                    Q.    And your date of birth?

11                    A.    Yes.

12                    Q.    Okay.
                                Okay.  Now, if you look at
13    page -- do you see the page number in the bottom right-

14    hand corner of Exhibit Twenty-one?

15                    A.    Uh huh.

16                    Q.    Okay.  That's a yes?

17                    A.    Yes.

18                    Q.    Okay.  Now, looking at page four,

19    that indicated that you had dates of screenings for

20    O.M.H. and it lists a number of them, June 28th, 2000,

21    August of 2000.  Do you see that list there?

22                    A.    Yes.

23                    Q.    Okay.  Do you remember what -- do

24    you remember having screenings on those dates?

25                    A.    No.
```

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        Q.    Okay.  So you don't know -- you

3        don't know what those screenings were?

4                        A.    No.

5                        Q.    Okay.

6                        A.    2010.

7                        Q.    Yeah, it's got dates from 2000 to

8        2015, right?

9                        A.    Right.

10                       Q.    Okay.  Turning back to page three of

11       Exhibit Twenty-one, it indicates -- it remains unclear

12       if Mr. Gunn requires mental health intervention and is

13       experiencing significant mental health symptoms at this

14       time.  Is that true and accurate?

15                       A.    I don't know.  I'm not a doctor.

16                       Q.    Okay.  Fair enough.  So that's just

17       -- that's what the social worker thought or the O.M.H.

18       staff?

19                       A.    Yes.

20                       Q.    Okay.  It indicates that you would

21       consistently report depression, feelings of despair, a

22       lack of energy and seem to ruminate on your life not

23       getting better.  Is that true and accurate?

24                       A.    Correct.

25                       Q.    Okay.  Okay.  And it says you

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2        presented with medical concerns and pain related to

3        allegedly being beat up by a sarge on September 16th,

4        2014.  Is that something you reported to O.M.H.?

5                    A.    Yes, I reported that to I.G. too.

6                    Q.    Okay.  That's a use of force that

7        you have a different lawsuit about, is that correct?

8                    A.    Yes.

9                    Q.    Okay.  And just remind me, do you

10       remember what facility that was at?

11                   A.    Green Haven.

12                   Q.    Okay.  Okay.  And you admitted that

13       you did not believe Mental Health can help unless Mental

14       Health can do something about your security concerns or

15       give him a -- or give you an M.R.I., is that correct?

16                   A.    Correct.

17                   Q.    And you reported that since then

18       you've continued to send letters to O.M.H. and medical,

19       reporting depression and nightmares among other things,

20       often attributing this to your reported medical

21       concerns.  Is that correct?

22                   A.    Correct.

23                   Q.    Okay.  Then it said that your report

24       of mental health symptoms was vague and contradictory.

25       Would you agree that that's true?

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                          A.    I don't know.

3                          Q.    Okay.  Again, you just would leave

4        that to their expertise.

5                          A.    Correct.

6                          Q.    Okay.  Have you -- did you

7        repeatedly express concern about having nightmares, but

8        when --?

9                          A.    Yeah.

10                         Q.    Okay.  But when further questioned

11       you maintained that you do not recall any of the

12       nightmares?

13                         A.    Correct.

14                         Q.    Okay.  And then looking at the next

15       paragraph in a similar fashion, you also offered

16       complaints about sexual abuse and sexual assault at

17       Elmira.  Is that correct?

18                         A.    Correct.

19                         Q.    Further discussion on two occasions

20       has revealed that your definition of sexual abuse and

21       assault refers to being called a faggot and cinnamon.

22       Is that correct?

23                         A.    Yes.

24                         Q.    And you repeatedly denied any actual

25       physical touching of any kind.  Is that correct?

    1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

    2                       A.    No.

    3                       Q.    Okay.  So you dispute that you said

    4       that?

    5                       A.    Right.

    6                       Q.    Okay.  Okay.  Would you agree with

    7       what the provider says with saying, he seems to often

    8       overstate his concerns as he has with his memory loss,

    9       depression and sexual abuse, would --?

   10                       A.    No.

   11                       Q.    You don't agree with that?

   12                       A.    No.

   13                       Q.    Okay.  And it says given that when

   14       his blanket statements are discussed further, it becomes

   15       apparent that his labels don't typically follow

   16       generally accepted definitions of these things.  Is that

   17       true and accurate?

   18                       A.    I don't know.

   19                       Q.    Okay.  So you're -- you're saying

   20       that the O.M.H. staff determined that?

   21                       A.    Correct.

   22                       Q.    Okay.  Do you see O.M.H. staff

   23       currently?

   24                       A.    Yeah.

   25                       Q.    How frequently do you see O.M.H.

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      staff now?

3                     A.   Well, the guy that I'm seeing now,

4      he's out frequently so I'm probably seeing him once

5      every six months.

6                     Q.   Okay.  And when you were at Green

7      Haven, do you remember how frequently you were seeing

8      Mental Health staff?

9                     A.   Once a month.

10                    Q.   Okay.  And we can just wrap up with

11     the exhibits.  Can you take a look at what's been marked

12     as Exhibit Twenty-two?  And are those -- these two

13     pages, are those in your hand -- is that in your hand?

14     Well, let's do them one at a time.  So this first page,

15     is that your handwriting?

16                    A.   Correct.

17                    Q.   Okay.  And that's -- do you know

18     what this document is?

19                    A.   Sick call slip.

20                    Q.   Okay.  And do you know when you

21     wrote it?

22                    A.   March 30th.

23                    Q.   Of 2013?

24                    A.   Yes.

25                    Q.   Okay.  Okay.  Can we actually --

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      what I'd like to do is just split this exhibit up, so

3      can we just go off the record real quick and --.

4                      (Off the record, 12:45 p.m. to 12:46

5      p.m.)

6                      BY MS. MCKAY:   (Cont'g.)

7                      Q.   Okay.  So we've fixed the exhibit,

8      so -- Exhibit Twenty-two is a single sheet of paper,

9      correct, Mr. Gunn?

10                     A.   Yes.

11                     Q.   Okay.  And that's the sick call slip

12     in your handwriting, correct?

13                     A.   Right.

14                     Q.   Okay.  And that's the sick call slip

15     that you completed for medical care regarding the sexual

16     assault.  Is that correct?

17                     A.   Correct.

18                     Q.   Okay.  And then taking a look at

19     what's been marked as Exhibit Twenty-five.  Okay.  Is

20     that document in your handwriting?

21                     A.   Yes.

22                     Q.   Okay.  And that's pertaining to

23     grievance number E.L. four zero zero -- or, excuse me.

24     E.L. four zero seven seven seven thirteen.  Is that

25     correct?

```
 1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn
 2                      A.   Correct.
 3                      Q.   Okay.  And that one was -- so that's
 4      a grievance from -- that you filed on April 11th, 2013.
 5      Is that correct?
 6                      A.   Correct.
 7                      Q.   Okay.  And you -- now, is Exhibit
 8      Twenty-five, that's in your handwriting?
 9                      A.   Yes.
10                      Q.   And the contents are true and
11      accurate?
12                      A.   Yes.
13                      Q.   And it's signed by you?
14                      A.   Yes.
15                      Q.   Okay.  And you wrote it on what day?
16                      A.   May 31st.
17                      Q.   2013?
18                      A.   Correct.
19                      Q.   Okay.
20                      A.   Well, actually, the date is wrong.
21                      Q.   Why was -- why is the date wrong?
22                      A.   Because it's dated 4/11/13.
23                      Q.   Your grievance was dated that date,
24      right?
25                      A.   No.  There's an error somewhere.
```

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                       Q.    Okay.  What do you mean by that?

3                       A.    Yeah, my grievance is dated 4/11/13.

4                       Q.    Okay.  And then this was --?

5                       A.    The year is probably, you know,

6       wrong.  I probably have the year wrong.

7                       Q.    You don't think you wrote this in

8       2013?

9                       A.    Right.

10                      Q.    What year do you think you wrote it?

11                      A.    Huh.  Oh, yeah, this is -- yeah,

12      this is correct.

13                      Q.    Okay.  You wrote --.

14                      A.    This is correct.

15                      Q.    You wrote -- you wrote this in -- on

16      May 31st, 2013.  Is that correct?

17                      A.    Yes.

18                      Q.    Okay.  And you were following up on

19      a grievance you filed on --

20                      A.    4/11.

21                      Q.    -- on April 11th, 2013, right?

22                      A.    Correct.

23                      Q.    Okay.  Okay.  Now, Mr. Gunn, do you

24      have any anticipated witnesses in this case besides

25      yourself?

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                    A.    No.

3                    Q.    Okay.  Now, you have indicated for

4      your certain medical providers.  Do you remember

5      indicating some medical staff that --

6                    A.    Yes.

7                    Q.    -- you listed?  Okay.

8                    A.    Jill Northrop.

9                    Q.    Okay.  And do you -- what -- how --

10     what -- what does she know about the matters --

11                   A.    She --.

12                   Q.    -- we've discussed?

13                   A.    She is the one who found the

14     hemorrhoid and Dr. Qureshi for Green Haven and --.

15                   Q.    Okay.  So let's just go through them

16     one at a time.  So N.P. Northrup, she is the one who

17     found the hemorrhoid, correct?

18                   A.    Correct.

19                   Q.    Okay.  And anything else that she

20     knows about the incidents that we've talked about?

21                   A.    No.

22                   Q.    Okay.  And then --?

23                   A.    Well, she knows -- she knows who

24     C.O. Perry is.

25                   Q.    Okay.  She knows who C.O. Perry is

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2       you said?

3                       A.    Yes.

4                       Q.    Okay.  Anything else that you would

5       anticipate her to know about the events we've talked

6       about?

7                       A.    No.

8                       Q.    Okay.  And then what's the name of

9       the doctor that you mentioned at Green Haven?

10                      A.    Qureshi.

11                      Q.    Okay.  Is that Q-U-R-E-S-H-I?

12                      A.    Yes.  Somewhere around there.

13                      Q.    Okay.  And what does that doctor

14      know about or what -- what would they be anticipated to

15      testify about?

16                      A.    My mental illness.

17                      Q.    Okay.

18                      A.    Because one of the things about me

19      speaking to O.M.H. is that there's no trying, there --

20      there's the psych, the psychologist there that was

21      running today was married to a prison guard.  And so

22      when they asked me to tell them things about my

23      nightmares and stuff, I refrained from opening it up.

24                      Q.    Okay.  I'm just asking, this wasn't

25      involving Dr. Qureshi though, right?

```
1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                      A.   Well, her supervisor, they -- it

3        took them a long time to get me to take medication.

4                      Q.   Okay.

5                      A.   So they -- they went above and

6        beyond and got me to where I am today.

7                      Q.   Okay.  So you're saying Dr. Qureshi

8        helped you?

9                      A.   Yes.

10                     Q.   Okay.

11                     A.   She prescribed the Prozac.

12                     Q.   Okay.

13                     A.   Because I wouldn't take nothing

14       else.

15                     Q.   Okay.  And can you estimate how many

16       times you were seen by Dr. Qureshi?

17                     A.   For four years.

18                     Q.   Well, I'm wondering if you can

19       estimate how many times you were seen by her in that

20       four-year time period.

21                     A.   Maybe eight times --

22                     Q.   Okay.

23                     A.   -- because, like -- like I said, I

24       started off with DOCC Clinician Russel then I went to

25       Roessel and I wouldn't speak to people because of the
```

```
 1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

 2       fear of retaliation.

 3                      Q.   Okay.

 4                      A.   Because, again, once I came into

 5       Green Haven, within twenty-four hours, I was set up with

 6       a weapon.  I didn't even make it to chow.

 7                      Q.   Okay.

 8                      A.   So I went straight to the box.

 9                      Q.   So you're describing issues with

10       security when you got to Green Haven?

11                      A.   Absolutely.

12                      Q.   Okay.  And then anything else that

13       you would anticipate?  So did you -- did you talk with

14       Dr. Qureshi about your incidents with security staff at

15       Green Haven?

16                      A.   She doesn't deal with security

17       issues.

18                      Q.   No, I'm just saying, did you -- when

19       she was treat -- is she -- is she a psychologist?

20                      A.   Psychiatrist, yes.

21                      Q.   Okay.

22                      A.   Psychiatrist.

23                      Q.   Psychiatrist.  Okay.  And did you

24       talk with her about the issues that you were having with

25       security at Green Haven?
```

1          Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                          A.    Yes.

3                          Q.    Okay.  And she helped treat you with

4      the Prozac, correct?

5                          A.    Right.

6                          Q.    Okay.  And then what about a Dr.

7      Maltese?

8                          A.    He's the psychiatrist here.

9                          Q.    Okay.  At Sing Sing?

10                         A.    Yes.

11                         Q.    Okay.  And what would he be able to

12     -- what would he be anticipated to testify to?

13                         A.    My mental -- my mental illness.

14                         Q.    Okay.  So your -- your condition,

15     your -- where you're at with treatment you -- you're

16     saying?

17                         A.    Correct.

18                         Q.    Okay.  And you're still taking

19     Prozac, correct?

20                         A.    Right.  And I'm still having

21     nightmares.  I had a nightmare last night about mice.

22                         Q.    About what?

23                         A.    Mice, there was --.

24                         Q.    About mice?

25                         A.    Yeah, I -- I woke up screaming.

1       Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                       Q.    Like, mice, M-I-C-E, you're saying?

3                       A.    Yes.

4                       Q.    Okay.  Have you seen O.M.H. staff

5       about that or no?

6                       A.    No.

7                       Q.    Okay.  But you -- but you talk to

8       O.M.H. staff about your nightmares?

9                       A.    Yeah, I talk to them about my

10      nightmares, but I don't give them information because of

11      the fear of retaliation.  When I talk to them about

12      sexual abuse, sexual assault, bad things happen to me.

13                      Q.    Okay.

14                      A.    And I want to refrain from talking

15      about my sexual assaults so nothing else bad will happen

16      to me again.  So --

17                      Q.    Okay.

18                      A.    -- this is ongoing, nothing has

19      stopped.

20                      Q.    Okay.

21                      A.    I transfer from one facility to the

22      next and these officers also transfer from one facility

23      to the next.

24                      Q.    Okay.  You're saying that you have

25      security -- you have issues with security staff at all

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      these -- at all these facilities, correct?

3                      A.    Correct.

4                      Q.    Okay.   Okay.   So that concludes the

5      deposition.   I will send you a copy of the transcript

6      from today.   You already have the one from -- from the

7      first half.   And what I want to make you aware of is if

8      you are not successful in this lawsuit, then I'll be

9      seeking costs for the -- for the deposition.

10                     And the main thing to note about the

11     deposition transcript, which I've already told you with

12     respect to the first half, but again, the same thing

13     applies with, if you review it, I'm going to send you

14     again, what's called an errata sheet for you to review

15     and for you to tell if there's anything that you think

16     might be a mistake, okay.   Does that make sense?

17                     A.    Yes.   Well --.

18                     Q.    Okay.   And so hang on, just -- hang

19     on one second.   The -- the -- like I told you last time,

20     what I want you to make sure you look for is if there's

21     any grammatical errors, sometimes when the transcriber

22     puts it down, they might have something misspelled,

23     something like that.   You can put that on there.

24                     And then also if you see anything on

25     there -- so do you understand what I mean by grammatical

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2        errors?

3                        A.   Yes.

4                        Q.   Okay.  And then I also just want you

5        to make sure if you see anything that's substantively

6        incorrect.  If you learn later that it's incorrect, make

7        sure that you write to me and notify me that -- of that,

8        okay?

9                        A.   Okay.  Now, I wanted to point out

10       that --.

11                       THE REPORTER:  You want this question on

12       the record?

13                       MS. MCKAY:   You -- you -- you can.

14                       BY MS. MCKAY:  (Cont'g.)

15                       Q.   Do you have a question for me, Mr.

16       Gunn?

17                       A.   Yes.

18                       Q.   Okay.

19                       A.   I wanted to point out that during

20       the grievance interviews, that they were saying that I

21       was writing grievances requesting a facility transfer.

22       So all of the investigations that was done by sergeants

23       were saying that I was requesting a facility transfer,

24       which is untrue.

25                       Q.   Okay.  Okay.  So you're talking

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      about how your -- how your grievance was dealt with?

3                      A.    Correct.

4                      Q.    Okay.  All right.  That's

5      understood.  Any documents that are in evidence they're

6      -- they're all there so --.

7                      A.    Right, they're -- they're all there

8      because one group of sergeants was saying that I was --

9                      Q.    Mr. Gunn, I -- I just --.

10                     A.    -- requesting --.

11                     Q.    I don't know that it is particularly

12     important for what we've just talked about, and it's --

13     we're running a little bit long.

14                     A.    Okay.

15                     Q.    I'm sure you're hungry.  I think --

16     I think that we understand your -- your testimony, so --

17     okay?  Unless you have a question that you need to ask

18     me?

19                     A.    No.

20                     Q.    Okay.  Do you understand what I've -

21     - what I've gone over with you?

22                     A.    Yes.  You want --

23                     Q.    Okay.

24                     A.    -- you want to get the transcripts

25     notarized.  You want me to send them to you.

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2                        Q.    Right.  And I'm -- yeah, I'm going

3        to send you today's transcript and you can look that one

4        over too, okay?

5                        A.    Now, what about the medical --?

6                        Q.    Mr. Gunn, at this time I'm just

7        going to have them -- we can -- we can go off the

8        record, that's fine.

9                        A.    Okay.

10                       (Off the record, 1:01 p.m.)

11                       (The deposition concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2    STATE OF                    )

3    COUNTY OF                   )

4           I, DARRELL GUNN, have read the foregoing record of
     my testimony taken at the time and place noted in the heading
5    hereof and do hereby acknowledge:
     (Please check one)
6              ( ) That it is a true and correct transcript of
     same.
7              ( ) With the exceptions noted in the attached
     errata sheet, it is a true and correct transcript of same.

8                              X
9                           DARRELL GUNN
10
     Sworn to before me this
11   _____day of _____ 2020.
     X_____
12   NOTARY PUBLIC
     My Commission Expires:
13   _____

14

15

16

17

18

19

20

21

22

23

24

25

1      Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2      I, HANNAH ALLEN, do hereby certify that the foregoing

3   testimony of DARRELL GUNN was taken by me, in the cause, at

4   the time and place, and in the presence of counsel, as stated

5   in the caption hereto, at Page 1 hereof; that before giving

6   testimony said witness was duly sworn to testify the truth,

7   the whole truth and nothing but the truth; that the foregoing

8   typewritten transcription, consisting of pages number 1 to

9   137, inclusive, is a true record prepared by me and completed

10  by Associated Reporters Int'l., Inc. from materials provided

11  by me.

12

13  HANNAH ALLEN, Reporter

14

15

16

17

18

19

20

21

22

23

24

25

1        Gunn v Bedcler, et al - 7-22-2020 - Darrell Gunn

2           ASSOCIATED REPORTERS INTERNATIONAL, INC.
                        (800) 523-7887
3
     Date:
4    Case Name: Gunn v Bedcler, et al
     Index Number:  6:16-CV-06206
5    Deponent:  DARRELL GUNN
     Deposition Date:  7-22-20
6    Examining Attorney:  Heather McKay

7    Dear Mr. Gunn,

8
     Please read and make any changes and/or corrections in your
     testimony and sign the transcript in the presence of a notary
9
     public.  Please do so within thirty (30) days.  If you fail
10   to sign the transcript within thirty (30) days, it will be
     delivered to the appropriate parties without signature.
11   Return the transcript with corrections, if any, to:

12           OFFICE OF NY STATE ATTORNEY GENERAL
             BY:  MARK MITCHELL A.A.G.
13           The Capitol
             Albany, New York
14
     CORRECTIONS:
15
     _____      Word or phrase:  _____
16
                   Corrected to:    _____
     _____      Word or phrase:  _____
17
                   Corrected to:    _____
18   _____      Word or phrase:  _____
                   Corrected to:    _____
19   _____      Word or phrase:  _____
                   Corrected to:    _____
20   _____      Word or phrase:  _____
                   Corrected to:    _____
21   _____      Word or phrase:  _____
                   Corrected to:    _____
22   _____      Word or phrase:  _____
                   Corrected to:    _____
23
     _____
     Date Signed
24                                  _____
                                    DARRELL GUNN
25

**A**

**A.A.G** 2:8 141:12

**A.G.'s** 47:9,18 49:5

**a.m** 1:13 6:2,4 22:2 78:18,18
94:3 103:16

**able** 15:12 32:14,15 133:11

**abrasions** 101:3

**absolutely** 14:14,16 37:19 58:13
59:24 60:3 86:8 132:11

**abuse** 88:21 123:16,20 124:9
134:12

**accepted** 87:23 88:2 89:25
124:16

**accepting** 88:8

**accident** 28:6

**accurate** 41:14 79:18 81:22 82:9
86:25 89:14 91:19 95:4 96:6
96:18 100:20 101:3 103:13
105:22 107:7,10 114:10 121:14
121:23 124:17 127:11

**accurately** 92:5

**aches** 103:20

**acknowledge** 139:5

**ACTION** 1:7

**active** 91:11

**activities** 33:8

**actual** 123:24

**addressing** 109:23

**administratively** 46:2 47:24
48:7,16,23

**administrators** 62:23

**admits** 108:10

**admitted** 122:12

**advances** 83:20 84:8,11,24 85:14
85:22 86:2

**advised** 114:23

**affirm** 6:5

**affirmed** 44:22

**aggressive** 18:25 39:13 84:19

**agitated** 58:22

**ago** 6:24 106:17 107:24 108:8

**agree** 92:15 93:8 99:10 122:25
124:6,11

**agreed** 46:14,16,21

**ahead** 31:17 102:3 112:2

**air** 59:17,23

**al** 1:1,8 2:1 3:1 4:1 5:1 6:1
7:1 8:1 9:1 10:1 11:1 12:1
13:1 14:1 15:1 16:1 17:1 18:1

19:1 20:1 21:1 22:1 23:1 24:1
25:1 26:1 27:1 28:1 29:1 30:1
31:1 32:1 33:1 34:1 35:1 36:1
37:1 38:1 39:1 40:1 41:1 42:1
43:1 44:1 45:1 46:1 47:1 48:1
49:1 50:1 51:1 52:1 53:1 54:1
55:1 56:1 57:1 58:1 59:1 60:1
61:1 62:1 63:1 64:1 65:1 66:1
67:1 68:1 69:1 70:1 71:1 72:1
73:1 74:1 75:1 76:1 77:1 78:1
79:1 80:1 81:1 82:1 83:1 84:1
85:1 86:1 87:1 88:1 89:1 90:1
91:1 92:1 93:1 94:1 95:1 96:1
97:1 98:1 99:1 100:1 101:1
102:1 103:1 104:1 105:1 106:1
107:1 108:1 109:1 110:1 111:1
112:1 113:1 114:1 115:1 116:1
117:1 118:1 119:1 120:1 121:1
122:1 123:1 124:1 125:1 126:1
127:1 128:1 129:1 130:1 131:1
132:1 133:1 134:1 135:1 136:1
137:1 138:1 139:1 140:1 141:1
141:4

**alarm** 70:11

**Albany** 141:13

**allegedly** 122:3

**Allen** 93:23 140:2,13

**allow** 89:23

**allowed** 67:16

**and/or** 141:8

**answer** 4:18 47:7 95:7,9,11,13

**anticipate** 130:5 132:13

**anticipated** 128:24 130:14
133:12

**anyway** 69:5,12

**apparent** 124:15

**appeal** 41:25 42:3,4 44:13,16,18
87:11,17

**appeals** 4:20 91:7

**appear** 91:18

**appearance** 117:23

**APPEARANCES** 2:2

**appears** 79:15 89:5

**Appellate** 47:14,16

**applied** 45:6

**applies** 135:13

**apply** 101:18

**appropriate** 69:16 70:8,17
141:10

**approximate** 57:16
**approximately** 9:6 22:2 57:18
58:7 60:14 61:9
**April** 9:25 21:6 102:10 104:5,15
104:17 127:4 128:21
**area** 20:17 24:2 26:25 34:10,13
51:16 53:23 61:10,17 62:19
69:18 70:20 100:2,3,3 101:2,8
101:18 103:4
**areas** 101:3,8
**arms** 11:20,20 12:3 22:21,22
26:24 28:12
**arrive** 18:11 50:6
**arthritis** 114:4
**Article** 44:25 45:6 47:3
**asked** 14:22 30:7,16,25 31:3,9
31:13,17 33:23 40:2,4 69:20
106:9 109:15 130:22
**asking** 17:15 20:3 25:24 29:13
31:17 40:9,12,14 43:23 45:12
46:13 55:25 65:5 69:11 92:23
93:7 98:17 110:18 130:24
**assault** 35:10,13,17 42:22
111:16 123:16,21 126:16
134:12
**assaulted** 57:21 99:24 102:13
105:13
**assaults** 15:25 78:11 98:23
134:15
**assessment** 107:22
**asshole** 31:12,15,22
**Associated** 140:10 141:2
**assumed** 73:20 74:3
**attached** 139:7
**attend** 38:20
**attended** 105:2
**attorney** 2:7 46:14,23 141:6,12
**attributing** 122:20
**August** 41:21 106:13,20 108:16
120:21
**automatically** 35:21
**aware** 98:24 99:7 135:7

---

**B**

**B** 4:2
**back** 7:20 16:6,10 20:25 28:4
32:7,12,14,18 36:18 40:4
43:11 59:20 68:16,17 71:8
72:9 73:14 78:3,4,19 81:9,19
93:23 94:5 104:7,9,12,14,19

105:5 109:5,16 111:3 113:19
114:25 121:10
**bad** 134:12,15
**barbaric** 20:9
**based** 43:6 56:15 74:6,25 77:8
82:17 84:23
**basically** 114:3
**basis** 50:14 85:2
**bathroom** 27:20,22 32:21
**beat** 72:4 76:11,15 84:20 122:3
**beaten** 72:22 74:4
**beating** 19:24 56:24 74:2
**Bedcler** 1:1,8 2:1 3:1 4:1 5:1
6:1 7:1 8:1 9:1 10:1 11:1
12:1 13:1 14:1 15:1 16:1 17:1
18:1 19:1 20:1 21:1 22:1 23:1
24:1 25:1 26:1 27:1 28:1 29:1
30:1 31:1 32:1 33:1 34:1 35:1
36:1 37:1 38:1 39:1 40:1 41:1
42:1 43:1 44:1 45:1 46:1 47:1
48:1 49:1 50:1 51:1 52:1 53:1
54:1 55:1 56:1 57:1 58:1 59:1
60:1 61:1 62:1 63:1 64:1 65:1
66:1 67:1 68:1 69:1 70:1 71:1
72:1 73:1 74:1 75:1 76:1 77:1
78:1 79:1 80:1 81:1 82:1 83:1
84:1 85:1 86:1 87:1 88:1 89:1
90:1 91:1 92:1 93:1 94:1 95:1
96:1 97:1 98:1 99:1 100:1
101:1 102:1 103:1 104:1 105:1
106:1 107:1 108:1 109:1 110:1
111:1 112:1 113:1 114:1 115:1
116:1 117:1 118:1 119:1 120:1
121:1 122:1 123:1 124:1 125:1
126:1 127:1 128:1 129:1 130:1
131:1 132:1 133:1 134:1 135:1
136:1 137:1 138:1 139:1 140:1
141:1,4
**beg** 36:4
**began** 11:9,12 22:21 26:24 68:15
93:19 119:17
**behavior** 84:13
**belief** 85:3
**believe** 8:23 12:24 13:3 18:6
28:18,20 29:15 35:3,7 37:24
39:11 40:21 42:20 43:6 46:19
52:13 69:3,14,24 70:13 73:18
77:13 82:3 83:3,7 84:12,14,22
85:19 93:14 114:7 118:15
122:13

**believed** 12:19 37:20
**believing** 50:15
**belongings** 28:10
**better** 119:16 121:23
**beyond** 131:6
**biased** 89:23 117:21 119:7
**bid** 93:19
**birth** 120:10
**bit** 59:3 137:13
**blanket** 124:14
**bleeding** 102:22
**block** 51:25 53:13,18,18,23
  112:19 113:4
**blood** 115:13,15
**blow** 59:18,20
**blowing** 75:7,24
**Blvd** 2:9
**body** 11:13,18 12:6 13:11
**bothers** 111:10
**bottom** 82:20 86:18 99:14 101:18
  120:13
**bowel** 27:14,19 32:13 98:18,22
  98:25 99:11
**bowlegged** 117:15
**box** 73:2,3 100:12 132:8
**boxers** 27:5
**Brash** 35:9
**break** 16:22
**breakfast** 57:19
**brief** 47:17,18,20
**briefly** 9:4 17:3 18:24 27:11
**bring** 33:14 70:10
**brotherhood** 50:16
**brown** 19:11
**brutal** 20:9
**bumps** 101:8
**bunch** 59:8
**butthole** 26:25 27:2
**buttocks** 11:21 28:15 70:6,20
  105:15 111:19

---
C
---

**C** 3:2
**C.O** 8:6,9,13 9:4,23 10:23 12:21
  14:13 17:5,9,13 18:23 28:25
  35:9,9,9 36:15 50:11 57:20
  68:22 69:2 73:25 74:3 78:3,10
  82:21 83:20 84:10 88:17,21
  89:20 90:13,16,20 99:21
  106:17 129:24,25

**C.O.R.C** 42:2 45:9 87:11,16 88:7
  88:8 89:25 91:8
**C.O.s** 51:10 82:23
**call** 5:4,10 63:3 103:16 105:2
  105:10 106:4,15 113:7 125:19
  126:11,14
**called** 39:2 75:8,8 123:21
  135:14
**calling** 75:25 76:17
**callout** 33:2
**Capitol** 141:13
**caption** 94:22 140:5
**care** 17:11,15,18 49:25 102:10
  106:13 107:2 108:20,23 112:2
  112:17 113:12 114:19 115:18
  115:25 126:15
**careful** 10:7
**case** 48:24 94:22,25 128:24
  141:4
**cases** 91:11,16
**catalog** 46:22
**Catherine** 116:4 119:25
**cause** 6:6 140:3
**caused** 27:14,19
**cell** 16:6,11,16,17 27:25 28:4
  32:7,12,18 36:18 37:3 39:23
  39:24,25 40:5,11,16 43:11
  51:18,24 53:13,18 54:17 58:12
  59:7,10,14,17,20 60:2,4,6,20
  61:4 68:17 71:9 72:9 75:7
  76:15 82:23 113:7
**cells** 53:20 54:2,6,7,24 55:3
  60:9
**center** 36:15 37:10
**central** 53:23
**certain** 129:4
**certify** 140:2
**cervical** 109:20
**CHAD** 1:8
**chance** 7:4
**changed** 55:20 82:2,22
**changes** 141:8
**Chappie** 88:19
**characteristics** 19:9 118:10
**charge** 63:24 66:15,17
**charged** 38:17
**charges** 39:7
**chart** 106:10
**check** 13:10,13 28:14,16,19
  69:21 74:23 139:5

checked 28:15 69:2,3 70:5,5
checking 12:5 28:12 70:20
chow 32:25 33:10,11,21,24 35:20
 36:6,9 57:11,12,16 62:3 64:18
 64:24 132:6
chronological 92:10
cinnamon 75:8,25 76:17 123:21
CIVIL 1:7
claim 42:22 102:12 111:15,18
claimed 40:18
claiming 17:4 19:15 51:24 71:21
claims 92:16 99:25
clarify 36:5
clean 101:8
clinic 114:24 115:8
Clinician 131:24
close 52:6 53:7,9 55:12,21,23
 56:13,23 58:3
closed 56:22 57:17,24 58:4,19
 58:20,24 64:24 91:16
closing 52:6 53:3
clothes 27:3
clothing 71:12
cold 51:25 59:18,23
come 37:3 51:17,18 62:18 76:14
 78:3 81:9,19
Commission 139:12
company 33:8
complained 103:19 104:7 106:6
complaining 20:6 63:10 99:24
 109:4,8 110:10 111:3
Complains 100:3
complaint 7:24 18:2,20 51:24
 74:10 75:17 85:13 106:9
complaints 15:25 81:19 114:9,13
 114:14 123:16
complete 6:22 7:17 14:18 15:18
completed 71:2 126:15 140:9
concern 123:7
concerning 109:15 115:20
concerns 122:2,14,21 124:8
concluded 138:11
concludes 135:4
condition 18:6 98:13 133:14
conduct 68:5
conducted 8:6,9 19:16 26:4
 28:21,24 29:3 69:16 70:17
confirming 40:3
connection 98:25

consistently 121:21
consisting 140:8
Cont'g 78:21 94:6 126:6 136:14
contact 20:11 21:5 27:8 32:24
 50:23 51:2,6,14 86:6 100:14
 111:23
contending 46:25
contents 79:17 81:21 86:24
 89:13 95:3 96:5,17 127:10
continue 49:21 84:4 105:21
 114:8
continued 17:23 122:18
continues 106:16
contraband 29:8,11,14,17
contradictory 122:24
control 53:15
controlled 53:14
conversation 23:9 36:23 37:9
 55:18 56:2 108:14
convictions 92:5
copy 135:5
CORC 4:20
Core 5:2
corner 86:19 99:14 120:14
correct 8:3,7,20 10:3 11:24
 12:3 13:9,19,20 14:3,8 16:21
 17:10,22 18:3,4,6,18 19:17
 20:16,21,24 21:10,11,22,23
 22:9,17,18 23:10,22 24:8,11
 24:17 25:13,23 26:16,17,20
 27:4 28:7 29:21 31:19 32:4
 33:4,13 35:2,5 36:10 37:7,15
 37:22 38:8,13,16 39:7,8,23,24
 40:6,11,15,19 41:3,17 42:5
 43:21 44:10,11,23 45:20,22
 46:3 47:4,11,12,15,18,25
 48:10,11,25 49:14,15,25 50:5
 51:11,25 52:19 53:20,21 54:8
 54:11,23 55:24 56:9,10,18
 58:6,19 59:4,23 60:12 61:8,18
 62:16 64:3,25 65:11,15 66:6,7
 66:15,25 67:8,9 68:3,22 70:14
 70:15,24 71:6 72:15,22 73:7
 73:15 74:5 75:4,19,22 76:18
 78:7,15,24 79:16,22 80:10,18
 81:12,13 82:18,25 83:5,18
 84:3 85:24 87:2,6 88:6,10,13
 88:22,25 89:4,15,17,20 90:21
 90:25 91:11,14,16 92:14,17,20
 92:25 93:2,4,20 94:9,22 95:7

95:10,22 96:7,19,21 97:12,14
100:4,11,16,17 101:4,6,9,10
101:12,20 102:7,20,22,23
103:7,8 104:6,9,12,16 105:3
105:10,15,18 106:5,7,19,22
107:20 109:10,17 110:2,8,9,11
111:11,13,17,20,23 112:6,9,11
112:12,15,24 113:13,16 114:20
115:22,25 116:24 117:2 119:4
119:13 120:2 121:24 122:7,15
122:16,21,22 123:5,13,17,18
123:22,25 124:21 125:16 126:9
126:12,16,17,25 127:2,5,6,18
128:12,14,16,22 129:17,18
133:4,17,19 135:2,3 137:3
139:6,7
**corrected** 7:11 141:16,17,18,19
141:20,21,22
**Correctional** 1:14
**corrections** 141:8,11,14
**costs** 135:9
**counsel** 140:4
**Count** 7:23 18:20 51:23 85:13,16
**counter** 105:25
**COUNTY** 139:3
**couple** 6:23 25:16 41:19 50:10
78:17
**court** 1:2 45:15,19 48:10,12
49:2 94:25
**Court's** 48:22
**crank** 53:14
**cranks** 53:14
**cream** 103:10
**current** 93:19
**currently** 124:23
**custody** 93:15

---

**D**

**D** 3:2,2 4:2,12,20,22,24
**damages** 18:9 50:4
**Darrell** 1:1,5,11 2:1,4 3:1,3
4:1 5:1 6:1,9,12 7:1 8:1 9:1
10:1 11:1 12:1 13:1 14:1 15:1
16:1 17:1 18:1 19:1 20:1 21:1
22:1 23:1 24:1 25:1 26:1 27:1
28:1 29:1 30:1 31:1 32:1 33:1
34:1 35:1 36:1 37:1 38:1 39:1
40:1 41:1 42:1 43:1 44:1 45:1
46:1 47:1 48:1 49:1 50:1 51:1
52:1 53:1 54:1 55:1 56:1 57:1

58:1 59:1 60:1 61:1 62:1 63:1
64:1 65:1 66:1 67:1 68:1 69:1
70:1 71:1 72:1 73:1 74:1 75:1
76:1 77:1 78:1 79:1 80:1 81:1
82:1 83:1 84:1 85:1 86:1 87:1
88:1 89:1 90:1 91:1 92:1 93:1
94:1 95:1 96:1 97:1 98:1 99:1
100:1 101:1 102:1 103:1 104:1
105:1 106:1 107:1 108:1 109:1
110:1 111:1 112:1 113:1 114:1
115:1 116:1 117:1 118:1 119:1
120:1 121:1 122:1 123:1 124:1
125:1 126:1 127:1 128:1 129:1
130:1 131:1 132:1 133:1 134:1
135:1 136:1 137:1 138:1 139:1
139:4,9 140:1,3 141:1,5,24
**date** 1:12 9:20 21:12,21 79:24
80:3 85:12 91:13 120:10
127:20,21,23 141:3,5,23
**dated** 127:22,23 128:3
**dates** 120:19,24 121:7
**day** 9:8,11 16:3 21:24 32:24
33:3 35:24 36:3,6,9 52:11,18
57:4,10,11 58:19 63:3,14,16
65:5,6 66:16,20 70:23 76:16
94:17 102:16 104:15 108:20
127:15 139:11
**days** 39:9 58:15 106:17 141:9,10
**daytime** 55:23 56:11
**deal** 132:16
**dealt** 137:2
**Dear** 141:7
**December** 52:15,16,21 109:14
**decision** 45:19,24 48:13,23
**DEFENDANT** 2:6
**Defendants** 1:9
**definition** 123:20
**definitions** 124:16
**delivered** 141:10
**denied** 87:9,14 88:13 89:17
123:24
**denies** 100:13
**Deponent** 141:5
**deposition** 1:11 4:10 6:23 80:16
135:5,9,11 138:11 141:5
**depression** 17:6 49:18 83:25
93:4,6,9 121:21 122:19 124:9
**describe** 9:4 11:10 17:3 18:24
26:21 52:3 54:4 60:13 70:4
117:13 118:9

| | |
|---|---|
| **described** 8:2 34:15 49:17 59:15 63:9 64:8 75:18 120:5 | **E.L** 126:23,24 |
| **describing** 55:11 132:9 | **earlier** 20:10 |
| **description** 4:4 19:4 117:14 | **early** 52:16,21 76:20 |
| **despair** 121:21 | **eat** 33:16,16,18 |
| **determination** 44:13,21 88:9 90:2 | **eating** 57:12 |
| **determined** 124:20 | **eight** 18:20 64:22 131:21 |
| **diagnosed** 93:5,12 99:8 114:4 | **Eighteen** 4:19 91:7,11 |
| **didn't** 68:16 | **EL** 87:6 89:3 |
| **different** 29:7 78:12 103:21 122:7 | **EL-42163** 4:14 |
| **DIN** 98:5 | **eleven** 4:5 38:4,5 85:13,16 113:11 115:5 |
| **dinner** 58:5,8 | **Elmira** 50:18 109:2 116:23 123:17 |
| **Direct** 3:4 6:18 | **emotional** 17:6 |
| **disbelieve** 104:23 | **employed** 50:18 |
| **disciplinary** 4:6,22 38:6 44:13 46:15 91:23 92:5 | **empty** 28:9 |
| **discussed** 124:14 129:12 | **encounter** 100:19 |
| **discussion** 55:11 123:19 | **ended** 13:8 56:24 |
| **discussions** 77:15 | **energy** 121:22 |
| **display** 92:10 | **entered** 119:25 |
| **dispute** 124:3 | **entire** 68:19 88:25 |
| **distance** 67:18 | **entry** 99:20,23 103:12 107:4 110:4,19 113:3 115:3,4 |
| **distress** 15:23 17:6 | **envelope** 96:8 |
| **DISTRICT** 1:2,3 | **erect** 13:4 |
| **Division** 47:14,17 | **errata** 7:6,14 135:14 139:7 |
| **DOCC** 131:24 | **error** 127:25 |
| **doctor** 101:12 109:15 121:15 130:9,13 | **errors** 135:21 136:2 |
| **document** 45:15 79:12 80:20 81:7 81:22 82:8 87:3 89:8,11 94:11 94:24 95:22,25 125:18 126:20 | **escorted** 16:7 71:8 |
| **documents** 41:20 44:6 47:10 137:5 | **esteem** 108:11 |
| **doing** 11:14 14:13 26:8 34:21 66:15,21 75:24 76:10 | **estimate** 27:12,15 60:19 75:12 117:23 131:15,19 |
| **dollars** 18:9 50:4 | **et** 1:1,8 2:1 3:1 4:1 5:1 6:1 |
| **door** 15:3 | 7:1 8:1 9:1 10:1 11:1 12:1 |
| **dozen** 54:21 55:5 | 13:1 14:1 15:1 16:1 17:1 18:1 |
| **Dr** 129:14 130:25 131:7,16 132:14 133:6 | 19:1 20:1 21:1 22:1 23:1 24:1 |
| **drugs** 29:19 | 25:1 26:1 27:1 28:1 29:1 30:1 |
| **dry** 110:10 | 31:1 32:1 33:1 34:1 35:1 36:1 |
| **du** 82:14 | 37:1 38:1 39:1 40:1 41:1 42:1 |
| **duly** 140:6 | 43:1 44:1 45:1 46:1 47:1 48:1 |
| **duress** 17:7 | 49:1 50:1 51:1 52:1 53:1 54:1 |
| | 55:1 56:1 57:1 58:1 59:1 60:1 |
| | 61:1 62:1 63:1 64:1 65:1 66:1 |
| | 67:1 68:1 69:1 70:1 71:1 72:1 |
| | 73:1 74:1 75:1 76:1 77:1 78:1 |
| | 79:1 80:1 81:1 82:1 83:1 84:1 |
| | 85:1 86:1 87:1 88:1 89:1 90:1 |
| | 91:1 92:1 93:1 94:1 95:1 96:1 |
| | 97:1 98:1 99:1 100:1 101:1 |
| | 102:1 103:1 104:1 105:1 106:1 |

**E**

**E** 3:2,2,2 4:2,2

107:1 108:1 109:1 110:1 111:1
112:1 113:1 114:1 115:1 116:1
117:1 118:1 119:1 120:1 121:1
122:1 123:1 124:1 125:1 126:1
127:1 128:1 129:1 130:1 131:1
132:1 133:1 134:1 135:1 136:1
137:1 138:1 139:1 140:1 141:1
141:4
**evening** 58:17,20
**events** 83:22 130:5
**evidence** 137:5
**exact** 52:18
**exactly** 24:18 69:9,11 117:3,5
**exam** 102:18 105:17,21
**examination** 3:4 6:18 101:5
  105:22 112:7,8
**examinations** 101:15
**examined** 101:2 103:3
**Examining** 141:6
**exceptions** 139:7
**Exchange** 2:9
**excuse** 95:8 112:22 126:23
**exhibit** 4:5,7,9,11,13,15,17,19
  4:21,23,25 5:3,5,7,9 38:5
  41:5 42:17 44:5 78:23 79:2
  80:15 86:10,11 88:5,16 90:6
  90:16,20 91:3,7,10,22 92:9
  93:22 94:2,8 95:17,18,21
  96:11,25 97:10 98:2,3 99:15
  99:19 104:4 107:5,23 110:5
  112:23 113:11 115:24 119:20
  120:14 121:11 125:12 126:2,7
  126:8,19 127:7
**exhibits** 78:17 125:11
**experience** 98:18 106:16
**experiencing** 78:11 98:22 121:13
**expertise** 123:4
**Expires** 139:12
**explanation** 49:3,6
**explanations** 60:24
**express** 123:7
**expunged** 44:17 45:2,8,24 48:21
**expunging** 45:4
**extent** 88:8

---

### F

**F** 3:2
**facilities** 135:2
**facility** 1:14 19:25 51:10 74:2
  122:10 134:21,22 136:21,23

**facing** 54:2
**fact** 29:17 40:15
**faggot** 75:8 123:21
**fail** 141:9
**failure** 38:18
**Fair** 121:16
**false** 40:7
**familiar** 19:23 20:3,5 29:16
  97:23 98:13 116:3
**far** 16:16 25:14,16 60:19
**fashion** 123:15
**fear** 132:2 134:11
**feared** 15:23
**February** 75:20 76:3,20 79:21
  83:21 112:2,17 113:13
**feel** 11:13,17,21 37:17 69:7
  119:16
**feeling** 11:20
**feelings** 121:21
**feet** 9:6 25:16 54:5 60:21,21
**felt** 59:23 119:6
**female** 117:17
**Fifteen** 4:13 86:10,11 88:5
  90:16,20
**fifty** 39:9 55:2 60:11 117:17,18
**figure** 18:12 50:7
**file** 18:2 42:22,25 44:12,24
  86:5
**filed** 20:22 35:8,10,12 40:23
  41:2 42:16,20 90:15,19 94:25
  127:4 128:19
**filing** 23:7 24:20 47:3
**find** 73:16
**fine** 7:19 40:3 48:22 138:8
**finger** 102:15
**finish** 81:18
**finished** 16:4 74:24
**first** 9:10 19:22 23:8 30:22,22
  38:9 44:19 65:2,6 77:19 88:5
  91:10 93:11 98:10,22 125:14
  135:7,12
**five** 50:3 59:17 60:6,9,21 86:20
  89:6,6,7,9 101:24 103:16,17
**fixed** 126:7
**flip** 98:2 119:21
**follow** 38:18 58:18 105:4 114:2
  124:15
**following** 128:18
**fondled** 100:19

**force** 73:24 122:6
**foregoing** 139:4 140:2,7
**formation** 52:25
**found** 39:6 80:7 105:20 129:13
129:17
**four** 7:23 24:3 26:14 41:10,20
60:21 97:13,17,17 99:19 102:5
103:17 120:18 126:23,24
131:17
**four-year** 131:20
**four-year-old** 111:7
**Fourteen** 4:11 95:17,21 96:11,25
**freezing** 56:22
**frequently** 124:25 125:4,7
**Friday** 99:25
**frisk** 8:9,13 9:11,13,20,23 10:8
11:9,11,18 12:18 13:8,17,22
14:5,7,17 15:13 17:9,12 19:16
19:19 20:12,15 21:6,13,25
22:4,20,25 23:4 26:8,22 28:8
28:11,21 30:4,9,12,15 34:17
34:21,25 35:13 36:12 37:17,23
39:12 41:2 43:14,25 49:9
51:13 65:19,21 66:6,12,18
67:3,8,11,12,14,15 68:5,14,19
68:22 69:5,8,11,12,20,24
70:17,19 71:2 99:20,25 103:24
104:2 105:14 106:16,18 107:14
107:16,19 111:19
**frisked** 8:17,22 10:5 21:16
25:22,25 26:18 66:3 68:8
106:25 107:6
**frisking** 11:12 22:21 26:16,24
68:15
**frisks** 8:3,5 26:4 28:22 29:11
29:13 35:17 50:10 66:15,21
84:24
**front** 59:16 78:22 81:4 94:8
**full** 6:11
**further** 14:20 32:23 51:13
107:21 123:10,19 124:14
**future** 114:24

---

**G**

**G** 3:2
**G-E-R-D** 98:9
**G.E.R.D** 99:8
**gallery** 16:18
**gate** 36:16 37:10
**general** 2:7 29:14 46:14,23

71:24 72:3 74:19 141:12
**generally** 124:16
**genital** 100:2,3,3 101:2 103:19
**genitals** 103:4,7
**GERD** 98:9,9
**Gessner** 4:10 77:21 78:6,9 80:17
81:11 83:17
**getting** 23:17 121:23
**give** 6:6 19:4 32:25 33:9 77:12
87:23 122:15,15 134:10
**given** 46:10 105:24 109:11
110:12 124:13
**giving** 34:10 140:5
**go** 8:22 16:5,10 20:25 22:13,16
22:17 23:14,19 28:2 32:11,14
32:15 33:12,23 35:21 36:9
40:4 64:17,17,19 65:13 66:5
70:14 71:4,14 73:19 74:23
78:17 93:24 102:3 112:2
116:23 126:3 129:15 138:7
**going** 8:16,16,18,25 21:16 33:20
34:23 35:15,21 42:21 74:23
107:19 135:13 138:2,7
**good** 6:20,21 118:13,20 119:12
120:5
**grammatical** 135:21,25
**gratification** 12:25 84:15
**Great** 7:3
**Green** 116:8,22,23 118:4 119:18
122:11 125:6 129:14 130:9
132:5,10,15,25
**Greene** 5:6 58:22 59:4 63:10
65:19 66:18 68:14,19 69:4,5
69:13,24 70:23 71:4,25 72:4,9
72:22 74:4,12,21,23 77:16
85:6 96:15 97:4,11,16,20
**Greene's** 69:3 97:23
**grievance** 4:8,14,16 9:2 18:2
24:13 35:12 40:23,24,25 41:7
41:7,9,14,17,21,24 42:9,17
43:13,17,21 86:11,14,22 87:6
87:8 88:13,17,18,25 89:3,5,17
89:22 90:9 97:20 126:23 127:4
127:23 128:3,19 136:20 137:2
**grievances** 20:22 23:7 24:21
35:8,9,16 37:3,6 44:2,10
81:17,18 86:5 89:19,23 91:19
136:21
**grieve** 18:5

groin 69:17,18 70:5,20 111:19
groped 111:19
group 137:8
guard 130:21
guards 23:6 117:12
guess 45:11 46:8,11,13
guilty 39:6 44:21
Gunn 1:1,1,5,11 2:1,1,4 3:1,1,3
  4:1,1,12,20,22,24 5:1,1 6:1,1
  6:8,9,12,13,20 7:1,1,24 8:1,1
  9:1,1 10:1,1,9 11:1,1 12:1,1
  13:1,1 14:1,1 15:1,1 16:1,1
  17:1,1 18:1,1 19:1,1,3 20:1,1
  20:2 21:1,1 22:1,1 23:1,1
  24:1,1 25:1,1 26:1,1 27:1,1
  28:1,1 29:1,1 30:1,1 31:1,1
  31:16 32:1,1 33:1,1 34:1,1
  35:1,1 36:1,1 37:1,1 38:1,1
  39:1,1,23 40:1,1,8 41:1,1
  42:1,1 43:1,1 44:1,1 45:1,1
  46:1,1,12 47:1,1,2 48:1,1
  49:1,1 50:1,1,17 51:1,1 52:1
  52:1 53:1,1 54:1,1 55:1,1
  56:1,1 57:1,1 58:1,1 59:1,1
  60:1,1 61:1,1 62:1,1 63:1,1
  64:1,1 65:1,1 66:1,1 67:1,1
  68:1,1 69:1,1,19 70:1,1 71:1
  71:1 72:1,1 73:1,1 74:1,1
  75:1,1 76:1,1 77:1,1 78:1,1
  78:22 79:1,1 80:1,1 81:1,1
  82:1,1 83:1,1 84:1,1 85:1,1
  86:1,1 87:1,1 88:1,1 89:1,1
  90:1,1 91:1,1 92:1,1 93:1,1
  94:1,1,7,21 95:1,1,19 96:1,1
  96:24 97:1,1 98:1,1 99:1,1
  100:1,1 101:1,1 102:1,1,3
  103:1,1 104:1,1,19 105:1,1
  106:1,1 107:1,1 108:1,1 109:1
  109:1 110:1,1 111:1,1 112:1,1
  112:23 113:1,1,9 114:1,1
  115:1,1 116:1,1 117:1,1 118:1
  118:1 119:1,1 120:1,1 121:1,1
  121:12 122:1,1 123:1,1 124:1
  124:1 125:1,1 126:1,1,9 127:1
  127:1 128:1,1,23 129:1,1
  130:1,1 131:1,1 132:1,1 133:1
  133:1 134:1,1 135:1,1 136:1,1
  136:16 137:1,1,9 138:1,1,6
  139:1,1,4,9 140:1,1,3 141:1,1
  141:4,5,7,24

guy 10:15 125:3

---

### H

H 4:2
hair 19:11 118:11
half 135:7,12
hall 33:12
hallway 53:17 54:10,13,25 55:6
  59:14 60:5
hand 6:5 86:18 93:23 120:14
  125:13,13
hands 10:8,24 11:6,7,20 12:3
  26:23
handwriting 41:11 79:7,10 80:22
  80:25 86:22 89:9 94:12 125:15
  126:12,20 127:8
hang 10:9 19:3 31:16 112:21
  135:18,18
HANNAH 140:2,13
happen 13:5 58:24 70:23 72:6
  134:12,15
happened 10:5,22 11:5,8 12:17
  14:17 15:16,21 16:5 22:19
  25:5 26:22 30:14,23 31:2
  36:25 52:3 55:18 58:24 64:16
  65:16 70:25
harass 51:19
harassing 106:16
Harkness 8:9,13 9:4 10:17,18,23
  11:4,9 12:21 14:2,13 17:5,13
  21:2,6 29:4 37:24 50:12,22
  51:2 57:21
Haven 116:8,22,23 118:4 119:18
  122:11 125:7 129:14 130:9
  132:5,10,15,25
head 43:17
headed 25:19
heading 139:4
health 62:21 115:25 117:2
  119:22 121:12,13 122:13,14,24
  125:8
hear 55:10 56:12 60:24 62:9
  63:17 79:23 80:2,11
heard 62:10 98:10
hearing 38:21,23 46:15 47:11
Heather 2:8 141:6
help 108:11 117:7 119:15 122:13
helped 131:8 133:3
hemorrhoid 102:24 103:9 129:14
  129:17

**hemorrhoids** 99:2
**hereof** 139:5  140:5
**hereto** 140:5
**history** 4:22  5:2  91:23  92:10
  98:8
**hold** 90:12
**homosexual** 84:12,23
**hours** 132:5
**housed** 92:13
**housing** 73:4
**huh** 120:15  128:11
**hungry** 137:15
**Hunter** 1:15

---

**I**

**I.D** 91:25
**I.G** 122:5
**I'm** 125:4
**ibuprofen** 111:9
**ice** 101:18
**identifying** 19:8
**idiosyncrasies** 84:23
**illness** 130:16  133:13
**important** 137:12
**impression** 81:8
**in-** 66:14
**inappropriate** 69:8,12
**incarceration** 92:13  93:19
**incident** 16:23  17:4,12  18:3
  21:2  42:10  44:7  96:15  103:20
  103:21
**incidents** 43:22,24  85:21  92:19
  92:24  129:20  132:14
**inclusive** 140:9
**incorrect** 136:6,6
**increased** 104:9  109:15
**Index** 141:4
**indicated** 17:25  88:7  111:6
  120:19  129:3
**indicates** 99:23  100:18  102:6
  104:19  107:6  121:11,20
**indicating** 129:5
**information** 134:10
**initial** 57:7
**injured** 104:14
**injuries** 16:23,25  17:4,12  49:8
  49:12,14,17  83:21,25  92:16
**injury** 92:20,25  109:5  111:7
**inmate** 4:22  5:6  40:11  53:8,10
  55:11  56:2,9,21,25  58:22  59:4

**60:23  63:9  68:14,19  69:4,5,12**
**69:24  70:23  71:4,25  72:4,9,22**
**74:4,12,21  77:15  85:6  91:22**
**91:25  96:15  97:4,11,23**
**inmates** 20:6  25:17  34:23  56:5
  56:16  66:6,12  67:20,22  68:7
**Inspector** 71:24  72:3  74:18
**instinct** 73:18
**Int'l** 140:10
**interesting** 112:19
**interjected** 58:21
**INTERNATIONAL** 141:2
**intervention** 121:12
**interview** 5:6,8  8:14,16,17  9:2
  15:18,22  16:4  57:20  74:24
  79:5  80:17  81:10,14,15  82:13
  82:14  97:11,13
**interviewed** 97:4
**interviews** 136:20
**investigation** 77:4  78:13  80:6
  83:10
**investigations** 72:14  136:22
**investigator** 4:10  76:25  77:12
  77:15,19,20,21,23  78:2,6,9,13
  79:5,20,24  80:3,12,17  81:11
  82:14  83:17  97:11
**investigator's** 79:9  80:24  81:3
**involve** 70:20
**involved** 64:10,14  66:21
**involves** 18:23
**involving** 130:25
**irritable** 98:18,22,25  99:11
**issue** 14:21
**issued** 38:7  48:12
**issues** 103:7  119:4  132:9,17,24
  134:25
**it's** 50:8  76:19  127:13
**itches** 110:10

---

**J**

**January** 52:13,15,16,21  75:18
  76:20  83:20  96:25  110:4,19
  111:2,13,13  112:5
**Jill** 129:8
**job** 9:7  19:13  39:17
**Jr** 88:19
**July** 21:21  38:15  41:2  42:10
  43:13,13,24  49:9  51:13
**June** 105:10  106:4  120:20

## K

**keep** 6:14 33:25 34:7 39:10
**kept** 15:24,25
**kind** 123:25
**kisses** 75:7,25
**knew** 20:14 23:3 34:6 37:5 77:3
    77:6 85:9
**know** 7:12 9:7,14 10:10,13 12:21
    15:2 19:12,20 23:24 24:4,6
    31:4,5,9,9,14,18 32:17 33:19
    34:2,6 46:4,13,20,24 48:20
    50:11,11,21 51:9,20 53:2,3,6
    53:10 54:25 55:4,17 56:2,8
    61:3,19 62:15 63:20 64:4
    66:17 71:7,10,16,19,20 72:24
    73:23 74:12,15,17,20 77:3,6,7
    77:14 80:5 83:10 84:10,17,21
    85:9 87:20,25 93:22 97:4,4,7
    115:14 121:2,3,15 123:2
    124:18 125:17,20 128:5 129:10
    130:5,14 137:11
**known** 73:25
**knows** 50:12,18,22 129:20,23,23
    129:25

## L

**labelled** 7:23 18:20
**labels** 124:15
**lack** 121:22
**lasted** 27:13
**late** 52:15,15,20
**law** 33:2,10,21,23
**lawsuit** 122:7 135:8
**layers** 71:11
**leading** 22:6
**learn** 45:3 56:19 136:6
**leave** 82:23 123:3
**left** 16:14 52:7 57:9,10 110:20
    110:23 115:20
**legal** 33:22 34:4,10
**legs** 11:21 13:11 28:19
**let's** 41:4 125:14 129:15
**letter** 4:12 47:24 48:3 96:12,20
    96:25
**letters** 122:18
**level** 47:4 87:18
**library** 33:2,10,21,24
**lieutenant** 61:15,16 62:6,24
**lieutenant's** 61:19

**life** 15:24 84:18 93:4,8 121:22
**lift** 37:2
**likes** 84:19
**line** 23:17,18,20 25:12,17 54:7
**lined** 54:17
**lines** 82:5,21
**list** 4:20 33:7 91:7,19 120:21
**listed** 129:7
**listens** 118:12
**lists** 120:20
**little** 59:3 137:13
**located** 53:16 60:5
**location** 1:14 73:9
**locations** 92:12
**lock** 33:25 34:7 39:10
**long** 12:8 27:12,15 56:23 57:2
    131:3 137:13
**look** 38:3 41:4 80:14 86:9 88:16
    91:6,21 92:8 93:22 94:20,21
    95:18 97:9 98:2 99:19 107:4
    119:19 120:12 125:11 126:18
    135:20 138:3
**looked** 90:16,20
**looking** 29:8,11,14,19 44:4 88:4
    110:3,19 112:22,24 120:18
    123:14
**looks** 41:10,19,24
**loss** 124:8
**lost** 45:18
**lot** 35:15
**lotion** 110:12
**lots** 67:14,15
**Lovelace** 5:6 74:19,22 76:25
    77:12,19 78:14 79:5,21,24
    80:3,12 97:11
**Lovelace's** 77:15
**lumps** 101:7

## M

**M-I-C-E** 134:2
**M.H.U** 102:4,6 112:4,6
**M.R.I** 110:15,20,22 113:16,18,22
    122:15
**magne** 26:9
**magneme** 24:14
**magnetometer** 22:7,14 23:6,12,15
    24:15 26:9,15 37:21 66:24
    70:11,14
**mail** 7:20 33:22 34:5,10
**main** 135:10

**maintained** 123:11
**making** 15:25
**male** 19:7
**Maltese** 133:7
**manner** 28:22,25 29:4 39:13
  68:22 69:15
**March** 81:15 99:20 100:10 114:18
  115:3,18 125:22
**mark** 38:4 141:12
**marked** 4:3 38:3 41:5 78:23
  80:15 86:10 88:16 91:22 94:8
  97:10 119:20 125:11 126:19
**married** 130:21
**mask** 6:14
**materials** 140:10
**matters** 129:10
**McKay** 2:8 3:4 6:19 78:21 94:6
  126:6 136:13,14 141:6
**mean** 22:2 27:18 33:5,12 42:19
  68:25 69:2 73:3 114:12 117:4
  117:8 128:2 135:25
**medical** 4:24 17:11,15,17,20
  49:25 62:18 98:3 99:4 100:7,9
  100:23 102:10,15 104:4,20
  106:13,21,25 108:20,23,23
  111:2,12,25 112:17 113:12
  114:16,19 115:18 122:2,18,20
  126:15 129:4,5 138:5
**medication** 17:16 119:17 131:3
**meeting** 6:23
**memory** 43:16,20 44:5,10 108:19
  124:8
**mental** 17:2,4,14,16 49:12,16
  62:21 83:23,24 115:25 117:2
  119:21 121:12,13 122:13,13,24
  125:8 130:16 133:13,13
**mentioned** 64:2 74:9 85:12 130:9
**merit** 80:8
**mess** 33:12
**met** 76:25 77:11,18,20,21,22
  78:2,6 79:20
**mice** 133:21,23,24 134:2
**midday** 61:25 62:2
**middle** 115:4
**million** 18:9 50:4
**minute** 65:24
**misbehavior** 37:15 38:7,10,21
  40:7,10,15,19 42:9,13,16,21
  42:24

**missing** 44:6
**misspelled** 135:22
**mistake** 135:16
**MITCHELL** 141:12
**modest** 92:17,22
**moment** 21:2
**monitor** 105:21 114:9
**month** 108:8 125:9
**months** 6:24 20:9 125:5
**morning** 6:20,21 55:19 61:25
  103:15
**motion** 95:13
**Motrin** 105:25
**moved** 73:8
**movement** 4:18 27:14,19 32:13
**moving** 95:6,9,11
**multiples** 116:10

---

### N

**N** 3:2,2 4:2
**N.P** 129:16
**name** 6:11 8:15 10:10 23:24 30:7
  30:16,25 31:5,10,14,18 32:3
  40:2 57:20,22 61:19 64:4 92:2
  98:5 118:6,8,17,23 119:24
  120:8 130:8 141:4
**narrated** 40:7
**near** 114:24
**neck** 104:8,9 109:5,8,16,21,21
  109:25 111:3 113:19 114:25
**need** 7:11 15:4 36:3,6 93:24
  115:23 137:17
**needed** 32:20 95:16 108:23
**needless** 37:18,24 69:14 70:9,13
**needs** 108:10 114:9
**never** 21:8 47:17 78:4 81:19
  93:5 107:11,12
**New** 1:3,16 2:7,10 141:13
**night** 7:2 33:8,17,22 57:5,7,10
  57:16 62:4 72:7 73:12 99:25
  133:21
**nightmare** 133:21
**nightmares** 17:7 49:18 84:2
  122:19 123:7,12 130:23 133:21
  134:8,10
**nighttime** 52:9,10
**nine** 41:10 51:24 110:4
**Nineteen** 4:21 91:22 92:9
**normally** 8:21
**Northrop** 129:8

Northrup 129:16
notarized 7:18,20 137:25
notary 139:12 141:8
note 5:4,10 135:10
noted 101:3,8,9 102:21,24
 105:20,21 139:4,7
notice 45:8 47:23
notified 101:11
notify 136:7
November 109:7,20,25
number 18:13,15,16 50:8 87:6
 89:3 120:13,20 126:23 140:8
 141:4
numbers 86:18 99:14,15
nurse 101:11 102:21
NY 141:12

---

O

O 3:2,2
o'clock 57:18
O.M.H 17:21 49:22 84:5,7 112:14
 115:25 120:20 121:17 122:4,18
 124:20,22,25 130:19 134:4,8
O.S.I 74:7,13 75:2 76:25 77:4
 77:20 78:12 85:5 96:12 97:5
observing 67:12
occasions 123:19
occur 75:10
occurred 9:20 21:25 111:23
October 42:4,7 108:23
offered 111:9 123:15
office 8:19 14:19,21 15:10
 16:14,17 47:9,18 49:5 72:13
 141:12
officer 10:6,7,11,14,18,23
 13:23 14:2,4,10,12 15:2 19:5
 19:12,16,20,23 20:4,12,20,23
 21:2,6,13,16 23:21,21,23 24:6
 24:14,16,19 25:3,6,9 26:7,16
 26:18 27:8 29:4 30:2,17 31:17
 32:24 33:20,23 34:2,4,5,9,12
 34:17 35:4 37:8,15,18,23 38:7
 38:12,24 39:13 43:7,25 50:12
 50:18,19,21,22 51:2,2,4,5,14
 52:5 53:3,8 55:12,20,22 56:3
 56:13 57:19 62:11,12,15 64:5
 64:7,10,13 65:3,9 66:14,19,20
 68:4 71:22 75:3,5 76:10 77:3
 80:12 84:17 85:14,18 86:6
 99:25 102:13 105:13,14

officers 15:9 16:13 23:25 24:10
 24:23 26:8,13 34:16 36:20
 55:20,23 56:12,24 61:10 63:24
 64:8 67:23 103:20,22 134:22
Oh 65:24 95:14 128:11
okay 6:3,15,16,22 7:3,6,9,14,17
 7:19,19,20,21,22,24 8:2,5,8
 8:12,18,21,24 9:3,3,7,10,13
 9:16,19,22,25 10:4,4,9,13,16
 10:18,20,22 11:2,5,7,10,14,17
 11:22 12:2,5,8,11,14,17,19,19
 12:24 13:3,5,8,10,21,25 14:4
 14:15,20,23,24 15:3,4,6,8
 16:7,10,22,25 17:3,8,17,20,20
 17:25,25 18:8,16,19,19,21,22
 19:8,12,15,15,22 20:2,7,11,14
 20:17,19 21:3,4,8,12,15,21
 22:4,7,10,13,19,24 23:3,8,11
 23:14,17,20,23,25 24:4,9,16
 24:18,22,25 25:5,8,10,10,14
 25:17,21 26:3,6,10,15,21,21
 27:3,7,10,12,18,21,24 28:2,5
 28:5,11,16,19,24 29:3,6,6,10
 29:16,22 30:6,8,11,14,17,23
 31:2,6,11,13,16,20,23 32:2,5
 32:8,11,14,17,23 33:3,5,11,14
 33:19,19 34:2,6,24 35:3,3,6
 35:11,19,23 36:11,11,14,17,19
 36:22,25 37:5,11,14 38:2,9,20
 39:12 40:18,24 41:4,6,9,13,16
 41:23 42:3,4,6,8,19,23 43:3,6
 43:9,12,12,16,20 44:4,9,12,15
 44:18,21,24 45:3,14,17,21,25
 46:4,4,7,17,20 47:2,6,9,13,16
 47:20,23 48:3,6,9,12,15,19
 49:2,2,5,8,11,13,16,20,24
 50:3,9,9,14,21,21,25 51:4,8
 51:12,16,20,23 52:3,8,11,14
 52:17,20,24 53:2,6,6,10,12,16
 53:19,22,25 54:3,7,10,12,16
 54:19,22,24 55:4,8,10,15,15
 55:25 56:5,8,11,15,19 57:2,6
 57:9,13,22,24 58:4,7,10,10,16
 58:18,23,23 59:3,6,13,22,25
 60:4,7,9,13,16,19,22,22 61:3
 61:6,9,16,24 62:3,6,9,18 63:5
 63:9,13,15,20,25 64:4,10,13
 64:16,16,20,23 65:2,8,13,16
 65:20,23 66:2,5,8,11,14,19,23
 67:2,7,10,16,19,23,25 68:4,10

68:13,13,18,21,25 69:4,7,10
69:15,19,23 70:3,7,12,16,19
70:22,25,25 71:4,7,10,13,16
71:21,21 72:2,6,8,11,13,16,21
72:24 73:3,8,11,13,20,23 74:3
74:6,9,12,17,20,25,25 75:5,9
75:12,14,17,20,23 76:3,6,9,9
76:13,16,19,22,24,24 77:6,8
77:11,11,14,18,22,25 78:5,8
78:12,16,16,22,25 79:4,7,9,12
79:14,17,20,23 80:2,5,9,11,14
80:19,24 81:6,14,21,21 82:4,7
82:11,13,17,25 83:3,6,9,9,13
83:16,19,24 84:4,7,10,14,21
85:2,5,9,15,20,20,25,25 86:5
86:9,14,17,21 87:5,8,13,17,20
88:4,7,12,12,15,24 89:5,8,11
89:16,19 90:5,8,15,15,23 91:5
91:5,10,15,18,21,25 92:4,8,12
92:15,15 93:3,11,15,21,24
94:7,11,14,20,24 95:3,6,15,15
95:16,18,21,24 96:3,11,14,17
96:23 97:3,9,19,22,25,25 98:5
98:8,12,15,21,24 99:4,10,13
99:13,18,19,23 100:6,9,12,16
100:18,22,25 101:7,11,14,17
101:24,24 102:5,9,12,18,21
103:6,12,15,19 104:3,3,7,11
104:14,22,25 105:8,9,12,17,24
106:3,6,12,15,20,24 107:4,9
107:12,18,21 108:3,4,4,9,13
108:16,19,22,22 109:4,11,14
109:18,22,24 110:3,9,21,25,25
111:12,15,18,22,25 112:5,8,13
112:16,21 113:2,2,6,9,9,15,18
113:21,21,24 114:5,8,12,18,22
115:7,11,14,14,17,20,23,23
116:3,6,9,14,17,20,25 117:4,8
117:11,16,20,22 118:3,9,13,16
118:19,22 119:3,3,6,9,12,15
119:19,19,24 120:4,7,12,12,16
120:18,23 121:2,5,10,16,20,25
121:25 122:6,9,12,12,23 123:3
123:6,10,14 124:3,6,6,13,19
124:22 125:6,10,17,20,25,25
126:7,11,14,18,19,22 127:3,7
127:15,19 128:2,4,13,18,23,25
129:3,7,9,15,19,22,25 130:4,8
130:11,13,17,24 131:4,7,10,12
131:15,22 132:3,7,12,21,23

133:3,6,9,11,14,18 134:4,7,13
134:17,20,24 135:4,4,16,18
136:4,8,9,18,25,25 137:4,14
137:17,20,23 138:4,9
**old** 9:6 117:17
**older** 10:15
**OMH** 5:2
**once** 7:19 11:7 15:21 23:14
  70:25 72:8 87:17 125:4,9
  132:4
**ones** 28:25
**ongoing** 134:18
**onset** 83:11
**open** 52:7 57:3,9,10 58:12,14,14
  59:23 60:14,20,23,25 61:4,11
  61:14 62:7,11,19 63:6,17
  101:3,8
**opening** 130:23
**opposition** 45:22,23
**order** 11:3
**ordered** 10:24 32:17 39:22,23,25
  40:4,11,16 58:2,3 62:11 68:17
  110:15
**ordering** 25:11
**orders** 38:18 110:20
**ortho** 114:2,24 115:8
**orthopedic** 114:3
**orthopedist** 114:6
**OSI** 4:12
**Ossining** 1:16
**over-the-** 105:24
**overnight** 52:5 53:5 55:13,22
  56:3,13 62:12
**overstate** 124:8
**overweight** 117:24,25

---

**P**

**P** 3:2
**p.m** 1:13 22:3 58:9 64:22 65:14
  94:4 126:4,5 138:10
**P.T** 110:5
**packet** 4:6,8,14,16 38:6 41:7
  88:25
**packets** 86:12
**page** 38:9 41:20,23 79:15 86:18
  88:5 89:6,6,7,9 90:6 91:10
  92:9 94:15,20,21 96:8 97:17
  97:19 99:14,15,19 101:24
  102:5 104:3 107:5,23 110:3,4
  112:22,23,24 113:11 115:4

120:13,13,18 121:10 125:14
140:5
**pages** 41:10 91:15 97:14 125:13
140:8
**pain** 104:8,9 105:5 106:7,21,25
107:6,7,13,15,16 109:8,16
111:3 115:13 122:2
**painful** 107:19
**pants** 27:5
**paper** 126:8
**papers** 45:10
**paragraph** 123:15
**pardon** 36:4
**part** 11:17 12:6 13:10 37:8 42:9
87:15,23 88:2 89:25 114:22
117:9
**particularly** 137:11
**parties** 141:10
**pat** 8:3,5,9,12,17,22 9:11,13,20
9:23 10:5,8 11:9,10,12,18
12:18 13:8,17,22 14:5,7,17
15:12 17:9,12 19:16,19 20:12
20:15 21:6,13,16,25 22:4,20
22:21,25 23:4 25:21,24 26:3,8
26:16,18,22,24 28:8,11,21,22
29:10,13 30:3,8,12,15 34:16
34:21,25 35:13,17 36:12 37:17
37:23 39:12 41:2 43:14,24
49:9 50:10 51:13 65:19,21
66:3,6,12,15,18,21 67:3,8,11
67:12,14,15 68:5,8,14,15,19
68:22 69:5,8,11,12,20,24
70:16,19 71:2 84:24 99:20,25
103:24 104:2 105:14 106:16,18
106:25 107:6,14,16,19 111:18
**patient** 107:22 108:10
**patient's** 120:8
**Paul** 88:19
**pelvis** 11:13,23 12:9,21 13:6
**penetrate** 27:2
**penetrated** 27:16 102:14
**penetration** 27:10
**penis** 11:21
**people** 14:9 56:16 74:2 84:20
131:25
**period** 20:3 50:10 76:19 131:20
**Perry** 8:6 9:23 17:9 28:25 35:9
50:11,22 51:5 78:3,10 99:21
129:24,25

**person's** 118:6,10
**personal** 84:18
**personally** 20:19 63:7
**pertaining** 47:10 99:20 126:22
**pertains** 85:18,20
**PHI** 5:2
**phrase** 141:15,16,18,19,20,21,22
**physical** 16:23 19:4 49:13 83:21
92:16,20,23,25 110:5 112:8
117:14,22 118:10 123:25
**picked** 65:19,21 66:18
**piece** 40:9,9
**place** 61:22 73:19 86:2 139:4
140:4
**placed** 106:10
**Plaintiff** 1:6 2:3
**plan** 100:25 101:18
**planted** 29:9
**please** 6:4,10 38:4,5 91:21
95:17 139:5 141:8,9
**pockets** 28:9
**point** 32:15 136:9,19
**pointed** 23:2,18 25:7
**pointing** 23:5
**polar** 52:22
**portion** 40:14
**pounds** 9:5 19:7
**practitioners** 17:21
**prepared** 47:7,10,20 140:9
**prescribed** 131:11
**presence** 140:4 141:8
**present** 14:9 34:16 61:13 72:21
**presented** 122:2
**presided** 38:23
**pressed** 11:23 12:9,21 13:6
**pretty** 55:9
**prevented** 33:20
**printed** 91:13
**prior** 9:13,16 19:19 20:20 23:5
**prison** 4:6 18:6 23:6 29:17 38:6
44:13 117:12 130:21
**prisoners** 19:24
**pro** 2:4 46:22
**probably** 125:4 128:5,6
**probed** 106:17
**problem** 117:10
**problems** 9:16 20:20
**proceeding** 44:25
**process** 35:19 45:5

pronounce 118:8
pronounced 119:10
proof 43:4
protect 59:21
provide 49:3,6
provided 140:10
provider 107:2 108:20 124:7
providers 110:20 129:4
Prozac 131:11 133:4,19
psych 130:20
psychiatrist 132:20,22,23 133:8
psychologist 130:20 132:19
public 139:12 141:9
pulled 65:18 99:25 102:14
  104:11,19
purposes 112:21
put 10:8,24 11:6 28:10 33:9,9
  59:19 73:2 135:23
puts 135:22
putting 11:12

**Q**

Q-U-R-E-S-H-I 130:11
question 36:2,5 136:11,15
  137:17
questioned 123:10
quick 21:2 126:3
quite 50:13
Qureshi 129:14 130:10,25 131:7
  131:16 132:14

**R**

R 3:2
R-O-E-S-S-E-L 118:18
R-U-S-S-E-L 119:2
raise 6:4
random 23:4
rapport 118:13
read 139:4 141:8
real 126:3
reason 46:9 89:24 104:22
reasons 87:23 90:3
rec 21:19 22:11,17 32:11,15
  37:4 64:15,17,19 65:6,14,18
  66:5 68:16 71:3,5,14 72:11
  73:14
recall 6:23 8:10,15 9:21 19:11
  19:14 21:14 24:24 34:14,22
  36:21 43:15 44:3 61:23 63:4
  65:7,8,24,25 66:2 72:20 75:16

76:5 77:24 85:15 86:4 93:13
  104:21 108:15 123:11
receive 7:6 17:11,17 33:24 45:8
  49:24 113:22
received 37:14 45:15 47:23
  48:13 101:22 113:15 115:17
receiving 15:24 16:2
recognize 41:6 86:11 119:21
record 6:2,4,11 78:17,18,20
  87:5 94:3,5 112:22 126:3,4
  136:12 138:8,10 139:4 140:9
records 4:24 98:3,6 119:22
rectal 101:2,8
rectum 29:9,9 69:3,3,22 100:3
  102:14,22 106:17
redness 101:2,9
referral 102:6 112:4
referred 102:4 112:6,13 114:5
  115:8
referring 115:7
refers 123:21
refrain 134:14
refrained 130:23
refused 32:25 33:6,9
regarding 21:2 35:12,17 44:6
  85:6,22 86:6 88:17 89:20
  92:16 96:24 126:15
regards 41:2 43:24 96:14
regular 70:19 116:9
related 122:2
relates 88:20
relating 17:12 35:17 43:13
  114:25
relationship 118:20 119:13
  120:5
relatively 92:17
relief 117:2
relieved 115:13
remains 121:11
remember 8:12,24 9:19,22 11:2
  19:10 20:7 21:12,15,24 23:9
  24:22 26:3 36:19,22 45:11,12
  52:11,17 57:22 59:13 61:24
  63:2 64:20 67:2,7,10 68:10,14
  72:18 75:14,24 76:10 77:23
  78:8 85:17 86:3 93:12 94:17
  98:21 108:13 116:6,17 118:6
  120:23,24 122:10 125:7 129:4
remind 122:9

reminder 6:14
removed 48:17,20
renewed 104:8
repeat 42:11
repeatedly 123:7,24
rephrase 66:19
report 5:2,6,8 36:11,17 37:15
　38:7,10,21 40:7,10,19 42:13
　42:16,21,24 63:6 74:23 79:4
　97:10,13 121:21 122:23
reported 100:6 102:15 106:21
　122:4,5,17,20
Reporter 6:3,10,13,17 78:19
　94:5 136:11 140:13
Reporters 140:10 141:2
reporting 75:2 122:19
request 7:11
requested 102:9 112:17 113:12
　114:19
requesting 136:21,23 137:10
requires 121:12
respect 17:9 82:8 135:12
respond 30:18
response 31:18,21,24 47:3
responsible 90:12
rest 82:7,8 103:3
restarted 105:7
result 44:15 80:5 83:10 87:20
results 113:22
retaliate 75:6
retaliated 35:4 71:22 75:3
retaliation 12:23 15:24 35:14
　35:15 42:9,17 78:10 132:2
　134:11
retaliatory 40:19,22
return 39:22,24,25 40:11,16
　47:7 81:12 141:11
returned 112:19 113:4,6
revealed 123:20
reversed 46:2,5 48:16,23
reversing 47:25 48:7
review 7:4 79:12 81:6 135:13,14
reviewing 81:18
right 6:5 7:12,13 8:4 10:2 12:4
　15:7 18:7 23:18 28:2 29:11,14
　29:17 34:15 38:2,19 40:5
　42:13 43:8,12,19 44:22 45:2,7
　47:7,8,14,21,22 48:2,4,5,8,13
　48:18,24 49:3,4,6,7 50:19
　51:23 52:22 53:24,24,24 54:9

54:14 55:7 56:7 57:8 59:8,9,9
　59:9,20 60:8,10 62:5 63:5
　65:12 66:4,9,10,13 68:7 69:19
　69:21 70:21 72:10,12,23 73:10
　73:22 74:11,16 75:18,21 76:7
　77:10 78:19 79:19 80:13 81:16
　82:11,12,24 83:2 84:25 85:14
　85:17,23 86:18 87:25 88:20
　89:16 90:10,11,22 91:4 92:3
　92:11,24 94:25 95:2,12,12
　96:16,22 97:15,15,18 98:9
　100:14,15 102:8,11,19,25
　103:4,10,16,18 106:10,18
　107:2 108:17,18,24 109:2,5,6
　109:12,13 110:5,6,13 111:4,10
　111:14,24 112:7,23 115:9,19
　115:21 118:8 121:8,9 124:5
　126:13 127:24 128:9,21 130:25
　133:5,20 137:4,7 138:2
right- 120:13
right-hand 99:14
Robaxin 104:8 105:7
Rochester 2:10
Roessel 118:7,7,18 119:9,23,23
　119:25 131:25
Rose 118:7
Roughly 57:4
rounds 61:16,21
row 54:22 60:11,15,17,18
rub 12:2
rubbed 111:19
rubbing 12:3
ruminate 121:22
rumor 56:4 60:22
running 130:21 137:13
runs 57:19
Russel 118:24 119:4 131:24
Russell 116:4 117:7
Russell's 117:13

---

**S**

S 3:2
sac 101:7
Santiago 57:14,14,19,23 58:21
sarge 15:4 122:3
saw 9:11 14:7 21:8 34:25 65:3,6
　67:3 69:8,25 70:22 100:9
　107:13 110:25 111:12 116:6,10
saying 18:17 20:14 24:23 28:5
　36:8 42:8,12,15,23 45:7 46:23

59:22 70:3 74:10 75:24 87:18
90:8 113:6 124:7,19 131:7
132:18 133:16 134:2,24 136:20
136:23 137:8
**says** 40:11 81:25 82:21,23 95:13
100:13,25 101:18 104:11
107:22,22,24 108:9,10 110:20
113:24 114:2,8,23 115:12
119:25,25 121:25 124:7,13
**scars** 19:9
**scheduled** 114:23
**Scheiber** 88:17
**Schieber** 4:16 18:23,25 19:5,16
19:20,23 20:4,12,20,23 21:13
21:17 24:7,16 25:3,9 26:13
27:8 30:3,18,21 31:17,25
32:24 33:20 34:12,17 35:4
37:8,15,18 38:7,13 39:13
43:25 51:2,5,14 56:24 64:7,10
64:13 65:3,9 66:14,20,20 68:2
68:4,23 69:2 71:22 72:4 73:25
74:4 75:3,6 76:10 77:3 82:2
82:21 83:20 84:10 85:14,18
86:7 88:22 89:20 90:13,17,20
**Schieber's** 19:13 84:18
**screaming** 133:25
**screenings** 120:19,24 121:3
**scrotal** 101:7 106:6,21 107:6
**se** 2:4 46:22
**search** 70:8,10
**second** 16:18 87:15 91:15 93:25
135:19
**seconds** 12:10 27:17
**section** 107:21
**secured** 112:20 113:5
**security** 105:13 122:14 132:10
132:14,16,25 134:25,25
**see** 8:25 14:12 15:12 16:13
17:23 34:20 39:20 40:10 49:21
58:11 59:10,12 60:2 68:18
78:3,4 79:2 83:16 84:4 86:14
91:25 98:5 99:13,16 107:22,24
108:3,9 109:15 110:17 115:4
116:10 120:7,13,21 124:22,25
135:24 136:5
**seeing** 17:21 65:8 125:3,4,7
**seeking** 18:8 50:3 135:9
**seen** 50:22,25 51:5 69:17 115:24
115:25 117:6 131:16,19 134:4

**selected** 23:4 66:9,11,12
**self** 108:11
**send** 46:17 48:9 122:18 135:5,13
137:25 138:3
**sense** 40:6 135:16
**sent** 96:9,12,20,21 102:6
**sentence** 108:5
**sentenced** 39:9
**separately** 40:10
**September** 94:19 122:3
**Sergeant** 8:15,25 14:23 15:12,15
15:19 16:4 57:14 58:21
**sergeant's** 8:15,19 14:19,21
15:10 16:14,17 57:20
**sergeants** 136:22 137:8
**served** 38:10
**set** 37:21 78:17 96:23 97:3
132:5
**seven** 41:23 57:18 64:22,22
65:14 86:20 107:5,23 118:2
126:24,24,24
**Seventeen** 4:17 93:22 94:8
**sex** 102:12
**sexual** 12:25 15:25 19:16 35:10
35:12,17 42:22 69:5,20,25
78:11 83:20 84:8,15,24 85:14
85:22 88:21,21 98:23 111:15
123:16,16,20 124:9 126:15
134:12,12,15
**sexually** 51:19 57:21 99:24
102:13 105:13
**shaking** 43:17
**sheet** 7:7,14 126:8 135:14 139:7
**sheets** 59:19,19
**shift** 53:5 55:20
**shoes** 13:13,14
**short** 56:24
**shortly** 93:18
**shoulder** 104:9 109:16 110:16,20
110:23 111:3 113:19 114:25
115:21
**show** 92:5
**shows** 91:11 92:12
**SHU** 73:6,17,21
**shut** 15:3
**sic** 46:25
**sick** 5:4,10 63:2 103:16 105:2,9
106:4,15 113:7 125:19 126:11
126:14

**sign** 33:8 35:20,22,23 36:3,6,9
  80:20 96:3 141:8,10
**signal** 70:11
**signature** 79:14 80:19 141:10
**signed** 41:16 81:7 82:11 83:7
  87:3 89:11 94:14 97:16 127:13
  141:23
**significant** 121:13
**similar** 123:15
**Sing** 1:14,14 133:9,9
**single** 126:8
**six** 9:6,6 19:6 58:9 61:12 63:25
  64:8 67:24 86:20 89:6 104:4
  118:2 125:5
**sixteen** 4:15 88:16 90:6 91:3
  112:22
**sixty** 55:2 60:11 118:11
**size** 118:2
**skin** 27:7,7 100:13,13 110:10
  111:22,22
**skipped** 95:16
**sleeping** 55:14,14
**slept** 109:8
**slip** 125:19 126:11,14
**small** 99:15 102:24
**social** 116:4,9,12 118:4,14,17
  118:23 119:3,9 121:17
**soft** 101:7
**solitary** 73:4
**somewhat** 50:20
**sore** 109:5
**soreness** 100:4
**sorry** 18:14 36:2 67:13 91:3,6
**sort** 29:20
**sought** 106:13
**sound** 9:25 21:22 75:18,21 76:6
**speak** 131:25
**speaking** 130:19
**Special** 72:14
**specific** 44:9
**specifically** 88:24
**spell** 118:16,23
**spelled** 30:21 32:2
**split** 126:2
**spoke** 14:2 74:18 78:13
**squeezed** 100:2 105:14
**staff** 17:20 38:18 49:22 62:18
  62:21 84:5,7 99:4 100:7,9,23
  102:15 104:20 111:2 112:14
  114:16 115:25 121:18 124:20

  124:22 125:2,8 129:5 132:14
  134:4,8,25
**stair** 22:5
**stairs** 25:19
**stairway** 22:5,6
**stairwell** 22:6
**stand** 67:17
**standing** 13:23
**stare** 39:13,15
**start** 11:14 19:4 28:11 119:15
**started** 11:19 22:25 98:22
  116:25 131:24
**starting** 11:18
**starts** 60:7
**state** 2:7 6:10 39:17,19 139:2
  141:12
**stated** 90:3 103:20 104:19
  105:12 106:17 140:4
**statement** 24:12 41:25 42:3
  77:12
**statements** 41:13 124:14
**states** 1:2 104:11 105:13
**stating** 106:16
**stay** 62:11
**stepping** 31:17
**stomach** 111:10
**stood** 67:14,15
**stool** 115:13,15
**stopped** 86:3 134:19
**story** 56:24
**straight** 132:8
**Street** 1:15
**strike** 4:18 91:6 95:6,9,11,13
**struggled** 93:3,8
**stuff** 30:22,24 56:20 130:23
**submitted** 46:15 112:4
**substantively** 136:5
**successful** 135:8
**Suite** 2:9
**superintendent** 44:19 87:24 88:9
  88:12,19 89:22,24 90:3,10,25
**supervisor** 131:2
**supporting** 4:10 80:16
**supposed** 90:24
**sure** 14:24 34:24 37:25 50:13
  58:18 93:24,25 135:20 136:5,7
  137:15
**swear** 6:5
**swelling** 101:2 105:20

**sworn** 6:9 139:10 140:6
**symptoms** 121:13 122:24
**syndrome** 98:25 99:11

---

**T**

**T** 4:2
**table** 28:10
**take** 17:16 38:3 41:4 43:10
  61:21 80:14 86:9 88:15 91:6
  91:21 92:8 93:21 95:17 98:2
  99:18 101:18 119:19 125:11
  131:3,13
**taken** 73:21 139:4 140:3
**talk** 7:22 8:8 9:3 59:3 63:17
  83:19 84:7 132:13,24 134:7,9
  134:11
**talked** 7:10 8:3 17:9 28:22 30:2
  42:12 50:9 70:12 78:9 83:25
  92:24 99:5 129:20 130:5
  137:12
**talking** 11:22 35:11 40:25,25
  51:9 54:4,25 57:6 60:5 62:12
  63:16,21 66:16 69:10 70:4
  72:8 82:4,21 85:21 90:5
  134:14 136:25
**talks** 85:13
**tape** 46:15
**tattoos** 19:9
**Taylor** 35:9
**tearing** 102:22
**tell** 10:4 15:15 32:20 35:19
  56:13 76:14 85:6 96:21 130:22
  135:15
**telling** 56:16,16
**temperature** 61:3
**ten** 6:4 112:23
**tenderness** 105:21
**TENS** 110:7
**testicles** 105:14
**testified** 39:4
**testify** 130:15 133:12 140:6
**testimony** 6:5 137:16 139:4
  140:3,6 141:8
**Thank** 6:13,17
**that'd** 23:7 24:20
**therapy** 110:5 117:7
**there's** 53:19
**thermometer** 61:6
**they're** 51:10
**thing** 29:20 49:17 62:10 135:10

135:12
**things** 7:10 75:24 114:16 122:19
  124:16 130:18,22 134:12
**think** 6:24 60:17 75:2 95:16
  109:20 128:7,10 135:15 137:15
  137:16
**thirteen** 4:9 80:15 103:16,17
  126:24
**thirty** 12:10 141:9,10
**thirty-two** 9:6
**thought** 121:17
**threatening** 76:11
**threats** 38:17
**three** 22:2,3 24:9 26:12 34:15
  54:5,5 75:13 121:10
**three-hundred** 9:5
**threw** 76:2
**throat** 109:5
**time** 1:13 7:10 8:3 12:6,12,15
  19:13 20:2,23 21:24 22:16
  44:22 50:10 51:21 57:16 58:7
  61:21 64:17,17,17,19,20 65:6
  65:13,17 76:9,19 77:19 81:18
  83:6 93:16 100:19 101:25
  105:2 108:7,22 112:16 113:12
  114:19 121:14 125:14 129:16
  131:3,20 135:19 138:6 139:4
  140:4
**times** 75:9,11 131:16,19,21
**today** 6:6 130:21 131:6 135:6
**today's** 138:3
**told** 10:8 23:6 30:22,24 37:2
  43:10 53:9 55:11,20,22 56:5
  74:22 82:18 104:20 107:15
  135:11,19
**top** 59:17 92:2 95:13
**torso** 28:16
**touch** 69:17
**touched** 31:12,15,22
**touching** 123:25
**transcriber** 135:21
**transcript** 7:4 135:5,11 138:3
  139:6,7 141:8,10,11
**transcription** 140:8
**transcripts** 6:25 137:24
**transfer** 134:21,22 136:21,23
**tray** 33:14
**treat** 101:21 132:19 133:3
**treatment** 101:22 117:2 133:15

**trial** 47:3
**tried** 26:25 89:21
**true** 41:14 71:16 79:17 81:22
  82:8 83:4,7 86:24 89:13 91:19
  92:4 95:3 96:5,17 100:16,19
  100:21 103:12 107:7,10 121:14
  121:23 122:25 124:17 127:10
  139:6,7 140:9
**truly** 92:5
**trust** 82:22
**truth** 6:6,7,7 140:6,7,7
**try** 118:16
**trying** 54:19 56:22 58:11 59:6
  59:25 63:15 130:19
**turn** 18:19
**turning** 97:19 101:24 104:3
  113:11 121:10
**Twelve** 4:7 41:5 42:17 44:5
**twenty** 4:23 19:6 98:2 99:15,19
  104:4 107:5,23,24 110:5
  112:23 113:12 115:24
**twenty-five** 5:9 126:19 127:8
**twenty-four** 5:7 78:23 132:5
**Twenty-one** 4:25 119:20 120:14
  121:11
**Twenty-three** 5:5 97:10
**Twenty-two** 5:3 125:12 126:8
**two** 9:6 19:6 26:6,8,15 27:17
  79:15 81:9 82:5,20 89:19
  91:15 94:15 116:12 123:19
  125:12
**two-hundred** 19:6
**Tylenol** 101:19
**type** 95:24
**typed** 95:22
**typewritten** 140:8
**typically** 124:15

---

**U**

**Uh** 120:15
**Uh-huh** 42:14 47:5
**unanimously** 87:22 89:25
**unclear** 121:11
**understand** 14:24 18:14 40:8
  54:19 58:11 59:7,25 63:15
  135:25 137:16,20
**understanding** 113:25
**understood** 137:5
**underwear** 100:2 102:14
**underweight** 117:24

**unit** 73:4 110:7
**UNITED** 1:2
**unknown** 10:23 13:25 14:10,12
**unprepared** 81:17
**unsubstantiated** 80:9 83:12,14
**untrue** 136:24
**untruthful** 81:10
**upholds** 88:9
**Upstairs** 16:18
**use** 7:9,10 27:20,21 32:20 122:6

---

**V**

**v** 1:1,7 2:1 3:1 4:1 5:1 6:1 7:1
  8:1 9:1 10:1 11:1 12:1 13:1
  14:1 15:1 16:1 17:1 18:1 19:1
  20:1 21:1 22:1 23:1 24:1 25:1
  26:1 27:1 28:1 29:1 30:1 31:1
  32:1 33:1 34:1 35:1 36:1 37:1
  38:1 39:1 40:1 41:1 42:1 43:1
  44:1 45:1 46:1 47:1 48:1 49:1
  50:1 51:1 52:1 53:1 54:1 55:1
  56:1 57:1 58:1 59:1 60:1 61:1
  62:1 63:1 64:1 65:1 66:1 67:1
  68:1 69:1 70:1 71:1 72:1 73:1
  74:1 75:1 76:1 77:1 78:1 79:1
  80:1 81:1 82:1 83:1 84:1 85:1
  86:1 87:1 88:1 89:1 90:1 91:1
  92:1 93:1 94:1 95:1 96:1 97:1
  98:1 99:1 100:1 101:1 102:1
  103:1 104:1 105:1 106:1 107:1
  108:1 109:1 110:1 111:1 112:1
  113:1 114:1 115:1 116:1 117:1
  118:1 119:1 120:1 121:1 122:1
  123:1 124:1 125:1 126:1 127:1
  128:1 129:1 130:1 131:1 132:1
  133:1 134:1 135:1 136:1 137:1
  138:1 139:1 140:1 141:1,4
**vague** 122:24
**verbalize** 114:15
**verbalized** 113:24
**verified** 47:7
**violently** 100:2
**visits** 116:14,18
**voice** 6:14
**Voltaren** 109:11
**vortex** 52:22

---

**W**

**w/Lovelace** 5:8
**waist** 26:25

**wait** 39:19 65:24,24
**walk** 25:15
**walked** 16:19 37:11
**walking** 28:4
**wall** 10:25 11:6,8 22:5 23:16,19
  25:7,11,15 26:23 54:14,15,18
**want** 10:10 20:25 31:9 36:8
  45:11 46:12 78:16 93:23,25
  113:3 134:14 135:7,20 136:4
  136:11 137:22,24,25
**wanted** 31:4,4,8,14,18 81:19
  90:9,12 104:8 112:2 136:9,19
**wanting** 60:23
**wasn't** 58:17 77:8 130:24
**water** 76:2
**way** 22:10 28:3 36:18 64:15
  69:25 70:17 71:23 104:18
**ways** 82:2,22
**we're** 48:6 60:5 63:16 66:16
  78:19 94:5 96:23 97:3 137:13
**we've** 28:22 50:9 70:12 83:25
  126:7 129:12,20 130:5 137:12
**weapon** 132:6
**weapons** 29:20
**wearing** 71:14
**weather** 52:25
**weeks** 81:9
**weight** 117:23
**weights** 37:2
**went** 14:19 16:6 23:12,15,16
  26:25 32:12 40:9 45:5,5 47:13
  57:12,16 62:3 65:18 70:10
  71:3,3,7 72:9,11 103:15 104:4
  105:9 106:3,15 131:5,24 132:8
**weren't** 103:6
**WESTERN** 1:3
**whereabouts** 59:14
**white** 19:7 117:17 118:11
**wind** 54:16 59:18
**window** 53:3,12 54:4,12,17 55:23
  57:2,17,25 58:12 59:23 60:2
  60:14,20,23,24 61:4,10 62:7
  62:19 63:16,17,18 64:23 66:20
**windows** 52:6,7,7 53:9,13,15,16
  53:19,23 54:2,15,18,20 55:5
  55:21 56:22,23 58:3,14,25
  59:8,11,17 60:15,18 61:14
  62:11 63:6,11 72:17 74:8,9
**witness** 6:9,12,16 63:10 140:6

**witnessed** 69:13
**witnesses** 13:21 39:2 128:24
**woke** 133:25
**wondering** 16:3 103:23 131:18
**word** 107:24 141:15,16,18,19,20
  141:21,22
**work** 20:17 116:11
**worked** 53:4
**worker** 116:4,10 118:4,14 119:4
  119:9 121:17
**worker's** 118:17,23
**workers** 116:12
**working** 34:9,13 51:16,21 61:10
**worried** 42:25 43:4
**wouldn't** 50:17 92:21 131:13,25
**wrap** 125:10
**write** 41:20 72:2 74:21 81:3,4
  89:21,23 96:24 136:7
**writer** 108:10
**writing** 37:3 43:17 97:23 136:21
**written** 38:12 42:16
**wrong** 109:9,21 127:20,21 128:6
  128:6
**wrote** 38:15 41:24 42:24 44:6
  71:24 72:13,18,19 74:7,13
  82:15,15 85:5 94:17 125:21
  127:15 128:7,10,13,15,15

|  X  |
| --- |

**X** 1:10 3:2 4:2,2 139:8,11
**x-ray** 109:19,24

|  Y  |
| --- |

**yard** 21:18 22:6 25:20 34:23
**yeah** 7:13,16 58:2 67:21 76:5,11
  77:24 79:6 82:16 83:11 85:19
  88:11 102:5 103:17,17 108:5
  115:6 118:25 119:23 121:7
  123:9 124:24 128:3,11,11
  133:25 134:9 138:2
**year** 128:5,6,10
**years** 9:6 117:17 131:17
**yelled** 14:22,25 15:2 52:6
**yesterday** 104:12,20
**York** 1:3,16 2:7,10 141:13

|  Z  |
| --- |

**zero** 126:23,23,24

|  0  |
| --- |

## 1

**1** 140:5,8
**1/24/14** 111:16
**1:01** 1:13 138:10
**10:00** 1:13 6:2
**10562** 1:16
**10th** 114:18 115:4
**11:34** 78:18
**11:36** 78:18
**11:59** 94:3
**119** 4:25
**11th** 127:4 128:21
**12** 109:20
**12:00** 94:3
**12:45** 126:4
**12:46** 126:4
**125** 5:3
**126** 5:9
**13** 109:20
**137** 140:9
**13th** 105:10 109:7
**144** 2:9
**14614** 2:10
**16th** 122:3
**17th** 105:2
**18th** 41:21 112:17 113:13
**19th** 9:25

## 2

**20** 43:13
**200** 2:9
**2000** 93:14 120:20,21 121:7
**2002** 93:14
**2003** 92:13
**2010** 121:6
**2013** 9:25 21:6,22 38:15 43:14
  43:24 49:9 51:13 99:20 100:10
  102:10 104:5,15 105:2,10
  106:4,13,21 108:16,24 109:7
  109:14,25 125:23 127:4,17
  128:8,16,21
**2014** 75:18,21 76:4,20 79:21
  81:15 83:21 96:25 110:4,19
  111:2,13 112:5,17 113:13
  114:18 115:4,18 122:4
**2015** 41:21 42:4,7 121:8
**2020** 139:11
**20th** 94:19 106:4
**21st** 108:23 115:18

**24th** 81:15 96:25 111:2
**26th** 21:22 38:15 43:13 49:9
**28th** 106:20 111:13 112:5 120:20
**29th** 99:20
**2nd** 106:13

## 3

**3/29/13** 102:13
**3/30/2013** 5:4
**30** 141:9,10
**30th** 42:4,7 125:22
**31st** 75:18 100:10 127:16 128:16
**354** 1:15
**38** 4:5
**3rd** 75:20 76:3 110:4,19

## 4

**4/11** 128:20
**4/11/13** 127:22 128:3
**41** 4:7
**42163-14** 87:6
**42205-14** 89:3
**4th** 79:21 102:10

## 5

**5/31/2013** 5:10
**523-7887** 141:2
**5th** 112:2

## 6

**6** 3:4
**6:16-CV-06206** 1:7 141:4

## 7

**7-22-20** 141:5
**7-22-2020** 1:1,12 2:1 3:1 4:1
  5:1 6:1 7:1 8:1 9:1 10:1 11:1
  12:1 13:1 14:1 15:1 16:1 17:1
  18:1 19:1 20:1 21:1 22:1 23:1
  24:1 25:1 26:1 27:1 28:1 29:1
  30:1 31:1 32:1 33:1 34:1 35:1
  36:1 37:1 38:1 39:1 40:1 41:1
  42:1 43:1 44:1 45:1 46:1 47:1
  48:1 49:1 50:1 51:1 52:1 53:1
  54:1 55:1 56:1 57:1 58:1 59:1
  60:1 61:1 62:1 63:1 64:1 65:1
  66:1 67:1 68:1 69:1 70:1 71:1
  72:1 73:1 74:1 75:1 76:1 77:1
  78:1 79:1 80:1 81:1 82:1 83:1
  84:1 85:1 86:1 87:1 88:1 89:1

```
90:1  91:1  92:1  93:1  94:1  95:1
96:1  97:1  98:1  99:1  100:1
101:1 102:1 103:1 104:1 105:1
106:1 107:1 108:1 109:1 110:1
111:1 112:1 113:1 114:1 115:1
116:1 117:1 118:1 119:1 120:1
121:1 122:1 123:1 124:1 125:1
126:1 127:1 128:1 129:1 130:1
131:1 132:1 133:1 134:1 135:1
136:1 137:1 138:1 139:1 140:1
141:1
```
**7/26/2013** 4:8
**78** 5:7  44:25  45:6  47:3
**7th** 104:15

---

**8**

**8/20/13** 107:5
**80** 4:9
**800** 141:2
**86** 4:13
**89** 4:15
**8th** 104:5

---

**9**

**91** 4:19,21
**93** 4:17
**95** 4:11
**97** 5:5
**98** 4:23

EXHIBIT 3

STATE OF NEW YORK    COURT OF CLAIMS

D.G.,[1]

                          Claimant,         **DECISION**

        -v-

THE STATE OF NEW YORK,

                                            Claim No.  **124009**

                          Defendant.

FILED

FEB - 1 2017

STATE COURT OF CLAIMS
ALBANY, NY

D.G.,

                          Claimant,

        -v-

THE STATE OF NEW YORK,

                                            Claim No.  **124108**

                          Defendant.

RECEIVED

FEB 07 2017

NYS OFFICE OF ATTORNEY GENERAL
Binghamton Regional Office

D.G.,

                          Claimant,

        -v-

THE STATE OF NEW YORK,

                                            Claim No.  **124149**

                          Defendant.

---

[1]    In Motion No. M-85877, the Court sua sponte, amended the caption of Claim No. 125097 to reflect a fictitious name for claimant pursuant to Civil Rights Law § 50-b (1) (*D.G. v State of New York*, Ct Cl, Mar. 5, 2015, Schaewe, J., Claim No. 125097, Motion No. M-85877).  For the same reason, the Court sua sponte amends the captions of Claim Nos. 124009, 124108, and 124149 to also reflect a fictitious name for claimant.

D.G.,

                                                    Claimant,

              -v-

THE STATE OF NEW YORK,                           Claim No.  125097

                                                    Defendant.

---

BEFORE:          HON. CATHERINE C. SCHAEWE
                 Judge of the Court of Claims

APPEARANCES:     For Claimant:
                 D.G., pro se

                 For Defendant:
                 HON. ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL
                 BY: Aaron J. Marcus, Assistant Attorney General

---

Claimant, an inmate proceeding pro se, initially filed three claims which all alleged

different causes of action pertaining to the same incident.  In Claim No. 124009, claimant alleged

that on March 29, 2013, while he was incarcerated at Elmira Correctional Facility (Elmira),

Correction Officer (CO) T. Perry sexually assaulted him during the course of a "pat/frisk," and

that thereafter CO Bescler intentionally kicked him in the left shin.  In Claim No. 124108,

claimant alleges that on March 29, 2013, CO Perry conducted an allegedly unnecessary pat/frisk

during which Perry sexually assaulted claimant.  In Claim No. 124149, claimant alleges that on

March 29, 2013, Correction Sergeant Claflin, an area supervisor, negligently supervised CO

Perry, who purportedly sexually assaulted claimant during the course of a pat/frisk.  In the

answers to each of the foregoing claims, defendant State of New York (defendant) asserted that

the claim was not timely filed and served because the pertinent notice of intention to file a claim

was invalid, inadequate and legally insufficient.[2]  Apparently believing that these claims may

have been untimely, claimant moved for and was granted permission to file and serve a late claim

based solely upon CO Bescler's conduct (*D.G. v State of New York,* UID No. 2014-044-530

[Ct Cl, Schaewe, J., July 7, 2014]).[3]  In Claim No. 125097, filed in response to the Court's

determination, claimant alleges that he was returning to his cell based upon a direct order from

CO Perry when CO Bescler willfully and maliciously kicked him in the left shin.  Trial of these

matters were conducted by video conference on November 21, 2016, with claimant appearing at

Green Haven Correctional Facility, defendant appearing at Elmira, and the Court sitting in

Binghamton, New York.

At the commencement of the trial, the Court suggested to the parties that the claims be

joined for trial, and the parties agreed.  Accordingly, because Claim Nos. 124009, 124108,

124149, and 125097 all arise out of the same set of facts and to some extent involve a common

question of law, these four claims were joined for trial (Court of Claims Act § 9[5]; *see also*

CPLR 602 [a]).

At trial, claimant testified that on March 29, 2013 he was going to recreation.  He had

passed through the magnetometer without any alarm.  He said that CO Perry pulled him aside for

---

[2]  It is unclear whether notices of intention were actually served, and when.  The Court does not have copies of any notices of intention, and thus cannot determine whether they were sufficient to extend the time in which to file and serve the claim(s).  In any event, defendant never moved to dismiss these claims on this basis.

[3]  Claimant eventually did file and serve a claim, but it was not timely.  The Court extended the time in which to file and serve the claim and denied defendant's motion to dismiss (*D.G. v State of New York,* Ct Cl, Mar. 5, 2015, Schaewe, J., Claim No. 125097, Motion No. M-85877).  Claimant's motion for a default judgment was denied because defendant had filed and served an answer (*D.G. v State of New York,* Ct Cl, Mar. 21, 2016, Schaewe, J., Claim No. 125097, Motion No. M-88021).

a pat/frisk for no reason, and he complied with Perry's instructions. Claimant stated that Perry kicked his feet apart, started removing items from claimant's pockets, and then pulled claimant's underwear up into his groin. Claimant complained that it was painful, and said that Perry then began to squeeze claimant's genitals and rubbed both hands between claimant's legs. Claimant said that Perry then pushed his finger into claimant's rectum. Claimant further testified that Sergeant Claflin was observing and permitted Perry's activities. Claimant asked Perry his name, Perry told him, and then Perry told claimant to return to his cell. Claimant said that on his way back to his cell, CO Bescler kicked him in the shin.

Claimant said he took Naprosyn, which he had because of a shoulder injury. He stated that he was placed in keeplock, although he did nothing wrong. He requested sick call and was examined by a nurse. He said the nurse gave him an ice pack and tylenol. He requested sick call again, and maintained that the nurse found that the penetration had caused a hemorrhoid. He said the nurse referred him to a mental health counselor. Claimant stated that he told the mental health counselor that he wanted to press charges against the officers and the counselor laughed at him.

The Ambulatory Health Record (AHR) dated March 31, 2013 which was submitted by claimant (Claimant's Exhibit 2 at 1) contains the following pertinent information:

> Alledges [sic] to have been sexually assualted [sic] on Friday night during Pat Frisk
> Claims officer pulled underwear up into genital area & violently squeezed his genital area
> [Complains of] genital area & rectum soreness did not report to security or medical
> Placed [call out] in Sick Call box & watch commander notified immediately . . .
> [Ambulated] to 2nd Floor Infirmary [without] difficulty . . . denies having had any skin to skin contact
> States was not fondled at anytime during encounter.
> genital & rectal area examined
> No redness, swelling, abrasions or open areas noted.

> Scrotal sac soft, [no] lumps or bumps noted
> rectal area clean, dry, no open areas or redness noted
> Dr. Braselmann notified of alleged incident & no orders given
> May return to cell may apply ice to area . . . may take Tylenol

The AHR dated April 4, 2013 (Claimant's Exhibit 2 at 2) states:

> [Patient] to sick call claiming on 3/29/13 he was sexually assaulted by a corrections
> officer during a pat frisk (see previous AHR)
> [Patient] claims sexually assaulted 3/29/13 officer pulled his underwear up and penetrated
> rectum [with] his finger
> Rectum - [no] tearing - [no] bleeding noted - [small] hemorrhoid noted
> Penis - [no] lesion, testicles descended, symmetrical [no] redness, masses or tenderness
> [no] discomfort during exam . . . Will [continue] to monitor
> [Mental Health Unit] referral

Claimant also submitted the DOCCS Directive pertaining to Control of and Search for

Contraband (Claimant's Exhibit 3), particularly noting the section on personal searches, and the

Directive pertaining to Sexual Abuse Prevention & Intervention (Staff on Inmate) (Claimant's

Exhibit 4).

Claimant further submitted a copy of the grievance he filed regarding the matter

(Claimant's Exhibit 6).[4]  CORC's finding was that the complaint was properly investigated, and

noted that " '[s]exual [c]ontact' does not include touching of the intimate parts of another person

during the performance of a pat frisk" (Claimant's Exhibit 7).  Claimant also submitted a copy of

a letter to the New York State Police requesting that CO Perry be arrested and prosecuted for

sexual assault (Claimant's Exhibit 9).

---

[4] Claimant also submitted into evidence a copy of the Central Officer Review Committee's (CORC) decision
pertaining to two unrelated incidents (Claimant's Exhibits 1 and 8).

On cross-examination, claimant said he did not receive any mental health treatment prior to this incident. He said he is still receiving mental health treatment, and is taking antidepressant and anti-anxiety medications. However, he stated, he has received no substantive help.

He acknowledged that prior to March 29, 2013 he had never been randomly pat/frisked in any facility, although he had seen it done to others. When asked if he had been injured by being kicked in the foot, he stated that he was injured "psychologically."[5] Then he stated that he had been injured in both feet, but did not report those injuries to the nurse.

Claimant reviewed the Inmate Injury Report dated March 31, 2013 regarding the incident (Defendant's Exhibit A). When asked why he waited two days to report the incident, he stated that he had reported it to the officers present at the time. When asked what physical injuries he incurred during the course of the incident, he insisted that he suffered a hemorrhoid, and stated that this symptom had resolved within about six months. He acknowledged that the Inmate Injury Report did not mention any injury to his shin, and that no such injury was mentioned in any of claimant's AHRs.

Claimant rested his case at the close of his testimony. Counsel for defendant moved to dismiss the claim as against CO Perry on the basis that any sexual assault by a correction officer against an inmate is outside the scope of his employment. Counsel argued that claimant had introduced no evidence of any proclivity by Perry to commit such an offense, nor had any evidence been introduced that defendant possessed any knowledge of such a proclivity and had failed to remedy the situation. The Court reserved decision on the motion.

---

[5] All quotes herein are taken from the Court's notes of the proceeding, unless otherwise noted.

Defendant called CO Perry. Perry said he had been a correction officer for nine years. He said he routinely conducted random pat/frisks of inmates on their way to and from recreation. He described the pat/frisk procedure as follows: check the torso, check up and down each leg, run the edge of the hand in and around the groin and buttocks to check for weapons or drugs. He said that if the inmate's pants are low, he would pull them up. He stated that the purpose of the random pat/frisks is to keep weapons and drugs out of the recreation yards. He stated unequivocally that he did not grab claimant's groin in a violent manner, did not touch claimant in a violent manner, did not force or attempt to force a finger or fingers into claimant's rectum, and did not deviate in any way from the pat/frisk protocol. Perry said Sergeant Claflin was present at the time of the pat/frisk, but did not participate in it, nor did he engage in any force. Perry further said that claimant did not complain of any injury at the time.

Perry wrote a to-from memorandum dated April 1, 2013 regarding the incident (Defendant's Exhibit D). That memorandum contained the foregoing statements, and further indicated that Perry did not curse at claimant and did not kick claimant's feet.

On cross-examination, Perry said that he ordered claimant back to his cell after the pat/frisk because claimant had become loud, argumentative and upset.

Sergeant Claflin also testified for defendant. Claflin was the area supervisor, and Perry's superior. When asked why pat/frisks are randomly conducted, he stated that the procedure is an attempt to counter contraband, which is often moved through facilities. Claflin said that when claimant was pat/frisked, he became belligerent and so Claflin moved closer to observe the situation. Claflin testified that he did not see Perry sexually assault claimant in any way, the pat/frisk was not performed inappropriately, and Perry did not deviate from protocol. Claflin

said he did not hear Perry swear at claimant.  Neither Claflin nor Bescler participated in the

pat/frisk.  Claflin did not see Bescler trip or otherwise touch claimant.  Claflin said that claimant

was returned to his cell after the incident because of his agitation, but was not under any sort of

confinement.  No misbehavior report was filed.

Claflin said he had not had any problems with claimant prior to this incident.  He said that

Perry performs his job as trained, and Claflin had never found Perry to be aggressive while under

Claflin's supervision.

CO Bescler also testified.  He stated that he has never kicked or tripped an inmate during

his six years as a correction officer.  He did not recall ever meeting claimant.  He was never

interviewed regarding the complaint that he had kicked claimant.  He had no recollection of Perry

pat/frisking claimant on March 29, 2013, but had seen Perry conduct pat/frisks.  He said he had

not seen Perry deviate from protocol during those occasions, nor had he ever seen Perry sexually

assault an inmate.

Defendant rested its case at the close of Bescler's testimony.  The Court reserved

decision.

The Court will first address defendant's motion to dismiss the causes of action against

defendant alleging that Perry sexually assaulted claimant (asserted in Claim No. 124009 and

Claim No. 124108).  The causes of action are in essence for civil battery because there was actual

physical contact rather than just the imminent fear of contact.[6]  In order to recover on a cause of

action for battery, a claimant must establish that there was bodily contact, which was offensive,

---

[6]  To establish a cause of action for assault, the claimant must prove physical conduct that placed him or her in imminent apprehension of harmful contact (*Bastein v Sotto*, 299 AD2d 432, 433 [2d Dept 2002]; *Charkhy v Altman*, 252 AD2d 413, 414 [1st Dept 1998]).

that is "wrongful under all the circumstances" (*Zgraggen v Wilsey,* 200 AD2d 818, 819 [3d Dept 1994]), and that the assailant intended to cause such contact (*see Messina v Alan Matarasso, M.D., F.A.C.S., P.C.,* 284 AD2d 32, 35-36 [1st Dept 2001]). It is not necessary for the assailant to intend to cause injury (*Zgraggen,* 200 AD2d at 819). While the lack of consent is considered when determining whether the contact was offensive, it is not conclusive (*see Goff v Clarke,* 302 AD2d 725, 726 [3d Dept 2003]; *Zgraggen,* 200 AD2d at 819). "Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment" (*N.X. v Cabrini Med. Ctr.,* 97 NY2d 247, 251 [2002]; *see also Steinborn v Himmel,* 9 AD3d 531, 532 [3d Dept 2004]).

The contact claimant alleges that Perry committed would have been non-consensual, and thus would be intentional, offensive and wrongful under the circumstances. Claimant's allegations are therefore sufficient to support a cause of action for battery. However and notwithstanding claimant's contention to the contrary, it is well-settled that "[a]n act of sexual assault by an employee is a clear departure from the scope of employment, committed solely for personal reasons, and unrelated to the furtherance of the employer's business" (*Dia CC. v Ithaca City School Dist.,* 304 AD2d 955, 956 [3d Dept 2003], *lv denied* 100 NY2d 506 [2003]; *McKay v Healthcare Underwriters Mut. Ins. Co.,* 295 AD2d 686, 687 [3d Dept 2002], *lv denied* 99 NY2d 503 [2002]; *see also N.X.,* 97 NY2d at 251). Defendant cannot be liable for this alleged battery under the theory of respondeat superior.

In situations where vicarious liability cannot be imposed on the basis of respondeat superior, "the employer [may] still be held liable under theories of negligent hiring, negligent

retention, and negligent supervision. However, a necessary element of such causes of action is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury" (*Kenneth R. v Roman Catholic Diocese of Brooklyn*, 229 AD2d 159, 161 [2d Dept 1997], *lv dismissed* 91 NY2d 848 [1997], *cert denied* 522 US 967 [1997] [citations omitted]; *see also Dia CC.*, 304 AD2d at 956). Claimant has failed to provide any evidence that defendant had an awareness of any proclivity on Perry's part to engage in the sort of conduct that caused claimant's injury, the failure of which is fatal to a finding of negligent hiring or retention (*see Detone v Bullit Courier Serv.*, 140 AD2d 278 [1st Dept 1988], *lv denied*, 73 NY2d 702 [1988]). Moreover, claimant's failure to show that defendant knew or should have known – had the supervision been adequate – of Perry's propensity for the type of conduct which injured Claimant is fatal to a cause of action for negligent supervision (*see Prentice v State of New York*, UID No. 2004-009-01 [Ct Cl, Midey, Jr., J., Mar. 30, 2004]). Accordingly, the cause of action against defendant for Perry's sexual assault contained in Claim No. 124009 is hereby dismissed, as is Claim No. 124108, which makes the same allegation. Claim No. 124149, in which claimant alleges that Claflin negligently supervised Perry, must also be dismissed.

Claim No. 124009 contained a cause of action alleging that CO Bescler kicked claimant, and Claim No. 125097 also makes that allegation. Claim No. 124009 included a copy of Grievance EL 40803-13 entitled "Kicked and Provoked." In this grievance, claimant indicates that he was sexually assaulted on March 29, 2013 and thereafter an "unnamed CO, white male, approx. 35 yrs, 5'8, 185 lbs., brown hair, intentionally kicked [him] in the shin (left leg),

practically tripping [him]."[7]  The Superintendent denied the grievance finding that the

investigation did not reveal any evidence that the conduct occurred.  The CORC upheld the

Superintendent's determination (Claimant's Exhibit 8), specifically noting that when claimant

was interviewed he could not identify either of the staff members allegedly involved or where the

incident(s) took place.

As with claimant's allegations regarding CO Perry, this is not a case where claimant was

allegedly injured as a result of a CO's use of force within the scope of his employment.  Claimant

did not establish that Bescler's conduct was in furtherance of defendant's business.  Because an

employer can only be vicariously liable for the tortious acts of its employees where those acts

were committed in furtherance of the employer's business and within the scope of employment

(*N.X.*, 97 NY2d at 251), defendant cannot be held vicariously liable for Bescler's action.  Further,

claimant did not establish that defendant had any knowledge of any propensity on the part of

Bescler to commit such a battery, and thus cannot be held liable for negligent supervision (*see*

*Prentice,* UID No. 2004-009-01).  Accordingly, the cause of action against defendant for

Bescler's battery contained in Claim No. 124009 is hereby dismissed, as is Claim No. 125097,

which makes the same allegation.

Finally, the Court would note that in any event, claimant was not a credible witness.  The

documentation and his account of what happened contained too many discrepancies and illogical

conclusions.   On the other hand, Perry, Claflin and Bescler were convincing witnesses.  It is

apparent that claimant was subjected to a random pat/frisk search in accordance with prison

---

[7]  Claim No. 124009, Exhibit A at 9.

directives, a procedure to which he had apparently not been previously subjected, and he

interpreted it as a sexual assault.  He might have been more credible if he had not waited two

days to report it, if he had included in his initial report the "facts" he asserted later, and if there

had been any physical evidence to support his assertion of a "violent" sexual assault.  The

existence of a small hemorrhoid did not constitute such evidence.  Moreover, there was no

medical evidence that the purported sexual assault would have caused claimant's hemorrhoid.

Claim Nos. 124009, 124108, 124149 and 125097 are hereby dismissed in their entirety.

Any motions not heretofore determined or upon which reservation was made are hereby denied.

Let judgments be entered accordingly.


Binghamton, New York
December 22, 2016

_____

CATHERINE C. SCHAEWE
Judge of the Court of Claims

# EXHIBIT 4

STATE OF NEW YORK        COURT OF CLAIMS

D.G.,[1]

                                              Claimant,        DECISION AND
                                                              ORDER

              -v-

THE STATE OF NEW YORK,

                                                              Claim No.    None
                                                              Motion No.   M-84759

                                              Defendant.

---

BEFORE:         HON. CATHERINE C. SCHAEWE
                Judge of the Court of Claims

FILED

AUG 27 2014

STATE COURT OF CLAIMS
ALBANY, NY

APPEARANCES:    For Claimant:
                D.G., pro se

                For Defendant:
                HON. ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL
                BY: Aaron J. Marcus, Assistant Attorney General

---

Claimant, an inmate appearing pro se, moves for permission to file and serve a late claim

pursuant to Court of Claims Act § 10 (6) to recover for personal injuries allegedly received when

he was assaulted by correction officers while in the custody of the Department of Corrections and

Community Supervision at Elmira Correctional Facility.  Defendant State of New York

(defendant) opposes the motion.

A motion seeking permission to file and serve a late claim must be brought within the

statute of limitations period attributable to the underlying cause of action (Court of Claims Act

---

[1]  The Court has sua sponte amended the caption to reflect a fictitious name for claimant pursuant to Civil
Rights Law § 50-b (1).

§ 10 [6]). The proposed claim alleges that claimant was sexually assaulted by one correction

officer (CO) and kicked by another CO while both were acting within the scope of their

employment. The statute of limitations for the intentional torts of assault and/or battery is one

year from the date of accrual (CPLR 215 [3]). Claimant alleges his claim accrued on March 29,

2013. Accordingly, this motion mailed on March 3, 2014 is timely (*Matter of Unigard Ins.*

*Group v State of New York,* 286 AD2d 58 [2d Dept 2001]).

Having determined that the motion is timely, the Court turns to a consideration of the

merits of the motion itself. The factors that the Court must consider under Court of Claims Act

§ 10 (6) in determining a motion to permit a late filing of a claim are whether:

1) the delay in filing the claim was excusable;

2) defendant had notice of the essential facts constituting the claim;

3) defendant had an opportunity to investigate the circumstances underlying the claim;

4) the claim appears to be meritorious;

5) the failure to file or serve upon the attorney general a timely claim or to

serve upon the attorney general a notice of intention resulted in substantial

prejudice to defendant; and

6) claimant has any other available remedy.

Claimant asserts that the delay in filing a claim was justified because he is a lay person

and was unaware of either the filing deadlines or proper court procedure, circumstances which he

contends were further complicated by his incarceration. Claimant's ignorance of the

requirements of the Court of Claims Act and the mere fact of his incarceration are not adequate

excuses for his delay in timely serving a notice of intention or timely filing and serving a claim

(*see Matter of Sandlin v State of New York,* 294 AD2d 723 [3d Dept 2002], *lv dismissed*

99 NY2d 589 [2003]; *Plate v State of New York,* 92 Misc 2d 1033 [Ct Cl 1978]). Accordingly,

this factor weighs against claimant.

The three factors of notice of the essential facts, an opportunity to investigate and the lack

of substantial prejudice are frequently analyzed together since they involve similar

considerations. Defendant concedes that it had some notice of the facts concerning this claim

through grievance complaints filed by claimant and "for the purposes of this motion, concede[s]

these [factors]."[2] Thus, these three factors weigh in claimant's favor.

Another factor to be considered is whether claimant has any other available remedy.

While defendant concedes that the Court of Claims is the proper form for this action, the Court

finds that in light of the potential for claimant to commence an action pursuant to 42 USC § 1983

in Federal Court, this factor weighs against claimant.

The issue of whether the proposed claim appears meritorious is the most crucial

component in determining a motion under Court of Claims Act § 10 (6), since it would be futile

to permit a meritless claim to proceed (*Matter of Santana v New York State Thruway Auth.,*

92 Misc 2d 1, 10 [Ct Cl 1977]). In order to establish a meritorious claim, a claimant must

demonstrate that the proposed claim is not patently groundless, frivolous, or legally defective,

and that there is reasonable cause to believe that a valid claim exists (*id.* at 11). There is a

heavier burden on a party moving for permission to file a late claim than on a claimant who has

complied with the provisions of the Court of Claims Act (*see id.* at 11-12; *see also Nyberg v*

---

[2]   Affirmation of Assistant Attorney General [AAG] Aaron J. Marcus, dated May 7, 2014, in Opposition to Motion, ¶ 7.

*State of New York,* 154 Misc 2d 199, 202-203 [Ct Cl 1992]). In determining whether the claim is

meritorious, the Court must consider the substance of the claim rather than the sufficiency of the

pleadings and must therefore look "at all of the submitted papers, including affidavits and

exhibits, to determine whether a putative claimant has met the statutory burden of 'apparent

merit' . . . [rather than be] confined to the text of the proposed claim itself" (*Mamedova v City

Univ. of N.Y.*, 13 Misc 3d 1211[A], 2006 NY Slip Op 51775[U] [Ct Cl 2006]; *see Matter of

Santana,* 92 Misc 2d at 11).

Claimant asserts that after he was sexually assaulted by CO Perry, CO Bescler

intentionally kicked him in the left shin. Claimant argues that the wrongful conduct of both COs

occurred within the scope of their employment and in the discharge of their duties, and that he

has suffered physical and mental pain and anguish as a result. Conversely, defendant contends

that certified medical records establish that claimant was examined two days after the incident

and there was no evidence of sexual assault or battery.[3]

In his proposed claim, claimant alleges that CO Perry sexually assaulted him in the main

hall laundry corridor at approximately 7:00 p.m. on March 29, 2013. He states that he informed

CO Perry and Sergeant Claflin that he was in pain and then he returned to his cell pursuant to CO

Perry's order. At that time CO Bescler allegedly wilfully kicked claimant in the left shin, almost

---

[3]  The Court rejects defendant's further assertion that because claimant had argued in a prior disciplinary
proceeding that a different CO had sexually assaulted him on a separate occasion, claimant has established a pattern of
making frivolous allegations against COs who are engaged in official, necessary conduct and the proposed claim in this
matter is without merit. As a general rule, it is improper to show that a person has committed a particular act (in this
instance, making frivolous allegations of sexual abuse in the proposed claim) because he or she committed a similar act
on an unrelated occasion (making apparently unfounded allegations of sexual abuse in the prior disciplinary proceeding)
(*see e.g. Matter of Brandon,* 55 NY2d 206 [1982]).

tripping him. Claimant specifically asserts that CO Bescler's conduct occurred "while acting within the scope of his employment and in the discharge of his duties."[4]

Claimant attached a copy of his grievance complaint (EL40803-13) concerning the March 29, 2013 incident. As he alleges in the proposed claim, claimant stated that he was sexually assaulted, and then he was kicked by a CO.[5] Claimant did not include a copy of the Inmate Grievance Review Committee decision on the grievance. However, he appealed that decision to the Superintendent who noted that claimant was interviewed and provided a written statement, but no staff members were interviewed.[6] The Superintendent found that the investigation did not reveal any evidence of the alleged conduct and denied the grievance. On further appeal, the Central Office Review Committee (CORC) upheld the Superintendent's determination and noted that the facility's administration conducted a proper investigation and when claimant was interviewed, he could not identify any staff member allegedly involved or where the incident took place. The CORC also indicated that claimant's allegations of sexual assault had been addressed in Grievance EL-40777-13, which was pending CORC's review. Claimant has not included a copy of Grievance EL-40777-13.[7]

---

[4]  Proposed Claim, ¶ 2.

[5]  At the time of his grievance, claimant did not specifically indicate that he was sexually assaulted by a CO. He also did not provide the name of the CO who allegedly kicked him.

[6]  Presumably there were no staff interviews because claimant did not provide any names.

[7]   Claimant has attached a copy of his grievance complaint in Grievance EL-40880-13 which concerns an allegedly improper keeplock confinement and deprivation of food, showers, phone, recreation and access to the law library from April 23, 2013 through April 26, 2013. However, this grievance does not appear to be related to the subject incident.

Claimant has also attached a portion of his Ambulatory Health Record (AHR) for the period March 31, 2013 through April 5, 2013. The AHR dated March 31, 2013 indicates that claimant alleged that a CO pulled his (claimant's) "underwear up into [his] genital area [and] violently squeezed his genital area. [Claimant complained of] genital area [and] rectum soreness."[8] The facility nurse noted that claimant denied being fondled or having any skin to skin contact. The nurse further stated that upon examination there was no redness, swelling, abrasions or open sores and the scrotal sac was soft, without any lumps or bumps noted. The rectal area was clean and dry without any redness or open areas. The nurse also noted that claimant did not report the alleged incident to security or medical, but placed "c/o [presumably call out] in sick call box."[9] Claimant's AHR dated April 4, 2013 notes that he returned to medical and again claimed that he had been sexually abused by an officer. This time claimant alleged that the "officer pulled [claimant's] underwear up and penetrated [his] rectum [with] his finger."[10] An examination revealed that there was no tearing or bleeding, but that claimant had a small hemorrhoid. The records indicate that there were no lesions on his penis and his testicles were descended, symmetrical, without any redness, masses or tenderness. Claimant did not experience any discomfort during the exam.

To establish a cause of action for assault, the claimant must prove physical conduct that placed him or her in imminent apprehension of harmful contact (*Bastein v Sotto,* 299 AD2d 432, 433 [2d Dept 2002]; *Charkhy v Altman,* 252 AD2d 413, 414 [1st Dept 1998]). In order to

---

[8]  Proposed Claim, Exhibit A at 7.

[9]  *Id.*

[10]  *Id.* at 8.

recover damages for battery, a claimant must establish that there was bodily contact, which was offensive, that is "wrongful under all the circumstances" (*Zgraggen v Wilsey*, 200 AD2d 818, 819 [3d Dept 1994]), and that the defendant intended to cause such contact (*see Messina v Alan Matarasso, M.D., F.A.C.S., P.C.*, 284 AD2d 32, 35-36 [1st Dept 2001]). It is not necessary for the defendant to intend to cause injury (*Zgraggen*, 200 AD2d at 819). While the lack of consent is considered when determining whether the contact was offensive, it is not conclusive (*see Goff v Clarke*, 302 AD2d 725, 726 [3d Dept 2003]; *Zgraggen*, 200 AD2d at 819). "Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment" (*N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 251 [2002]; *see also Steinborn v Himmel*, 9 AD3d 531, 532 [3d Dept 2004]).

With respect to the proposed cause of action alleging a sexual assault by CO Perry, claimant asserts that the CO intentionally pulled claimant's underwear up into his genital area, violently squeezed the area, and penetrated claimant's rectum with his (CO Perry's) finger. Although this type of conduct is commonly referred to as a sexual assault, the cause of action is in essence for civil battery because there was actual physical contact rather than just the imminent fear of contact. CO Perry's alleged non-consensual contact was intentional, offensive and wrongful under all of the circumstances. Claimant's allegations are therefore sufficient to support a cause of action for battery. However and notwithstanding claimant's contention to the contrary, it is well-settled that "[a]n act of sexual assault by an employee is a clear departure from the scope of employment, committed solely for personal reasons, and unrelated to the furtherance of the employer's business" (*Dia CC. v Ithaca City School Dist.*, 304 AD2d 955, 956

[3d Dept 2003], *lv denied* 100 NY2d 506 [2003]; *McKay v Healthcare Underwriters Mut. Ins. Co.,* 295 AD2d 686, 687 [3d Dept 2002], *lv denied* 99 NY2d 503 [2002]; *see also N.X.,* 97 NY2d at 251). Because defendant cannot be liable for this alleged battery under the theory of respondeat superior, the proposed cause of action alleging sexual abuse lacks the appearance of merit.[11]

With respect to his second proposed cause of action, claimant has alleged that CO Bescler intentionally kicked him in the left shin hard enough to almost trip him. Claimant alleges that he has suffered degradation, emotional distress and serious injury.[12] These allegations support an inference that CO Bescler's intentional kicking of claimant was not only non-consensual, but it was also offensive and wrongful under the circumstances. Claimant further alleges without contradiction by defendant, that CO Bescler's conduct occurred within the scope of his employment. The Court – deeming these facts alleged as true for purposes of this motion as it must (*see Jolley v State of New York,* 106 Misc 2d 550, 551-552 [Ct Cl 1980]) – finds that claimant has sufficiently alleged an unprovoked battery for which it appears at this stage in the

---

[11] In situations where vicarious liability cannot be imposed on the basis of respondeat superior, "the employer [may] still be held liable under theories of negligent hiring, negligent retention, and negligent supervision. However, a necessary element of such causes of action is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury" (*Kenneth R. v Roman Catholic Diocese of Brooklyn,* 229 AD2d 159, 161 [2d Dept 1997], *cert denied* 522 US 967 [1997] [citations omitted]; *see also Dia CC.,* 304 AD2d at 956). The Court notes that there is no evidence in the record to support any of these potential causes of action.

[12] The Court notes that claimant did not seek medical attention for any physical injury allegedly incurred as a result of the kick.

litigation that defendant may be vicariously liable.[13]  Accordingly, this proposed cause of action

has at least the initial appearance of merit and this factor weighs in claimant's favor.

In conclusion, the Court finds that as pertaining to the proposed causes of action for

battery based upon CO Perry's conduct (the alleged sexual assault), the Court finds that three of

the six factors weigh in claimant's favor.  However, the crucial issue of merit weighs against

him.  "[W]here 'the excuse offered for the delay is inadequate and the proposed claim is of

questionable merit' " (*Matter of Robinson v State of New York,* 35 AD3d 948, 949-950 [3d Dept

2006], quoting *Matter of Perez v State of New York,* 293 AD2d 918, 919 [3d Dept 2002]), denial

of a late claim application is appropriate.  With respect to claimant's proposed cause of action for

battery based upon CO Bescler's conduct, four of the six factors, including the all-important

factor of merit, weigh in claimant's favor.

Claimant's motion for permission to late file a claim is therefore granted solely to the

extent that claimant shall file a claim containing only a proposed cause of action for battery based

on CO Bescler's conduct as set forth herein, and serve a copy of it upon the Attorney General

within 40 days from the date of filing of this Decision and Order in the Office of the Clerk of the

Court. The service and filing of the claim shall be pursuant to the strict requirements of the Court

of Claims Act.

---

[13]  It is clear that correction officers are entitled to use reasonable physical force under certain circumstances such as "[w]hen any inmate . . . shall offer violence to any person, . . . or resist or disobey any lawful direction" (Correction Law § 137 [5]; *see also* 7 NYCRR § 251-1.2 [a]).  However, there is no evidence (such as an Inmate Misbehavior Report or Use of Force Report) that CO Bescler's alleged conduct occurred during an authorized use of force situation.

Binghamton, New York
July 7, 2014

*Catherine Schaewe*

**CATHERINE C. SCHAEWE**
**Judge of the Court of Claims**

The following papers were read on claimant's motion:

1) Notice of Motion filed on March 6, 2014; Affidavit of D.G. sworn to on March 3, 2014, and attached exhibit.

2) Affirmation in Opposition of Aaron J. Marcus, AAG, dated May 7, 2014, and attached exhibits.

# EXHIBIT 5

STATE OF NEW YORK

COURT OF CLAIMS

FILED

12410 8 MAR 2 4 2014

STATE COURT OF CLAIMS
ALBANY, N.Y.

------------------------------

DARRELL GUNN,

            CLAIMANT,

    -against-

THE STATE OF NEW YORK,

            DEFENDANT.

------------------------------

**C L A I M**

Claim No.

Hon. _____

Claimant, DARRELL GUNN, appearing Pro-Se, complaining of defendant, the State of New York, alleges the following:

1. The Post Office address of the Claimant herein is Elmira Correctional Facility, P.O. Box 500, Elmira, N.Y. 14902, Chemung County.

2. This claim is for sexual assault of the State committed by its employee T. Perry, Correction Officer, for injuring the claimant while acting within the scope of his employment and in the discharge of his duties, on March 29, 2013, at Elmira Correctional Facility.

3. On March 29, 2013, at approximately 7:30 p.m. T. Perry, Correction Officer at Elmira Correctional Facility, working G-Block Pivot ordered Claimant to the wall without giving a reason per New York State Department of Corrections and Community Services, Departmental Directive Number 4910 Control of & Search for Contraband section III B, 2-a,(4) and (5), for a needless Pat Frisk, after Claimant cleared the magnetometer without any

1

detection, alarm and/or signal, here, a violation of United States Constitution Fourth Amendment and New York State Constitution Article 1, § 12.

4. Claimant placed his hands on the wall. Hereupon, Claimant was ordered to step back farther by C.O. T. Perry. Claimant complied.

5. T. Perry, Correction Officer then kicked Claimant in the right foot. As a result, Claimant stepped back further. Even so, Claimant was losing his balance. A violation of NY Correction Law § 137 ¶5.

6. T. Perry, Correction Officer began removing items from Claimant pant pockets, i.e., ink pen, ID, phonebook, and handkerchief.

7. T. Perry, Correction Officer then grabbed Claimant's underwear and VIOLENTLY pulled up, into the groin and rectum. C.O. Perry, similarly repeated, VIOLENTLY PULLING Claimant pant into groin and rectum.

8. Claimant felt horrible pain. The following converse took place:

GUNN: "I'm in pain."

C.O. T. Perry: "Shut the fuck-up."

GUNN: "You pulled my underwear into my groin area."

9. T. Perry, Correction Officer still, is VIOLENTLY pat frisking Claimant, in sum, touching, rubbing, and grabbing the body, genitals, and buttocks, and clothes.

10. T. Perry, Correction Officer grabbed Claimant genitals VIOLENTLY -- Claimant moved his leg distraughtly. In effect, C.O. Perry, held on to Claimant genitals stating: "I'm not grabb-

2

ing you."

11. T. Perry, Correction Officer, as impugnment, then, immediately grabbed Claimant's underwear, then, repeated, again, VIOLENTLY PULLED Claimant's underwear, further, into genitals and rectum.

12. T. Perry, Correction Officer wantonness and unnecessary infliction caused Claimant ineffable pain. A violation of NY Correction Law § 137 ¶5, inter alia.

13. Claimant looked to the left to see supervising Sergeant Cliff Claflin, standing, thereabout two feet away.

14. Claimant's conscience was in shock to see Sgt. Claflin intentionally blocking any potential witnesses from observing the sexual assault by using his body to shield the Pat Frisk.

15. T. Perry, Correction Officer ordered Claimant to face forward. Claimant complied.

16. T. Perry, Correction Officer began to needlessly VIOLENTLY RUB AND TOUCH AND GRAB Claimant's genitals, rectum, and buttocks, malignantly, back and forth, with both hands, at the same time. A violation of United States Fourth Amendment; New York State Constitution Article 1, § 12.

17. Claimant stood aghast as Correction Officer Perry's finger penetrated Claimant's rectum through the Claimant's clothes causing the Claimant to sustain serious injury. See Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir.1997). See exhibit A.

18. Claimant felt despair and ineffable humiliation. Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

19. Still, T. Perry, Correction Officer, removed Claimant's

right sneaker, checked it, C.O. Bescler, assisted, ran a hand
held metal-detector over the sneaker. No alarm or reaction what-
so-ever.

20. T. Perry, Correction Officer used both hands to check
Claimant foot.

21. T. Perry, Correction Officer placed the sneaker on
the floor. Claimant placed foot back inside.

22. T. Perry, Correction Officer similarly, the left foot
was done as stated above.

23. T. Perry, Correction Officer returned the contents
of Claimant pockets i.e., ink pen, ID, phonebook, and handker-
chief.

24. T. Perry, Correction Officer, ordered Claimant, "take
it back to your cell."

25. Claimant immediately asked C.O. T. Perry, "what is
your name."

26. T. Perry, Correction Officer, in response, "PERRY"
-- wherewith, in innuendo, "make sure you get it right." See
Bell v. Wolfish, 441 U.S. 520, 558-59, 99 S.Ct. 1861 (1979).

27. Claimant searched for witnesses and Claimant's mind
was inundated with fear, pain, and humiliation. Only to see
Sgt. Claflin standing there with his hat on. See Gregg v. Georgia,
428 U.S. 153, 173, 183, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

28. Claimant headed back to his cell.

29. Claimant was inimically kicked in the shin by C.O.
Bescler as he headed back to his cell. Practically tripping
Claimant.

30. All in all, the actions of T. Perry, Correction Officer,

were intentional, unwarranted, malicious and sadistic, humilating, and degrading, among other things, for his sexual gratification. See People v. Teicher, 52 NY2d 638, 646, 439 NYS2d 846 (1981).

31. As a result of this sexual assault Claimant sufferd severe physical and mental pain and anguish, depression, anxiety, and emotional duress, among other things, frequent headaches, nervousness, irritability, insomnia, and a loss of self-esteem, and heighten stress levels. A violation of United States Constitution Eighth Amendment; United States Fourteenth Amendment; and New York State Constitution Article 1, § 5 and New York State Constitution Article 1, § 11.

32. Claimant's rectum has been permanently scarred as a result of C.O. Perry malicious and sadistic incorrigible behavior from the said excessive physical force Sexual Assault that was barbaric and brutal, among other things, force upon Claimant wanton infliction of pain. Therewith, also, see N.Y.S.D.O.C.C.S. Departmental Directive No. 4910 section III f (1). Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

33. Claimant suffered six months of pain from bowel movements.

34. Claimant discovers T. Perry, Correction Officer is a "Sexual Predator," with significant and compelling information based on repeated and pattern of attacks on non-consenting, non-violent, non-threatening, and unsuspecting prisoners. See Grievance No. EL-39497-12--CORC decision date September 26, 2012; and EL-40101-12--CORC decision date March 27, 2013. See Exhibit B.

35. Claimant has experienced sexual assault by T. Perry, Correction Officer nefarious actions and incorrigible behavior

notwithstanding, N.Y.S.D.O.C.C.S. Departmental Directive #4028A-
Sexual Abuse Prevention & Intervention-Staff-on-inmate.

36. Claimant has experienced retaliation for reporting
the sexual assault contrary to N.Y.S.D.O.C.C.S. Departmental
Directive #4028A -- Sexual Abuse Prevention & Intervention-Staff-
on-Inmate.

37. Claimant experienced intentional misconduct by prison
officials, among other things, retaliatory action, by correction
officers, as is noted: see N.Y.S.D.O.C.C.S. Grievance Numbers:
EL-40798-13; EL-40801-13; EL-40803-13; EL-40868-13; and EL-40880-
13; and, in so doing, is a self-evident truth that is contrary
to Correction Law § 138 ¶4; United States Constitution First
Amendment; United States Constitution Fourteenth Amendment;
New York State Article 1 § 8; and New York State Article 1,
§ 11. See Hartman v. Moore 547 U.S. at 256, 126 S.Ct. 1695 (2006).

38. Claimant experienced a Sexual Assault, among other
things, from T. Perry, Correction Officer, deliberate indiffe-
rence to Claimant's prisoner right to be free from cruel and
unusual punishment per Correction Law § 70 ¶2 (a),(b),(c), inter
alia.

39. Claimant's Liberty as a prisoner to be free from cruel
and unusual punishment was violated by T. Perry, Correction
Officer, whom sexually assaulted and harassment and retaliatory
action was totally without penological justification. See Meri-
wether v. Faulkner, 821 F.2d 408 (1987); Rhodes v. Chapman,
452 U.S. 337, 345; Caldwell v. Miller, 790 F.2d at 600. Also,
See N.Y.S.D.O.C.C.S. Grievance Number EL-41073-13, as Substantial
evidence.

40. Claimant posed no security reason for bodily search that was maliciously motivated by T. Perry, Correction Officer, and unrelated to institutional security, and hence "totally without penological justification. Indeed, overwhelmingly violating the United States States Constitution Eighth Amendment against cruel and unusual punishment. See Meriwether v. FAulkner 821 F.2d 408, 418, (1987); Hudson v. Palmer, 468 U.S. 517, 530, 104 S.Ct. 3194, 3202, 82 L.Ed.2d 393; Rodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 2959; Smith v. Chrans, 629 F.Supp. 606, 610-11 (CD. ILL. 1986).

41. T. Perry, Correction Officer penetrated Claimant rectum with his hand, undoubtly, in effect, all told, sexual contact through clothing for sexual gratification. See Boddie v. Schnieder, 105 F.3d 857, at 861 (2d Cir.1997). Clearly no legitimate law enforcement or penological justification under the color of state law can be inferred from C.O. Perry's conduct.

42. T. Perry, Correction Officer, deliberate indifference to Claimant health and safety caused Claimant serious medical needs. Hereof, Sexual Misconduct by Corrections Staff against a prisoner is prohibited in all states by departmental policy and/or law. See Farmer v. Brennan, 511 U.S. 825, ---, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).

43. Sexual Assault in prison, whether committed by staff or another inmate, is a form of torture that violates international human rights law, the U.S. Constitution, and state law. In sum, sexual assault is not part of the penalty of Claimant's criminal conviction sentence, caused by T. Perry, Correction Officer for his self-gratification, among other things. See Farmer v.

Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). See Exhibit A.

44. In addition, United States Eighth Amendment combined with United States Fourteenth Amendment prohibits cruel and unusual punishment in penal institutions. Whether a specific act constitutes cruel and unusual punishment is measured by " the evolving standards of decency that mark the progress of a maturing society." Hudson v. McMillian, 507 U.S. 1, 8-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

45. Moreover, Claimant request this court not use the "malicious and sadistic" standard because there was no disturbance or other emergency circumstance, albeit, his U.S. Constitution Eighth Amendment and N.Y.S. Constitution Article 1, § 5 rights were violated by T. Perry, Correction Officer conducting random, non-emergency, suspicionless, clothed body searches in abusive fashion. See Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).

46. Claimant is filing this action Pro-Se and unfamiliar with the law. Thus, the United States Supreme Court held that in Haines v. Kerner 404 U.S. 519, "A Pro-Se complaint however in artfully pleaded 'must be held to 'less stringent standard than formal pleadings drafted by lawyers. See also Estelle v. Gamble, 429 U.S. 97; Federal Exp. Corp. v. Hobweck, 552 U.S. 389.

47. Claimant request court to allow future amendment to claim as pertinent information, facts, statements, among other things, evidence comes available.

48. The particulars of Claimant's damages are as follows:

8

### a) Pain and Suffering

Claimant rectum hemorrhoid lasted six months, including soreness, swelling, internal bleeding, burning, discomfort, abrasion, still, on goings of irritation, discomfort, abrasion, during bowel movements.

### b) Mental Anguish

Depression, stress, loss of sleep, nightmares, anxiety, retaliation, humiliation, embarrassment, ridicule, emotional duress, and anger.

### c) Permanent Disability

Life changing episode, permanently mentally scarred, physical scar.

49. Notice of intention to file this claim was received in the office of the Clerk of the Court of Claims, on the 11th day of June, 2013, and in the Office of the Attorney General on the 27th day of June, 2013.

50. This claim is filed within one (1) year after the claim accrued as required by law.

51. This action is filed pursuant to sections 10 and 11 of the Court of Claims Act.


WHEREFORE, Claimant respectfully requests judgment against the defendant in the sum of five hundred thousand dollars ($500,000).

DATED: *March 13, 2014*

Respectfully submitted,

*Darrell Gunn*

DARRELL GUNN 03-B-2443
Claimant, Pro-Se

DARRELL GUNN 03-B-2443
Elmira Correctional Facility
1879 Davis Street
P.O. Box 500
Elmira, New York 14902-0500

# VERIFICATION

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF CHEMUNG    )

DARRELL GUNN, being duly sworn, deposes and says:

I am the Claimant above named; I have read the foregoing claim against the State of New York and know its contents; the same is true to my knowledge, except as to the matter therein stated to be alleged on information and belief; and as to those matters, I believe it to be true.

Respectfully submitted,

DARRELL GUNN 03-B-2443
Claimant, Pro-Se

Subscribed and sworn to before me this
_____ /3 _____ day of March, 2014.

Notary Public

STEVEN D. LEE
NOTARY PUBLIC, STATE OF NEW YORK
CHEMUNG COUNTY, LIC. # 01LE6231045
COMMISSION EXPIRES NOV. 15, 20 /Y

STATE OF NEW YORK COURT OF CLAIMS

```
---------------------------
                          :
DARRELL GUNN,             :
         Claimant,        :
                          :      AFFIDAVIT OF SERVICE BY MAIL
   -against-              :
                          :
THE STATE OF NEW YORK,    :
         Defendant.       :
                          :
---------------------------
```

STATE OF NEW YORK )
                 ) ss:
COUNTY OF CHEMUNG )


DARRELL GUNN, being duly sworn, deposes and says:

I am over the age of 18 and reside at Elmira Correctional

Facility, P.O. Box 500, Elmira, NY 14902.

On March  13 , 2014, I served the within upon the Attorney

General of the State of New York by certified mail at the follow-

ing address:
Office of Attorney General
Department of Law
Capitol Building
Albany, NY 12224

Said address being the address designated by the Attorney

General for that purpose, by depositing a true copy of the within

in a postpaid properly addressed wrapper in an official depository

under the exclusive care and custody of the United States Postal

Service within the State of New York.


Subscribed and sworn to before me this

 13 day of March, 2014.
                                      Respectfully submitted,

                                      DARRELL GUNN 03-B-2443
                                      Claimant-Pro Se

STEVEN D. LEE
NOTARY PUBLIC, STATE OF NEW YORK
CHEMUNG COUNTY, LIC. # 01LE6231045
COMMISSION EXPIRES NOV. 15, 20 17

NOTARY PUBLIC

# EXHIBIT 6

From COC

STATE OF NEW YORK
COURT OF CLAIMS

FILED
124039 MAR 06 2014
STATE COURT OF CLAIMS

- - - - - - - - - - - - - - - - - - - ×

DARRELL GUNN,

       Claimant,

 -against-

THE STATE OF NEW YORK,

      Defendant.

- - - - - - - - - - - - - - - - - - - ×

CLAIM FOR
DAMAGES

Claim No.

      Claimant, DARRELL GUNN, appearing
PRO SE, complaining of defendant, the State
of New York, alleges the following upon infor-
mation and belief:

      1. The Post office address of
the claimant is DARRELL GUNN 03-B-2443,

1

Elmira Correctional Facility, P.O. Box 500,
Elmira, New York 14902-0500.

2. This claim is for assault
and battery by the State of New York com-
mitted by its employee, correction officer
Bescler, whom injured claimant while acting
within the scope of his employment and in
the discharge of his duties on March 29,
2013, at Elmira Correctional Facility.

3. On March 29, 2013, at approx-
imately 7p.m. in Main Hall Laundry Corridor,
Claimant was sexually assaulted by Correction
Officer T. Perry. Hereafter Correction Officer
Bescler intentionally Kicked me in the left
leg shin, practically tripping claimant.

4. Claimant was under fear,
pressure, duress, and serious injury, among

2

Other things, I explained to Officer Perry and area Supervisor Sergeant Claflin "I'm in pain." Thereupon, returned to his cell, pursuant to Correction Officer Perry's order, began to leave when, without just cause or provocation, the defendant Correction Officer Bescler willfully and maliciously kicked claimant in the left leg shin, practically tripping claimant.

5. Rather than help me Correction Officer Bescler kicked me to suffer more injury, degradation and emotional distress, and serious injury. Hereupon, the actions of Correction Officer Bescler were intentional and unwarranted.

6. As a result of the assault and battery, claimant was in pain and suffering, from the nefarious and malevolent

3

C.O. Bescler for six months of hemorrhoids and soreness.

7. As a result of this incident, claimant suffered severe physical and mental and emotional anguish and pain.

8. Claimant is psychologically scarred as a result by Correction Officer Bescler.

9. This claim is filed within one (1) year after the claim accrued, as required by law

10. The particulars of Claimant's damage are as follows:

a) Pain and Suffering
My lower left leg was sore and bruised for one month. Also, I experienced hemorrhoids for six months.

4

b) Mental anguish

Claimant still suffers from loss of sleep, heightened anxiety and depression and stress.

11. This action is filed pursuant to Sections 10 and 11 of the Court of Claims Act.

WHEREFORE, claimant respectfully requests judgment against the defendant in the sum of $19,000 dollars.

Respectfully Submitted,

Darrell JT

DARRELL GUNN 03-B-0945
Pro se -Claimant

## VERIFICATION

STATE OF NEW YORK ) ss.:
COUNTY OF CHEMUNG

DARRELL GUNN being duly sworn, deposes and says that s/he is the Petitioner in the within proceeding; that s/he has read the foregoing Petition and knows the contents thereof; that the same is true to her/his knowledge, except as to the matters therein stated to be alleged on information and belief and that as to those matters, he believes them to be true.


_____
Petitioner  DARRELL GUNN 03-B-2443 Pro Se


Sworn to before me this 3rd day

of MARCH 2014.

_____
NOTARY PUBLIC

Charles D. Caswell
Notary Public, State of New York
Chemung County, No. 01CA6200259
Commission Expires Jan 25, 2017

# EXHIBIT A

IMPASSED AND DEPRIVED

Grievance No. **EL 60880-13**

ELMIRA _____ CORRECTIONAL FACILITY

Date MAY 7, 2013

Name DARRELL GUNN  Dept.No 03-B-2443  Housing Unit G-5-20

Program _____  A.M. ___  P.M. ___

*(Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident)*

Description of Problem: (Please make as brief as pos) On 4/23/13, approximately 7 p.m., after Lieutenant Ballard-grievance investigation interview, to 4/25, approx. 12:30 p.m., I experienced, a surreptitious keeplock confinement, by C.O. Taylor. In which, I was not given feed-up trays, deprived of food, showers, phone, recreation, and law library on 4/23/13 and 4/24/13. Added to this, I was denied recreation on 4/20/13, 5-company-recreation.

Continued on separate paper

Grievant Signature Darrell G___

Grievance Clerk _____  Date: _____

Advisor Requested ☒ YES  ☐ NO  Who: Mental Health

Action requested by inmate Disciplinary action for C.O. Taylor; I.G. investigation; Mental Health request; process this grievance all three stages per dept. dir. #4040; Process this grievance code #49 per dept. dir #4040.

This grievance has been informally resolved as follows:

_____

_____

_____

_____

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant
Signature _____  Date _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC). An exception to the time limit may be requested under Directive #4040, section 701.6(g).

escorting C.O. Cole, stated: "Stop making up lies and you'll come out." Again, on, 4/30/13, I was denied recreation, 5-company-recreation, escorting C.O. Cole, stating: "you was not injured" — pertaining to my sexual assault.

Undoubtly, the two-day keeplock confinement I experienced was cruel and unusual punishment and degradation. Indeed, contrary to prison policy and was unrelated to institutional security. Hence, totally without penological justification.

All told, C.O. Taylor, a incorrigible and vindictive prison guard, violated the New York State Constitution, United States Constitution, Correction law, and my prisoner's rights. combined, under the color of law. Herewith; deliberate indifference; repeated misconduct; pattern misconduct; intentional misconduct; official misconduct; and negligence, in official capacity as a prison guard whom, performed duties I causing me undue hardship, injury, pain and suffering; mentally and physically alike.

I conclude, no witness wants to be subject to retaliation by a malicious and sadistic prison staff. A witness will be subject to the same punishment I'm experiencing. A thorough and proper investigation will require I.G.R.C. representative, to interview possible witnesses in the area of incident, i.e., 6-Block-5 company area. Without a I.G.R.C. inmate rep. doing a investigation, I will receive a unfair, partial and improper investigation, including untruth-written statements by prison staff.

Struggling,

Darrell G.

#2

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
)ss.:
COUNTY OF CHEMUNG )

Description of documents: Grievance Complaint De Facto Keeplock confirem

I, DARRELL GUNN , being duly sworn, depose and say:

I am over the age of eighteen (18) years old and a competent witness.

On May 7, 20 13 I placed accurate, correct and true copies of the above described documents in a properly addressed envelope and filled out the necessary forms to have New York State Department of Correctional Services' employee(s) at the Elmira Correctional Facility in Elmira, NY to either use my free legal mail postage, authorize the advancement of funds, or use funds from my prisoner inmate account to purchase U.S. Mail postage and affix same to said envelope and, then place same in the care and control of said DOCS employee(s) to process and mail the aforementioned documents by the U.S. Postal Service via first class U.S. Mail to the following:

I. G. R. C.
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

And I declare under penalty of perjury that the same is accurate, correct and true as stated upon information and belief and as to those matters, I believe them to be true.

_Darrell G_____

DARRELL GUNN 03-B-2443
Elmira Correctional Facility
Box 500
Elmira, NY 14902

Subscribed and sworn to before me this
7 day of MAY , 13

_____

STEVEN D LEE
NOTARY PUBLIC, STATE OF NEW YORK
CHEMUNG COUNTY
LIC. #01LE6231045
COMMISSION EXPIRES_____

DARRELL GUNN 03-B-2443
G-5-20

May 29, 2013

Sergeant Santiago

In re: Denied law library

Dear Sgt. Santiago:

On 5/27/13, enroute to my 6:30pm call-out (law library), at G-Block Pivot, I went through metal detector without any alarm or incident. Hereupon, I was "pat frisked" needlessly. Thereafter, I was ordered back to my cell, for wearing "thermal underwear" after 4/15. I asked prison guard, where is this rule written at. I would like to read it. This prison guard (name not available) challenged me to grieve him. I explained, "I don't want to grieve you. I want to read the rule. I know you can't wear a winter coat after April 15. That's the rule." I was directed to read P and P.

Nevertheless, I explained, to G-Block A-Officer why I was sent back. He explained, I should read Facility Rule book. In so doing, the Elmira Facility Inmate Orientation Handbook, page 25, states: "Winter coat." Thermal underwear is not listed anywhere in Handbook, what-so-ever,

Rather, in truth, I'm not allowed to wear thermal underwear for outside trips (i.e., facility transfer, medical, court, funeral, death bed).

Moreover, I was denied law library (i.e. access to courts) consequently, as a result of this unwritten rule. The fact is, I have court deadlines and current court cases combined.

I'm a key stakeholder in DOCCS - serving a LWOP sentence - for a crime I didn't commit. Similarly, prison guards tenacity to punish me is an injustice - inflicted upon me that cannot be placed into words! These unwritten rules causes me stress that's off the chart and under the radar, inasmuch, pain and suffering, concomitant - physical and mental. I should not have to suffer like this at the hands of prison guards. Animals don't get treated like this! In sum, how does one serve a LWOP sentence? How does one anticipate dying in prison?

In other words my life is in despair. NYSDOCCS failed to address the unique needs of LWOP. There's no programming for LWOP prisoners. There's a one size fits all policy. All programs are geared for inmates returning back to society.

In conclusion, I would like to go to law library 6:30 pm call-outs without being subjected to needless pat frisks and unwritten

rules being enforced. In effect, this is harassment, abuse of authority, and intentional misconduct. All told, an undue hardship from a senseless unwritten rule that serves no security interest, penological objectives, or correctional goals.

STATE OF NEW YORK )
COUNTY OF CHEMUNG ) ss.:

Struggling,

_Darnell_

Sworn to before me this

29th day of May, 2013

NOTARY PUBLIC

Charles D. Caswell
Notary Public, State of New York
Chemung Count, No. 01CA6200259
Commission Expires Jan. 26, 2017

Name: GWN DARR01    DIN: 03B2443    Date to Print: 3/31/13    Facility Name: Clinton

**Subjective:** Alledges to have been
sexually assaulted on Friday
night during PAT FRISK

**Objective:**

**Assessment:** Claims Officer pulled underwear up into genital
area + violently squeezed his genital area

**Plan:** C/o genital area + rectum soreness
did not report to Security or Medical   Placed c/o in Scheduled Area

Last Name: GWN, DARRel
DIN: 03B2443   Location: 9-5-20
Date: 3/31/13   Time: 940m
Provider Orders: Open as

Signature Provider # _____ RN Transcribing Order Provider # Date Time _____

---

**Subjective:** A+O×3 MAEW
Amb to 2nd Floor Infirmary c difficulty

**Objective:** Skin Warm
denies having had any skin to skin contact

**Assessment:** 98.9 - 785 - 0 145/97 97%

**Plan:** Genital + rectal area examined
No redness, swelling, abrasions or open area noted
Scrotal Sac Soft No lumps or bumps noted

Last Name: GWN, DARRel
DIN: 03B2443   Location: 9-5-20
Date: 3/31/13   Time: 940m
Provider Orders: States was not fondled at anytime during incident

Signature Provider # _____ RN Transcribing Order Provider # Date Time _____

---

**Subjective:** or redness noted
Dr. Blankman notified of

**Objective:** alleged incident + No orders given

**Assessment:** May Return to cell

**Plan:** May safely rec to area + may take Ty/Enol 650mg 2 tabs
pnd @ 1030 ECS fm

Last Name: GWN, D
DIN: 03B2443   Location: 9-5-20
Date: 3/31/13   Time: _____
Provider Orders: After referral submitted @
+ MySar notified @ 930m

Signature Provider # _____ RN Transcribing Order Provider # Date Time 3/31/13

FORM 3190A (7-11)   STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
# AMBULATORY HEALTH RECORD PROGRESS NOTE

| Name | DIN | Date of Birth | Facility Name |
|---|---|---|---|
| GUNN, DARRELL | 03B2443 | 5/1/70 | ELMIRA |

**Subjective:** SICK CALL:

**Objective:** PT TO SICK CALL claiming on 3/29/13 He was SEXUALLY ASSAULTED by A Corrections Officer during A PAT FRISK ( see previous AHR )

**Assessment:** Pt claims sexually assaulted 3/29/13

**Plan:** of officer pulled his underwear up and penetrated rectum c̄ his finger Rectum - ō tearing - ō bleeding noted - sm unremarkd noted -

Last Name GUNN
DIN 03B2443  Location G-5-20
Date 4/4/13  Time AM SC
**Provider Orders:** MHU Referral
PASS Given ESC - 9:00 A

**Signature/Provider #** B Hall
**RN Transcribing Order/Provider # Date/Time** A Yep

---

**Subjective:** Penis - O lesion - testicles descended, symmetrical ō nodules, masses by palpation ō discomfort during exam

**Objective:**

**Assessment:** B Hall RN present during exam

**Plan:** will xport to mainfac

Last Name Gunn
DIN 03B2443  Location
Date 4/4/13  Time 0900 AM
**Provider Orders:**
Pt examined

**Signature/Provider #** A Yep

---

**Subjective:** From Sick call

**Objective:**

**Assessment:**

**Plan:**

Last Name Gunn, C
DIN 03B2443  Location G-5-20
Date 4/5/13  Time

**Provider Orders:**

**Signature/Provider #**   **RN Transcribing Order/Provider # Date/Time**

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICE

FORM 2131E (REV. 8/08)

# INMATE GRIEVANCE COMPLAINT

KICKED AND PROVOKED

Grievance No. **ELY0803-13**

ELMIRA _____ CORRECTIONAL FACILITY

Date **4/18/13**

Name **DARRELL GUNN** Dept.No. **03-B-2443** Housing Unit **G-5-20**

Program _____ AM _____ PM

*[Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident]*

Description of Problem: (Please make as brief as pos.) On 3/29/13, approximately 7 p.m., I was sexually assaulted, thereafter, a unnamed C.O., white male, approx. 35 yrs, 5'8/185 lbs., brown hair, intentionally kicked me in the shin (left leg), practically tripping me. Thereupon, intentional misconduct, Rules and regulation violations, deliberate indifference, dereliction of duty, provoked me to physical injury and mental anguish, alike. Equally, provoked me need-

Continued on Separate paper

Grievant Signature _Durell G_

Grievance Clerk _____ Date _____

Action Requested [X] YES [ ] NO Who **Prisoners' Legal Service of N.Y.**

Action Requested by Inmate: Disciplinary action for C.O.; exclude Sergeant Paul's from this grievance investigation; request I.G. investigation; Process this grievance all three stages per dept. dir. #4040.

If the Grievance has been informally resolved as follows:

_____

_____

_____

_____

lessly to an invidious physical altercation. Clearly, Contrary to institutional security, penological interest, correction goals and prison policy combined.

Consequently, I'm suffering from undue hardship, cruel and unusual punishment, and degradation, ascribed by this C.O.'s incorrigible behavior. Moreover, a violation of my prisoner's United States Constitutional and New York State constitutional rights, combined.

Wherefore, it is imperative prison officials follow their own rules.

Struggling,

Darrell G.

DARRELL GUNN 03-B-2443
G-5-20

April 18, 2013

TO: I.G.R.C.; and Mr. Paul Chappius, Jr., Superintendent

Re: Grievance Complaint

Dear Sir:

I request Sergeant Powers be excluded from my grievance complaint investigation based on information, knowledge, and belief that I believe that I believe to be true as noted below:

There's a on-going trend, in truth, Sergeant Powers is biased, unfair, impartial, arbitrary and capricious. The fact is, Sergeant Powers, will give a favorable investigation to any of his peers.

WHEREFORE, I object to have Sergeant

Powers investigate my grievance complaint.

## VERIFICATION

Date: April 18, 2013

STATE OF NEW YORK )
                   ) ss.:
COUNTY OF CHEMUNG )

DARRELL GUNN, being duly sworn, Says that he is the Grievant in the Grievance Complaint and that the foregoing statement is true to his own Knowledge, herein, to be information and belief and as to those matters, he believes it to be true.

Sworn before me on April 18, 2013

Respectfully Submitted

_Darrell Gunn_
DARRELL GUNN 03-B-2443

_Charles Caswell_
NOTARY PUBLIC
Charles D. Caswell
Notary Public, State of New York
Chemung Count. No. 01CA6200059
Commission Expires Jan 26, 20__

GUNN, D    03B2443    C-1-5

<table>
<tr><td rowspan="4">STATE OF NEW YORK<br>DEPARTMENT OF<br>CORRECTIONS AND<br>COMMUNITY<br>SUPERVISION</td><td>Grievance Number<br>EL-40803-13</td><td>Desig./Code<br>1/49</td><td>Date Filed<br>4/19/13</td></tr>
<tr><td colspan="3">Associated Cases</td></tr>
<tr><td colspan="3">Facility<br>Elmira Correctional Facility</td></tr>
</table>

<table>
<tr><td>INMATE GRIEVANCE PROGRAM<br>CENTRAL OFFICE REVIEW COMMITTEE</td><td>Title of Grievance<br>Kicked And Provoked</td></tr>
</table>

9/18/13

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that the facility administration has conducted a proper investigation. The grievant was interviewed, however, he could not identify either the staff member involved or where the incident took place. It is noted that his allegations of sexual assault on 3/29/13 are addressed in EL-40777-13, which is pending CORC disposition. CORC upholds the discretion of the facility administration in the assignment of staff to conduct grievance investigations.

CORC notes that Directive #4040, § 701.1, states, in part, that the grievance program is not intended to support an adversary process, and that the grievant may write to whomever he wishes regarding this complaint, as long as they are not on his Negative Correspondence and Telephone List.

CORC notes that the grievant has raised a separate issue in his appeal statement that was not addressed in his original complaint. This issue could be the subject of a separate grievance. CORC asserts that all relevant information must be presented at the time of filing in order for a proper investigation to be conducted at the facility level.

RAL/till

----------------------------------------------------------------------------------------------------
----------------------------------------------------------------------------------------------------

This document has been electronically signed by Karen R. Bellamy



| | | Grievance No. EL40-803-13 | Date Filed 04/19/13 |
|---|---|---|---|
| STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES | | Facility ELMIRA CORRECTIONAL FACILITY | Policy Designation |
| INMATE GRIEVANCE PROGRAM | | Title of Grievance KICKED AND PROVOKED | Class Code 49 |
| SUPERINTENDENT | | Superintendent's Signature | Date 05/07/13 |
| Grievant GUNN, D | | Din 03-B-2443 | Housing Unit G-5-20 |

GRIEVANT CLAIMS HE WAS KICKED IN THE SHIN AND PROVOKED, WHICH HAS LED TO UNDUE HARDSHIP AND DEGRADATION, BY AN UNIDENTIFIED CO.
NO STAFF INTERVIEWS WERE CONDUCTED.
INMATE INTERVIEW WAS CONDUCTED AND WRITTEN STATEMENT IS ATTACHED.
IN CONCLUSION, THE INVESTIGATION HAS REVEALED NO EVIDENCE THAT THE ALLEGED BEHAVIOR OCCURRED.
GRIEVANCE IS DENIED.

## APPEAL STATEMENT

The C. Orrection Officer who assaulted me is C.O. B his post is in the gymnasium, and he monitors the bathroom in the gym. On this point, I gave a full description identifying C.O. B. This is significant, compelling, and tangible evidence.

Also, Lt. Ballard, during the investigation interview, gave me an innuendo caveat, stating " don't be wasting my

### APPEAL STATEMENT

If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to C.O.R.C.

time." Thus, my grievance fell on deaf ears. Lt. Ballard and Superintendent Chapius reluctance alike, failed to consider the size of the offence. As a result, Supt. decision is without merit. Therefore, my grievance must be granted in full.

_____                    5/16/13
Grievant's Signature                        Date

_____                    _____
Grievance Clerk's Signature                 Date

* An exception to the time limit may be requested under Directive # 4040, Section 7(1.b)(ii).

State of New York
Court of Claims

DARRELL GUNN

                              Claimant(s)

                    v.                                    Affidavit of Service

                                                         Claim No. _____

THE STATE OF NEW YORK.                                   Assigned Judge:

                              Defendant(s)

State of New York        )
County of CHEMUNG        )ss:

DARRELL GUNN              , being duly sworn, deposes and says:

I am over the age of eighteen (18) years, and on _March 3_, 20_14_, I served a true copy of the
attached _Claim For Damages_ in the following manner:

(For a Claim):

☒ by mailing it in a sealed envelope, certified mail, return receipt requested, with postage prepaid, in a post
office or official depository of the United States Postal Service within the State of New York, addressed to
the last known address of the addressee as follows:

Attorney General's Office
Department Of Law
Capitol Building
Albany, NY 12324

                                   OR

☐ by delivering it to the following person(s) at the address(es) indicated below:

(For a Notice of Motion and Supporting Papers):

☐ by mailing them in a sealed envelope, with postage prepaid, in a post office or official depository of the
United States Postal Service within the State of New York, addressed to the last known address of the
addressee as follows:

                                                    _____
                                                    DARRELL GUNN Signature 03-P-2543
                                                    3-5-16

Sworn to before me this _5_ day
_March_ 2014

_____
Notary Public Charles O Caswell
Notary Public, State of New York
Chemung Count. No. 01CAE900253
Commission Expires Jan. 26, 2021

CoC
CLAims
FILE
From
DENISE SHERRS

THIS NOTICE CONTAINS
CONFIDENTIAL INFORMATION & IS
NOT TO BE RELEASED WITHOUT
AUTHORIZATION OF THE CLERK

STATE OF NEW YORK
COURT OF CLAIMS

FILED
124009 MAR 06 2014
STATE COURT OF CLAIMS
ALBANY, N.Y.

- - - - - - - - - - - - - - - - - - - - - - - - -X

DARRELL GUNN,

        Claimant,

   -against-

THE STATE OF NEW YORK,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - -X

CLAIM FOR DAMAGES

Claim NO.

      Claimant, DARRELL GUNN, appearing PRO SE, complaining of defendant, the State of New York, alleges the following upon information and belief:

      1. The Post Office address of the claimant is DARRELL GUNN 03-B-2443,

1

Elmira Correctional Facility, P.O. Box 500,
Elmira, New York 14902- 0500.

2. This claim is for assault
and battery by the State of New York com-
mitted by its employee, correction officer
Bescler, whom injured claimant while acting
within the scope of his employment and in
the discharge of his duties on March 29,
2013, at Elmira Correctional Facility.

3. On March 29, 2013, at approx-
imately 7p.m. in Main Hall Laundry corridor,
Claimant was sexually assaulted by Correction
Officer T. Perry. Hereafter, correction Officer
Bescler intentionally kicked me in the left
leg shin, practically tripping claimant.

4. Claimant was under fear,
pressure, duress, and serious injury, among

2

Other things, I explained to Officer Perry and area supervisor sergeant claflin "I'm in pain." Thereupon, returned to his cell, pursuant to Correction Officer Perry's order, began to leave when, without just cause or provocation, the defendant correction Officer Bescler willfully and maliciously kicked claimant in the left leg shin, practically tripping claimant.

5. Rather than help me correction office Bescler kicked me to suffer more injury, degradation and emotional distress, and serious injury. Hereupon, the actions of correction Officer Bescler were intentional and unwarranted

6. As a result of the assault and battery, claimant was in pain and suffering, from the nefarious and malevolent

C.O. Bescler for six months of hemorrhoids and soreness.

7. As a result of this incident Claimant suffered severe physical and mental and emotional anguish and pain.

8. Claimant is psychologically scarred as a result by Correction Officer Bescler.

9. This claim is filed within one (1) year after the claim accrued, as required by law.

10. The particulars of Claimant's damage are as follows :.

a) Pain and Suffering My lower left leg was sore and bruised for one month. Also, I experienced hemorrhoids for six months.

4

b) Mental anguish

Claimant still suffers from loss of sleep, heightened anxiety and depression and stress.

11. This action is filed pursuant to sections 10 and 11 of the court of claims Act.

WHEREFORE, claimant respectfully requests judgment against the defendant in the sum of $19,000 dollars.

Respectfully submitted,

Darrell

DARRELL GUNN 03-B-2443
Pro se - Claimant

## VERIFICATION

STATE OF NEW YORK   ) ss.:
COUNTY OF *CHEMUNG*

*DARRELL GUNN*   being duly sworn, deposes and says that s/he is the Petitioner in the within proceeding; that s/he has read the foregoing Petition and knows the contents thereof; that the same is true to her/his knowledge, except as to the matters therein stated to be alleged on information and belief and that as to those matters, he believes them to be true.


Petitioner  *DARRELL GUNN 03-B-2443 Pro Se*


Sworn to before me this *3rd* day

of *MARCH 2014*

_____
NOTARY PUBLIC

Charles D. Caswell
Notary Public, State of New York
Chemung Count. No. 01CA6200859
Commission Expires Jan. 26. 2017

# EXHIBIT A

FORM 2131E (REV. 8/06)

HARASSED AND DEPRIVED

Grievance No. EL40880-13

ELMIRA _____ CORRECTIONAL FACILITY

Date MAY 7 2013

Name DARRELL GUNN     Dept.No 03-B-2443  Housing Unit G-5-20

Program _____ AM _____ PM

*(Please Print or Type - This form must be filed within 21 calender days of Grievance Incident)*

Description of Problem: (Please make as brief as pos) On 4/23/13, approximately 7a.m., after Lieutenant Bullard-grievance investigation interview, to 4/25, approx. 12:30 p.m., I experienced, a surreptitious keeplock confinement, by C.O. Taylor. In which, I was not given feed-up trays, deprived of food, showers, phone, recreation, and law library on 4/23/13 and 4/24/13. Added to this, I was denied recreation on 4/20/13, 5-company-recreation

continued on separate paper

Grievant Signature Darrell G.

Grievance Clerk _____ Date: _____

Advisor Requested ☒ YES  ☐ NO  Who: Mental Health

Action requested by inmate: Disciplinary action for C.O. Taylor; I.G. investigation; Mental Health request; process this grievance all three stages per dept. dir. #4040; Process this grievance code #49 per dept. dir. #4040.

This Grievance has been informally resolved as follows:

_____

_____

_____

_____

This Informal Resolution is accepted: .
(To be completed only if resolved prior to hearing)

Grievant
Signature _____ Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).
* An exception to the time limit may be requested under Directive #4040, section 701.6(g).

escorting C.O. Cole, stated: "Stop making up lies and you'll come out." Again, on 4/30/13, I was denied recreation, 5-company-recreation, escorting C.O. Cole, stating: "you was not injured" - pertaining to my sexual assault.

Undoubtly, the two-day keeplock confinement I experienced was cruel and unusual punishment and degradation. Indeed, contrary to prison policy and was unrelated to institutional security. Hence, totally without penological justification.

All told, C.O. Taylor, a incorrigible and vindictive prison guard, violated the New York State Constitution, United States constitution, Correction law, and my prisoner's rights. Combined, under the color of law. Herewith, deliberate indifference; repeated misconduct; pattern misconduct; intentional misconduct; official misconduct; and negligence, in official capacity as a prison guard whom, performed duties — causing me undue hardship, injury, pain and suffering; mentally and physically alike.

I conclude, no witness wants to be subject to retaliation by a malicious and sadistic prison staff. A witness will be subject to the same punishment I'm experiencing. A thorough and proper investigation will require I.G.R.C. representative, to interview possible witnesses in the area of incident, i.e., G-Block-5 company area. Without a I.G.R.C. inmate rep. doing a investigation, I will receive a unfair, partial and improper investigation; including untruth-written statements by prison staff.

Struggling,
Darrell Gunn

AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
                    )ss.:
COUNTY OF CHEMUNG )

Description of documents: Grievance Complaint De Facto Keeplock confirma

I DARRELL GUNN , being duly sworn, depose and say:

I am over the age of eighteen (18) years old and a competent witness.

On May 7, 2013 I placed accurate, correct and true copies of the above described documents in a properly addressed envelope and filled out the necessary forms to have New York State Department of Correctional Services' employee(s) at the Elmira Correctional Facility in Elmira NY, to either use my free legal mail postage, authorize the advancement of funds, or use funds from my prisoner inmate account to purchase U.S. Mail postage and affix same to said envelope and, then place same in the care and control of said DOCS employee(s) to process and mail the aforementioned documents by the U.S. Postal Service via first class U.S. Mail to the following:

I. G. R. C.
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

and declare under penalty of perjury that the same is accurate, correct and true as stated upon information and belief, and as to those matters, I believe them to be true.

*[signature]*

DARRELL GUNN 03-B-2493
Elmira Correctional Facility
Box 500
Elmira NY 14902

Subscribed and sworn to before me this
7 day of MAY 13

*[signature]*

STEVEN D LEE
NOTARY PUBLIC, STATE OF NEW YORK
CHEMUNG COUNTY
LIC. #01LE6231045
COMMISSION EXPIRES 11-15-14

DARRELL GUNN 03-B-2443
G-5-20

May 29, 2013

Sergeant Santiago

In re: Denied Law library

Dear Sgt. Santiago:

On 5/27/13, enroute to my 6:30pm
call-out (law library), at G-Block Pivot, I went
through metal detector without any alarm or incident.
Hereupon, I was pat frisked, needlessly. Thereafter, I
was ordered back to my cell, for wearing "thermal
underwear" after 4/15. I asked prison guard, where
is this rule written at. I would like to read it.
This prison guard (name not available) challenged me to
grieve him. I explained, "I don't want to grieve
you. I want to read the rule. I know you can't
wear a winter coat after April 15. That's the
rule." I was directed to read P and P.

Nevertheless, I explained, to G-Block
A-officer why I was sent back. He explained, I
should read facility rule book. In so doing, the
Elmira Facility Inmate Orientation Handbook, page
23, states: "Winter coat." Thermal underwear
is not listed anywhere in Handbook, what-so-ever.

Rather, in truth, I'm not allowed to wear thermal underwear for outside trips (i.e., facility transfer, medical, court, funeral, death bed).

Moreover, I was denied law library (i.e. access to courts) consequently, as a result of this unwritten rule. The fact is, I have court deadlines and current court cases combined.

I'm a key stakeholder in DOCCS - serving a LWOP sentence - for a crime I didn't commit. Similarly, prison guards tenacity to punish me is an injustice - inflicted upon me that can not be placed into words! These unwritten rules causes me stress that's off the chart and under the radar, inasmuch, pain and suffering, concomitant - physical and mental. I should not have to suffer like this at the hands of prison guards. Animals don't get treated like this! In sum, how does one serve a LWOP sentence? How does one anticipate dying in prison?

In other words my life is in despair. NYSDOCCS failed to address the unique needs of LWOP. There's no programming for LWOP prisoners. There's a one size fits all policy. All programs, are geared for inmates returning back to society.

In conclusion, I would like to go to law library 6:30 pm call-outs without being subjected to needless pat frisks and unwritten

rules being enforced. In effect, this is harassment, abuse of authority, and intentional misconduct. All told, an undue hardship from a senseless unwritten rule that serves no security interest, penological objectives, or correctional goals.

STATE OF NEW YORK )
COUNTY OF CHEMUNG ) ss.:

Struggling,

Durell I

Sworn to before me this

29th day of May, 2013

NOTARY PUBLIC

Charles D. Caswell
Notary Public, State of New York
Chemung Count, No. 01CA6200259
Commission Expires Jan. 26, 2017

| Name | DIN | Date of Birth | Facility Name |
|---|---|---|---|
| GUNN DARRELL | 03B2443 | 5/1/70 | Clinton |

---

**Subjective:** Alledges to have been sexually assaulted on Friday night during PAT FRISK

**Objective:**

**Assessment:** Claims officer pulled underwear up into genital area & violently squeezed his genital area

**Plan:** CO genital area + rectum soreness did NOT report to security or medical. Placed CO in Sick call box

Last Name: GUNN DARRELL
DIN: 03B2443   Location: 9-5-20
Date: 3/31/13   Time: 940
Provider Orders: 4 meds

Signature/Provider # _____ RN Transcribing Order Provider # Date/Time

---

**Subjective:** A+O x3 MAEW Amb to 2nd Floor Infirmary & difficulty

**Objective:** Skin W-D denies having had any Skin to Skin contact. 98.9 - 105 - 0 145/97 97%

**Assessment:**

**Plan:** genital + rectal area examined. No redness, swelling, abrasion or open areas noted. Scrotal sac soft, no lumps or bumps noted.

Last Name: GUNN Darrell
DIN: 03B2443   Location: 9-5-20
Date: 3/31/13   Time: 940
Provider Orders: ... Was NOT forced ... at any time during incarcer

Signature/Provider # _____ RN Transcribing Order Provider # Date/Time

---

**Subjective:** No redness noted. Dr Blackman notified of

**Objective:** Alleged incident + No orders given

**Assessment:** May return to cell. MHU referral submitted & MHU notified @ 930 @

**Plan:** May apply ice to area + may take Tyl and 600mg Advil prn. QBC prn

Last Name: GUNN
DIN: 03B2443   Location: 9-5-20
Date: 3/31/13   Time:
Provider Orders:

Signature/Provider # _____ RN Transcribing Order Provider # Date/Time 3/31/13

Continue entry into next box if necessary.

| Name | DIN | Date of Birth | Facility/Unit |
|------|-----|---------------|---------------|
| GUNN, DARRELL | 03B2443 | 5/11/76 | ELMIRA |

**Subjective:** SICK CALL:

**Objective:** PT TO SICK CALL claiming on 3/29/13
HE WAS SEXUALLY ASSAULTED BY A
CORRECTIONS OFFICER DURING A PAT FRISK
(see previous note)

**Assessment:**

**Plan:** Pt claims sexually assaulted 3/29/13
Pt officer pulled his underwear up
and penetrated rectum c his finger
Rectum - 0 tearing - 0 bleeding noted - sm hemorrhoid
noted -

Last Name _GUNN_

DIN _03B2443_   Location _6-5-20_

Date _4/4/13_   Time AM SC

Provider Orders:
MHU Referral
PASS avail ESC - 9:00a

Signature/Provider # B Hall _____   RN Transcribing Order/Provider # Date/Time ____

---

**Subjective:** penis - c lesions - testicles,
descended, symmetrical c

**Objective:** masses or tenderness,
c discomfort during exam

**Assessment:** B Hall RN present during
exam.

**Plan:** will cont to monitor

Last Name _Gunn_

DIN _03B2443_ Location ____

Date 4/4/13 ___ Time 0400 AM

Provider Orders:
HE exam quex

Signature/Provider # ____   RN Transcribing Order/Provider # Date/Time ____

---

**Subjective:** From sick call

**Objective:** Handed to sick call
by general population
states PPE incident
c officer earlier this week

**Assessment:**

**Plan:**

Last Name _____

DIN 03B2443 ___ Location ____

Date 4/5/13 ___ Time ____

Provider Orders: OTC

Signature/Provider # _____   RN Transcribing Order/Provider # Date/Time ____



FORM 2131.6 (REV. 8/26)

KICKED AND PROVOKED

Grievance No.

**ELY0803-13**

ELMIRA _____ CORRECTIONAL FACILITY

Date 4/18/13

Name DARRELL GUNN _____ Dept.No 03-B-2443 Housing Unit C-5-20

Program _____ AM _____ PM

*Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident*

Description of Problem: (Please make as brief as pos) On 3/29/13, approximately 7p.m., I was sexually assaulted, thereafter, a unnamed C.O., white male, approx. 35 yrs, 5'8/185 lbs, brown hair, intentionally kicked me in the shin (left leg), practically tripping me. Thereupon, intentional misconduct, rules and regulation violations, deliberate indifference, dereliction of duty, provoked me to physical injury and mental anguish, alike. Equally, provoked me need-

— Continued on
Separate paper

Grievant Signature _Darrell Z._____

Grievance Clerk _____ Date: _____

Advisor Requested ☒ YES ☐ NO Who Prisoners' Legal Service of N.Y.

Action requested by inmate Disciplinary action for C.O.; exclude Sergeant Powers from this grievance investigation; request I.G. investigation; process this grievance all three stages per dept dir #4040.

This Grievance has been informally resolved as follows.

_____

_____

_____

This case of resolution is agreed to.

I have discussed both the grievant and the ___ to hearing.

Grievant

Grievance Clerk

If you are not satisfied, you may request an appeal to the Superintendent by indicating your decision and forwarding to the Grievance Clerk. You have four (4) working days after receipt of this notice to file your appeal in writing.

lessly to an invidious physical altercation. Clearly, contrary to institutional security, penological interest, correction goals and prison policy combined.

Consequently, I'm suffering from undue hardship, cruel and unusual punishment, and degradation, ascribed by this C.O.'s incorrigible behavior. Moreover, a violation of my prisoner's United States constitutional and New York State constitutional rights, combined.

Wherefore, it is imperative prison officials follow their own rules.

Struggling,

Darrell G.

DARRELL GUNN 03-B-2443
G-5-20

April 18, 2013

TO: I.G.R.C.; and Mr. Paul Chappius, Jr., Superintendent

Re: Grievance Complaint


Dear Sir:

I request sergeant Powers be excluded from my grievance complaint investigation based on information, knowledge, and belief that I believe that I believe to be true as noted below:


There's a on-going trend, in truth, Sergeant Powers is biased, unfair, impartial, arbitrary and capricious. The fact is, Sergeant Powers, will give a favorable investigation to any of his peers.

WHEREFORE, I object to have Sergeant

Powers investigate my grievance complaint.

# VERIFICATION

Date: April 18, 2013

STATE OF NEW YORK )
                  ) ss. :
COUNTY OF CHEMUNG)

DARRELL GUNN, being duly sworn, says that he is the Grievant in the Grievance Complaint and that the foregoing statement is true to his own knowledge, herein, to be information and belief and as to those matters, he believes it to be true.

Sworn before me on April 18, 2013

Respectfully Submitted,

_DARRELL GUNN 03-B-2443_

NOTARY PUBLIC

Charles D. Caswell
Notary Public, State of New York
Chemung Count, No. 01CA6210398
Commission Expires Jan 30, 20__

| STATE OF NEW YORK DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION | Grievance Number EL-40803-13 | Desig./Code I/49 | Date Filed 4/19/13 |
|---|---|---|---|
| | Associated Cases | | |
| | Facility Elmira Correctional Facility | | |

| INMATE GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | Title of Grievance Kicked And Provoked |
|---|---|

9/18/13

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that the facility administration has conducted a proper investigation. The grievant was interviewed, however, he could not identify either the staff member involved or where the incident took place. It is noted that his allegations of sexual assault on 3/29/13 are addressed in EL-40777-13, which is pending CORC disposition. CORC upholds the discretion of the facility administration in the assignment of staff to conduct grievance investigations.

CORC notes that Directive #4040, § 701.1, states, in part, that the grievance program is not intended to support an adversary process, and that the grievant may write to whomever he wishes regarding this complaint, as long as they are not on his Negative Correspondence and Telephone List.

CORC notes that the grievant has raised a separate issue in his appeal statement that was not addressed in his original complaint. This issue could be the subject of a separate grievance. CORC asserts that all relevant information must be presented at the time of filing in order for a proper investigation to be conducted at the facility level.

RAL/tll

------------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------------

This document has been electronically signed by Karen R. Bellamy



| STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES | Grievance No EL40-803-13 | | Date Filed 04/19/13 |
|---|---|---|---|
| | Facility ELMIRA CORRECTIONAL FACILITY | | Policy Designation |
| INMATE GRIEVANCE PROGRAM | Title of Grievance KICKED AND PROVOKED | | Class Code 49 |
| SUPERINTENDENT | Superintendent's Signature | | Date 05/07/13 |
| Grievant GUNN, D | Din | 03-B-2443 | Housing Unit G-5-20 |

GRIEVANT CLAIMS HE WAS KICKED IN THE SHIN AND PROVOKED, WHICH HAS LED TO UNDUE HARDSHIP AND DEGRADATION, BY AN UNIDENTIFIED CO.

NO STAFF INTERVIEWS WERE CONDUCTED.

INMATE INTERVIEW WAS CONDUCTED AND WRITTEN STATEMENT IS ATTACHED

IN CONCLUSION, THE INVESTIGATION HAS REVEALED NO EVIDENCE THAT THE ALLEGED BEHAVIOR OCCURRED.

GRIEVANCE IS DENIED.

## APPEAL STATEMENT

The C. Offection Officer who assaulted me is C.O. B his post is in the gymnasium, and he monitors the bathroom in the gym. On this point, I gave a full description identifying C.O. B. This is significant, com-pelling, and tangible evidence.

Also, Lt. Ballard, during the investigation interview, gave me an innuendo caveat, stating "don't be wasting my

APPEAL STATEMENT
If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to C.O.R.C.

time." This, my grievance fallen deaf ears. Lt. Ballard and Superintendent Chappins reluctance alike failed to consider the size of the offence. As a result, Supt. decision is without merit. Therefore, my grievance must be granted in full

_____          5/16/13
Grievant's Signature                 Date


_____          _____
Grievance Clerk's Signature          Date

* An exception to the time limit may be requested under Directive # 4040. Section 701.6(g).

State of New York
Court of Claims

DARRELL GUNN,
DIN No. 03-B-2443 , Claimant,

Affidavit in Support of Application
Pursuant to CPLR 1101 (f)

v.

Claim No.

The State of New York,

Defendant.

State of New York )
) ss:
County of CHEMUNG )

I DARRELL GUNN , being duly sworn, hereby declare as follows:

1) I am the claimant in the above-entitled proceeding, I am an inmate in a federal, state or local correctional facility (state place of incarceration: Elmira Correctional Fac), and I submit this affidavit in support of my application for a reduction of the filing fee pursuant to CPLR 1101(f).

2) I currently receive income from the following sources, exclusive of correctional facility wages:

NONE

3) I own the following valuable property (other than miscellaneous personal property):

☒ NONE

☐ List property:                          Value:

4) I have no savings, property, assets or income other than as set forth herein.

( 6 )

5) I am unable to pay the filing fee necessary to prosecute this proceeding.

6) No other person who is able to pay the filing fee has a beneficial interest in the result of this proceeding.

7) The facts of my case are described in my claim and other papers filed with the court.

8) I have made no prior request for this relief in this case.

_____
(signature)

Sworn to before me this 3ʳᵈ day of _March, 2014_.

_____
Notary Public

Charles D. Caswell
Notary Public, State of New York
Chemung Count, No. 01CA6200269
Commission Expires Jan. 26, ____

AUTHORIZATION

I, DARRELL GUNN, inmate number 03-B-2443, request and authorize the agency holding me in custody to send to the Clerk of the Court of Claims certified copies of the correctional facility trust fund account statement (or the institutional equivalent) for the past six months.

I further request and authorize the agency holding me in custody to deduct the filing fee from my correctional facility trust fund account (or the institutional equivalent) and to disburse those amounts as instructed by the Court of Claims.

This authorization is furnished in connection with the above entitled case and shall apply to any agency into whose custody I may be transferred.

I UNDERSTAND THAT THE ENTIRE FILING FEE AS DETERMINED BY THE COURT OF CLAIMS WILL BE PAID IN INSTALLMENTS BY AUTOMATIC DEDUCTIONS FROM MY CORRECTIONAL FACILITY TRUST FUND ACCOUNT EVEN IF MY CASE IS DISMISSED.

_____
(signature)

( 7 )

State of New York
Court of Claims

DARRELL GUNN ,

Claimant(s)

v.

THE STATE OF NEW YORK ,

Defendant(s)

Affidavit of Service

Claim No. _____

Assigned Judge: _____

State of New York )
County of CHEMUNG )ss:

DARRELL GUNN , being duly sworn, deposes and says:

I am over the age of eighteen (18) years, and on March 3 , 2014 , I served a true copy of the attached Claim for Damages in the following manner:

(For a Claim):

☒ by mailing it in a sealed envelope, certified mail, return receipt requested, with postage prepaid, in a post office or official depository of the United States Postal Service within the State of New York, addressed to the last known address of the addressee as follows:

Attorney General's Office
Department of Law
Capitol Building
Albany, NY 12354

OR

—— by delivering it to the following person(s) at the address(es) indicated below:

(For a Notice of Motion and Supporting Papers):

☐ by mailing them in a sealed envelope, with postage prepaid, in a post office or official depository of the United States Postal Service within the State of New York, addressed to the last known address of the addressee as follows:

DARRELL GUNN (Signature) 03-13-2443
Pro Se

Sworn to before me this 3rd day
of March, 2014

Notary Charles D. Caswell
Notary Public, State of New York
Chemung Count, No. 01CA6200259
Commission Expires Jan. 26, 201

(8)



# Court of Claims
## State of New York

ROBERT ABRAMS BUILDING
FOR LAW AND JUSTICE
BOX 7344, CAPITOL STATION
ALBANY, NEW YORK 12224

(518) 432-3411

**Richard E. Sise**
Acting Presiding Judge

March 24, 2014

**Robert T. DeCataldo**
Chief Clerk

Darrell Gunn  03 B 2443
Elmira Correctional Facility
1879 Davis Street, P.O. Box 500
Elmira, NY  14901-0500

Dear Sir/Madam:

This will acknowledge receipt in this office on March 6, 2014 of the claim of:

### DARRELL GUNN  03 B 2443 v. STATE OF NEW YORK

Said claim has been filed in this office as of March 6, 2014, subject to whatever legal objections may apply thereto and has been given:

### Claim No. 124009

It is our determination that this claim accrued in Chemung County.

Pursuant to §206.6(f) of the Unified Rules for the Court of Claims, you are required to advise the Court of any change of address in the event you are transferred to another facility or released.

Please continue to file all original pleadings and the required number of copies with the Clerk's office in Albany (Uniform Rules for the Court of Claims §206.5). Filings may be made by personal service, mail or by facsimile transmission pursuant to §206.5-a of the Rules. The Court of Claims' fax filing number is 1-866-413-1069.

Very truly yours,

Robert T. DeCataldo
Chief Clerk

RTD/dsd
cc:  Office of the Attorney General - Order Attached
**Please see attached Order**

# EXHIBIT 7

STATE OF NEW YORK

COURT OF CLAIMS

---------------------------

DARRELL GUNN,

        CLAIMANT,

  -against-

THE STATE OF NEW YORK,

        DEFENDANT.

---------------------------



RECEIVED

APR 02 2014

NYS Department of Law
Binghamton Regional Office

RECEIVED
NYS OFFICE OF THE
MAR 31 2014
ATTORNEY GENERAL
CLAIMS BUREAU

**C L A I M**

**Claim No.**

**Hon.** _____

OAG NO.
FILE CT.
SRVD AG.

Claimant, DARRELL GUNN, appearing <u>Pro Se</u>, complaining of defendant, the State of New York, alleges the following upon information and belief:

    1. The Post Office address of the Claimant herein is Elmira Correctional Facility, P.O. Box 500, Elmira, New York 14902, Chemung County.

    3. This claim is for failure to protect of the state committed by its employee Sergeant Cliff Claflin, Correction Officer, for neglect of duty as a supervisor, intentional misconduct, and official misconduct condoned, promoted and participated in the sexual assault and physical injury and psychological injury to Claimant while acting within the scope of his employment and in the discharge of his duties on March 29, 2013, at Elmira Correctional Facility.

    3. On March 29, 2013, at approximately 7:30 p.m. Sergeant Cliff Claflin, Correction Officer at Elmira Correctional Facility

working G-Block Pivot, Main Hall Laundry Corridor, as area super-
visor was grossly negligent in supervising subordinate T. Perry,
Correction Officer, who sexually assaulted Claimant. See Colon
v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995).

4. Sergeant Cliff Claflin, Correction Officer directly
beca e involved that that Claimant was at substantial risk of
serious harm and failed to act, to protect or prevent by disre-
garding excessive risk to Claimant's health and safety.

5. Sergeant Cliff Claflin, Correction Officer ingnored
Claimant's statement: "I'm in Pain," durng a non-emergency,
non-threatening, suspicionless, clothed body Pat Frisk that
was conducted abusively and without good-faith effort. See
Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 175 L.Ed.2d 995
(2010).

6. Sergeant Cliff Claflin, Correction Officer, delibe-
rate indifference to Claimant's risk of serious harm was lucid
by showing personal in olvement, that is, participating, using
his body to block/shield the Pat Frisk to any potential witnesses.
See Collins v. Graham 377 F.Supp.2d 241 (2005).

7. Here, Sergeant Cliff Claflin, Correction Officer,
never responded to Claimant's need for protection from C.O.
Perry, wanton infliction of pain and malicious and sadistic
behavior.

8. As a result of this incident, consequently, Claimant
is suffering from physical pain and injury, including, traumatic
psychological injury.

9. The fact is, Sergeant Cliff Claflin actions and inactions combined violated Claimant's prisoner's rights of the United States of America Constitution and New York State Constitution, under the color of the law, inter alia, Correction Law § 70 2 (b)(c); 7 CRR-NY § 251-1.3 (a); and 7 CRR-NY § 251-1.6 (e)(1)(2).

10. As that is the case, accordingly, Sergeant Cliff Claflin negligence is unwarranted, inexcusable, and contrary to penological interests and correction goals alike.

11. Moreover, Sgt. Claflin condonation allowed C.O. T. Perry to penetrate Claimant's rectum with his hand, through clothing for sexual gratification. Here, causing Claimant serious injury (i.e. hemorrhoid). See exhibit A.

12. All told, Sexual Assault in prison, whether committed by staff or another inmate, is a form of torture that violates international human rights law, the U.S. Constitution and state law alike. In Short, sexual assault is not part of the penalty of Claimant's criminal conviction sentence. See Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

13. In addition, United States Eighth Amendment combined with United States Fourteenth Amendment prohibits cruel and unusual punishment in penal institutions, alike, New York State Constitution Article 1, § 5 and New York State Constitution Article 1, § 11. Whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standard of decency, that mark the progress of a maturing society." See Hudson v. McMillian, 507 U.S. 1, 8-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

14. Notwithstanding, Claimant request this court not use the "malicious and sadistic" standard because there was no disturbance or other emergency circumstance, albeit, his U.S. Constitution Eighth Amendment and New York State Constitution Article 1, § 5 rights were violated by T. Perry, Correction Officer and Sergeant Cliff Claflin combined, conducting and supervising in their official capacity non-emergency, suspicion-less, clothed body search in abusive fashion and not applied in a good-faith effort to maintain or restore discipline causing claimant harm physically and mentally and emotionally.

15. Claimant is filing this action Pro-Se and unfamiliar with the law. Thus, the United States Supreme Court Held that in Haines v. Kerner 404 U.S. 519, " A Pro-Se complaint however inartfully pleaded 'must be held to a less stringent standard than formal pleadings drafted by lawyers. See also Estelle v. Gamble, 429 U.S. 97; Federal Exp. Corp. v. Hobweck, 552 U.S. 389.

16. Claimant request this court to reserve his right for an amendment to claim as pertinent information, facts, state-ments, among other things, evidence, etc., comes available.

17. Notice of Intention was received in the office of the Attorney General on the 27th day of June, 2013, by certified mail return receipt requested.

18. This claim is filed within one (1) year after the claim accrued as required by law.

19. This action is filed pursuant to Section 10 and 11 of the Court of Claims act.

4

20. The particulars of Claimant's damages are as follows:

a) Pain and Suffering

Claimant rectum hemorrhoid lasted six months, including soreness, swelling, internal bleeding, burning, discomfort, abrasion; still, on goings of irritation, during bowel movements, stomach knots, loss of appetite, nervousness, loss of self-esteem, irritability, and frequent headaches.

b) Mental Anguish

Depression, anxiety, heighten stress levels, insomnia, nightmares, retaliation, embarrassment, humiliation, ridicule, emotional duress, and anger.

c) Permanent Disability

Life changing episode, permanently mentally scarred, physical scar.

WHEREFORE, Claimant respectfully requests judgment against the defendant in the sum of five hundred thousand dollars ($500,000).

DATED:     March 20, 2014                    Respectfully submitted,

DARRELL GUNN 03-B-2443                 DARRELL GUNN 03-B-2443
Elmira Correctional Facility          Claimant, Pro-Se
P.O. Box 500
Elmira, New York 14902-0500

# VERIFICATION

STATE OF NEW YORK )
                ) ss.:
COUNTY OF CHEMUNG )

    I, __DARRELL GUNN__, being duly sworn, deposes and says

that he is the __Claimant__ in the enclosed proceeding, that he has read the

foregoing __Claim for damages__ _____

_____

_____ and knows it contents thereof, that the

same is true to deponents own knowledge except as to matters therein stated to be alleged

upon information and belief, which matters deponent believes to be true.

DARRELL GUNN 03-B-2443
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902

Sworn to before me this

__20__ day of __MARCH__, 20 __14__.

_____
NOTARY PUBLIC

STEVEN D. LEE
NOTARY PUBLIC, STATE OF NEW YORK
CHEMUNG COUNTY, LIC. # 01LE6231045
COMMISSION EXPIRES NOV. 15, 20 __14__

# EXHIBIT A

**Name** Gunn Darrell    **DIN** 03B2443    **Date of Birth** 5/11/70    **Facility Name** Elmira

---

**Subjective:** Alledges to have been sexually assaulted on Friday night during PAT FRISK

**Objective:**

**Assessment:** Claims officer pulled underwear up into genital area & violently squeezed his genital area

**Plan:** C/o genital area + rectum soreness did NOT report to security or medical

Watch Commander notified immediately

Last Name Gunn Darrell
DIN 03B2443   Location 9-5-20
Date 3/31/13   Time 940 PM
Provider Orders: 8 meds

Placed C/o in sick call box

**Signature/Provider #** _____ **RN Transcribing Order/Provider #/Date/Time** _____

---

**Subjective:** A+0x3 MAEW Amb to 2nd floor infirmary s difficulty

**Objective:** Skin W+D denies having had any skin to skin contact w/ officer

**Assessment:** 98.9 - 70S - 145/97 97%

**Plan:** Genital + rectal area examined No redness swelling, abrasions, or open areas noted Scrotal sac soft, no lumps or bumps noted

Last Name Gunn Darrell
DIN 03B2443   Location 9-5-20
Date 3/31/13   Time 940 PM
Provider Orders: States was NOT fondled at anytime during encounter

Rectal area clean dry, no open areas

**Signature/Provider #** _____ **RN Transcribing Order/Provider #/Date/Time** _____

---

**Subjective:** or redness noted Dr Braselman notified of

**Objective:** Alleged incident + no orders given

**Assessment:** May return to cell

**Plan:** May apply ice to area + may OSC PRN

Last Name Gunn, D
DIN 03B2443   Location 9-5-20
Date 3/31/13   Time _____
Provider Orders:

MHU referral submitted + MHU notified @ 930 PM may take Tylenol 650 mg PO q4hr prn

**Signature/Provider #** Elena RN II 444   **RN Transcribing Order/Provider #/Date/Time** 3/31/13

Continue entry into next box if necessary.

| Name GUNN, DARRELL | DIN 0332443 | Date of Birth 5/1/70 | Facility Name ELMIRA |
|---|---|---|---|

**Subjective:** <u>Sick call:</u>

**Objective:** Pt to sick call claiming on 3/22/13 He was sexually assaulted by a corrections officer during a pat frisk (see previous AHR)

Last Name GUNN

DIN 0332443   Location G-S-20

Date 4/4/13   Time AM SC

Provider Orders: MHU Referral
PASS GIVN ESC - 9:00 AM

**Assessment:** Pt claims sexually assaulted 3/29/13

**Plan:** Pt officer pulled his underwear up and penetrated rectum c̄ his finger. Rectum - s̄ tearing - ō bleeding noted - sm hemorrhoid noted - AP

Signature/Provider # B.Hall ↓   RN Transcribing Order/Provider #/Date/Time AP

---

**Subjective:** Penis - ō lesion - Testicles descended, symmetrecal s̄ redness, masses or tenderness

**Objective:** ō discomfort during exam. B. Hall RN present during exam.

**Assessment:**

**Plan:** Will cont' to monitor

Last Name Gunn

DIN 0332443 Location

Date 4/4/13   Time 0900 AM

Provider Orders:

HC cream given

Signature/Provider # AP   RN Transcribing Order/Provider #/Date/Time

---

**Subjective:** AM sick call Offender to sick call c/o general aches

**Objective:** States DTT incident c̄ officer earlier this week.

**Assessment:**

**Plan:** FU SC prn

Last Name Gunn, D.

DIN 0332443   Location G-5-20

Date 4/5/13   Time am sc

Provider Orders: OTC Ibuprofen x 10 c̄ instructions. Verbalizes understanding

Signature/Provider # _____   RN Transcribing Order/Provider #/Date/Time Ken Wagner RN446

Continue entry into next box if necessary.

# State of New York
# Court of Claims

_____DARRELL GUNN_____,
DIN No. 03-B-2443 , Claimant,

Affidavit in Support of Application
Pursuant to CPLR 1101 (f)

v.

Claim No.

The State of New York,

_____ Defendant. _____

State of New York      )
                       ) ss:
County of CHEMUNG      )

I, _____DARRELL GUNN_____, being duly sworn, hereby declare as follows:

1) I am the claimant in the above-entitled proceeding, I am an inmate in a federal, state or local correctional facility (state place of incarceration: __ELMIRA__), and I submit this affidavit in support of my application for a reduction of the filing fee pursuant to CPLR 1101(f).

2) I currently receive income from the following sources, exclusive of correctional facility wages:

_____NONE_____

_____

3) I own the following valuable property (other than miscellaneous personal property):

[X]  NONE

[ ]  List property:                          Value:

_____                    _____

_____                    _____

_____                    _____

_____                    _____

4) I have no savings, property, assets or income other than as set forth herein.

( 6 )

5) I am unable to pay the filing fee necessary to prosecute this proceeding.

6) No other person who is able to pay the filing fee has a beneficial interest in the result of this proceeding.

7) The facts of my case are described in my claim and other papers filed with the court.

8) I have made no prior request for this relief in this case.

_(signature)_

Sworn to before me this **20** day of **March**, **2014**.

_____
Notary Public

STEVEN D. LEE
NOTARY PUBLIC, STATE OF NEW YORK
CHEMUNG COUNTY, LIC. # 01LE6231045
COMMISSION EXPIRES NOV. 15, 20 **14**

## AUTHORIZATION

I, **DARRELL GUNN**, inmate number **03-B-2443**, request and authorize the agency holding me in custody to send to the Clerk of the Court of Claims certified copies of the correctional facility trust fund account statement (or the institutional equivalent) for the past six months.

I further request and authorize the agency holding me in custody to deduct the filing fee from my correctional facility trust fund account (or the institutional equivalent) and to disburse those amounts as instructed by the Court of Claims.

This authorization is furnished in connection with the above entitled case and shall apply to any agency into whose custody I may be transferred.

I UNDERSTAND THAT THE ENTIRE FILING FEE AS DETERMINED BY THE COURT OF CLAIMS WILL BE PAID IN INSTALLMENTS BY AUTOMATIC DEDUCTIONS FROM MY CORRECTIONAL FACILITY TRUST FUND ACCOUNT EVEN IF MY CASE IS DISMISSED.

_(signature)_

( 7 )

#46

State of New York
Court of Claims

DARRELL GUNN ,

Claimant(s)

v.

THE STATE OF NEW YORK,

Defendant(s)

Affidavit of Service

Claim No. _____

Assigned Judge:
_____

State of New York )
County of CHEMUNG )ss:

DARRELL GUNN , being duly sworn, deposes and says:

I am over the age of eighteen (18) years, and on March 20 , 2014, I served a true copy of the attached Claim for damages in the following manner:

(For a Claim):

[X] by mailing it in a sealed envelope, certified mail, return receipt requested, with postage prepaid, in a post office or official depository of the United States Postal Service within the State of New York, addressed to the last known address of the addressee as follows:

Attorney General's Office
Department of Law
Capitol Building
Albany, New York 1224-0341

OR

[ ] by delivering it to the following person(s) at the address(es) indicated below:

(For a Notice of Motion and Supporting Papers):

[ ] by mailing them in a sealed envelope, with postage prepaid, in a post office or official depository of the United States Postal Service within the State of New York, addressed to the last known address of the addressee as follows:

_____
(Signature)

Sworn to before me this 21 day
of MARCH , ~~2000~~. 2014

_____
Notary Public

STEVEN D. LEE
NOTARY PUBLIC, STATE OF NEW YORK
CHEMUNG COUNTY, LIC. # 01LE6231045
COMMISSION EXPIRES NOV. 15, 20 14

DARRELL GUNN 03-B-2443
Elmira Correctional Facility
1879 Davis Street
Box 500
Elmira, New York 14902-0500
(607) 734-3901
March 20, 2014

RECEIVED
NYS OFFICE OF THE
MAR 3 1 2014
ATTORNEY GENERAL
CLAIMS BUREAU

ERIC T. SCHNEIDERMAN, Attorney General
State of New York
Attorney General's Office
Department of Law
Capitol Building
Albany, New York 12224-0341

RE: Filing of Claim for Damages

Dear Sir:

Enclosed is a claim for the damages caused by a state employee.

Respectfully submitted,

DARRELL GUNN 03-B-2443
Claimant-Pro Se

DARRELL GUNN 03-B-2443
ELMIRA CORRECTIONAL & RECEPTION CENTER
P.O. BOX 500
ELMIRA, NEW YORK 14902-0500

CERTIFIED MAIL™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

2006 2740 0001 4720 A037

RECEIVED
NYS OFFICE OF THE
ATTORNEY GENERAL
CLAIMS BUREAU
MAR 3 1 2014

ERIC T. SCHNEIDERMAN, Attorney G
State of New York
Attorney General's Office
Department of Law
Capitol Building
Albany, New York 12224-0341

Claims

LEGAL MAIL

RARY
Notarials

DARRELL GUNN 03-B-2443 Elmira Correctional Facility

# EXHIBIT 8

STATE OF NEW YORK
COURT OF CLAIMS

RECEIVED
OCT 16 2014
NYS Department of Law
Binghamton Regional Office

- - - - - - - - - - - - - - - - - - - - - -

DARRELL GUNN, D.I.N. 03-B-2443,

        Claimant,

   - against -

THE STATE OF NEW YORK,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - -

~~14-7173490~~

13-158289-0

CLAIM FOR
DAMAGES

Claim No.

RECEIVED
NYS OFFICE OF THE
OCT 09 2014
ATTORNEY GENERAL
CLAIMS BUREAU

Claimant, DARRELL GUNN, appearing

Pro Se, complaining of defendant, the State of

New York, alleges the following upon information

and belief :

1. The Post Office address of the Claimant DARBELL GUNN 03-B-2443, Green Haven Correctional Facility, P.O. Box 4000, Stormville, New York 12582.

2. This claim is for battery by the State of New York committed by its employee, BESCLER, Correction Officer, whom, kicked Claimant while acting within the scope of his employment and in the discharge of his duties on March 29, 2013, at Elmira Correctional Facility.

3. On March 29, 2013, at approximately 7 p.m. in Main Hall Laundry

2

Corridor, Claimant was intentionally kicked in the Left Leg Shin, pratically, tripping claimant

4. Claimant was returning to his cell, without causing a disturbance, among other things, traumatically under Fear, pressure, duress, emotional distress, in pain, under the ascription and direct order from PERRY, Correction Officer, and, under the Supervision of area Sergeant, CLIFF CLAFLIN, Correction Sergeant, here, BESCLER, Correction Officer, without just cause or provocation, standing off the left wall (facing G-Block), directly in front of Magnetometer,

here, where claimant has to walk in this
space, in order, to return to his cell,
BESCLEK, correction Officer, undoubtedly,
willfully, and maliciously kicked claimant.
See Hudson v. McMillian, 503 U.S. 1, 112
S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992);
Whitley v. Albers, 475 U.S. 312, 320-21, 106
S. Ct. 1078 (1986).

     5. Rather than help claimant,
BESCLEK, correction Officer, with black
boots, inimically kicked claimant in the
Left Leg shin, causing pain, swelling,
and bruising, degradation and emotional

4

distress. Hereupon, the actions of BESCLER,
Correction Officer, were intentional, unwarranted
with deliberate indifference, contrary to
correctional goals, institutional policy, and
penological justification under the color of
State law. See Correction Law Section 137
[5]; See also, Official Compilation of Codes,
Rules And Regulation of the State of New
York, Title 7 Section 251-1.2 [a]

6. As a result of the
battery, claimant was in pain and suffering
from the nefarious and malevolent actions
of BESCLER, Correction Officer. See

5

Farmer V. Brennan 511 U.S. 825, ---, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

7. Claimant is filing this action pro-se and unfamiliar with the law. Thus, the United States Supreme Court held that in Haines v. Kerner, 404 U.S 519, "A Pro-Se complaint however in artfully pleaded must be held to less stringent standard than formal pleadings drafted by lawyers. See also Estelle v. Gamble, 429 U.S. 97; Federal Exp. Corp V. Holweck, 552 U.S. 389

8. Claimant request court to

allow future amendment to claim as pertinent
information, facts, statements, among other things.
evidence comes available.

9. The particulars of claimant's
damages are as follows:

(a) Pain and Suffering
Claimant lower left leg shin was sore and
bruised with swelling for one month.

(b) Mental Anguish
Claimant still suffers from loss of sleep,
heightened anxiety, depression, mental and
emotional anguish, humiliation, degradation,

7

and psychologically scarred

10. This claim is filed within one
(1) year after the claim accured, as required
by law.

11. This action is filed pursuant to
sections 10 and 11 of the Court of Claims
Act.

WHEREFORE, Claimant respectfully
requests judgment against the defendant in the
sum of $119,000 dollars.

Dated: Stormville, New York
        October 7, 2014

                        Darrell G
                        DARRELL GUNN 03-B-2443
                        Claimant, Pro-se

8

# VERIFICATION

STATE OF NEW YORK )
COUNTY OF DUTCHESS ) ss:

DARRELL GUNN, being duly sworn, deposes and says:

I am the claimant above named; I have read the foregoing claim against the State of New York and know its contents; the same is true to my knowledge, except as to the matter therein stated to be alleged on information and belief; and as to those matters, I believe it to be true.

Respectfully submitted,

*Darrell G*

DARRELL GUNN 03-B-2443
Claimant, Pro Se

Subscribed and sworn to before me this
7 day of October, 2014.

*Keith Sposato*

**KEITH J. SPOSATO**
**NOTARY PUBLIC-STATE OF NEW YORK**
NO. 01SP6248188
Qualified in Putnam County
My Commission Expires September 19, 2015

Notary Public



3
'Facility

2582

RECEIVED
NYS OFFICE OF THE

OCT 0 9 2014

ATTORNEY GENERAL
CLAIMS BUREAU

Attorney General of the State of New York
Office of the Attorney General
Department of Law
State Capitol
Albany, New York 12224-0341

ms

**LEGAL MAIL**

DARRELL GUNN 03-B-2443 Green Haven Correctional Facility

# EXHIBIT 9

.. 


EXHIBIT

5

PENGAD 800-631-6989

2005 26 hm a

ATTACHMENT "B"  |  Replacement Page Added 7/19/2010  |  No. 4065, Reporting Injuries and Occupational Illnesses

DATE · 3/16/2010   Page 7 of 17

FORM 1595 (07/10)     STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

## INMATE INJURY REPORT

| Facility | Date of Injury | Time of Injury | Location Injury Occurred | | |
|---|---|---|---|---|---|
| Elmira | 3/29/13 | | | | |
| Inmate Name | | | DIN | Housing Location | |
| Paul Darrell | | | 03B2443 | J-3-20 | |

What was cause of inmate's injury: Claims to have been sexually assaulted on Fri eve 3/29/2013 on way to Rec

Inmate Statement: I feel pain in my genital area, swelling, discomfort throbbing from being sexually assaulted by C.O. Petty. I am experiencing emotional distress and depression and stress. I was violently touch, rubbed and grabbed. he tried to penetrate my rectum with his fingers through my clothes.

Inmate's Signature: Paul Darrell 3/31/13

Witnesses:

Reporting Employee: Elizabeth Pierce    Title: RN II

### FACILITY HEALTH SERVICE REPORT

Date injury reported: 3/31/13   Time: 800 AM/PM

Description of injury: None noted. Claims to have injury to scrotal area + rectum. Placed complaint in Staff Call box. did NOT NOTIFY medical personnel of any injury + did NOT NOTIFY security of any injuries.

FRONT     BACK

OD (Right)

OS (Left)

Date of medical examination:     Time:

Services Provided: Exam/inspection of genital + rectal area conducted. No Redness. No Bruising. No lumps or bumps. No Bleeding. Scrotal intact. Rectal area dry. Advised to return if concern to sick call p.r.n.

| Was inmate admitted to facility infirmary? | Outside hospital? | If yes, where? | PLP DA Rice Available? | Telemed evaluation? |
|---|---|---|---|---|
| ☐ Yes ☑ No | ☐ Yes ☑ No | | ☐ Yes ☑ No | ☐ Yes ☑ No |

Name and title of person furnishing treatment at facility: Elizabeth Pierce
Print: Elizabeth Pierce   Title: RN II

# EXHIBIT 10

## PLAINTIFF'S MEDICAL RECORDS
## FILED UNDER SEAL

# EXHIBIT 11

| | | Grievance Number | Desig./Code | Date Filed |
|---|---|---|---|---|
| STATE OF NEW YORK DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION | | EL-42163-14 | I/49 | 2/4/14 |
| | | Associated Cases | | |
| | | Facility<br>Elmira Correctional Facility | | |
| INMATE GRIEVANCE PROGRAM<br>CENTRAL OFFICE REVIEW COMMITTEE | | Title of Grievance<br>Harassed/Threatened/Legal Work Read | | |

7/30/14

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that the facility administration has conducted a proper investigation, and that CO S... denies the grievant's allegations from 1/10/14, 1/31/14 and 2/3/14. Further, CORC notes that the grievant's allegations of sexual assault and harassment were appropriately referred to IG SCU for investigation in accordance with the Department's PREA policy. Contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff.

CORC asserts that there is no provision to separate staff from the grievant. CORC notes that he may write to whomever he wishes regarding this complaint, as long as they are not on his Negative Correspondence and Telephone List. CORC advises him to address medical concerns through sick call and mental health concerns to OMH staff.

CORC notes that Directive #4040, Section 701.1, states, in part, that the grievance program is not intended to support an adversary process and Section 701.6 (b) states, in part, that no reprisals of any kind shall be taken against an inmate or employee for good faith utilization of this grievance procedure. An inmate may pursue a complaint that a reprisal occurred through the grievance mechanism.

With respect to the grievant's appeal, CORC notes that it is the responsibility of the grievant to contact an advisor and he must be willing to accept the role of an advisor. Further, CORC advises him that local policy and directives are available to be reviewed in the facility law library.

JAD/tll/amb

------------------------------------------------------------------------------------
------------------------------------------------------------------------------------

EXHIBIT

15

2005264 ma

This document has been electronically signed by Jeffery A. Hale

000001

# CASE HISTORY AND RECORDS
# ELMIRA CORRECTIONAL FACILITY

Grievance No.:            EL-42-163-14 √

Name:                     **03-B-2443    GUNN, D.**

Title:                    HARASSED/THREATENED/LEGAL WORK READ

Code:                     49.0

Designation:              INSTITUTIONAL

Date Filed:               2/4/2014

IGRC Date:

Supt. Date:               2/24/2014

Appeal Date:              4/18/2014

NYS DEPT OF
CORRECTIONS AND
COMMUNITY SUPERVISION

APR 2 2 2014

RECEIVED
INMATE GRIEVANCE

Investigation:            _____

IGRC Invest. Date:        _____

Facility Policy No.:      _____

Capt. Date:               DSS 2-19-14

Supv. Date:               SGT. 2-8-14

Employee Info:            CO 2-8-14

Other:                    _____

Prior CORC No.:           _____

Office Of Diversity Mgt.: _____

IGP Supervisor's Signature:   B. Army

000003

# CASE HISTORY AND RECORDS
## ELMIRA CORRECTIONAL FACILITY

| | |
|---|---|
| Grievant's DIN and Name: | **03-B-2443   GUNN, D.** |
| Grievance No.: | EL-42-163-14 |
| Title: | HARASSED/THREATENED/LEGAL WORK READ |
| Code: | 49.0 |
| Date Filed: | 2/4/2014 |

**Grievance:**
Grievance was filed on 2/4/14, wherein grievant has cited C.O. Schieber with sexual and verbal harassment, with verbal threats and reading grievant's legal mail without prior written approval by Superintendent. Grievant asserts that while he was asleep in his cell, C.O. Schieber approached his cell and used his "BATON" in an attempt to awake him. Once awakened, grievant states that C.O. Schieber used sexual explicit language towards his person, referring to him as "Cinnamon" while blowing kisses at grievant in a homosexual suggestive manner. Grievant cites another occasion in which he was sexually assaulted by C.O. Schieber, during as "Pat frisk", wherein grievant asserts that C.O. Schieber used his hand in an unprofessional manner, by forcing his finger into grievant's rectum, causing grievant to experience a bowel movement. Grievant further asserts that he is being tormented, humiliated, antagonized, degraded, provoked, taunted, stalked and targeted with sexual and verbal harassment by C.O. Schieber, and that he is in constant fear for his life, that he is experiencing episodes of depression and emotional distress, which is causing him a range of physical ailments such as stomach pains, loss of hair and headaches.

**Action Requested:**
Disciplinary action be taken against C.O. Schieber, for sexual and verbal harassment, for using sexual explicit language and homosexual suggestion towards grievant, while placing grievant in a constant state of fear. Grievant further states that he is requesting that NYS Police Agency be contacted and informed that he grievant wants to formally file criminal charges against C.O. Schieber, for before mentioned actions against his person.

**IGRC Recommendation:**
N/A per Directive 4040, P/T to Supt. for review and response.

**Supt. Response:**
GRIEVANT CLAIMS ALLEGATIONS OF HARASSMENT, THREATS AND LEGAL MAIL ISSUES BY STAFF.
CO S...DENIES THESE ALLEGATIONS.
INTERVIEWS WERE CONDUCTED AND WRITTEN STATEMENTS WERE SOLICITED AND ATTACHED.
IN CONCLUSION, THE INVESTIGATION HAS REVEALED NO EVIDENCE THAT THE ALLEGED BEHAVIOR OCCURRED.
GRIEVANCE IS DENIED.

**Appeal:**
Grievant is appealing the determination rendered by the Superintendent.

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES
## INMATE GRIEVANCE COMPLAINT



*HARASSED/THREATENED/READ LEGAL WORK*

| Grievance No. |
| --- |
| **EL42163-14** |

__ELMIRA__ _____ CORRECTIONAL FACILITY

Date **2/4/14**

Name **DARRELL GUNN** Dept.No. **03-B-2443** Housing Unit **C-1-5**

Program _____ AM _____ PM

*(Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident)**

Description of Problem: (Please make as brief as possible) On 2/3/14, approximately 8:30 p.m. C.O. Schieber, stopped at my cell and used his baton on my foot to wake me up. Hereupon, C.O. Schieber stated: "Hey 'Cinnamon', why didn't you come out today? When you come out your cell, I'm going to fuck you up! You little bitch!" Then shortly after C.O. Scieber threw a cup of water on me while I'm laying down in

Grievant
Signature _~Durrell G~_

*Continued on Separate Paper*

Grievance Clerk _____ Date: _____

Advisor Requested ☒ YES ☐ NO Who: **IGRC Representative**

Action requested by inmate: Disciplinary action for C.O. Schieber; I.G. investigation; Free From Cruel and Unusual punishment; Invoke my prisoner's rights; No contact with C.O. Schieber; I would like to file criminal charges against C.O. Schieber with New York State Police agency.

This Grievance has been informally resolved as follows:

_____

_____

_____

_____

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant
Signature _____ Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

DARRELL GUNN 03-B-2443 2/4/14 C-1-5 Grievance Complaint Continuation page 2

in my cell.

Heretofore, on 1/31/14, approx. 5p.m. C.O. Schieber came to my cell and made sexual advances towards me i.e. blowing kisses to me; calling me "Cinnamon", hereafter, approximately 8 p.m. C.O.Schieber, again, came to my cell stating; "Cinnamon, why didn't you come out tonight. I'll see you tomorrow." Also, telling the C.O. in officer's station "He's playing like he's sleep."

Heretofore, on 1/10/14 C.O. Schieber began reading my legal papers without permission from Super-Intendent, causing me fear to prepare and File any legal papers and/or grievances.

Heretofore, on July 26, 2013, approximately 3:30 p.m. at Ballfield entrance, C.O. Schieber sexually Assaulted me during a Pat Frisk, trying to penetrate my rectum with his hand, and, in so doing, caused me to have a bowel movement. Thereafter, C.O. Schieber wrote a False misbehavior report against me because I reported the sexual assault.

As that is the case, C.O. Schieber is tor-menting, humiliating, antagonizing, degrading, pro-

000006

voking, taunting, stalking, and targeting me for
sexual abuse and physical assault, etc., in which,
his incorrigible behavior is causing me fear,
anxiety, emotional distress, stomach pains, head-
aches, loss of hair, stress, depression, among
other things, I risk being subjected to serious
harm.

Struggling,

DARRELL GUNN 03-B-2443

000007

(1103 REV. 9/18)

| | STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES | Grievance No. EL42-163-14 | Date Filed 2/4/14 |
|---|---|---|---|
| | | Facility ELMIRA CORRECTIONAL FACILITY | Policy Designation I |
| INMATE GRIEVANCE PROGRAM | | Title of Grievance HARASSED/THREATENED/LEGAL WORK READ | Class Code 49 |
| SUPERINTENDENT | | Superintendent's Signature | Date 2/24/14 |
| Grievant GUNN, D | | Din 03B2443 | Housing Unit C1-5 |

GRIEVANT CLAIMS ALLEGATIONS OF HARASSMENT, THREATS AND LEGAL MAIL ISSUES BY STAFF.

CO S...DENIES THESE ALLEGATIONS.

INTERVIEWS WERE CONDUCTED AND WRITTEN STATEMENTS WERE SOLICITED AND ATTACHED.

IN CONCLUSION, THE INVESTIGATION HAS REVEALED NO EVIDENCE THAT THE ALLEGED BEHAVIOR OCCURRED.

GRIEVANCE IS DENIED.

Received on 4/7/14. From IGRC Office in person.

**APPEAL STATEMENT**

If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to C.O.R.C. WRITTEN ON SEPARATE PAPER FOR LACK OF SPACE. Three (3) pages.

| Grievant's Signature | 4/10/14 Date |
|---|---|
| Grievance Clerk's Signature | 4-14-14 Date |

* An exception to the time limit may be requested under Directive # 4040, Section 701.6(g).

DARRELL GUNN 03-B-2443
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902-0500
April 10, 2014

TO: C.O.R.C.

RE: Grievance Number EL-42163-14
HARASSED/THREATENED/LEGAL WORK READ
Appeal Statement

Dear C.O.R.C.:

It is imperative the C.O.R.C.
Administration postulate my empirical grievance
to address the sexual abuse, sexual harassment,
among other things, cruel and unusual punishment,
oppression, degradation, tormenting, unwarranted,
humiliation, and retaliation I'm experiencing.

1

000009

the grievance complaint, appeal Statement to
Superintendent Paul Chappius, Jr., and above,
I pray that that C.O.R.C. grant this grievance
in full and invoke my prisoner's rights because
the Superintendent's decision is arbitrary
and Capricious.

Struggling,

Darrell G

DARRELL GUNN 03-B-2145

3

000011

STATE OF NEW YORK · DEPARTMENT OF CORRECTIONAL SERVICES
**INMATE GRIEVANCE COMPLAINT**



HARASSED / THREATENED / READ LEGAL WORK

| Grievance No. |
| --- |
| EL42/63-14 |

ELMIRA _____ CORRECTIONAL FACILITY

Date 2/4/14

Name DARRELL GUNN  Dept.No. 03-B-2443  Housing Unit C-1-5

Program _____ AM _____ PM

*(Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident)* *

Description of Problem: (Please make as brief as possible) On 2/3/14, approximately 8:30 p.m. C.O. Schieber, stopped at my cell and used his baton on my foot to wake me up. Hereupon, C.O. Schieber stated: "Hey 'Cinnamon', why didn't you come out today? when you come out your cell, I'm going to fuck you up! You little bitch!" Then shortly after C.O. Schieber threw a cup of water on me while I'm laying down in

Grievant Signature *Darrell G.*                                    Continued on Separate Paper

Grievance Clerk _____ Date: _____

Advisor Requested ☒ YES ☐ NO  Who: IGRC Representative

Action requested by inmate: Disciplinary action for C.O. Schieber; I.G. investigation; Free From Cruel and Unusual punishment; Invoke my prisoner's rights; NO contact with C.O. Schieber; I would like to file criminal charges against C.O. Schieber with New York State Police agency.

This Grievance has been informally resolved as follows:

_____

_____

_____

_____

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant Signature _____ Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

* An exception to the time limit may be requested under Directive #4040, section 701.6(g).

000013

in my cell.

Heretofore, on 1/31/14, approx. 5p.m. C.O. Schieber came to my cell and made sexual advances towards me i.e. blowing kisses to me; calling me "Cinnamon", hereafter, approximately 8 p.m. C.O. Schieber, again, came to my cell stating: "Cinnamon, why didn't you come out tonight, I'll see you tomorrow." Also, telling the C.O. in officer's station "He's playing like he's sleep."

Heretofore, on 1/10/14 C.O. Schieber began reading my legal papers without permission from Superintendent, causing me fear to prepare and File any legal papers and/or grievances.

Heretofore, on July 26, 2013, approximately 3:30 p.m. at Ballfield entrance, C.O. Schieber sexually Assaulted me during a Pat frisk, trying to penetrate my rectum with his hand, and, in so doing, caused me to have a bowel movement. Thereafter, C.O. Schieber wrote a false misbehavior report against me because I reported the sexual assault

As that is the case, C.O. Schieber is tormenting, humiliating, antagonizing, degrading, pro-

voking, taunting, stalking, and targeting me for
sexual abuse and physical assault, etc., in which,
his incorrigible behavior is causing me fear,
anxiety, emotional distress, stomach pains, head-
aches, loss of hair, stress, depression, among
other things, I risk being subjected to serious
harm.

Struggling,

DARRELL GUNN 03-13-2443



STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
*ELMIRA CORRECTIONAL FACILITY*

OFFICE OF
DEPUTY SUPERINTENDENT FOR SECURITY

*Memorandum*

TO:          **Paul Chappius, Jr., Superintendent**

FROM:        Paul Piccolo, DSS

DATE:        **February 19, 2014**

SUBJECT:     **GRIEVANCE EL 42-163-14**
             **Inmate Gunn, Darrell (03B2443)**

---

Supt. Chappius,

I have completed my review of the investigation into the above referenced matter and am prepared to respond with the following:

On 02/08/14, Sgt. Clark interviewed the grievant at his cell on C Block flats regarding his allegations of harassment, threats, and legal mail issues by CO Schieber. Grievant reiterated his claims. Grievant had no witnesses and nothing further to add. It should be noted that the allegations of sexual assault are untimely for the grievance process. However they were previously investigated by the DSS on 8/20/13. CO Schieber was interviewed and has provided written statement denying the allegations.

Based on the investigation, I find that the information reported and supporting documentation to this matter is appropriate and no evidence is present to suggest staff malfeasance.

Paul Piccolo
Deputy Superintendent for Security Services

PTP:lmw
Attachment
cc:   Inmate File Gunn, Darrell (03B2443)

**RECEIVED**

FEB 2 0 2014

ELMIRA CORR. & REC. CTR.
SUPERINTENDENT'S OFFICE

1

000016

New York State - Department of Correctional Services
Elmira Correctional Facility
*Memorandum*

To: SGT CLARK

From: CO. B. SCHIEBER

RE: GUNN D 03 B 2443 C-1-S

Date: 2-8-14

SIR,

ON 2-3-14 AT 8:30 PM I WAS LOCKED IN THE GYM GAS BOOTH AND UNABLE TO HAVE ANY CONTACT WITH THIS INMATE.

ON 1-31-14 I HAD NO INTERACTION WITH THIS INMATE NOR DID I BLOW KISSES AT THIS INMATE OR CALL HIM BY THE NAME OF CINNAMON.

ON 1-10-14 I WAS IN THE GYM GAS BOOTH DURING THE FRISK AND UNABLE TO READ THIS INMATES LEGAL WORK.

ANY AND ALL ACUTUAL CONTACT I HAVE HAD WITH THIS INMATE HAS BEEN PROFESSIONAL AND NOT SEXUAL IN NATURE.

RESPECTFULLY SUBMITTED

CO. B. SCHIEBER

000017



STATE OF NEW YORK
## DEPARTMENT OF CORRECTIONS
## AND COMMUNITY SUPERVISION

Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902
607-734-3901

INMATE GRIEVANCE PROGRAM
# PREA GRIEVANCE

TO:  WATCH COMMANDER/DEPUTY SUPERINTENDENT SECURITY

FROM:  B. ABRUNZO, IGPS

DATE:  7/21/14

GRIEVANCE #  EL-42163-14

PURSUANT TO DIRECTIVE 4027A/4028A, SEXUAL ABUSE PREVENTION AND INTERVENTION STAFF ON INMATE, SECTION V-B-2:  ANY EMPLOYEE WHO RECIEVES A REPORT OF SEXUAL ABUSE, SEXUAL THREATS, OR STAFF VOYEURISM SHALL IMMEDIATELY NOTIFY THE WATCH COMMANDER.

NAME:  GUNN, D.                    DIN: 03B2443              LOCATION: C1-5

HAS FILED THE ATTACHED SEXUAL ABUSE/SEXUAL THREATS/STAFF VOYEURISM GRIEVANCE WITH THE INMATE GRIEVANCE PROGRAM. AN INVESTIGATION AND RESPONSE IS REQUIRED WITHIN (12) TWELVE WORKING DAYS FROM THE DATE THIS GRIEVANCE WAS FILED. PLEASE ADDRESS THE GRIEVANT'S ALLEGATIONS AND SUPPLY ALL SUPPORTING DOCUMENTATION. THE EMPLOYEE(S) WHOM THE THIS GRIEVANCE IS AGAINST SHALL SUPPLY WRITTEN DOCUMENTATION TO THE WATCH COMMANDER'S OFFICE.

000018

**Dennis, Julie A (DOCCS)**

| | |
|---|---|
| **From:** | Donnelly, Lynnell C (DOCCS) |
| **Sent:** | Monday, July 21, 2014 4:02 PM |
| **To:** | Dennis, Julie A (DOCCS) |
| **Cc:** | Abrunzo, William J (DOCCS ONLY); Piccolo, Paul T (DOCCS) |
| **Subject:** | GUNN, DARRELL 03B2443 |

Per your request, please find the PREA log numbers with reference to the above.

Gunn, Darrell 03B2443  EL42-163-14   **PREA# 2014-12** DOI: 2/4/14    Verbal Harassment
Gunn, Darrell 03B2443  EL42-205-14   **PREA# 2014-13** DOI: 2/10/14   Discriminating Slurs/Actions

Thank you.

*Lynnell Donnelly, Secretary 1*
*Elmira Correctional Facility*
*lynnell.donnelly @doccs.ny.gov*
*607-734-3901 ext. 5020*

1

000019



STATE OF NEW YORK
**DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION**

ANTHONY J. ANNUCCI
ACTING COMMISSIONER

THE HARRIMAN STATE CAMPUS - BUILDING 2

1220 WASHINGTON AVENUE

ALBANY, N.Y. 12226-2050

### MEMORANDUM

TO:     Inspector General's Office

FROM:   Karen Bellamy, Director, Inmate Grievance Program

DATE:   July 30, 2014

SUBJ:   CORC Decision: EL-42163-14

The attached decision is forwarded to you for **information**.

CORC notes that the grievant, D. Gunn, #03-B-2443, has filed a grievance alleging sexual assault by Officer Schieber that was documented in the PREA log under #2014-12 and referred to your office. A copy of this grievance is being forwarded for whatever action is deemed appropriate.

KRB/tll
Attachment

cc:   Grievance File - EL-42163-14
      Paul Chappius, Superintendent, Elmira Correctional Facility
      Bill Abrunzo, IGP Supervisor, Elmira Correctional Facility

000020

# EXHIBIT 12

| | | Grievance Number<br>GH-80561-15 | | Desig./Code<br>I/49 | Date Filed<br>8/25/15 |
|---|---|---|---|---|---|
| NEW<br>YORK<br>STATE | **Corrections and<br>Community Supervision** | Associated Cases | | | Hearing Date<br>1/13/16 |
| ANDREW M. CUOMO<br>Governor | ANTHONY J. ANNUCCI<br>Acting Commissioner | Facility<br>**Green Haven Correctional Facility** | | | |
| INMATE GRIEVANCE PROGRAM<br>CENTRAL OFFICE REVIEW COMMITTEE | | Title of Grievance<br>**False MBR** | | | |

## GRIEVANT'S REQUEST UNANIMOUSLY DENIED

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby denied. CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that the grievant's allegations of being issued a false misbehavior report in July 2013 at Elmira CF are untimely and will not be addressed. CORC asserts that disciplinary dispositions are considered non-grievable in accordance with Directive #4040, § 701.3 (e) (1) because they have their own appeal mechanism which extends beyond the facility level. Accordingly, CORC assumes no jurisdiction in this issue.

CORC notes that Directive #4040, § 701.1, states, in part, that the grievance program is not intended to support an adversary process.

In regard to the grievant's appeal, CORC asserts that the instant complaint was properly investigated and finds insufficient evidence of malfeasance by staff.

RAS/

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------



EXHIBIT

12

2.00526440

This document has been electronically signed by Jeffery A. Hale

000001

# GREEN HAVEN CORRECTIONAL FACILITY
## CASE HISTORY & RECORD

NYS DEPT OF
CORRECTIONS AND
COMMUNITY SUPERVISION

NOV 19 2015

RECEIVED
INMATE GRIEVANCE

GH

GRIEVANCE NUMBER: 80561-15

NAME: Gunn, D

DIN: 03B2443

TITLE: False MBR

GH CODE: 49  INSTITUTIONAL / DEPARTMENTAL I

DATE FILED: 8-25-15

HEARING DATE: PT 8/25/15

SUPT. DATE: 10-22-15

APPEAL DATE: 10-30-15

## INVESTIGATIVE INFORMATION

IGRC INVESTIGATION DATE: _____

FACILITY POLICY # _____

CAPTION DATE: _____

SUPERVISOR DATE: _____

EMPLOYEE DATE: _____

PRIOR CORC: _____

OTHER: _____

IGP SUPERVISOR'S SIGNATURE: _Hanaray_  DATE: 11/14/15

000002

GREEN HAVEN CORRECTIONAL FACILITY
GRIEVANCE NUMBER. GH-80561-15
NAME:False MBR
DIN #:03B2443
TITLE:False MBR
Code:49

DESCRIPTION OF PROBLEM:
DATE. 8-25-15 The grievant complains of a false misbehavior report being written..

ACTION REQUESTED:
Grievant request not to receive MBR.

IGRC RECOMMENDATION:
DATE. PT

SUPERINTENDENT RESPONSE:
DATE. 10-30-15 According to the investigation the grievant was interviewed by Lt. M, The
grievant stated that the grievance is about MBR received while housed at Elmira Correctional
facility authorized by CO S in July 2013.

According to directive #4040 this grievance is considered untimely filed as it relates to an
incident that the grievant alleges occurred two years ago. Dir 4040 time limit for filing a
grievance.

Grievance is denied  to the extent noted above.

APPEAL TO CORC:
DATE.  10-30-15. Grievant is appealing the Superintendent's decision because he disagrees with
the decision.

80 561-15

DARRELL GUNN 03-B-2443
Green Haven Correctional Facility
Cell E-2-240
August 18, 2015

AUG 25 2015

INMATE GRIEVANCE RESOLUTION COMMITTEE
(I. G. R. C.)

Re: Grievance Complaint -- UNLAWFUL CONFINEMENT

Dear I.G.R.C. :

I have experienced unlawful cell confinement from July 26, 2013 to August 25, 2013. with deliberate indifference as the result of written false misbehavior report authored by B. SCHIEBER, correction officer.

Consequently, I'm suffering from undue hardships, among other things. Contrary to legitimate penological justification and

80561-15

AUG 25 2015

correctional goals and institutional policy combined.

Still pending is Matter of GUNN V. ANNUCCI, Appellate Division Docket No. 519047, Albany County Index No. 6912-13

ACTION REQUESTED: Disciplinary action for B. SCHIEBER, Correction Officer; Corrective action and/or remedy the wrong for undue hardship and UNLAWFUL CELL CONFINEMENT.

ADVISOR REQUESTED: YES  IGRC Representative

Struggling,

Darrell G

DARRELL GUNN 03-B-2443

000005

Grievant GUNN    Number 03B2443    Cell E2-240

| | Grievance Number 80561-15 | Date Filed 8/25/2015 |
|---|---|---|
| NEW YORK STATE Corrections and Community Supervision | Title FALSE MBR | Code 49 |
| Inmate Grievance Program | Superintendent's Signature | Date 10-22-15 |

The grievant complains of a false misbehavior report being written.

According to the investigation the grievant was interviewed by Lt. M. The grievant stated that the grievance is about a misbehavior report he received while housed at Elmira Correctional Facility authored by CO S in July 2013.

According to Directive #4040 this grievance is considered untimely filed as it relates to an incident that the grievant alleges occurred two years ago. Directive #4040 (701.5) (a) (1) Time Limit for Filing: An inmate must submit a complaint to the clerk within twenty-one (21) calendar days of an alleged occurrence.

*** Grievance is denied.

Appeal Statement

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. Please state why you are appealing this decision to C.O.R.C.

WRITTEN ON THREE (3) separate paper For lack oF Space.

_Durrell G_
Grievant's Signature                    October 30, 2015
                                        Date

_(Grievance Clerk's Signature)_         11/2/15
Grievance Clerk's Signature             Date
Form 2133 (Rev. 2/89)

pg 1 of 4

000006

DARRELL GUNN 03-B-2443
Cell E-2-240
October 30, 2015


CENTRAL OFFICE REVIEW COMMITTEE

Re: Appeal Statement
Grievance Number GH-80561-15


Dear CORC:


By this letter, for the above
referenced and attached form #2133 I'm
appealing Supt. Griffin decision with the
following statement below:

Supt. Griffin decision is inane, arbitrary
and capricious. Moreover, self-evident
truth the grievance complaint is solely

pg 2 of 4

UNLAWFUL CONFINEMENT albeit, improperly titled "false MBR" an attempt to cover-up the incorrigible C.O. SCHIEBER whom acted willfully and maliciously and that malice is the gist of this grievance complaint.

More than this, I received an unfair, untimely and partial investigation. In so doing, Lt. M stated: "the record is expunged; the ticket was dismissed." I said correct. The court matter is still pending. In response, Lt. M stated: "I will write the misbe-havior report is dismissed and expunged from the record as my investigation.

I conclude, I never received an advisor. Thus, Lt. M is untruthful. The court matter is still pending. Supt. decision is without merit. Prison guards and prison officials alike are corrupted with an 'brotherhood' that investigate themselves

pg 3 of 4

000008

causing tremendous injustice. This disad-
vantage calls for CORC to invoke my
prisoner and constitutional rights and
grant this grievance in full.

Struggling,

DARRELL GUNN 03-B-2443



NEW YORK STATE | **Corrections and Community Supervision**

ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

To: IGP Supervisor

From: Lt S Murphy

Subject: GH# 80561-15

Date: 10/3/15

---

    I have investigated the above numbered grievance written by inmate Gunn 03b2443 concerning false misbehavior report. I interviewed inmate Gunn on 10/3/15 at which time he stated that the grievance concerned a misbehavior report he received while at Elmira CF which was authored by a CO Schieber in July of 2013. I checked the inmate's disciplinary history and there is no indication of a misbehavior report written by that officer in that time frame.

Lt S Murphy

```
01/11/16  CIGRRAS          DISCIPLINARY SYSTEM              KDCPM40
12:43:03  CINSN021     990      CENTRAL OFFICE           PAGE    1
                  DISCIPLINARY INCIDENT SUMMARY    MANUAL RECS N

DIN:  03B2443    NYSID: 06665381K  NAME:  GUNN, DARRELL
CURRENT FACILITY:   080   GRN HAVN GEN    CURRENT HOUSING LOCATION:  0E-22-40S
-----------------------------------------------------------------------
TIER 3   INCIDENT: 06/18/14 09:15 AM   CO   N.LAFATA           GRN HAVN GEN
         HEARING : 08/13/14 01:11 PM   SORC D.MERRIETT         GRN HAVN GEN
         APPEAL  : 10/17/14 AFFIRMED   DIR  PRACK              CENTRAL OFF
         DIS.REV : 08/22/14            SHMC REVIEW             GRN HAVN GEN
113.10 WEAPON            113.11 ALTERED ITEM     114.10 SMUGGLING
  2M 14D SHU                                 SERVICE DTES 06/18/14 09/01/14
  2M 14D PACKAGE                             SERVICE DTES 06/18/14 09/01/14
  2M 14D COMMISSARY                          SERVICE DTES 06/18/14 09/01/14
  2M 14D PHONE                               SERVICE DTES 06/18/14 09/01/14
  3M     SHU        PACKAGE     COMMISSARY  PHONE      SUSPD TO 02/09/15
-----------------------------------------------------------------------


                                           NEXT DIN:


<CURSOR + ENTER> INC DETAIL
<ENTER>    <PF3>  EXIT(FUNCT)    <PF7>  BACKWARD    <CLEAR>  EXIT(SYSTEM)
```



12:43:19 Monday, January 11, 2016

DIN: 03B2443   NYSID: 06665381K  NAME:  GUNN, DARRELL
CURRENT FACILITY:  080  GRN HAVN GEN   CURRENT HOUSING LOCATION:  0E-22-40S
--------------------------------------------------------------------
    TIER 2  INCIDENT: 04/06/12 09:00 AM  CO   SCHOONOVER        ELMIRA GENER
            HEARING : 04/12/12 09:35 AM  LT   MORIARTY          ELMIRA GENER
            APPEAL  : 04/18/12 AFFIRMED  CAPT DIEGO             ELMIRA GENER
    106.10 DIRECT ORDER      109.15 REFUSE DBL CELLNG
       30D KEEPLOCK      COMMISSARY   PHONE       SERVICE DTES 04/06/12 05/06/12
    --------------------------------------------------------------------
    TIER 3  INCIDENT: 03/17/10 09:30 AM  CO   D. TRUDEAU        CLINTON GEN
            HEARING : 04/01/10 10:45 AM  CAPT J FACTEAU         CLINTON GEN
            APPEAL  : 06/09/10 AFFIRMED  ADIR VENETTOZZI        CENTRAL OFF
    113.23 CONTRABAND        114.10 SMUGGLING
       60D SHU          PACKAGE      COMMISSARY   SERVICE DTES 03/17/10 05/16/10
       60D PHONE                                  SERVICE DTES 03/17/10 05/16/10
    --------------------------------------------------------------------
                                             NEXT DIN:


<CURSOR + ENTER> INC DETAIL
<ENTER>     <PF3>  EXIT(FUNCT)      <PF7>  BACKWARD      <CLEAR>  EXIT(SYSTEM)

(49) *False MBR*

| Grievance No. |
|---|
| **80561** |

G. HAVEN _____ CORRECTIONAL FACILITY

Date __8/25/15__

Name __GUNN__ Dept.No.__036243__ Housing Unit __E2·240__

Program _____ AM _____ PI

*(Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident)* *

Description of Problem: (Please make as brief as possible) _____

_____

S/A

_____

Grievant
Signature _____

Grievance Clerk _____ Date: _____

Advisor Requested ☐ YES ☐ NO Who: _____

Action requested by inmate:

_____

_____

This Grievance has been informally resolved as follows:

_____

_____

_____

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant
Signature _____ Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

the time limit may be requested under Directive #4040, section 701.6(g).

## INMATE GRIEVANCE RESOLUTION COMMITTEE
## ACKNOWLEDGEMENT OF RECEIPT

TO: _____ Gann _____ DIN O3B2443 LOC. E2 - 240

FROM: IGRC OFFICE: Incident date: 7/26 Action Request:____ Signature:___

CODE 49 TITLE: False MBR _____

This notice is to inform you that your grievance has been received by this office on

_____ 6/19 . It has been given the log number GH 80.561-15 .

Your log number, DIN, and cell location must be included on any inquiry made concerning your grievance.

Upon completion of an investigation into your grievance, you will be scheduled for an IGRC hearing. According to Directive #4040 if you do not appeal for the hearing without a legitimate reason, the IGRC will hold a hearing in absentia.

If your grievance is numbered as part of a consolidated issue, you may or may not be called for a hearing. However, you will receive a copy of the grievance committee's decision, and you may appeal any decision in accordance with Directive #4040.

Directive #4040 701.3(a) *Inmate's Responsibility*. An inmate is encouraged to resolve his complaints through the guidance and counseling unit the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance. Although a facility may not impose pre-conditions for submission of a grievance, the failure of an inmate to attempt to resolve a problem on his own may result in the dismissal and closing of a grievance at an IGRC hearing.

\*Notice of Return: ***Please resubmit with correction requested.***          AUG 25 2015

Please be advised that your grievance received on _____, is being returned to you via callout for one or more of the following reasons. You will be placed on a callout to meet with an IGRC Inmate Representative to make any necessary corrections.

___No action request, please indicate one.      ___No incident date noted.

____No signature                                ___Non-grievable per Directive #4040

___Unable to understand handwriting.

___Other (as indicated below):

_____
_____
_____
_____

IGP Supervisor Stanaway_____





ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

## MEMORANDUM

**TO:**       Superintendent Griffin

**FROM:**    L. Stanaway, IGP Supervisor

**SUBJECT:**  Initial Superintendent Review of Grievance Coded 49 – Staff Misconduct

**DATE:**       _8/28/15_

Grievant's Name: _Gunn_ DIN _03B2443_ Loc _E2-240_

GRIEVANCE NUMBER:  GH _80561-15_

Attached is a grievance that has been coded as a 49 – Staff Misconduct.  Please review within 24 hours, and note your findings:

Superintendent Initial:_____

Date Reviewed: _____

_✓_  I concur with the filing of this grievance as being coded 49.
     An investigation by _____ can proceed.

_____  I DO NOT concur with the filing of this grievance as being coded 49.
      The following action should be taken:

_____  This incident has been previously or is currently being investigated
      By_____.

_____
_____
_____

Please return the attached to the IGP Supervisor.          Thank you.

# EXHIBIT 13

INMATE ID#: 03B2443 GUNN, DARRELL                    LOCATION: 0B-WS-22S

```
--------------------------------------------------------------------------
TIER 2  INCIDENT: 01/17/19 11:04 AM  NURS SOLTISH, C       GRN HAVN GEN
        HEARING : 01/28/19 04:16 PM  LT   VANACORE, T A    GRN HAVN GEN
107.11 HARASSMENT
        10 D RECREATION   PACKAGE      COMMISSARY   SERVICE DTES 01/28/19 02/07/19
        10 D PHONE                                  SERVICE DTES 01/28/19 02/07/19
--------------------------------------------------------------------------
TIER 2  INCIDENT: 07/09/18 05:45 PM  CO   HENNIG, J A       GRN HAVN GEN
        HEARING : 08/12/18 10:10 AM  LT   LEIFELD, B J      GRN HAVN GEN
107.10 INTERFERENCE        106.10 DIRECT ORDER
        15 D KEEPLOCK     PACKAGE      COMMISSARY   SERVICE DTES 08/12/18 08/27/18
        15 D PHONE                                  SERVICE DTES 08/12/18 08/27/18
--------------------------------------------------------------------------
TIER 2  INCIDENT: 05/29/18 12:25 PM  CO   LUCCHESE, M C     GRN HAVN GEN
        HEARING : 06/10/18 11:51 AM  LT   MURPHY, S J       GRN HAVN GEN
124.16 MESSHALL VIOL
        COUNSEL     /
--------------------------------------------------------------------------
TIER 3  INCIDENT: 06/18/14 09:15 AM  CO   N.LAFATA          GRN HAVN GEN
        HEARING : 08/13/14 01:11 PM  SORC D.MERRIETT        GRN HAVN GEN
        APPEAL  : 10/17/14 AFFIRMED  DIR  PRACK             CENTRAL OFF
        DIS.REV : 08/22/14          SHMC REVIEW            GRN HAVN GEN
113.10 WEAPON          113.11 ALTERED ITEM      114.10 SMUGGLING
  2 M   14 D SHU                                SERVICE DTES 06/18/14 09/01/14
  2 M   14 D PACKAGE                            SERVICE DTES 06/18/14 09/01/14
  2 M   14 D COMMISSARY                         SERVICE DTES 06/18/14 09/01/14
  2 M   14 D PHONE                              SERVICE DTES 06/18/14 09/01/14
  3 M        SHU       PACKAGE      COMMISSARY   PHONE       SUSPD TO 02/09/15
--------------------------------------------------------------------------
TIER 2  INCIDENT: 04/06/12 09:00 AM  CO   SCHOONOVER        ELMIRA GENER
        HEARING : 04/12/12 09:35 AM  LT   MORIARTY          ELMIRA GENER
        APPEAL  : 04/18/12 AFFIRMED  CAPT DIEGO             ELMIRA GENER
106.10 DIRECT ORDER      109.15 REFUSE DBL CELLNG
        30 D KEEPLOCK    COMMISSARY   PHONE       SERVICE DTES 04/06/12 05/06/12
--------------------------------------------------------------------------
TIER 3  INCIDENT: 03/17/10 09:30 AM  CO   D. TRUDEAU        CLINTON GEN
        HEARING : 04/01/10 10:45 AM  CAPT J FACTEAU         CLINTON GEN
        APPEAL  : 06/09/10 AFFIRMED  ADIR VENETTOZZI        CENTRAL OFF
113.23 CONTRABAND        114.10 SMUGGLING
        60 D SHU         PACKAGE      COMMISSARY   SERVICE DTES 03/17/10 05/16/10
        60 D PHONE                                SERVICE DTES 03/17/10 05/16/10
--------------------------------------------------------------------------
TIER 3  INCIDENT: 03/15/10 12:50 PM  CO   S. MANOR          CLINTON GEN
        HEARING : 04/05/10 10:25 AM  CAPT J FACTEAU         CLINTON GEN
        APPEAL  : 06/08/10 AFFIRMED  ADIR PRACK             CENTRAL OFF
        DIS.REV : 10/21/10          DSP  DRC               UPSTATE SC
100.11 ASSAULT ON STAFF  107.10 INTERFERENCE    106.10 DIRECT ORDER
  8 M    8 D SHU         PACKAGE      COMMISSARY   SERVICE DTES 05/16/10 01/24/11
  8 M    8 D PHONE                                SERVICE DTES 05/16/10 01/24/11
 12 M        GOOD TIME
--------------------------------------------------------------------------
TIER 3  INCIDENT: 12/17/09 09:25 AM  CO   K. STRADER        CLINTON GEN
        HEARING : 12/23/09 07:45 AM  CHO  C DROWN           CLINTON GEN
        APPEAL  : 02/08/10 AFFIRMED  DIR  BEZIO             CENTRAL OFF
        DIS.REV : 03/08/10          DSS  CRC               CLINTON GEN
104.11 VIOLENT CONDUCT   104.13 CREATE DISTURB   100.13 FIGHTING
106.10 DIRECT ORDER
  2 M   21 D SHU                                SERVICE DTES 12/17/09 03/10/10
--------------------------------------------------------------------------
NOTE: ONLY COMPLETED HEARINGS ARE SHOWN
```



EXHIBIT
19
200526hma
PENGAD 800-631-6989

INMATE ID#: 03B2443 GUNN, DARRELL                    LOCATION: 0B-WS-22S

```
-------------------------------------------------------------------------
  2 M  21 D PACKAGE                             SERVICE DTES 12/17/09 03/10/10
  2 M  21 D COMMISSARY                          SERVICE DTES 12/17/09 03/10/10
  2 M  21 D PHONE                               SERVICE DTES 12/17/09 03/10/10
  2 M   9 D SHU        PACKAGE      COMMISSARY   PHONE       SUSPD TO 04/22/10
  3 M      GOOD TIME
-------------------------------------------------------------------------
TIER 2  INCIDENT: 03/12/09 09:15 AM  CO   M. MILLER        CLINTON GEN
        HEARING : 03/16/09 10:05 AM  LT   R. NAPPER        CLINTON GEN
104.11 VIOLENT CONDUCT    104.13 CREATE DISTURB
       15 D KEEPLOCK    PACKAGE      COMMISSARY  SERVICE DTES 03/12/09 03/27/09
       15 D PHONE                                SERVICE DTES 03/12/09 03/27/09
          REFERRALS   /
-------------------------------------------------------------------------
TIER 2  INCIDENT: 11/15/07 03:00 PM  CC   J. PORCELLI      CLINTON GEN
        REPORTED: 11/27/07
        HEARING : 12/10/07 01:53 PM  LT   J. ROCK          CLINTON GEN
        APPEAL  : 12/26/07 AFFIRMED  CAPT J. FACTEAU       CLINTON GEN
180.11 FACIL CORRESPOND
       30 D RECREATION   PACKAGE      COMMISSARY  SERVICE DTES 12/10/07 01/09/08
       30 D PHONE                                 SERVICE DTES 12/10/07 01/09/08
       30 D KEEPLOCK                               SUSPD TO 03/09/08
-------------------------------------------------------------------------
TIER 2  INCIDENT: 07/14/06 05:55 PM  CO   E.MESUNAS        CLINTON GEN
        HEARING : 07/20/06 10:40 AM  LT   H. BOYLE         CLINTON GEN
        APPEAL  : 07/26/06 AFFIRMED  CAPT MINOQUE          CLINTON GEN
109.12 MOVEMENT VIO.
        6 D KEEPLOCK    PACKAGE      COMMISSARY  SERVICE DTES 07/14/06 07/20/06
        6 D PHONE                                SERVICE DTES 07/14/06 07/20/06
-------------------------------------------------------------------------
TIER 2  INCIDENT: 05/19/05 08:00 PM  CO   D. MASON         CLINTON GEN
        HEARING : 05/25/05 07:55 AM  LT   W. ALLAN         CLINTON GEN
106.10 DIRECT ORDER     109.12 MOVEMENT VIO.
       30 D KEEPLOCK    PACKAGE      COMMISSARY  SERVICE DTES 05/19/05 06/18/05
       30 D PHONE                                SERVICE DTES 05/19/05 06/18/05
-------------------------------------------------------------------------
TIER 3  INCIDENT: 03/24/05 12:00 PM  CAPT KEARNEY          WENDE
        HEARING : 03/28/05 11:18 AM  DSS  MONAHAN          WENDE
        DIS.REV : 05/05/05          DSS  J.TEDFORD        CLINTON GEN
888.88 IPC
       42 D IPC CONFINE                          SERVICE DTES 03/24/05 05/05/05
-------------------------------------------------------------------------
TIER 2  INCIDENT: 03/13/05 01:13 PM  CO   C.JACOBS         WENDE
        HEARING : 03/15/05 10:01 AM  LT   WALTER           WENDE
        APPEAL  : 03/18/05 AFFIRMED  DSS  MONAHAN          WENDE
106.10 DIRECT ORDER     109.10 OUT OF PLACE     109.11 ASSIGNED AREA
109.12 MOVEMENT VIO.
        2 D KEEPLOCK    PHONE        PERSONAL TV SERVICE DTES 03/13/05 03/15/05
       28 D KEEPLOCK    PHONE        PERSONAL TV             SUSPD TO 06/13/05
-------------------------------------------------------------------------
TIER 2  INCIDENT: 02/01/05 03:50 PM  CO   R.JONES          WENDE
        HEARING : 02/04/05 01:25 PM  LT   WALTER           WENDE
        APPEAL  : 02/08/05 AFFIRMED  DSS  MONAHAN          WENDE
100.10 ASSAULT ON INMATE  100.13 FIGHTING
       30 D KEEPLOCK    PHONE        PERSONAL TV SERVICE DTES 02/01/05 03/03/05
-------------------------------------------------------------------------
TIER 2  INCIDENT: 11/04/03 10:00 AM  CO   PROKOPEC         ELMIRA RECEP
        HEARING : 11/11/03 10:06 AM  LT   SMITH            ELMIRA RECEP
```

NOTE: ONLY COMPLETED HEARINGS ARE SHOWN

--------------------------------------------------------------------------------
```
      APPEAL  : 11/21/03 AFFIRMED  CAPT  WHITMORE         ELMIRA RECEP
109.15 REFUSE DBL CELLNG
      30 D KEEPLOCK     COMMISSARY   PHONE      SERVICE DTES 11/04/03 12/04/03
```
--------------------------------------------------------------------------------

NOTE: ONLY COMPLETED HEARINGS ARE SHOWN

***SUCCESSFUL PRINT COMPLETION***

CHRONOLOGICAL HISTORY DISPLAY
07 SING SING GN

DIN 03B2443    NYSID 06665381K    FACILITY SING SING GN    LOCATION 0B-WS-22S
NAME GUNN, DARRELL                      DOB ▉▉▉▉▉▉▉  SEX M    E/R NB

| EFFECTIVE<br>DATE | DATE<br>ENTERED | SENDING<br>FACILITY | RECEIVING FAC/<br>OUTCOUNT LOCATION | TRANSACTION<br>TYPE | CELL |
|---|---|---|---|---|---|
| 10/10/03 | 10/10/03 |  | ELMIRA RECEP | NEW COMMIT | 0B-06-03S |
| 11/24/03 | 11/24/03 | ELMIRA RECEP | WENDE | TRANSFER OUT | 0A-06-43S |
| 11/24/03 | 11/24/03 | ELMIRA RECEP | AUBURN DEPOT | INTRANS RECV | 0D-08-27B |
| 11/25/03 | 11/25/03 | AUBURN DEPOT | WENDE | INTRANS SENT | 0D-08-27B |
| 11/25/03 | 11/25/03 | ELMIRA RECEP | WENDE | TRANSFER IN | 0B-07-15S |
| 05/03/05 | 05/03/05 | WENDE | CLINTON GEN | TRANSFER OUT | 0E-26-003 |
| 05/03/05 | 05/03/05 | WENDE | AUBURN DEPOT | INTRANS RECV | 0D-08-05T |
| 05/04/05 | 05/04/05 | AUBURN DEPOT | CLINTON GEN | INTRANS SENT | 0D-08-05T |
| 05/04/05 | 05/04/05 | AUBURN DEPOT | DWNSTATE REC | INTRANS RECV | 01-0F-001 |
| 05/05/05 | 05/05/05 | DWNSTATE REC | CLINTON GEN | INTRANS SENT | 01-0F-001 |
| 05/05/05 | 05/05/05 | WENDE | CLINTON GEN | TRANSFER IN | LF-03-040 |
| 04/16/10 | 04/16/10 | CLINTON GEN | UPSTATE SC | TRANSFER OUT | SH-UU-009 |
| 04/16/10 | 04/16/10 | CLINTON GEN | UPSTATE SC | TRANSFER IN | 08-A1-19B |
| 01/24/11 | 01/24/11 | UPSTATE SC | GRT MEAD GEN | TRANSFER OUT | 08-A2-44B |
| 01/24/11 | 01/24/11 | UPSTATE SC | DWNSTATE REC | INTRANS RECV | 02-0G-015 |
| 01/25/11 | 01/25/11 | DWNSTATE REC | GRT MEAD GEN | INTRANS SENT | 02-0G-015 |
| 01/25/11 | 01/25/11 | UPSTATE SC | GRT MEAD GEN | TRANSFER IN | 0E-08-16S |
| 10/14/11 | 10/14/11 | GRT MEAD GEN | ONONDAGA | COURT TRIP | 0C-3E-32S |
| 10/25/11 | 10/25/11 |  | GRT MEAD GEN | OUTCOUNT RET | 0E-08-06S |
| 03/23/12 | 03/23/12 | GRT MEAD GEN | ELMIRA GENER | TRANSFER OUT | 0C-4E-17S |
| 03/23/12 | 03/23/12 | GRT MEAD GEN | DWNSTATE REC | INTRANS RECV | 02-0B-031 |
| 04/03/12 | 04/03/12 | DWNSTATE REC | ELMIRA GENER | INTRANS SENT | 02-0B-031 |
| 04/03/12 | 04/03/12 | GRT MEAD GEN | ELMIRA GENER | TRANSFER IN | 0C-03-06S |
| 06/17/14 | 06/17/14 | ELMIRA GENER | GRN HAVN GEN | TRANSFER OUT | 0C-01-05S |
| 06/17/14 | 06/17/14 | ELMIRA GENER | GRN HAVN GEN | TRANSFER IN | 0H-11-20S |
| 06/03/17 | 06/03/17 | GRN HAVN GEN | DWNSTATE REC | INTRANS SENT | 0E-22-30S |
| 06/03/17 | 06/03/17 | GRN HAVN GEN | DWNSTATE REC | INTRANS RECV | 01-0D-023 |
| 06/05/17 | 06/05/17 | DWNSTATE REC | GRN HAVN GEN | INTRANS SENT | 01-0D-023 |
| 06/05/17 | 06/05/17 | DWNSTATE REC | GRN HAVN GEN | INTRANS RECV | 0E-22-30S |
| 10/18/17 | 10/18/17 | GRN HAVN GEN | 1061 | OUTSIDE HOSP | HS-IO-D01 |
| 10/20/17 | 10/20/17 |  | GRN HAVN GEN | OUTCOUNT RET | HS-IO-E01 |
| 09/10/18 | 09/10/18 | GRN HAVN GEN | 1061 | OUTSIDE HOSP | HS-IO-C01 |
| 09/12/18 | 09/12/18 |  | GRN HAVN GEN | OUTCOUNT RET | HS-IO-F01 |
| 09/30/18 | 09/30/18 | GRN HAVN GEN | 0752 | OUTSIDE HOSP | HS-IO-F01 |
| 10/01/18 | 10/01/18 |  | GRN HAVN GEN | OUTCOUNT RET | HS-IO-F01 |
| 08/30/19 | 08/30/19 | GRN HAVN GEN | SING SING GN | TRANSFER OUT | 0E-22-30S |
| 08/30/19 | 08/30/19 | GRN HAVN GEN | SING SING GN | TRANSFER IN | 0B-SS-15S |

NOTE: THIS REPORT WAS RECONSTRUCTED USING HISTORICAL INMATE MOVEMENT DATA FROM
      COMPUTER RECORDS, AND IS ONLY AS ACCURATE AS IT WAS MAINTAINED BY THE
      FACILITY FOR THIS TIME PERIOD.

# EXHIBIT 14

_Elmira_ **Correctional Facility**

# INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| GUNN DARRELL | 03B2443 | G-5-20 |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| FIELD HOUSE ENTRANCE | 7-26-13 | APROX 1545 |

**3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES**

102.10 THREATS TOWARDS STAFF
106.10 FAILURE TO FOLLOW ORDER

**4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE**

ON THE ABOVE DATE AND APROX TIME INMATE GUNN, DARRELL 03B2443 (G-5-20) WAS SELECTED FOR A RANDOM PAT FRISK ENTERING THE BALL PARK. INMATE CLEARED THE FRISK WITHOUT INCIDENT. AFTER THE PAT FRISK INMATE BEGAN TO STARE AT THIS OFFICER IN AN AGRESSIVE MANNER. INMATE WAS ORDERED TO PROCEED TO THE BALL PARK. INMATE BEGAN MAKING VERBAL THREATS TOWARDS THIS OFFICER. INMATE STATED, "I WILL HAVE YOUR JOB" INMATE ALSO THEN STATED, "JUST WAIT TILL YOU SEE ME AGAIN". INMATE WAS ORDERED TO RETURN TO HIS CELL DUE TO HIS DISRUPTIVE BEHAVIOR. INMATE COMPLIED WITHOUT FURTHER INCIDENT.

**EXHIBIT**
**11**
PENGAD 800-631-6989
200526HMG

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 7-26-13 | B SCHIEBER | | CO |

**5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)     SIGNATURES:**

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)     FIRMAS:     1. _____

2. _____     3. _____

**NOTE: Fold back Page 2 on dotted line before completing below.**

| 6. WERE OTHER INMATES INVOLVED? | YES ☐ | NO ☒ | IF YES, GIVE NAME & # _____ |
|---|---|---|---|
| ¿HUBO OTROS RECLUSOS ENVUELTOS? | SÍ ☐ | NO ☐ | DE SER SÍ DÉ LOS NOMBRES Y DIN |

7. AT THE TIME OF THIS INCIDENT, WAS INMATE UNDER PRIOR CONFINEMENT/RESTRICTION?     YES ☐     NO ☒
¿ESTUVO EL RECLUSO CONFINADO/RESTRINGIDO PREVIO AL INCIDENTE?     SÍ ☐     NO ☐     OR ♦ O

AS A RESULT OF THIS INCIDENT, WAS INMATE CONFINED/RESTRICTED?     YES ☐     NO ☐
¿SE CONFINÓ/RESTRINGÓ AL RECLUSO COMO RESUTADO DE ESTE INCIDENTE?     SÍ ☐     NO ☐

8. WAS INMATE MOVED AT ANOTHER HOUSING UNIT?     YES ☐     NO ☒
¿MUDARON AL RECLUSO A OTRA UNIDAD DE VIVIENDA?     SÍ ☐     NO ☐

IF YES, (a) CURRENT HOUSING UNIT _____     (b) AUTHORIZED BY _____
DER SER SÍ, (a) UNIDAD DE VIVIENDA ACTUAL _____     (b) AUTORIZADO POR _____

9. WAS PHYSICAL FORCE USED?     YES ☐     NO ☒     (IF YES, FILE FORM 2104) _____
¿SE USÓ FUERZA FISICA?     SÍ ☐     NO ☐     (DER SER SÍ, SOMETA EL FORMULARIO No. 2104) _____

AREA SUPERVISOR ENDORSEMENT _____
ENDOSO DEL SUPERVISOR DEL ÁREA

Distribution: WHITE - Disciplinary Office     CANARY - Inmate (After review) ♦ Distribución: BLANCA - Oficina Discipliaria     AMARILLA - Recluso (después de la resión)

## ACCEPTANCE OF TIER II MISBEHAVIOR REPORT

INMATE NAME _Gunn, D._          DIN _0382443_

INCIDENT DATE _7-26-13_

I received a copy of a Tier II Misbehavior Report on this date.

(✓) I DID RECEIVE A COPY OF MY REPORT, NUMBER OF PAGES _1_

INMATE SIGNATURE _____  DATE _7-27-13_

OFFICERS SIGNATURE _____  DATE _7-27-13_

WITNESS SIGNATURE _____  DATE _____
(INMATE REFUSED TO SIGN)

```
MESSAGE ID: 011135AAA   DATE: 08/13/13  TIME: 11:32am  PRIORITY: 000

TO:          110DIS - Disciplinary (Tier 3)
             General Correspondence
             Elmira

FROM:        999SHU - Housing, Special
             General Correspondence
             Cen - Special Housing/Discip

SUBJECT:     Reply to 03B2443 GUNN
*** Sent by Alternate User "999SHUSML" for "999SHU" ***
*** Answer From:    110DIS - Disciplinary (Tier 3); 08/13/13 10:48am
*** Answer From:    999SHU - Housing, Special; 08/09/13 08:16am
*** Sent by Alternate User "999SHUOXR" for "999SHU" ***
*** Original Author: 110DIS - Disciplinary (Tier 3); 08/09/13 07:51am


          DISCIPLINARY HEARING EXTENSION REQUEST

FACILITY: ELMIRA       CONTACT: JC         DATE: 08 / 09 / 13

INMATE: GUNN, DARRELL           DIN: 03B2443

DATE OF REPORT: 07 / 26 / 13        TIER: 2
***********************************************************************
Inmate confined/restricted for this report?
          X YES   DATE: 07 / 26 / 13      PRIOR      NO
Has the hearing commenced?
          X YES    NO     DATE: 07 / 31 / 13
Reason(s) for extension request
   Sent to observation/special watch          Date:     /   /
   Sent to CNYPC/Satellite Facility           Date:     /   /
   Out to court                               Date:     /   /
   Outside/facility hospital                  Date:     /   /
   Transferred - Facility:                    Date:     /   /
X  Employee witness unavailable          Return Date: 08 / 12 / 13
   Requested assistant unavailable       Return Date:     /   /
   Hearing Officer unavailable           Return Date:     /   /
   Inmate/non-employee witness unavailable - Explain:


   Other - BE SPECIFIC:



Has there been a prior extension in this case?
      YES   X NO   EXT.NO.        DATE:     /   /
Other comments/explanations:



              END OF FORM

*** Comments From: 999SHU - Housing, Special; 08/09/13 08:16am
13-ER-2275. Granted to complete by 08/12/13. OR.
```

*** Comments From: 110DIS - Disciplinary (Tier 3); 08/13/13 10:47am
REQUEST AFTER HOURS EXTENSION TO COMPLETE 8/15/13 AS HEARING OFFICER
WAS UNAVAILABLE AND STAFF WAS UNAVAILABLE TO ENTER. EMPLOYEE WITNESS
IS ALSO UNAVAILABLE.

*** Comments From: 999SHU - Housing, Special; 08/13/13 11:31am
GRANTED TO COMPLETE BY 8/15/13. SL.

Sent to:      110DIS              Disciplinary (Tier 3)          (to)

### STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

### WITNESS INTERVIEW NOTICE (For Superintendent's & Disciplinary Hearings)

_ELMIRA_ _____ Correctional Facility

GUNN, DARRELL _____ 03B2443
Inmate Name (Print) _____ DIN#

An inmate may call witnesses on his or her behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals.

If permission to call a witness is denied, or if a requested witness testifies outside the presence of the inmate charged and/or if the inmate is not permitted to review the testimony of a witness, the reason for such determination must be recorded on this form and copies given to the inmate by the hearing officer and included in the hearing record.

Reference: Directive #4932, Sections 253.5 and 254.5.

C.O. B. SCHIEBER
**Requested witness:**
☐ Permission to call the requested witness is denied.
☒ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: 08-15-13 Explanation: WITNESS NOT ON DUTY, WITNESS TESTIFIED VIA SPEAKER PHONE. INMATE ALLOWED TO ASK WITNESS QUESTIONS OUTSIDE THE INMATE'S PRESENCE.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Requested witness:** _____
☐ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _____ Explanation: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Requested witness:** _____
☐ Permission to call the requested witness is denied.
☐ Requested witness will testify outside inmate's presence.
☐ Inmate is not permitted to review requested witness's testimony.

Date: _____ Explanation: _____

Signature _____ _____ 03-B-2443 08/15/13
Hearing Officer _____ Inmate _____ DIN ____ Date Received

Distribution: Original - Hearing Record   Copy - Inmate

REVIEW OFFICER  LT   R. WARNOCK
REVIEW DATE    07/27/13 TIER 2
C.R. DATE NONE    M.E. DATE LIFE

1) NAME GUNN, DARRELL          DIN    03B2443 LOCATION 0G-05-20S
2) INCIDENT DATE 07/26/13   INCIDENT TIME  03:45 PM
3) INMATE  WAS   CONFINED
4) INMATE WAS NOT   RELEASED AT REVIEW
5A) SERVING OFFICER C.O. D. Wenzel    SERVING DATE/TIME 7/27/13 8 20 AM
5B) RELEASED FROM PREHEARING CONFINEMENT? _____
    AUTHORIZED PERSON _____ N/A _____ DATE AUTHORIZED __/__/__
6) ASSISTANT NAME _____ N/A _____
7) INTERVIEW DATE __/__/__    INTERVIEW TIME __:__ __
8) EXTENSION NUMBER 13-ER-2275    (IF APPLICABLE)
9) IF APPLICABLE, CHECK REQUIRED DRUG TESTING FORMS PROVIDED TO INMATE
   PURSUANT TO DIRECTIVE 4937 OR 4938
      TEST REQUEST FORMS _____ TEST PROCEDURE FORMS _____
      TEST RESULT FORMS _____ APPENDIX C _____ OTHER (SPECIFY) _____
10) INMATE  IS   ENGLISH SPEAKING
    A) IF NOT, WERE CHARGES TRANSLATED AND SERVED TO INMATE? _____
    B) INTERPRETOR AT HEARING _____ N/A
11) HEARING BEGIN:DATE 7/31/13   TIME 12:25   END:DATE 8/15/13 TIME 1 50 pm
12) CHARGES: SPECIFY INMATE'S PLEA TO THE CHARGES CONSIDERED AT THE HEARING

| CHARGE NUMBER | DESCRIPTION OF CHARGES | REPORTED BY | INMATE'S PLEA |
|---|---|---|---|
| 106.10 | REFUSING DIRECT ORDER | CO B. SCHIEBER | NOT GUILTY |
| 102.10 | THREATS | CO B. SCHIEBER | NOT GUILTY |

SIGNATURE OF INMATE  Refused To Sign
        DATE 7/31/13    TIME 12:29
13) WITNESSES:  IF NONE REQUESTED, CHECK HERE _____
    A) REQUESTED BY INMATE         TESTIFIED      IN INMATE'S PRESENCE
       Sgt Collmer                 Y ✓ N___       Y ___ N___
       Co. B. Schieber             Y ___ N___     Y ___ N ✓
       _____             Y ___ N___     Y ___ N___
       _____             Y ___ N___     Y ___ N___
       _____             Y ___ N___     Y ___ N___
    B) REQUESTED BY HEARING OFFICER  TESTIFIED    IN INMATE'S PRESENCE
       _____             Y ___ N___     Y ___ N___
       _____NONE_____             Y ___ N___     Y ___ N___
       _____             Y ___ N___     Y ___ N___
       _____             Y ___ N___     Y ___ N___
       _____             Y ___ N___     Y ___ N___

*NOTE* IF ANY WITNESS IS DENIED OR IF A REQUESTED WITNESS TESTIFIES OUTSIDE THE
   PRESENCE OF THE INMATE CHARGED, AND/OR THE INMATE IS NOT PERMITTED TO
   REVIEW TESTIMONY OF SUCH WITNESS, FORM 2176 EXPLAINING THE REASON FOR THAT
   DETERMINATION MUST BE GIVEN TO THE INMATE AND INCLUDED AS PART OF THE RECORD.

HEARING OFFICER SIGNATURE: _____

DCP004                    DISCIPLINARY HEARING DISPOSITION RENDERED                    (6A)

                ELMIRA GENER        Thu              TAPE NUMBER *13-123*
                                    8/1
DIN: 03B2443 NAME: GUNN, DARRELL                     LOCATION: 0G-05-20S

INCIDENT DATE & TIME:        07/26/13    03:45 PM    TIER 2

REVIEW DATE:                 07/27/13        BY: LT   R. WARNOCK

DELIVERY DATE & TIME:    *7/27/13 8:20Am*   BY: *CO D. WENZEL*

HEARING START DATE & TIME: *7/31/13 12:25pm* BY: *Lt RBell*

HEARING END DATE & TIME:   *8/15/13 1:50pm*  BY: *Lt RBell*

DOES THIS MISCONDUCT MEET THE CRITERIA FOR WORKPLACE VIOLENCE? (Y)/ N
CHARGE
NUMBER      DESCRIPTION OF CHARGES              REPORTED BY          DISPOSITION

106.10     REFUSING DIRECT ORDER          CO   B. SCHIEBER              *GUILTY*
------     ------------------------------ ----  -------------------

102.10     THREATS                                                     *GUILTY*
------     ------------------------------


ANY GUILTY DISPOSITION WILL RESULT IN A MANDATORY DISCIPLINARY SURCHARGE IN THE
AMOUNT OF FIVE($5.00) DOLLARS BEING ASSESSED AUTOMATICALLY AGAINST THE INMATE.

PENALTY              PENALTY   START   RELEASE  SUSPEND  DEFERRED RESTITUTION
CODE     DESCRIPTION  MO (DAYS)  DATE    DATE    MO DAYS  MO DAYS   $$$$ . ¢¢

*B400*  ~~PRE-HEARING~~    *20*  *07/26/13* *08/15/13*  ——    ——
        *KEEPLOCK*
*B000*   *KEEPLOCK*      *30*  *08/15/13* *08/25/13*  *20*  *3mos*
*F000*   *COMMISSARY*     |       |         |         |       |
*G000*   *PHONES*         |       |         |         |       |
*E000*   *PACKAGES*       ↓       ↓         ↓         ↓       ↓

DIN: 03B2443    NAME: Gunn, Darrell    HEARING DATE: 8/15/13

A. <u>STATEMENT OF EVIDENCE RELIED UPON</u> :

The misbehavior report and testimony given by Sergeant Collmer and Officer Schieber. The testimony from the witnesses indicates to me that you did indeed make threats towards staff and failed to follow staff direction. Your numerous objections throughout the hearing were noted for the record. These actions as well as your interruptions and accusations during testimony make it apparent to this Hearing Officer that this was an attempt on your part to discredit the hearing and take control of the proceedings.

B. <u>REASON FOR DISPOSITION</u> :

This disposition is intended to act as a deterrent to you and other inmates against this type of behavior in the future. Your disciplinary record reveals a disturbing number of violations that indicate a disregard for authority and following rules and regulations. This disposition is intended to impress upon you the importance of following staff orders and obeying the rules and regulations of the department and this facility. This disposition is given as punishment and will serve as a warning to you that continued misbehavior of this type could result in more serious sanctions against you including, but not limited to, confinement to SHU and recommended loss of good time.

C. <u>SPECIAL INSTRUCTION ON VISITATION OR CORRESPONDENCE RESTRICTIONS, REFERALS OR SPECIAL EVENT LOSS</u> :

NONE

I HAVE RECIEVED A COPY OF THIS HEARING DISPOSITION DATED: <u>Thursday, August 15, 2013</u>

Lt RBall          / Refused To Sign    / 08/15/13
HEARING OFFICER SIGNATURE          INMATE SIGNATURE          DATE & TIME RECIEVED

YOU ARE HEREBY NOTIFIED OF THE FOLLOWING APPEAL PROCEDURES:

__X__    FOR TIER II HEARING-APPEAL TO <u>SUPERINTENDENT</u> WITHIN <u>72 HOURS</u>.

_____    FOR TIER III HEARING-APPEAL TO <u>COMMISSIONER</u> WITHIN <u>30 DAYS</u>.

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

# APPEAL FORM TO THE SUPERINTENDENT
## VIOLATION (TIER I) AND DISCIPLINARY HEARINGS (TIER II)*

RECEIVED

AUG 2 0 2008

Name: _DARRELL ____ _____ DIN# _____

ELMIRA CORR. & REC. CTR.
SUPERINTENDENT'S OFFICE

Housing Location __E-3-7__ _____ _ELMIRA_____ Correctional Facility_____

I wish to appeal my ☐ Tier I  ☒ Tier II  hearing completed on ___8/_____

## STATE SPECIFIC GROUNDS FOR APPEAL:

I am currently keeplock confinement as retaliation for reporting sexual abuse by a false misbehavior report written by C.O. who after he rubbed and touched my rectum with his hand and fingers trying to penetrate my rectum through my clothes. Consequently, I had a bowel movement soreness and abrasion to my rectum. I'm experiencing headaches, stomach pains, stomach cramps, stress, depression, and a mental anguish, and anger.

During the Pat frisk when C.O. Schroder told me to get my chin off the top he disobeyed his pen and nightstick. I looked at his name tag C. Schroder asked he said I was being in I started "down" he asked why? I said "you just touched my ankle, what is your name? he said Schroder and spelled it out S-c-h-r-e-d-e-r, he then told me to go back to my cell. The other C.O. standing there he told me "just be right." I went back to my cell. Before I arrived I reported the

*NOTE: Tier I appeals must be submitted within 24 hours of hearing.

Tier II appeals must be submitted within 72 hours of hearing.

sexual assault to prison guards standing at "center gate" All the [illegible]

## SUPERINTENDENT'S REPLY

Your appeal of the Tier _II_ Hearing conducted on ___8/5/8___ has been reviewed by me. The decision of the hearing officer is hereby:

☐ Affirmed   ☐ Reversed   ☐ Modified

I have been designated by Supt. Chappius under Title 7, NYCRR, Chapter V Section 253.8 to respond to your Tier II Appeal.

_____          _____
(Superintendent or Designee)                  (Date)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

## APPEAL FORM TO THE SUPERINTENDENT
## VIOLATION (TIER I) AND DISCIPLINARY HEARINGS (TIER II)*

Name: [illegible] DIN# [illegible]

Housing Location [illegible] [illegible] Correctional Facility

I wish to appeal my ☐ Tier I ☒ Tier II hearing completed on 8/5/13.

**STATE SPECIFIC GROUNDS FOR APPEAL:** [illegible] ... watch TV. This is [illegible] ... I locked in my cell. [illegible] ... I was not let out [illegible] ... on [illegible] 7/[illegible]/13 [illegible] would not allow [illegible] ... further [illegible] ... my way back to my cell [illegible] sexually harassed me for [illegible] sexual complaint by watching my buttocks while I walked back to my cell stating loud and [illegible], yelling "look at the ass, look at that ass" repeatedly, watching me as I made it back to my cell. I reported this to Sgt. Bynum? I received no response. Also

*NOTE: Tier I appeals must be submitted within 24 hours of hearing.
Tier II appeals must be submitted within 72 hours of hearing.

On 8/6/13, I was denied medical treatment again. I was not let out my [illegible]

continued on [illegible] paper

*******************************************************************************************

## SUPERINTENDENT'S REPLY

Your appeal of the Tier ___ Hearing conducted on ______________________ has been reviewed by me. The decision of the hearing officer is hereby:

☐ Affirmed ☐ Reversed ☐ Modified

_______________________________________ ____________________

(Superintendent or Designee) (Date)

For medical call-out for [pain]. On 8/7/13, Lt. Labulet
interviewed me at my cell, he told me "This guys ex-
acerbate." I asked why? The Lieutenant gave an in-
complete interview and incomplete investigation and without
cause without interviewing any inmate witness or c. Black.

Moreover, this appeal is to show cause the Hearing Officer
Lt. Gifford his participated in the investigation of sexual
assault and failure to protect me from sexual assaults. A
conflict of interest established in Title 7 NYCRR section
253.1, where Lt. Gifford previously told me, "do your time
like the [x] man" and "don't be wasting my time" as deliber[ate]
indifference. Contrary to prison policy, hearing officer at all
times must maintain an impartial attitude and exercise a
degree of patience and tolerance.

Thus, by virtue of the cumulative effect of the improper
conduct of hearing officer, i.e. adjotting the hearing for un-
known reason, interrupting me, incompetent, answering
questions for witness, failing to acknowledge all my objectio[ns]
punishing me contrary to correction law section 138, Hearing
officer admitted he was partial, hearing officer stating
C.O. Schieber put his hand in my pants I stated clearly C.O.
Schieber tried to penetrate my rectum through my clothes, wo[uld]
not allow the name of other prison guard witnesses, would[n't]
allow surveillance video tape of ball field or ball field entrance.

In addition, sergeant Collmer admitted he was in ball field, Sgt.
Collmer admitted his testimony was based on written this-
behavior report not as actually seeing the pat frisk. Thus, the
untruthfulness, Sgt. Collmer admitted was a witness. Never
signed the false misbehavior report per departmental directive 493

Furthermore, C.O. schieber did not answer the issue it my of
false misbehavior reports. C.O. Schieber did admit the false
misbehavior report was based on pat frisk, C.O. schieber
did not know the name of area supervisor on the day and
state of the false misbehavior report, C.O. schieber did repo[rt]

Hearing completed on 8/15/13 Elmira Correctional Facility
Continuation Page 6

Is not endorsed by employee witnesses per directive 4932.

I conclude, clearly, hearing tape substantiates evidence,
the lying and cover-up for the sexual assault and area
supervision by Sgt. Collmer out in the ball field enjoying the day
neglecting his duty.

The video tape was not allowed to show the lies of Sgt. Col.
C.O. Schieber, and Lt. Ballard combined. Moreover, there is
no such thing as a random pat frisk per departmental
directive # 4910.

Accordingly, dismiss this false misbehavior report and protect
me from sexual assaults, sexual abuse, and sexual
harassment inflicted upon me by prison guards.

Struggling,

Darrell Dunn 030244

# EXHIBIT 15

| | Grievance Number<br>EL-42205-14 | Desig./Code<br>I/49 | Date Filed<br>2/11/14 |
|---|---|---|---|
| **STATE OF NEW YORK<br>DEPARTMENT OF<br>CORRECTIONS AND<br>COMMUNITY<br>SUPERVISION** | Associated Cases | | |
| | Facility<br>Elmira Correctional Facility | | |
| **INMATE GRIEVANCE PROGRAM**<br>**CENTRAL OFFICE REVIEW COMMITTEE** | Title of Grievance<br>Discriminating Slurs/Actions | | |

7/30/14

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that the facility administration has conducted a proper investigation, and that CO S... denies sexually abusing the grievant or being unprofessional on 2/10/14. Further, CORC notes that this matter was properly reviewed for an investigation by the IG SCU. The grievant may write to IG for any information regarding his complaint. Contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff.

CORC asserts that there is no provision in Department policy for an inmate to request a separation from staff.

CORC notes that Directive #4040, Section 701.1, states, in part, that the grievance program is not intended to support an adversary process and Section 701.6 (b) states, in part, that no reprisals of any kind shall be taken against an inmate or employee for good faith utilization of this grievance procedure. An inmate may pursue a complaint that a reprisal occurred through the grievance mechanism.

With respect to the grievant's appeal, CORC notes that it is the responsibility of the grievant to contact an advisor and he must be willing to accept the role of an advisor. Further, CORC advises him to address any further concerns to an area supervisor at the time of incident.

JAD/tll/amb



EXHIBIT
16
2005 26 hma

This document has been electronically signed by Jeffery A. Hale

000001

# CASE HISTORY AND RECORDS
# ELMIRA CORRECTIONAL FACILITY

Grievance No.:            EL-42-205-14 √

Name:                     **03-B-2443    GUNN, D.**

Title:                    DISCRIMINATING SLURS/ACTIONS

Code:                     49X

Designation:              INSTITUTIONAL

Date Filed:               2/11/2014

IGRC Date:

Supt. Date:               2/20/2014

Appeal Date:              4/18/2014

Investigation:            _____

IGRC Invest. Date:        _____

Facility Policy No.:      _____

Capt. Date:               DSS 2-19-14

Supv. Date:               LT. 2-14-14

Employee Info:            CO 2-15-14

Other:                    _____

Prior CORC No.:           _____

Office Of Diversity Mgt.: _____

IGP Supervisor's Signature: B. Ahm̄g

NYS DEPT OF
CORRECTIONS AND
COMMUNITY SUPERVISION

APR 2 2 2014

RECEIVED
INMATE GRIEVANCE

# CASE HISTORY AND RECORDS
# ELMIRA CORRECTIONAL FACILITY

| | |
|---|---|
| Grievant's DIN and Name: | **03-B-2443   GUNN, D.** |
| Grievance No.: | EL-42-205-14 |
| Title: | DISCRIMINATING SLURS/ACTIONS |
| Code: | 49.2 |
| Date Filed: | 2/11/2014 |

**Grievance:**
Grievance was filed on 2/11/14, wherein grievant has cited Paul Chappius, Jr., Superintendent of Elmira Correctional Facility (ECF), with obstruction of justice. For willfully and knowingly choosing to cover-up and or deny grievance complaint of sexual and verbal harassment filed by grievant against facility staff (C.O. Schieber). While at the same time supporting and condoning these same actions that are being committed. Grievant asserts that all alleged allegations of sexual and verbal harassment and or sexual explicit words/suggestions with homosexual content are in fact true and should not be discarded due to investigation by facility staff investigating facility staff. Grievant further, asserts that an investigation by conducted by NYS State Police and not by facility staff.

**Action Requested:**
Disciplinary actions be forthcoming against C.O. Schieber, that no contact be allowed between C.O. Schieber and grievant and that a full investigation be conducted by I.G. and NYS State Police against C.O. Schieber for sexual and verbal harassment.

**IGRC Recommendation:**
N/A Per Directive 4040 P/T to Supt. forreview and response.

**Supt. Response:**
GRIEVANT CLAIMS ALLEGATIONS OF DISCRIMINATING SLURS AND ACTIONS BY AN OFFICER.
CO S...DENIES THESE ALLEGATIONS.
INTERVIEWS WERE CONDUCTED AND WRITTEN STATEMENTS WERE SOLICITED AND ATTACHED.
IN CONCLUSION, THE INVESTIGATION HAS REVEALED NO EVIDENCE THAT THE ALLEGED BEHAVIOR OCCURRED.
GRIEVANCE IS DENIED.

**Appeal:**
Grievant is appealing determination rendered by Superintendent, on the grounds that grievant believes that in order to deny the existence of any impropriety on the part of staff, the Superintendent has chose to cover up all alleged actions of sexual and verbal harassment by stating that no evidence was found to support said allegations. Grievant asserts that he has experienced acts of retaliation from C.O. Schieber for filing grievances. Finally, grievant states that when he informed Lt. Ballard, that he wished to filed charges against C.O. Schieber for sexual and verbal harassment he was told "no" by Lt. Ballard.

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES
**INMATE GRIEVANCE COMPLAINT**



**DISCRIMINATING SLURS/ACTIONS**

| Grievance No. |
| --- |
| **EC42205-14** |

**ELMIRA** _____ CORRECTIONAL FACILITY

Date **February 10, 2014**

Name **DARRELL GUNN** Dept. No. **03-B-2443** Housing Unit **C-1-5**

Program _____ AM _____ PM

*(Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident)**

Description of Problem: (Please make as brief as possible) Superintendent Paul Chappius, Jr. has created and/or allowed a policy condoning C.O. Schieber to sexual assault, sexual abuse, and sexual harass, and retaliate against me. On 2/10/14, C.O. Schieber came to my cell approx. 3:15 p.m. and waved at me in a homosexual advancement way. Thereafter, returning from recreation run C.O. Schieber blows me a kiss into my cell. Soon later while I existed mess hall C.O. Schieber called me a "faggot." C.O. Schieber's repeated homosexual idiosyncrasies towards me is weighing on me causing needless physical and mental injuries combined.

Grievant
Signature *Darrell G*

Grievance Clerk _____ Date: _____

Advisor Requested ☒ YES ☐ NO Who: Singleton and/or Webb

Action requested by inmate: Disciplinary action for C.O. Schieber; No contact with C.O. Schieber; receive sexual abuse counseling; Inspector General investigation; Free me from sexual abuse and retaliation.

This Grievance has been informally resolved as follows:

_____

_____

_____

_____

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant
Signature _____ Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).

*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

| STATE OF NEW YORK DEPARTMENT OF CORRECTIONAL SERVICES | Grievance No. EL42-205-14 | | Date Filed 2/11/14 |
|---|---|---|---|
| | Facility ELMIRA CORRECTIONAL FACILITY | | Policy Designation I |
| INMATE GRIEVANCE PROGRAM | Title of Grievance DISCRIMINATING SLURS/ACTIONS | | Class Code 49.2 |
| SUPERINTENDENT | Superintendent's Signature | | Date 2/20/14 |
| Grievant GUNN, D | Din 03B2443 | | Housing Unit C1-5 |

GRIEVANT CLAIMS ALLEGATIONS OF DISCRIMINATING SLURS AND ACTIONS BY AN OFFICER.
CO S...DENIES THESE ALLEGATIONS.
   INTERVIEWS WERE CONDUCTED AND WRITTEN STATEMENTS WERE SOLICITED AND
ATTACHED.
   IN CONCLUSION, THE INVESTIGATION HAS REVEALED NO EVIDENCE THAT THE ALLEGED
BEHAVIOR OCCURRED.
   GRIEVANCE IS DENIED.

Received on 4/7/14 from IGRC office in person.

**APPEAL STATEMENT**

If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal.* Please state why you are appealing this decision to C.O.R.C.     WRITTEN ON SEPARATE

PAPER FOR LACK OF SPACE. Three (3) pages.

_Garrett J_
Grievant's Signature

4/10/14
Date

Grievance Clerk's Signature

4/14/14
Date

* An exception to the time limit may be requested under Directive # 4040, Section 701.6(g).

000006

DARRELL GUNN 03-B-2443
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902-0500
April 10, 2014


TO: Central Office Review Committee

RE: Grievance Number EL42-163-14
    DISCRIMINATING SLURS/ACTIONS
    Appeal Statement


Dear C.O.R.C.:


        I am being sexually assaulted,
sexually abused, and sexually harassed, among
other things, retaliated against and tormented
by prison guards and prison officials combined.

1

In fact, Mr. Chappius, Jr., Superintendent is deliberately condoning and promoting this pattern of official misconduct, intentional misconduct, and deliberate indifference causing me serious risk to harm. Here, I am suffering serious physical injury and mental injury, alike.

More than this, Superintendent's decision is arbitrary and capricious and a conflict of interest; for the following reasons listed below:

1) grievant received no advisor during grievance complaint investigation interview conducted by Lieutenant Ballard, in which, Lt. Ballard asked: "do you have anything to add?"

I responded, "yes", "I would like IGRC representative as an advisor."

My request was denied resoundingly "No" by Lt. Ballard. In effect, contrary per directive # 4040 section 701.2 (h) and 701.6 (a).

2

2) Grievant knows C.O. Schieber will retaliate against him.

3) C.O. Schieber has retaliated against grievant.

4) C.O. Schieber did retaliate against grievant for speaking with Inspector General.

5) Grievant is in fear of other prison guards who will retaliate against me on behalf of C.O. Schieber. They are part of an insidious "Brotherhood."

6) This grievance complaint basis is on Mr. Chappius, Jr., Supt. actions and inactions. Thus, his decision in in direct conflict of interest for contention.

In conclusion, for the reasons within grievance complaint and above grievant prays that that C.O.R.C. invoke his prisoner and constitutional rights combined, and grant this grievance in full.

Struggling,

DARRELL GUNN

3



STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
*ELMIRA CORRECTIONAL FACILITY*

OFFICE OF
DEPUTY SUPERINTENDENT FOR SECURITY

*Memorandum*

| | |
|---|---|
| **TO:** | **Paul Chappius, Jr., Superintendent** |
| **FROM:** | Paul Piccolo, DSS |
| **DATE:** | **February 19, 2014** |
| **SUBJECT:** | **GRIEVANCE EL 42-205-14**<br>**Inmate Gunn, Darrell (03B2443)** |

Supt. Chappius,

I have completed my review of the investigation into the above referenced matter and am prepared to respond with the following:

On 02/14/14, Lt. Ballard interviewed the grievant at his cell on C Block flats regarding his allegations discriminating slurs and actions by CO Schieber. Grievant was asked about the allegations in complaint and grievant refused to answer. Grievant was asked if he had any witnesses to the allegations. Grievant replied NO and had nothing further to add. CO Schieber was interviewed via phone and provided written statement denying the allegations upon his return to work 2/15/14.

Based on the investigation, I find that the information reported and supporting documentation to this matter is appropriate and no evidence is present to suggest staff malfeasance.

Paul Piccolo
Deputy Superintendent for Security Services

PTP:lmw
Attachment
cc:     Inmate File Gunn, Darrell (03B2443)

**RECEIVED**

**FEB 2 0 2014**

ELMIRA CORR. & REC. CTR.
SUPERINTENDENT'S OFFICE

1

000011



STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS & COMMUNITY SUPERVISION
**ELMIRA CORRECTIONAL FACILITY**
P.O. BOX 500
ELMIRA, NEW YORK 14902
607-734-3901



ANTHONY J. ANNUCCI
ACTING COMMISSIONER

P. CHAPPIUS
SUPERINTENDENT

**TO:**      Supt. P. Chappius

**FROM:**    Lt. R.J. Ballard

**DATE:**     02-14-14

**SUBJECT:**   Grievance # EL-42-205-14 - Inmate D. Gunn 03B2443

Sir,

     Per your direction, I conducted the investigation into the Grievance authored by Inmate Gunn 03B2443. Officer Schieber is the staff member mentioned in the complaint. He is currently on his scheduled days off. I did contact him on today's date, via telephone, and interviewed him as to the allegations in the complaint. As to the allegation that he went to the inmate's cell on 02/10/14 and waived at him in a homosexual advancement way, he denied doing that in any manner. As to the allegation that when returning from the recreation run that he blew a kiss into the inmate's cell, Officer Schieber denied any doing of that. As to the allegation that when the inmate was exiting the messhall, Officer Schieber called the inmate a faggot, Officer Schieber denied doing this as well. I then informed Officer Schieber that upon his return to duty, he is to author a written statement, answering the allegations, as well. He informed me that he would do so.

     I also interviewed Inmate Gunn 03B2443 on today's date at 7:20pm. I first showed him the Grievance and asked him to verify that he had authored the complaint. He informed me that he did. I questioned him as to the allegations in the complaint. He refused to make a statement. I then questioned him if he had any witnesses to any of the allegations. He replied, "No." I then asked him what he feels the officer did wrong in regards to him. He replied, "I don't recall." He then stated he was done talking. I then ended the interview.

     Based on my telephone conversation with Officer Schieber, and the inmate's refusal to cooperate with my investigation, and his lack of witnesses to any wrong doing by the officer, I find no merit in his complaint.

Respectfully Submitted,

Lt. R.J. Ballard

RECEIVED
FEB 18 2014
ELMIRA CORR. & REC. CTR
DEPT. SUPERINTENDENT

000012

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## MEMORANDUM

TO: _Supt P. Chappius_                                    DATE: _2-15-14_

FROM: _CO B. Schieber_

SUBJECT: _Grievance # EL-42-205-14  Gunn, D 03B2443 C-1-S_

_Sir,_

_At no time have I ever sexually assaulted, sexually abused, sexually harrassed, or retaliated against inmate Gunn, D 03B2443 C-1-S. On 2-10-14 I waved at a total of zero inmates. Furthermore I am unsure how to accomplish a wave in a "homosexual advancement way" as stated by the inmate. On 2-10-14 I did not blow any kisses toward this inmate, or any inmate for that matter. I did not call this inmate a "faggot" nor do I have any homosexual "idiosyncrasies" that I am aware of. Any and all accidental contact with this inmate have been within department guidelines and absolutely professional in nature._

_Respectfully submitted_

_CO B. Schieber_

**RECEIVED**

FEB 18 2014

ELMIRA CORR. & REC. CTR.
SUPERINTENDENT'S OFFICE

FORM 1016A (7/11)

000013



STATE OF NEW YORK

## DEPARTMENT OF CORRECTIONS
## AND COMMUNITY SUPERVISION

### Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902
807-734-3901

INMATE GRIEVANCE PROGRAM
# PREA GRIEVANCE

TO:     WATCH COMMANDER/DEPUTY SUPERINTENDENT SECURITY

FROM:     B. ABRUNZO, IGPS

DATE:     7/21/14

GRIEVANCE #     EL-42205-14_____

PURSUANT TO DIRECTIVE 4027A/4028A, SEXUAL ABUSE PREVENTION AND INTERVENTION STAFF ON INMATE, SECTION V-B-2: ANY EMPLOYEE WHO RECIEVES A REPORT OF SEXUAL ABUSE, SEXUAL THREATS, OR STAFF VOYEURISM SHALL IMMEDIATELY NOTIFY THE WATCH COMMANDER.

NAME: GUNN, D.          DIN: 03B2443          LOCATION: C1-5

HAS FILED THE ATTACHED SEXUAL ABUSE/SEXUAL THREATS/STAFF VOYEURISM GRIEVANCE WITH THE INMATE GRIEVANCE PROGRAM. AN INVESTIGATION AND RESPONSE IS REQUIRED WITHIN (12) TWELVE WORKING DAYS FROM THE DATE THIS GRIEVANCE WAS FILED. PLEASE ADDRESS THE GRIEVANT'S ALLEGATIONS AND SUPPLY ALL SUPPORTING DOCUMENTATION. **THE EMPLOYEE(S) WHOM THE THIS GRIEVANCE IS AGAINST SHALL SUPPLY WRITTEN DOCUMENTATION TO THE WATCH COMMANDER'S OFFICE.**

000014

**Dennis, Julie A (DOCCS)**

| | |
|---|---|
| **From:** | Donnelly, Lynnell C (DOCCS) |
| **Sent:** | Monday, July 21, 2014 4:02 PM |
| **To:** | Dennis, Julie A (DOCCS) |
| **Cc:** | Abrunzo, William J (DOCCS ONLY); Piccolo, Paul T (DOCCS) |
| **Subject:** | GUNN, DARRELL 03B2443 |

Per your request, please find the PREA log numbers with reference to the above.

Gunn, Darrell 03B2443   EL42-163-14   **PREA# 2014-12** DOI: 2/4/14   Verbal Harassment
Gunn, Darrell 03B2443   EL42-205-14   **PREA# 2014-13** DOI: 2/10/14   Discriminating Slurs/Actions

Thank you.

*Lynnell Donnelly, Secretary 1*
*Elmira Correctional Facility*
*lynnell.donnelly @doccs.ny.gov*
*607-734-3901 ext. 5020*

1

000015



## DEPARTMENT OF CORRECTIONS
## AND COMMUNITY SUPERVISION

**ANTHONY J. ANNUCCI**
ACTING COMMISSIONER

THE HARRIMAN STATE CAMPUS - BUILDING 2

1220 WASHINGTON AVENUE

ALBANY, N.Y. 12226-2050

### MEMORANDUM

TO:     Inspector General's Office

FROM:   Karen Bellamy, Director, Inmate Grievance Program

DATE:   July 30, 2014

SUBJ:   CORC Decision: EL-42205-14

The attached decision is forwarded to you for **information**.

CORC notes that the grievant, D. Gunn, #03-B-2443, has filed a grievance alleging sexual harassment that was documented in the facility PREA log under #2014-13 and referred to your office. A copy of this grievance is being forwarded for whatever action is deemed appropriate.

KRB/tll
Attachment

cc:     Grievance File - EL-42205-14
        Paul Chappius, Superintendent, Elmira Correctional Facility
        Bill Abrunzo, IGP Supervisor, Elmira Correctional Facility

# ELMIRA CORRECTIONAL AND RECEPTION CENTER
## GRIEVANCE OFFICE

STATE OF NEW YORK

COUNTY OF CHEMUNG

I, M. O'Dell, being duly sworn, depose and say: I am an Inmate Grievance Supervisor at the Elmira Correctional and Reception Center, and further state that attached is a Certified Copy of the Grievance(s): EL 40666-13; 40672-13; 40777-13; 40798-13; 40800-13; 40801-13; 40802-13; 40803-13; 40837-13; 40868-13; 40880-13; 40954-13; 41072-13; 41105-13; 41106-13; 41247-13; 41887-13; 42163-14; 42205-14; 42366-14; 42451-14 for inmate GUNN, D. 03B2443

And that I have compared the foregoing and attached copy with the said original now on file and/ or generated from the Department of Corrections Computer System in my office and it thereof contains a true and correct transcript and copy of said original and/or computer generated record and grievance copy as of this date, kept in the normal course of business at the Elmira Correctional and Reception Center.

_Misty L O'Dell_
Signature

Misty L. O'Dell
Name

Inmate Grievance Supervisor
Title

ERIN E. O'BRIEN
NOTARY PUBLIC, STATE OF NEW YORK
CHEMUNG COUNTY, NO 01O6232032
COMMISSION EXPIRES DECEMBER 31, 20___

Sworn to before me,
this 9th day of November 2017.

_Erin EO'Brien_
NOTARY PUBLIC

# EXHIBIT 16



EXHIBIT
24
200722hmp
PENGAD 800-631-6989



**NEW YORK STATE
DEPARTMENT OF CORRECTIONS &
COMMUNITY SUPERVISION
INSPECTOR GENERAL'S OFFICE
REPORT OF INTERVIEW**

NAME: Gunn Darrell          I.G. CASE#: IAD/14/0134

IDENTIFICATION: State          SS# or DIN#: 03B2443

DATE: 2/4/14 TIME: 2:10 pm          LOCATION: ECF

SENIOR INVESTIGATOR: James Lovelace

I have been here for 2yrs. On 1/4/14
it was around 7:30 pm in the medical
corridor, I saw CO Schieber be an
aggressive at first on inmate Green.
I saw CO Schieber reach and feel
inmate Green's groin area and thigh.
Inmate Green was fully clothed. I
went into revelation the last I
saw Green he was on the wall in
a frisk position. I know Green from
Clinton and here for about one month.
Prior to this at around 4:30 pm we
went to chow Green stayed back.
I heard Green had words with
Schiber over the windows being
open in C-1. I heard schieber
took Green into a room and
slapped Green up. On our way back
from chow, Sgt Santiago came
and ordered the windows closed

A porter closed the windows. I did not talk to Green, or see him after Ghad. Then we went to recreation. I did not see any injuries to Green. He never spoke about the incident over the windows. I did not see Green got assaulted. I only heard about it. I know Green got a ticket for this. I am not sure what the fight was for. After I went to recreation that was the last I saw of Green.

X Durrell

03-B-2443
DARRELL GUNN

# EXHIBIT 17



EXHIBIT
18
ROOS26hma

Department of Corrections and Community Supervision

Lindsey B. Chiboucas ▾ | ⚙ | ?



Inmate Grievance | Group Acknowledge | Committee Meeting | Index of Opinions | Help | Project Summary | Search

## Active Cases

☐ Count: 27

| Case Number | Grievant Last Name | Grievant DIN Number | Case Code | Title | Date Filed↑ | Received Date | Schd Date |
|---|---|---|---|---|---|---|---|
| GH-81558-15 | GUNN | 03B2443 | 36 - Inmate Accounts | Refund Fees | 12/11/2015 | 4/11/2016 | 10/25/2017 |
| GH-83126-16 | GUNN | 03B2443 | 41 - Legal Mail | Receive Legal Mail Timely | 5/31/2016 | 11/8/2016 | 10/25/2017 |
| GH-83672-16 | GUNN | 03B2443 | 22 - Medical | Provide Treatment | 8/1/2016 | 2/15/2017 | 8/8/2018 |
| GH-83827-16 | GUNN | 03B2443 | 30 - Package Room - #4911 | Receive Disallowed Items | 8/17/2016 | 1/18/2017 | 10/18/2017 |
| GH-83900-16 | GUNN | 03B2443 | 22 - Medical | Receive Treatment | 8/24/2016 | 2/15/2017 | 8/8/2018 |
| GH-83901-16 | GUNN | 03B2443 | 30 - Package Room - #4911 | List All Items In Package | 8/24/2016 | 1/13/2017 | 10/25/2017 |
| GH-63929-16 | GUNN | 03B2443 | 23 - Housing - Internal Block Affairs | Denied Sick Call | 8/29/2016 | 1/13/2017 | 10/25/2017 |
| GH-84010-16 | GUNN | 03B2443 | 22 - Medical | Denied Treatment | 9/6/2016 | 2/22/2017 | 8/8/2018 |
| GH-84011-16 | GUNN | 03B2443 | 22 - Medical | Denied MRI And Pain Medications | 9/6/2016 | 2/22/2017 | 8/8/2018 |
| GH-84089-16 | GUNN | 03B2443 | 23 - Housing - Internal Block Affairs | Denied Sick Call | 9/12/2016 | 2/3/2017 | 8/8/2018 |
| GH-84158-16 | GUNN | 03B2443 | 41 - Legal Mail | Process Within 24 Hours | 9/20/2016 | 2/22/2017 | 8/8/2018 |
| GH-84160-16 | GUNN | 03B2443 | 41 - Legal Mail | Legal Mail Processed | 9/20/2016 | 2/22/2017 | 8/8/2018 |
| GH-84225-16 | GUNN | 03B2443 | 22 - Medical | Denied Sick Call | 9/26/2016 | 2/22/2017 | 8/8/2018 |
| GH-64226-16 | GUNN | 03B2443 | 22 - Medical | Symptoms After Shots | 9/26/2016 | 3/10/2017 | 8/8/2018 |
| GH-84286-16 | GUNN | 03B2443 | 49 - Staff Conduct | Staff Misconduct | 10/3/2016 | 1/24/2017 | 11/1/2017 |
| GH-84287-16 | GUNN | 03B2443 | 22 - Medical | Denied Medical Treatment | 10/4/2016 | 2/22/2017 | 8/8/2018 |
| GH-84362-16 | GUNN | 03B2443 | 40 - Law Library | Denied Law Library | 10/5/2016 | 2/22/2017 | 8/8/2018 |
| GH-64489-16 | GUNN | 03B2443 | 44 - Inmate Grievance Program | Directive #4040 Violated | 10/8/2016 | 3/1/2017 | 8/8/2018 |
| GH-84428-16 | GUNN | 03B2443 | 41 - Legal Mail | Legal Mail Not Processed | 10/13/2016 | 5/9/2017 | 8/8/2018 |
| GH-84431-16 | GUNN | 03B2443 | 49 - Staff Conduct | Discrimination By Nurse | 10/13/2016 | 1/24/2017 | 11/1/2017 |
| GH-84456-16 | GUNN | 03B2443 | 40 - Law Library | Denied Law Library | 10/17/2016 | 5/9/2017 | 8/8/2018 |
| GH-84777-16 | GUNN | 03B2443 | 22 - Medical | Denied Pain Medication | 11/22/2016 | 5/9/2017 | 8/8/2018 |
| GH-85168-16 | GUNN | 03B2443 | 44 - Inmate Grievance Program | Grievance Investigation Of GH-84286-16 | 12/27/2016 | 5/31/2017 | 8/8/2018 |
| GH-85815-17 | GUNN | 03B2443 | 41 - Legal Mail | Legal Mail Disbursement Not Processed | 3/6/2017 | 7/21/2017 | 8/8/2018 |
| GH-85967-17 | GUNN | 03B2443 | 23 - Housing - Internal Block Affairs | Soap/Paper Towels In Medical Inmate Bathroom | 3/22/2017 | 9/1/2017 | 8/8/2018 |
| GH-86617-17 | GUNN | 03B2443 | 30 - Package Room - #4911 | Package Withheld | 5/25/2017 | 7/25/2017 | 8/8/2018 |
| GH-86981-17 | GUNN | 03B2443 | 49 - Staff Conduct | Threats/Property Damages | 7/6/2017 | 9/26/2017 | 8/8/2018 |

◇ Add new item

Department of Corrections and Community Supervision

Lindsey B. Chiboucas - | ⚙ | ?



| Inmate Grievance | Group Acknowledge | Committee Meeting | Index of Opinions | Help | Project Summary | Search Page | Search this site |

## Closed Cases

Count= 98

| Case Number | Grievant Last Name | Grievant DIN Number | Case Code | Title | Date Filed↑ | Received Date | Schd Date |
|---|---|---|---|---|---|---|---|
| WDE-21155-04 | GUNN | 03B2443 | 12 - Work Assignments | Receive Back Pay | 3/31/2004 | 6/17/2004 | |
| WDE-21557-04 | GUNN | 03B2443 | 03 - Correspondence | Neg. Correspondence | 6/17/2004 | 7/26/2004 | |
| WDE-22808-05 | GUNN | 03B2443 | 49 - Staff Conduct | Verbal Abuse / Retaliation | 3/16/2005 | 5/9/2005 | |
| WDE-22993-05 | GUNN | 03B2443 | 23 - Housing - Internal Block Affairs | Call-Outs From Block | 4/13/2005 | 6/27/2005 | |
| CL-54248-06 | GUNN | 03B2443 | 21 - Dental | Wants Cleaning | 12/4/2006 | 12/28/2006 | |
| CL-55114-07 | GUNN | 03B2443 | 22 - Medical | Inadequate Care By Doctor | 6/19/2007 | 7/16/2007 | |
| CL-55218-07 | GUNN | 03B2443 | 22 - Medical | High Liver Enzymes | 7/9/2007 | 8/24/2007 | |
| CL-56007-07 | GUNN | 03B2443 | 42 - Inmate Rights - Access/Courts/Counsel/Notary, etc. | Inmate Org. By-Laws | 11/5/2007 | 12/28/2007 | |
| CL-56313-08 | GUNN | 03B2443 | 03 - Correspondence | Team Photo-Minors Denied | 1/7/2008 | 3/7/2008 | |
| CL-56662-08 | GUNN | 03B2443 | 41 - Legal Mail | Pro Se Litigators Mail Not Privileged | 3/3/2008 | 4/18/2008 | |
| CL-56955-08 | GUNN | 03B2443 | 42 - Inmate Rights - Access/Courts/Counsel/Notary, etc. | Copies Of Reports In Library | 4/10/2008 | 7/9/2008 | |
| CL-57363-08 | GUNN | 03B2443 | 15 - Special Events/Inmate Organizations | Remove Suspension | 7/9/2008 | 8/11/2008 | |
| CL-58317-08 | GUNN | 03B2443 | 21 - Dental | Replace Partial | 12/15/2008 | 2/2/2009 | |
| CL-58875-09 | GUNN | 03B2443 | 49 - Staff Conduct | Power Shut Off | 4/8/2009 | 5/11/2009 | |
| CL-59759-10 | GUNN | 03B2443 | 12 - Work Assignments | Wants Back Pay For Raise | 3/22/2010 | 5/14/2010 | |
| CL-59758-10 | GUNN | 03B2443 | 29 - Inmate Property | Transfer Property | 3/22/2010 | 5/3/2010 | |
| CL-59773-10 | GUNN | 03B2443 | 49 - Staff Conduct | Assault/Property Confiscated | 3/29/2010 | 5/14/2010 | |
| CL-59776-10 | GUNN | 03B2443 | 37 - Mess Hall | Inadequate Portions | 4/1/2010 | 5/14/2010 | |
| CL-59783-10 | GUNN | 03B2443 | 24 - Special Housing Units | Rodents/Unsanitary Conditions | 4/6/2010 | 5/14/2010 | |
| CL-59788-10 | GUNN | 03B2443 | 29 - Inmate Property | Property Limits Unfair | 4/8/2010 | 5/14/2010 | |
| UST-42768-10 | GUNN | 03B2443 | 40 - Law Library | Not Receiving Requests | 6/1/2010 | 6/25/2010 | |
| UST-43118-10 | GUNN | 03B2443 | 40 - Law Library | Not Receiving Requests | 7/9/2010 | 8/16/2010 | |
| UST-43290-10 | GUNN | 03B2443 | 44 - Inmate Grievance Program | Grievance Program Does Not Work | 7/28/2010 | 11/15/2010 | |
| UST-43329-10 | GUNN | 03B2443 | 40 - Law Library | Receive Requested Material | 8/2/2010 | 8/31/2010 | |
| UST-43585-10 | GUNN | 03B2443 | 24 - Special Housing Units | Sleep Deprivation With Night Lights | 8/26/2010 | 9/27/2010 | |
| UST-43630-10 | GUNN | 03B2443 | 44 - Inmate Grievance Program | File Untimely Grievance | 9/1/2010 | 9/27/2010 | |
| UST-43683-10 | GUNN | 03B2443 | 49 - Staff Conduct | CO Denied Rec On Purpose | 9/7/2010 | 9/27/2010 | |
| UST-44222-10 | GUNN | 03B2443 | 07 - Recreation (TV,Yard,Movies,etc) | Radio Schedule Change | 11/3/2010 | 12/3/2010 | 1/26/2011 |
| UST-44286-10 | GUNN | 03B2443 | 22 - Medical | Wants Injury To Back Repaired | 11/8/2010 | 12/13/2010 | 1/26/2011 |
| UST-44369-10 | GUNN | 03B2443 | 42 - Inmate Rights - Access/Courts/Counsel/Notary, etc. | Denied ILC Minutes | 11/16/2010 | 12/10/2010 | 2/10/2011 |
| UST-44706-10 | GUNN | 03B2443 | 24 - Special Housing Units | CO Refused Stapler | 12/20/2010 | 1/14/2011 | 3/16/2011 |
| UST-44713-10 | GUNN | 03B2443 | 22 - Medical | Being Denied Medical Care | 12/20/2010 | 1/24/2011 | 3/23/2011 |
| UST-44905-11 | GUNN | 03B2443 | 07 - Recreation (TV,Yard,Movies,etc) | Radio Schedule Is Not Being Followed | 1/6/2011 | 2/14/2011 | 4/27/2011 |
| GM-51395-11 | GUNN | 03B2443 | 04 - Phone Home Program | Wants To Make Collect Call | 2/24/2011 | 4/7/2011 | 6/8/2011 |
| GM-51946-11 | GUNN | 03B2443 | 01 - Program Committee | Wants Meaningful Program | 5/9/2011 | 7/19/2011 | 9/14/2011 |
| GM-51957-11 | GUNN | 03B2443 | 07 - Recreation (TV,Yard,Movies,etc) | Follow TV Schedule | 5/12/2011 | 6/27/2011 | 8/24/2011 |
| GM-52055-11 | GUNN | 03B2443 | 23 - Housing - Internal Block Affairs | Denied Food And Medication | 5/23/2011 | 6/15/2011 | 10/19/2011 |
| GM-52399-11 | GUNN | 03B2443 | 49 - Staff Conduct | Harassment & Threatened By CO | 8/2/2011 | 10/19/2011 | 1/25/2012 |
| GM-52482-11 | GUNN | 03B2443 | 49 - Staff Conduct | Staff Conduct | 8/11/2011 | 9/16/2011 | 11/23/2011 |
| GM-52552-11 | GUNN | 03B2443 | 40 - Law Library | Wants Law Library Access | 8/29/2011 | 9/30/2011 | 12/14/2011 |
| GM-52655-11 | GUNN | 03B2443 | 42 - Inmate Rights - Access/Courts/Counsel/Notary, etc. | Denied Phone Conference With Family Court | 9/15/2011 | 11/25/2011 | 3/21/2012 |
| GM-52976-11 | GUNN | 03B2443 | 49 - Staff Conduct | Destroyed Papers | 11/28/2011 | 1/4/2012 | 4/18/2012 |
| GM-53322-12 | GUNN | 03B2443 | 22 - Medical | Wants Proper Treatment | 1/17/2012 | 3/2/2012 | 7/18/2012 |
| GM-53551-12 | GUNN | 03B2443 | 23 - Housing - Internal Block Affairs | Denied Thermal Underwear | 2/21/2012 | 4/27/2012 | 8/29/2012 |
| EL-39478-12 | GUNN | 03B2443 | 37 - Mess Hall | Keeplock Trays | 4/19/2012 | 5/18/2012 | 9/19/2012 |
| EL-39588-12 | GUNN | 03B2443 | 22 - Medical | Hurt In Fall/Lack Of Nutrition | 6/4/2012 | 7/23/2012 | 10/31/2012 |
| EL-39753-12 | GUNN | 03B2443 | 06 - Guidance Unit/Counseling | Change Phone List | 7/24/2012 | 9/24/2012 | 1/16/2013 |
| EL-40226-12 | GUNN | 03B2443 | 22 - Medical | Proper Treatment For Pain | 11/16/2012 | 12/24/2012 | 6/5/2013 |

| Case Number | Grievant Last Name | Grievant DIN Number | Case Code | Title | Date Filedt | Received Date | Schd Date |
|---|---|---|---|---|---|---|---|
| EL-40307-12 | GUNN | 03B2443 | 44 - Inmate Grievance Program | Appeal Considered Untimely | 12/10/2012 | 2/4/2013 | 6/12/2013 |
| EL-40425-13 | GUNN | 03B2443 | 22 - Medical | Diagnosis In Writing/Pain Medications | 1/10/2013 | 3/11/2013 | 7/10/2013 |
| EL-40437-13 | GUNN | 03B2443 | 19 - General Library | Library Loan Program | 1/14/2013 | 4/8/2013 | 9/4/2013 |
| EL-40666-13 | GUNN | 03B2443 | 06 - Guidance Unit/Counseling | Issues With Counselor | 3/18/2013 | 5/31/2013 | 10/16/2013 |
| EL-40672-13 | GUNN | 03B2443 | 41 - Legal Mail | Legal Mail Not Handed Out | 3/19/2013 | 5/16/2013 | 9/4/2013 |
| EL-40777-13 | GUNN | 03B2443 | 49 - Staff Conduct | Sexually Violated Via Pat Frisk | 4/15/2013 | 6/24/2013 | 3/12/2014 |
| EL-40800-13 | GUNN | 03B2443 | 49 - Staff Conduct | Denied Meal/Retaliation | 4/18/2013 | 5/16/2013 | 9/4/2013 |
| EL-40798-13 | GUNN | 03B2443 | 49 - Staff Conduct | Keeplock/Missed Call-Outs | 4/18/2013 | 6/10/2013 | 10/2/2013 |
| EL-40803-13 | GUNN | 03B2443 | 49 - Staff Conduct | Kicked And Provoked | 4/19/2013 | 5/31/2013 | 9/18/2013 |
| EL-40801-13 | GUNN | 03B2443 | 49 - Staff Conduct | Ordered To Bench | 4/19/2013 | 6/10/2013 | 9/25/2013 |
| EL-40802-13 | GUNN | 03B2443 | 49 - Staff Conduct | Intimidated By Officer | 4/19/2013 | 5/20/2013 | 10/9/2013 |
| EL-40837-13 | GUNN | 03B2443 | 03 - Correspondence | Legal Postage Not Applied/Flat Rate Envelope | 5/1/2013 | 6/10/2013 | 9/25/2013 |
| EL-40668-13 | GUNN | 03B2443 | 49 - Staff Conduct | Not Being Let Out/Retaliation | 5/6/2013 | 6/5/2013 | 9/25/2013 |
| EL-40880-13 | GUNN | 03B2443 | 49 - Staff Conduct | Harassed And Deprived By Officer | 5/9/2013 | 6/24/2013 | 10/30/2013 |
| EL-40954-13 | GUNN | 03B2443 | 44 - Inmate Grievance Program | Refusal To Process Grievance (EL-40666-13) | 5/29/2013 | 7/24/2013 | 12/4/2013 |
| EL-41072-13 | GUNN | 03B2443 | 44 - Inmate Grievance Program | IGPS Failure To Process | 6/26/2013 | 9/9/2013 | 1/22/2014 |
| EL-41105-13 | GUNN | 03B2443 | 49 - Staff Conduct | Sexual Assault With Frisk | 7/3/2013 | 8/7/2013 | 12/18/2013 |
| EL-41106-13 | GUNN | 03B2443 | 44 - Inmate Grievance Program | Questions Putting Grievances Together | 7/3/2013 | 9/9/2013 | 1/22/2014 |
| EL-41247-13 | GUNN | 03B2443 | 49 - Staff Conduct | Keeplock As Punishment | 8/1/2013 | 9/9/2013 | 1/29/2014 |
| EL-41887-13 | GUNN | 03B2443 | 41 - Legal Mail | Wants Legal Mail Timely | 12/4/2013 | 1/27/2014 | 5/14/2014 |
| EL-42163-14 | GUNN | 03B2443 | 49 - Staff Conduct | Harassed/Threatened/Legal Work Read | 2/4/2014 | 4/22/2014 | 7/30/2014 |
| EL-42205-14 | GUNN | 03B2443 | 49 - Staff Conduct | Discriminating Slurs/Actions | 2/11/2014 | 4/22/2014 | 7/30/2014 |
| EL-42366-14 | GUNN | 03B2443 | 03 - Correspondence | Advance Request Returned | 3/28/2014 | 6/2/2014 | 9/3/2014 |
| EL-42451-14 | GUNN | 03B2443 | 22 - Medical | Various Sick Call Issues | 4/12/2014 | 6/9/2014 | 9/10/2014 |
| EL-42555-14 | GUNN | 03B2443 | 41 - Legal Mail | Legal Mail Procedure | 5/12/2014 | 7/30/2014 | 10/29/2014 |
| GH-77719-14 | GUNN | 03B2443 | 29 - Inmate Property | Receive Legal Draft Bag | 9/3/2014 | 11/24/2014 | 2/11/2015 |
| GH-77745-14 | GUNN | 03B2443 | 28 - Tier III Policy & Procedure | False MBR | 9/10/2014 | 4/24/2015 | 6/3/2015 |
| GH-77791-14 | GUNN | 03B2443 | 23 - Housing - Internal Block Affairs | Receive Cell Set Up/Mattress | 9/19/2014 | 4/24/2015 | 6/3/2015 |
| GH-77939-14 | GUNN | 03B2443 | 06 - Guidance Unit/Counseling | Be Assigned New ORC | 10/3/2014 | 12/29/2014 | 4/1/2015 |
| GH-79323-15 | GUNN | 03B2443 | 22 - Medical | Receive Medical Treatment | 3/24/2015 | 7/28/2015 | 11/2/2016 |
| GH-79421-15 | GUNN | 03B2443 | 40 - Law Library | Change Law Library Policy And Procedure | 4/17/2015 | 6/24/2015 | 11/25/2015 |
| GH-80214-15 | GUNN | 03B2443 | 40 - Law Library | Denied Extended Access To Law Library | 7/21/2015 | 9/11/2015 | 11/18/2015 |
| GH-80213-15 | GUNN | 03B2443 | 49 - Staff Conduct | Assault | 7/21/2015 | 11/19/2015 | 5/4/2016 |
| GH-80561-15 | GUNN | 03B2443 | 49 - Staff Conduct | False MBR | 8/25/2015 | 11/19/2015 | 1/13/2016 |
| GH-81006-15 | GUNN | 03B2443 | 41 - Legal Mail | Legal Mail Processing | 10/14/2015 | 6/28/2016 | 2/22/2017 |
| GH-81208-15 | GUNN | 03B2443 | 30 - Package Room - #4911 | Package Return/Overcharged Postage | 11/2/2015 | 3/3/2016 | 7/27/2016 |
| GH-82993-16 | GUNN | 03B2443 | 44 - Inmate Grievance Program | Re-Investigate GH-80213-15 | 5/16/2016 | 6/5/2016 | 12/14/2016 |
| GH-83068-16 | GUNN | 03B2443 | 22 - Medical | Harassment/Medical | 5/24/2016 | 7/12/2016 | 11/9/2016 |
| GH-83066-16 | GUNN | 03B2443 | 23 - Housing - Internal Block Affairs | Denied Writing Material | 5/24/2016 | 9/27/2016 | 4/5/2017 |
| GH-83067-16 | GUNN | 03B2443 | 44 - Inmate Grievance Program | Denied Appeal/False Reports | 5/24/2016 | 8/5/2016 | 4/19/2017 |
| GH-83127-16 | GUNN | 03B2443 | 41 - Legal Mail | Legal Mail Not Processed Out | 5/31/2016 | 8/19/2016 | 2/8/2017 |
| GH-83275-16 | GUNN | 03B2443 | 03 - Correspondence | Process Within 24 Hours | 6/20/2016 | 8/19/2016 | 2/15/2017 |
| GH-83297-16 | GUNN | 03B2443 | 30 - Package Room - #4911 | Receive Package | 6/20/2016 | 9/12/2016 | 3/29/2017 |
| GH-83274-16 | GUNN | 03B2443 | 39 - Facility Maintenance | Install Fan | 6/20/2016 | 10/12/2016 | 4/26/2017 |
| GH-83276-16 | GUNN | 03B2443 | 44 - Inmate Grievance Program | Follow Directive #4040 | 6/20/2016 | 9/27/2016 | 5/31/2017 |
| GH-83277-16 | GUNN | 03B2443 | 49 - Staff Conduct | Retaliation/Harassment | 6/20/2016 | 11/7/2016 | 6/7/2017 |
| GH-83347-16 | GUNN | 03B2443 | 30 - Package Room - #4911 | Follow Directive #4911 | 6/23/2016 | 9/12/2016 | 3/29/2017 |
| GH-83510-16 | GUNN | 03B2443 | 49 - Staff Conduct | False Statements By Sergeant | 7/13/2016 | 11/7/2016 | 8/30/2017 |
| GH-83652-16 | GUNN | 03B2443 | 22 - Medical | Receive Pain Medication | 7/28/2016 | 12/12/2016 | 8/9/2017 |
| GH-83766-16 | GUNN | 03B2443 | 49 - Staff Conduct | Discrimination | 8/12/2016 | 11/21/2016 | 7/5/2017 |

◇ Add new item

# EXHIBIT 18

PLAINTIFF'S MENTAL HEALTH
RECORDS
FILED UNDER SEAL