# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

DARRELL GUNN,

Plaintiff,

-vs-

CHAD BESCLER, et al.,

Defendants.

DECISION AND ORDER

16-CV-6206 (CJS)

Plaintiff Darrell Gunn ("Gunn") brought this case, *pro se*, pursuant to 42 U.S.C. § 1983 alleging a multitude of violations of his civil rights during his imprisonment at Elmira Correctional Facility.[1] Of Gunn's thirty original claims, seven have survived the Court's prior screening orders and Defendants' motions to dismiss and for judgment on the pleadings: sexual assault during a pat frisk against Corrections Officer Perry; failure to intervene during the sexual assault against Corrections Sergeant Claflin; excessive force and failure to protect against the sexual assault against Corrections Officer Bescler; a retaliatory pat frisk against Corrections Officer Perry; sexual assault during a pat frisk and filing of a retaliatory misbehavior report against Corrections Officer Schieber; and cold conditions, retaliatory sexual advances, and physical threats against Corrections Officer Schieber. *See* Decision and Order, Jan. 19, 2017, ECF No. 9; Decision and Order, Sept. 6, 2018, ECF No. 15;

---

[1] Gunn has since been transferred several times, most recently to Sing Sing Correctional Facility. Notice, September 6, 2019, ECF. No. 41.

Decision and Order, 3, 13, July 18, 2019, ECF No. 32; Decision and Order, Dec. 12, 2020, ECF No 65.

The matter is now before the Court on Defendants' motion for summary judgment on all remaining claims. Mot. Summ. J., Feb. 18, 2021, ECF No. 68. Defendants have filed and served upon Gunn an appropriate *Irby* notice. Notice, Feb. 18, 2021, ECF No. 68-2. Gunn filed a response in opposition to Defendants' motion [Resp. Opp'n, Mar. 29, 2021, ECF No. 71], and Defendants filed their reply [Reply Supp., Apr. 30, 2021, ECF No. 73].

For the reasons stated below, Defendants' motion for summary judgment [ECF No. 68] is granted, and Gunn's claims are dismissed.

## SUMMARY JUDGMENT STANDARD

It is well-settled that summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) (stating that summary judgment is only appropriate where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party."). A party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Moreover, "[a] party asserting that a fact . . . cannot be genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1).

Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The non-movant cannot oppose a properly-supported summary judgment motion with bald assertions that are not supported by the record. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999). Rather, the non-movant must support its assertion that a fact is genuinely disputed by citing to particular parts of the record, or showing that the materials cited by the movant are inadmissible or do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

Courts must view the underlying facts contained in affidavits, attached exhibits, and depositions, in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Further, when a litigant is *pro se*, his pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the *pro se* litigant must still establish the existence of genuine issues of material fact to survive a motion for summary judgment: a *pro se* party's "bald assertion," when unsupported by evidence, is insufficient. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995).

## DISCUSSION

The legal principles applicable to claims filed pursuant to 42 U.S.C. § 1983 are well settled. In order to establish individual liability under § 1983, a plaintiff must

show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a constitutional right. *See, e.g.*, *Monroe v. Pape*, 365 U.S. 167, 181 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution. The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." (internal quotation marks, citations, and alteration omitted)).

As indicated above, Defendants' motion for summary judgment addresses claims that Gunn asserts under § 1983: sexual assault and retaliation against Corrections Officers Perry and Schieber; failure to intervene against defendants Claflin and Bescler; excessive force against Corrections Officer Bescler; and cold conditions against Corrections Officer Schieber. For ease of discussion, the claims are considered in chronological order.

<u>Gunn's Allegations Regarding the March 29, 2013 Incident</u>

Gunn's first three claims arise out of the same general incident. Gunn alleges that on March 29, 2013, Corrections Officer Perry conducted a sexually assaultive pat

frisk [Operative Compl.[2] at ¶¶ 50-51, July 18, 2019, ECF No. 34] and that defendants Claflin and Bescler were close by and failed to intervene.[3] *Id.* at ¶¶ 65-68, 75. As he was walking back to his cell after the pat frisk, Gunn alleges that Corrections Officer Bescler kicked his leg causing him to nearly fall.[4] McKay Decl. (Ex. 1) at 77:16-25; 78:1-16; 82:16-18.

Defendants note that Gunn pursued claims before the New York Court of Claims based on the same set of facts [Mot. Summ. J., 8-10, Feb. 18, 2021, ECF No. 68-8], which were dismissed after trial [McKay Decl. (Ex. 3) at 12]. Defendants argue

---

[2] Gunn was permitted to file a second amended complaint, which was screened and allowed to proceed to service in part. *See* Second Am. Compl., June 8, 2017, ECF No. 14-1; Decision and Order, Sept. 6, 2018, ECF No. 15. Gunn then filed an additional motion to amend attaching a proposed (third) amended complaint, which he also labeled as the second amended complaint. Mot. Am. Compl., July 3, 2019, ECF No. 31. The Court granted the motion to allow Gunn to amend the caption of the second amended complaint. Decision and Order, 13-14, July 18, 2019, ECF No. 32. The Court noted that it had not compared the proposed (third) amended complaint to the original second amended complaint but stated that the (third) amended complaint would serve as the operative pleading. *Id.* at 13. For clarity, the Court cites to this document as the "Operative Compl."

[3] During his deposition, Gunn testified that Corrections Sergeant Claflin was one foot away. McKay Decl. (Ex. 1) at 70:6-15. The record is unclear as to where Corrections Officer Bescler was during the pat frisk, but it is apparent that he was nearby. *Id.* at 69:19-23 (noting that the pat frisk took place around two feet from the magnetometer); *id.* at 70:16-23 (noting that Corrections Officer Bescler was about two feet from the magnetometer but that Gunn could not definitively say where he was compared to the pat frisk because Gunn was facing the wall).

[4] While in his deposition Gunn asserted that Corrections Officer Bescler kicked him as a form of preemptive retaliation for a potential future grievance against Corrections Officer Perry regarding the sexual assault [McKay Decl. (Ex. 1) at 80:23-25–81:2-6], Gunn's claim proceeded to service under a theory of excessive force [Decision and Order, 8, Sept. 6, 2018, ECF No. 15]. Therefore, the Court does not analyze Gunn's claim under retaliation standards.

that the Court of Claims' ruling precludes the Court from independently analyzing these claims. Mot. Summ. J., 10, Feb. 18, 2021, ECF No. 68-8.

*Sexual Assault Claim*

This Court agrees that the Court of Claims decision precludes it from assessing Gunn's first claim against Corrections Officer Perry pursuant to the doctrine of collateral estoppel. "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). "Collateral estoppel requires: (1) an issue that has been decided in a prior action and is decisive of the present action; and (2) that there has been a full and fair opportunity to contest the decision now said to be controlling." *Smalls v. Rathbum*, No. 16-cv-6503, 2019 WL 2433892, at *3 (W.D.N.Y. June 11, 2019).

The Court of Claims concluded that Gunn was not a credible witness and found that he "was subjected to a random pat/frisk search in accordance with prison directives, a procedure to which he had apparently not been previously subjected, and he interpreted it as a sexual assault." McKay Decl. (Ex. 3) at 11-12.[5] The Court cannot

---

[5] This portion of the Court of Claims decision presents an alternative finding of fact [McKay Decl. (Ex. 3) at 11-12] but is no less "a good estoppel." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, at 45 (2d Cir. 1986) (noting that "if a court decides a case on two grounds, each is a good estoppel"); *Travelers Indem. Co. v. Northrop Grumman Corp.*, No. 16 CIV. 8778, 2021 WL 4255073, at *5 (S.D.N.Y. Sept. 17, 2021) ("A trial court's alternative rulings have preclusive effect if they are neither casual [n]or of any lesser quality than had the outcome of the trial depended solely on [the alternative] issue." (internal quotation marks and citation omitted)).

second guess or disrupt this finding.[6] *See Shell v. Brun*, 362 F. Supp. 2d 398, 401 (W.D.N.Y. 2005). And because the factual predicate underlying Gunn's current sexual assault claim was determined to be untrue, this Court cannot find that Gunn's Eighth Amendment rights were violated when Corrections Officer Perry conducted the March 29, 2013 pat frisk. Defendants are entitled to summary judgment on this claim.

*Failure to Intervene Claim*

Likewise, because the Court cannot find that Gunn's constitutional rights were violated during the pat frisk, it cannot find that defendants Claflin and Bescler failed to intervene. *See Jackson v. Tallado*, 295 F. Supp. 3d 164, 173-74 (E.D.N.Y. 2018) (noting that to establish a claim for failure to intervene, a plaintiff "must prove that the officer (1) observed, or had reason to know of, the alleged [constitutional] violation, and (2) there was a realistic opportunity to prevent the harm from occurring"); *Hardy v. Daly*, 748 F. App'x 379, 381 (2d Cir. 2018) ("[T]here can be no failure to intervene . . . where there was no constitutional violation." (internal quotation marks and citation omitted)). Summary judgment on this claim is thus also required.

---

[6] Gunn has not alleged that he did not have a full and fair opportunity to present this claim to the Court of Claims or that he did not have the opportunity to contest the decision. *See Ramsaroop v. Dep't of Educ. of the City of N.Y.*, No. 20 CIV. 4947 (ER), 2022 WL 376029, at *4 (S.D.N.Y. Feb. 8, 2022) ("In the application of collateral estoppel . . . , the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in [the] prior action or proceeding." (internal quotation marks and citation omitted)).

*Excessive Force Claim*

The Court of Claims did not, however, explicitly rule on whether Corrections Officer Bescler kicked Gunn while Gunn was returning to his cell. [7] *See* McKay Decl. (Ex. 3) at 1-12. Therefore, the Court analyzes whether Defendants are entitled to summary judgment on Gunn's excessive force claim against Corrections Officer Bescler.

"To establish a constitutional violation under the Eighth Amendment a plaintiff must meet both an objective and a subjective requirement. To satisfy the objective requirement the plaintiff must prove that the violation is sufficiently serious or harmful enough by objective standards. The objective component is context specific, turning upon contemporary standards of decency. Hence, a *de minimis* use of force will rarely be sufficiently serious or harmful enough." *Kornegay v. New York*, 677 F. Supp. 2d 653, 660 (W.D.N.Y. 2010) (internal quotation marks and citation omitted).

Certainly, considering the record in a light most favorable to Gunn, the kicking was unprovoked and unnecessary, as Gunn was simply walking back to his cell. McKay Decl. (Ex. 1) at 77:16-25; 78:1-16. While the Court condemns any such use of force, it is well settled that "'[n]ot every push or shove . . . violates a prisoner's

---

[7] The Court analyzes this claim because it does not find that the Court of Claims fully decided this issue. Specifically, the Court of Claims focused on whether New York State could be held liable under theories of vicarious liability or for negligent supervision [McKay Decl. (Ex. 3) at 11] and did not make an explicit factual finding on whether the alleged kicking occurred. While the Court of Claims did note that Gunn was not a credible witness, its analysis of the veracity of Gunn's claims focused on the alleged sexual assault. *Id.* at 11-12.

constitutional rights.'" *Pedroza v. Panzarella*, 18-cv-03320, 2021 WL 3621808, at *5 (S.D.N.Y. Aug. 16, 2021) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).

Here, Gunn alleges no injuries other than resulting shin pain. McKay Decl. (Ex. 1) at 92:10-12. The Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (internal quotation marks and citation omitted); *Pedroza*, 2021 WL 3621808, at *5 (same). Here, the Court does not believe that this single kick rises to this level. *Hudson,* 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident . . . . That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." (citations omitted)); *see also Pedroza*, 2021 WL 3621808, at *5 ("[S]crapes and bruises are the sorts of minimal injuries that routinely support a finding of a *de minimis* use of force, and therefore fail to satisfy the objective prong for claims of Eighth Amendment violations."); *Barratt v. Joie*, No. 96 CIV. 0324, 2002 WL 335014, at *10 (S.D.N.Y. Mar. 4, 2002) ("[A] single kick, unaccompanied by any competent evidence of significant injury, is not a use of force that shocks the conscience or that can be viewed as repugnant to the conscience of mankind.").

Therefore, the Court grants summary judgment on Gunn's first three causes of action against defendants Perry, Claflin, and Bescler.

Gunn's Allegations Against Corrections Officer Perry – Retaliatory Pat Frisk

Gunn next alleges that on June 11, 2013, Corrections Officer Perry conducted a retaliatory and sexually assaultive pat frisk—two months after Gunn grieved Corrections Officer Perry for the March 29, 2013 pat frisk. *See* Operative Compl. at 39; McKay Decl. (Ex. 1) at 119:16-20. Gunn alleges that he cleared the magnetometer on his way to recreation, but Corrections Officer Perry picked him out for a pat frisk. McKay Decl. (Ex. 1) at 124:9-18. Gunn states that Perry squeezed and touched his arms and legs and then "took both of his hands and went back and forth trying to penetrate my rectum again." *Id.* at 126:13-20. Gunn stated that nothing was said during the incident and that other individuals were also being pat frisked. *Id.* at 129:3-7; 130:3-5.

To maintain a retaliation claim, a plaintiff must show: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Walker v. Senecal*, No. 9:20-cv-0082, 2021 WL 3813081, at *4 (N.D.N.Y. July 19, 2021) (internal quotations marks and citation omitted). The third element asks whether the protected conduct was a "'substantial or motivating factor for the adverse actions taken by prison officials.'" *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 236 (quoting *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir. 2003)).

Assuming without deciding that the first and second elements are met, there is no evidence in the record suggesting a causal connection between Gunn's grievance and this pat frisk. Gunn simply asserted during deposition that the pat frisk was

retaliatory for his reporting of the March 29, 2013 pat frisk. McKay Decl. (Ex. 1) at 140:23-141:2-6. When asked if Gunn had any proof that this was done as a form a retaliation, he replied, "When I filed the complaint and the injury report, all the C.O.s there, retaliate – retaliation is normal," and "It's predatory." *Id.* at 141:9-11, 22-23. These conclusory statements do not create an issue of fact regarding causation. *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("The party opposing summary judgment may not rely simply on conclusory statements."); *Transflo Terminal Servs. Inc. v. Brooklyn Resource Recovery, Inc.*, 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) ("Conclusory statements, devoid of specifics, are insufficient to defeat a properly supported motion for summary judgment."); *see also Coleman v. Racette*, No. 9:18-cv-0390, 2021 WL 4312392, at *9 (N.D.N.Y. May 27, 2021) ("[A] plaintiff must come forward with additional 'circumstantial evidence' establishing that the protected activity was 'a substantial or motivating factor' in the defendant's conduct."). Therefore, the Court grants summary judgment on Gunn's claim that Corrections Officer Perry conducted a retaliatory pat frisk.

Gunn's Allegations Against Corrections Officer Schieber – Sexual Assault and Retaliatory False Misbehavior Report

Gunn next alleges that on July 26, 2013, Corrections Officer Schieber sexually assaulted him during a pat frisk conducted when Gunn was going to recreation. McKay Decl. (Ex. 2) at 21:12-23. Gunn asserts that he cleared the magnetometer without alarm, but that another guard informed Corrections Officer Schieber that Gunn is "'the one who writes grievances.'" Operative Compl. at ¶ 132; McKay Decl. (Ex. 2) at 23:3-7. Corrections Officer Schieber then performed a pat frisk, during

which he "plac[ed] his hand between plaintiff's buttock [,] touched plaintiff's buttock[, and] touched plaintiff['s] rectum with his hand and finger." Operative Compl. at ¶ 137. During his deposition, Gunn asserted that there were two seconds of penetration. McKay Decl. (Ex. 2) at 27:15-17. After the pat frisk concluded, Gunn asked Corrections Officer Schieber for his name. *Id.* 30:6-7. Corrections Officer Schieber asked why Gunn wanted his name, and Gunn replied, "[Y]ou touched my asshole." *Id.* at 31:2-12. Corrections Officer Schieber then ordered Gunn back to his cell. *Id.* at 32:5-7. While walking back to his cell, Gunn had an accidental bowel movement. *Id.* at 27:18-25–28:2-7.

Gunn further alleges that Corrections Officer Schieber authored a false misbehavior report dated July 26, 2013, alleging that Gunn threatened staff and failed to follow orders after the pat frisk. *See* McKay Decl. (Ex. 14) at 1; McKay Decl. (Ex. 2) at 39:12-21. Gunn alleges that Corrections Officer Schieber wrote the false misbehavior report as a form of preemptive retaliation because Schieber feared that Gunn was going to file a sexual assault claim against him. McKay Decl. (Ex. 2) at 42:20-22.

Defendants have presented evidence of two grievance reports filed by Gunn relating to these events: a February 4, 2014 grievance that referenced the alleged sexual assault [McKay Decl. (Ex. 11) at 5-6] and an August 25, 2015 grievance pertaining to the misbehavior report [McKay Decl. (Ex. 12) at 4]. During deposition, Gunn could not recall filing any other grievance related to these events. McKay Decl. (Ex. 2) at 43:16-19. In other words, the record before the Court establishes that Gunn

did not file any grievances related to this incident until more than six months after it occurred.

The Court is without authority to hear Gunn's claims because he failed to timely grieve the conduct alleged. The Prison Litigation Reform Act ("PLRA") provides that "'[n]o action shall be brought with respect to prison conditions under [42 U.S.C. section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are Exausted.'" *Williams v. Comstock*, 425 F.3d 175, 176 (2d Cir. 2005) (alterations in original and quoting 42 U.S.C. § 1997e(a)). The PLRA "'demands compliance with an agency's deadlines and other critical procedural rules.'" *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). Because Gunn's grievances were filed well after the deadline set by New York State, and Gunn has not presented any competent evidence that he should be excused from exhausting his administrative remedies, the Court cannot entertain his claims related to the June 26, 2013 incident. *See* N.Y. Comp. Codes. R. & Regs. § 701.5(a)(1) (noting that, as part of the inmate grievance program, a grievance must be submitted within 21 calendar days of the alleged occurrence); *Williams*, 425 F.3d at 177 ("[T]he failure to timely file the grievance in accordance with [agency] rules amounted to a failure to exhaust administrative remedies in this case."). Therefore, the Court grants Defendants' motion for summary judgment on Gunn's claims against Corrections Officer Schieber for sexual assault and writing a false retaliatory misbehavior report.

Gunn's Allegations Against Corrections Officer Schieber – Cold Conditions, Retaliatory Sexual Advances and Physical Threats

Gunn alleges in his complaint that one evening between December 2013 and January 2014, unidentified correctional officers refused to close the windows in his block, subjecting him to the Polar Vortex weather system and brutal cold weather. McKay Decl. (Ex. 2) at 52:5-25, 55:22-24. Gunn alleges that he witnessed Mr. Green, another inmate, "unsuccessfully remonstrate[] to all prison staff to close the windows." Operative Compl. ¶ 165; McKay Decl. (Ex. 2) at 56:21-25.  Gunn alleges that because of this, Mr. Green was brutally assaulted by Corrections Officer Schieber on January 4, 2014. Operative Compl. ¶ 168; McKay Decl. (Ex. 2) at 56:21-25. Gunn notified the Office of Special Investigations[8] about the alleged beating and cold conditions. McKay Decl. (Ex. 2) at 72:13-17.

Gunn believes that Corrections Officer Scheiber was aware of this report and threatened, harassed, and intimidated him in retaliation. Operative Compl. ¶ 184; McKay Decl. (Ex. 2) at 71:21-25. Specifically, Gunn alleges that around January 31, 2014, Corrections Officer Schieber came to his cell and made sexual advances by blowing kisses and calling him "Cinnamon." Operative Compl. at ¶ 176-177; McKay Decl. (Ex. 2) at 75:7-22. Later that evening, Corrections Officer Schieber came back to Gunn's cell and asked, "Cinnamon, why didn't you come out tonight? I'll see you tomorrow." Operative Compl. at ¶ 178. On February 3, 2014, Corrections Officer Schieber again approached Gunn's cell, woke him up by "us[ing] his baton on

---

[8] The parties appear to use "Inspector General" and "Office of Special Investigations" interchangeably. McKay Decl. (Ex. 2) at 71:24-25–72:2-15.

plaintiff's foot," and stated, "Hey, Cinnamon, why didn't you come out today? When you come out your cell I'm going to fuck you up! You little bitch." Operative Compl. at ¶¶ 179-180; McKay Decl. (Ex. 2) at 76:11-21. Gunn alleges that Corrections Officer Schieber threw water on him around this date as well. McKay Decl. (Ex. 2) at 76:2-8.

In his ninth cause of action, Gunn alleges that Corrections Officer Schieber made additional retaliatory sexual advances and threats between February 10 and February 12, 2014. Gunn alleges that on February 10, 2014, Corrections Officer Schieiber blew Gunn a kiss into his cell and later that evening called him a "faggot." Operative Compl. ¶¶ 204-06. The following day, Gunn alleges that Corrections Officer Schieber came to his cell and stated, "Come out your cell to get your ass whipping!" Operative Compl. ¶¶ 208-09. On February 12, 2014, Corrections Officer Scheiber again allegedly came to Gunn's cell and stated, "[H]ey girl, what are you working on? Don't hide in your cell! Come out tomorrow to get your ass whipping! You're always bitching and writing grievances!" Operative Compl. ¶¶ 211-12.

*Cold Conditions Claim*

The Court previously allowed Gunn's cold conditions claim to proceed against Corrections Officer Schieber as "the only Correctional Officer identified in the Amended Complaint as being aware of the cold temperatures based on the allegation that Schieber assaulted another inmate who had complained about the conditions." Decision and Order, 33, Jan. 19, 2017, ECF No. 9.

To advance a § 1983 claim, the defendant must have been personally involved in the constitutional violation. *See Tangreti*, 983 F.3d at 618. During deposition, however, Gunn stated that approximately six officers were working in the area when

the windows were open and Corrections Officer Schieber was not one of them. McKay Decl. (Ex. 2) at 61:9-12, 64:7-9. He asserted that Corrections Officer Schieber was involved only after the windows had been closed, and he could not recall seeing Schieber earlier in the day when the windows were open. *Id.* at 64:13-25–65:2-12.

The Court agrees with Defendants that based on the record presented, Gunn is unable to prove an essential element of his claim—personal involvement. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."). Therefore, the Court grants summary judgment as to Gunn's cold conditions claim.

*January 31-February 3 Retaliatory Sexual Advances and Threat Claim*

Gunn's claim that Corrections Officer Schieber retaliated against him by blowing him kisses, referring to him as "Cinnamon," and threatening him with physical violence fails because the record shows he is unable to meet an essential element of his claim—a causal connection between his report to the Inspector General and Corrections Officer Schieber's conduct.

As mentioned above, to maintain a retaliation claim, a plaintiff must show: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Walker*, 2021 WL 3813081, at *4 (internal quotation marks and citation omitted).

Assuming without deciding that the first and second elements are met, there is insufficient evidence for a juror to find for Gunn on the third element. Gunn alleges that he filed a report to the Inspector General about the cold conditions and Corrections Officer Schieber beating Mr. Greene. McKay Decl. (Ex. 2) at 72:2-17. Gunn was not sure when these events happened or when he wrote to the Office of Special Investigations ("OSI") (*id.* at 72:18-20), but the alleged beating occurred on the same day that the windows were left open (*id.* at 72:4-12), which occurred between late December and early January (*id.* at 52:20-22). Even if the comments and threat were made close in time to when Gunn made the report, "temporal proximity without more is insufficient to survive summary judgment." *Coleman*, 2021 WL 4312392, at *9 (internal quotation marks and citation omitted) ("Instead, a plaintiff must come forward with additional 'circumstantial evidence' establishing that the protected activity was 'a substantial or motivating factor' in the defendant's conduct.").

Gunn has not alleged that Corrections Officer Schieber said anything about the report during these incidents. Additionally, defendants have submitted evidence that OSI investigations are generally kept confidential, and that Corrections Officer Schieber was neither aware that Gunn had made a report to OSI nor was he ever interviewed by OSI about these allegations. Schieber Decl., ¶¶ 19, 22, Feb. 18, 2021, ECF No. 68-6. All that remains are Gunn's conclusory statements that Corrections Officer Schieber was aware of the investigation,[9] which is insufficient to create a

---

[9] During Gunn's deposition he was asked:

    Q. Do you know if Officer Schieber knew about the O.S.I. investigation?

material issue of fact. *See also Goenaga*, 51 F.3d at 18 ("The party opposing summary judgment may not rely simply on conclusory statements."); *Transflo Terminal Servs. Inc.*, 248 F. Supp. 3d at 399 ("Conclusory statements, devoid of specifics, are insufficient to defeat a properly supported motion for summary judgment."). Therefore, the Court grants summary judgment as to these claims.[10]

---

A. Yes.

Q. Okay. How do you know that he knew?

A. Because they always know.

Q. Okay. But it wasn't based on anything that he said?

A. Right.

McKay Decl. (Ex. 2) at 77:3-10.

Additionally, in the operative complaint, Gunn notes that on February 4, 2014, he was intervened by Mr. Lovelace, "Inspector General for DOCCS" about his allegations concerning Corrections Officer Schieber. Operative Compl. ¶ 183. Gunn alleges that "this means that, B. Schieber, Correction Officer, was well aware of the Inspector General investigation." *Id.* at ¶ 184. As Defendants have noted, however, the interview took place after the alleged comments and threat occurred. *See id.* ¶¶ 176-81. Even if Corrections Officer Schieber knew in advance that the interview was going to take place, there is nothing in the record that would allow a jury to conclude that Schieber would have known the subject matter of the interview.

[10] Gunn alleged in his first amended complaint that Corrections Officer Schieber read his legal materials out loud. Amend. Compl. at ¶ 353, Apr. 27, 2016, ECF No. 6. Upon screening the amended complaint, the Court concluded that "[r]eading Plaintiff's legal papers aloud is not adverse action sufficient to state an actionable retaliation claim, *see Dawes*, 239 F.3d at 493, nor are there any allegations that a non-frivolous legal claim of Plaintiff's was hindered or prejudiced in some manner by having his papers read aloud." Decision and Order, 34, Jan. 19, 2017, ECF No. 9. In his second amended complaint, Gunn added that after Corrections Officer Schieber read his legal papers, "plaintiff out of fear did not prepare and file lawsuits in New York State Court of Claims against defendants B. Schieber, Correction Officer, A. Cole, Correction Officer, Donely, ORC, among others," which prejudiced "non-frivolous claims." Second Am. Compl. at ¶¶ 183, 185, Sept. 6, 2018, ECF No. 16. The Court screened the second amended complaint. Decision and Order, Dkt. 15, Sept. 6, 2018,

*February 10-12 Retaliatory Sexual Advances and Threats Claim*

Gunn's claim that Corrections Officer Schieber made sexual advances on February 10, 2014, fails because the comments do not rise to the level of an adverse action. Gunn's claim that Corrections Officer Schieber physically threatened him on February 11 and 12, 2014, also fails because Gunn failed to administratively exhaust available avenues to grieve those incidents.

To constitute an adverse action, the alleged conduct must be viewed as sufficiently serious to deter a similarly situated claimant from exercising his constitutional rights. *Hayes*, 2017 WL 9511178, at *7. The February 10, 2014 acts alleged, if true, represent an abuse of authority, and the Court condemns the use of derogatory slurs. However, a reasonable juror could not conclude that blowing of kisses and use of a derogatory slur would deter a similarly situated claimant from filing grievances against correctional officers for wrongdoing. *See Johnson v. Barone*, No. 3:21CV1514 (KAD), 2022 WL 344272, at *3 (D. Conn. Feb. 4, 2022) ("[I]nsulting or disrespectful comments directed at an inmate generally do not rise to the level of an adverse action."); *Allen v. Keanan*, 13-cv-718, 2016 WL 11602226, at *17 (W.D.N.Y. Aug. 24, 2016) ("[C]alling plaintiff a name, even a reprehensible slur . . . is not actionable absent any appreciable injury."); *Bumpus v. Canfield*, 495 F. Supp. 2d 316,

---

ECF No. 15. The Court has stated that the "practical effect of the Court's [second screening order] is that the claims that were allowed to go forward were the same claims that were previously permitted to go forward by the Court's [first screening order]" except for one additional claim that was later dismissed. Decision and Order, 4, July 18, 2019, ECF No. 32. Therefore, the Court does not construe Gunn's allegations regarding the reading of his legal papers as having proceeded to service and will not analyze them here.

326 (W.D.N.Y. 2007) ("[V]ague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim.").

Additionally, Gunn has failed to allege or prove that he filed any grievances regarding the February 11 and 12, 2014 incidents. *See* Operative Compl. at 139 (noting that as to count eleven, the only grievance Gunn filed was dated February 10, 2014). As such, the Court is prohibited from reviewing these claims. *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) ("The PLRA provides that no action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted. To satisfy that requirement, prisoners in New York must ordinarily follow a three-step DOCS grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee." (internal quotation marks, alterations, and citation omitted)).

For the reasons stated above, Gunn's claims against Corrections Officer Schieber for the cold conditions and retaliatory sexual advances and physical threats are dismissed.

## CONCLUSION

Consistent with the foregoing, it is hereby

ORDERED that Defendants' motion for summary judgment [ECF No. 68] is granted and Gunn's claims against defendants Perry, Claflin, Bescler, and Schieber

are dismissed. The Clerk of Court is directed to enter judgment in favor of Defendants

and to close this case.

SO ORDERED.

DATED:      February 24, 2022
            Rochester, New York


CHARLES J. SIRAGUSA
United States District Judge